# * * § 362 INFORMATION COVER SHEET * *

William Gayler  
**DEBTOR**  
Barry R. Moore, et al.  
**MOVANT**

BK-S-0931603  
Case No:  
CHAPTER: 7

MOTION #:

| | |
|---|---|
| **Certification of Attempt to Resolve the Matter Without Court Action:** | |
| Moving counsel hereby certifies that pursuant to the requirements of LR 4001(a)(2), an attempt has been made to resolve the matter without court action, but movant has been unable to do so. | |
| Date: 11/14/12       Signature: _____ | |
|                                               Attorney for Movant | |

PROPERTY INVOLVED IN THIS MOTION: Membership Interest in Schedule B - Dkt. #105  
NOTICE SERVED ON: Debtor(s) ✔ ; Debtor's counsel ✔ ; Trustee ✔ ;  
DATE OF SERVICE: _____

| MOVING PARTY'S CONTENTIONS: | DEBTOR'S CONTENTIONS: |
|---|---|
| The EXTENT and PRIORITY of LIENS: | The EXTENT and PRIORITY of LIENS: |
| 1st _____ | 1st _____ |
| 2nd _____ | 2nd _____ |
| 3rd _____ | 3rd _____ |
| 4th _____ | 4th _____ |
| Other: _____ | Other: _____ |
| Total Encumbrances: _____ | Total Encumbrances: _____ |
| APPRAISAL of OPINION as to VALUE: | APPRAISAL of OPINION as to VALUE: |

| TERMS of MOVANT'S CONTRACT with the DEBTOR(S):: | DEBTOR'S OFFER of "ADEQUATE PROTECTION" for MOVANT : |
|---|---|
| Amount of Note: _____ | |
| Interest Rate: _____ | |
| Duration: _____ | |
| Payment per Month: _____ | |
| Date of Default: _____ | |
| Amount in Arrears: _____ | |
| Date of Notice of Default: _____ | |
| SPECIAL CIRCUMSTANCES: To proceed with litigation pending in the District Court Case No. A-09-596777-C | SPECIAL CIRCUMSTANCES: |
| SUBMITTED BY: _____ | SUBMITTED BY: _____ |
| | SIGNATURE: _____ |

**Marquis Aurbach Coffing**
DALE A. HAYES, ESQ.
Nevada Bar No. 3430
LIANE K. WAKAYAMA, ESQ.
Nevada Bar No. 11313
10001 Park Run Drive
Las Vegas, Nevada 89145
Telephone: (702) 942-2124
Facsimile: (702) 856-8925
dhayes@maclaw.com
lwakayama@maclaw.com
   Attorneys for Interested Parties

E-Filed: <u>November 14, 2012</u>

UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF NEVADA

| | |
|---|---|
| In Re:<br><br>WILLIAM A. GAYLER,<br><br>              Debtor. | Case No:   BK-S-09-31603-MKN<br>Chapter:   7<br><br>Hearing Date: December 19, 2012<br>Hearing Time: 1:30 p.m. |

<u>**MOTION FOR DETERMINATION THAT THE AUTOMATIC STAY DOES NOT APPLY, OR ALTERNATIVELY, FOR ORDER GRANTING RELIEF FROM THE AUTOMATIC STAY**</u>

      Barry R. Moore; Janie Moore; Barry R. Moore and Janie Moore, Co-Trustees of the BAMM Living Trust dated July 16, 2003; Donald J. Campbell, individually; Donald J. Campbell, Trustee of the Donald J. Campbell Professional Corporation Profit Sharing Plan; John D. O'Brien; individually, John D. O'Brien, Trustee of the John D. O'Brien Profit Sharing Plan; John Esposito, individually; and Lorraine Esposito, individually (hereinafter the "Interested Parties"), by and through their counsel Marquis Aurbach Coffing, hereby submits his Motion for Determination that the Automatic Stay Does Not Apply, or Alternatively, for Order Granting Relief from the Automatic Stay ("Motion"). This Motion is based upon the following Memorandum of Points and Authorities, the attached Exhibits and any oral argument this Court may wish to entertain.

Page 1 of 11

M&A:06277-005 1774680_2 11/14/2012 9:32 AM

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

Since August 2009, Debtor William A. Gayler ("Gayler") has known that the Interested Parties seek to hold him accountable for his wrongdoing in relation to the CH Angelus, LLC ("Angelus I") and CH Angelus II, LLC ("Angelus II") investments. Gayler, however, places the cart before the horse claiming interests in both LLCs despite the fact that he cashed out his interests to the detriment of his investors. Specifically, in September 2008, Gayler, as Managing Member of Angelus I and Angelus II, borrowed $2 Million and encumbered the LLCs' property with a $2 Million deed of trust (the "Alper Loan") without the knowledge, approval or 51% written consent of the non-managing members as required under the governing operating agreements. The Alper Loan was nothing more than the product of a scheme to increase Gayler's interest in Angelus I, cash out the interests of his friends and abscond with over $1.6 Million.

When the $2 Million unpaid principal balance became due, Gayler footed Angelus I and Angelus II with the entire bill even though neither LLC received any benefit from the Alper Loan. As the LLCs and its members refused to condone the rampant self-dealing, the lenders initiated foreclosure proceedings and the Interested Parties stood to lose their entire investments through no fault of their own.

In August 2009, the Interested Parties initiated a lawsuit against Gayler, the lenders and others. After a six day trial and dispositive motion practice against the lenders, the Interested Parties were successful in saving their investment properties, free and clear of any interest claimed in relation to the Alper Loan. The District Court specifically invalidated the entire Alper Loan based primarily on Gayler's "manifest self-dealing."[1]

---

[1] See Findings of Fact and Conclusions of Law filed on March 13, 2011 in District Court Case No. A-09-596777-C on file herein attached hereto as **Exhibit 1**; see also Order Denying Defendants Eliot A. Alper, Trustee of the Eliot A. Alper Revocable Trust Dated March 22, 1999 and the Alper Partnership's Motion for Summary Judgment and Granting Plaintiffs' Cross Motion for Summary Judgment filed on July 8, 2011 in District Court Case No. A-09-596777-C on file herein attached hereto as **Exhibit 2**.

M&A:06277-005 1774680_2 11/14/2012 9:32 AM

Now, the Interested Parties seek to rectify the harm caused by Gayler and strip him of any allegedmembership interests he still claims he owns in Angelus I and Angelus II. Attempting to find refuge in his bankruptcy, Gayler asserts that these interests are assets of his estate. According to Gayler's own disclosures to the Court, however, all of these membership interests are owned by *non*-debtors and the automatic stay of 11 U.S.C. § 362(a)(1) is inapplicable. In the event that the automatic stay extends to the adjudication of these interests, the Interested Parties respectfully request this Court to lift the automatic stay pursuant to 11 U.S.C. § 362(d)(1) so that the state court litigation may proceed against Gayler.

## II.   STATEMENT OF FACTS

### A.   GAYLER'S BANKRUPTCY.

1. An involuntary Chapter 7 Petition for Relief was filed against Gayler on November 16, 2009.[2]

2. An Order Granting Interim Relief Pursuant to 11 U.S.C. § 303(f) was entered on December 2, 2009.[3]

3. In the order for relief, an involuntary stay was issued on March 29, 2010.[4]

4. Within Schedule B of the Amended Voluntary Petition filed on June 28, 2010, Gayler claimed as personal property membership interests in Angelus I and Angelus II.[5] Gayler specifically represented that he holds the following membership interests: (a) 50% in Angelus I through TGF Holding, LP; (b) 7.5% in Angelus II through TGF Holding LP; (c) 22.5% in Ch Pichon, LLC (a 30.73% Angelus II member) through TGF Holding LP; (d) 61.54% in Meritage-Gayler (a member of Groth, LLC that holds a 26.8% interest in Angelus II) through the William A. Gayler Separate Property Trust; and (e) 47% in Harlan, LLC (a 24.57% Angelus II member)

---

[2] See Dkt. #1.

[3] See Dkt. #32.

[4] See Dkt. #85.

[5] See Schedule B of Dkt. #105, pgs. 12-16 attached hereto as **Exhibit 3**.

M&A:06277-005 1774680_2 11/14/2012 9:32 AM

through TGF Holding LP.[6] As reflected in Schedule B, none of the Angelus I and Angelus II membership interests claimed by Gayler are held in his individual name.[7]

**B.    THE STATE COURT LITIGATION.**

5.    Prior to Gayler's bankruptcy, the Interested Parties sued Gayler and others in Nevada state court on August 6, 2009 in relation to the Angelus I and Angelus II investments (the "State Court Litigation").[8] In the Complaint, the Interested Parties asserted claims against Gayler that included civil conspiracy, breach of fiduciary duty, aiding and abetting breach of fiduciary duty, negligence and fraudulent misrepresentations.[9]

6.    As support for their claims, the Interested Parties set forth the detailed scheme perpetrated by Gayler to defraud his investors and profit, as learned through discovery, over $1.6 Million as a result of the Alper Loan.[10] Based on Gayler's manifest self-dealing and fraud, part of the relief sought against Gayler is to disgorge him of any interest that he claims to hold in Angelus I and Angelus II.[11]

7.    To save their investment properties, the Interested Parties also alleged claims against the lenders, the Alper Defendants,[12] for quiet title and declaratory relief.[13]

8.    With the exception of the claims asserted against the Alper Defendants, the parties stipulated in November 2009 to arbitrate all claims asserted in the State Court Litigation.[14]

---

[6] Id.

[7] Id.

[8] See Complaint filed on August 6, 2009 in District Court Case No. A-09-596777-C attached hereto as **Exhibit 4**.

[9] Id.

[10] Id.

[11] Id.

[12] The "Alper Defendants" shall refer collectively to Defendants Eliot A. Alper, Trustee of the Eliot A. Alper Revocable Trust Dated March 22, 1999 and the Alper Limited Partnership.

[13] See Ex. 4.

M&A:06277-005 1774680_2 11/14/2012 9:32 AM

9. The claims against the Alper Defendants proceeded to a six day bench trial held in November 2010 and January 2011.[15]

10. As a result of the trial and subsequent motion practice, the Court entered judgment in favor of the Interested Parties.[16] The Court specifically found that "manifest self-dealing appear[ed] in the entire Alper Loan transaction" as the purpose of the Alper Loan was to bind Angelus I and Angelus II and their respective properties in order to pay for Gayler's indebtedness.[17] The Court therefore quieted title of the property owned by Angelus I and Angelus II in the name of their respective LLC; and declared the entire Alper Loan void and invalid.[18]

11. While an appeal was pending with the Nevada Supreme Court, the Alper Defendants reached a settlement with Angelus I and Angelus II that was later approved by the District Court in an order dated April 6, 2012.[19] Of the $1.4 Million settlement proceeds paid by the Alper Defendants, Gayler claimed approximately $413,322.25 in relation to his purported membership interests in Angelus I and Angelus II. It is the Interested Parties' position, however, that Gayler and/or his bankruptcy estate do not hold any interest in Angelus I and Angelus II given that Gayler already walked away with over $1.6 Million as a result of the Alper Loan.

12. The resolution of the State Court Litigation will determine the rightful ownership of the Angelus I and Angelus II membership interests claimed by Gayler through his entities.

---

[14] See Court Minutes regarding District Court Case No. A-09-596777-C dated November 12, 2009 attached hereto as **Exhibit 5**.

[15] See Ex. 1.

[16] See Exs. 1 & 2.

[17] See Ex. 1 at p.13, ¶57.

[18] Id.

[19] See Order filed on April 10, 2012 in District Court Case No. A-09-596777-C attached hereto as **Exhibit 6**.

M&A:06277-005 1774680_2 11/14/2012 9:32 AM

MARQUIS AURBACH COFFING
10001 Park Run Drive
Las Vegas, Nevada 89145
(702) 382-0711 FAX: (702) 382-5816

## III. LEGAL ARGUMENT

The automatic stay of 11 U.S.C. § 362(a)(1) does not extend to the adjudication of the ownership and entitlement of the membership interests claimed by Gayler in Angelus I and Angelus II. All of the membership interests at issue in the State Court Litigation are vested in *non*-debtors and not in Gayler's individual name. In the event the stay does apply to the State Court Litigation, the Court should lift the automatic stay pursuant to 11 U.S.C. § 362(d)(1) to allow the State Court Litigation to proceed against Gayler as cause exists.

### A. PURSUANT TO 11 U.S.C. § 362(A)(1), THE AUTOMATIC STAY DOES NOT APPLY TO THE ANGELUS I AND ANGELUS II MEMBERSHIP INTERESTS CLAIMED BY GAYLER.

11 U.S.C. § 362(a)(1) prohibits the continuation of any action or proceeding against the *debtor* that was commenced prior to the petition. In re Dunbar, 245 F.3d 1058, 1064 (9th Cir. 2001). As a result of the involuntary Chapter 7 Petition for Relief filed against Gayler in November 2009, the automatic stay under Section 362(a)(1) was triggered.[20] None of the Angelus I and Angelus II membership interests claimed by Gayler as part of his bankruptcy estate, however, are vested in his individual name. All interests are owned by *non*-debtors, specifically, either TGF Holding LP or the William A. Gayler Separate Property Trust.[21]

The relief sought in the State Court Litigation seeking to disgorge any and all membership interests claimed by Gayler does not implicate the automatic stay imposed by 11 U.S.C. § 362(a)(1). The Court should therefore make a determination that the automatic stay only applies to Gayler – the named debtor – and in no way protects TGF Holding LP, the William A. Gayler Separate Property Trust or any other entity claimed by Gayler to have an interest in Angelus I and Angelus II, specifically with respect to the relief sought by the Interested Parties in the State Court Litigation.

---

[20] See Dkt. #1.

[21] See Ex. 3.

M&A:06277-005 1774680_2 11/14/2012 9:32 AM

### B. ALTERNATIVELY, CAUSE EXISTS TO LIFT THE AUTOMATIC STAY UNDER 11 U.S.C. § 362(D)(1) TO ALLOW THE STATE COURT LITIGATION TO PROCEED AGAINST GAYLER.

Even though Gayler is the only debtor, Schedule B of the Amended Voluntary Petition reflects that Gayler through his entities is claiming interests in Angelus I and Angelus II as part of his bankruptcy estate. The ownership of these interests, however, is genuinely in dispute and the State Court Litigation serves to liquidate any claims in relation to Angelus I and Angelus II. 11 U.S.C. § 362(d) thus grants this Court discretion in determining that there is cause to permit relief from the automatic stay. In re Peterson, 116 B.R. 247, 249 (Bankr. D. Colo. 1990). "On request of a party in interest and after notice and a hearing, the court shall grant relief from the stay provided under subsection (a) of this section, such as by terminating, annulling, modifying, or conditioning such stay – (1) for cause, including the lack of adequate protection of an interest in property of such party in interest." See 11 U.S.C. § 362(d)(1). "Use of the word 'cause' suggests an intention that the basis for relief from the stay should be broader than merely lack of adequate protection." 3 COLLIER ON BANKRUPTCY ¶362.07[3] (Alan N. Resnick & Henry J. Sommer eds., 16th ed.).

"Cause" as used in § 362(d)(1) has no clear and limited definition and, therefore, is determined on a case by case basis. In re MacDonald, 755 F.2d 715, 717 (9th Cir.1986); see also In re Castlerock Properties, 781 F.2d 159, 163 (9th Cir. 1986). "Cause" is an intentionally broad and flexible concept that permits the Bankruptcy Court, as a court of equity, to respond to inherently fact-sensitive situations. In re Sentry Park, Ltd., 87 B.R. 427, 430 (Bankr. W.D. Tex. 1988); see also In re Texas State Optical, Inc., 188 B.R. 552, 556 (Bankr. E.D. Tex. 1995). Although Congress did not define cause, it intended that the automatic stay could be lifted to allow litigation involving the debtor to continue in a non-bankruptcy forum under certain circumstances. Blan v. Nachogdoches County Hosp. (In re Blan), 237 B.R. 737, 739 (B.A.P. 8th Cir. 1999). To make a determination as to whether relief from the automatic stay should be granted to allow state court proceedings to continue, the Ninth Circuit considers judicial economy, the expertise of the state court, prejudice to the parties and whether exclusively bankruptcy issues are involved. See MacDonald v. MacDonald (In re MacDonald), 755 F.2d

M&A:06277-005 1774680_2 11/14/2012 9:32 AM

MARQUIS AURBACH COFFING
10001 Park Run Drive
Las Vegas, Nevada 89145
(702) 382-0711 FAX: (702) 382-5816

715, 717 (9th Cir.1985); see also Ozai v. Tabuena (In re Ozai), 34 B.R. 764, 766 (B.A.P. 9th Cir. 1983); and Kronemyer v. Am. Contractors Indem. Co. (In re Kronemyer), 405 B.R. 915, 921 (B.A.P. 9th Cir. 2009). Based on each of these factors, cause exists to lift the automatic stay in order to allow the State Court Litigation to proceed against Gayler.

### 1. Judicial Economy Favors Relief from the Automatic Stay.

A court may properly consider the factor of judicial economy in deciding whether to lift an automatic stay. See Packerland Packing Co., Inc. v. Griffith Brokerage Co. (In re Kemble), 776 F.2d 802, 807 (9th Cir. 1985). "Principles of judicial economy require that, without good reason, judicial resources should not be spent by duplicitous litigation, and that a lawsuit should only be tried once, that is if one forum with jurisdiction over all parties is available to dispose of all issues relating to the lawsuit." In re United Imports, 203 B.R. 162, 167 (Bankr. D. Neb. 1996) (internal citations omitted). Where only state law claims are involved, congressional policy supports having such claims heard by the state court because "[t]he Bankruptcy Court is created to handle bankruptcy matters." Marine Bank Appleton, N.A. Mill-Craft Bldg. Sys., Inc. (In re Mill-Craft Bldg. Sys., Inc.), 57 B.R. 531, 534 (Bankr. E.D. Wis. 1986). Its jurisdiction should not be used to manipulate actions pending in and best handled by state courts as it is inappropriate for the Bankruptcy Court to venture into areas traditionally within the province of state courts. Id.

The State Court Litigation strictly involves state law claims, which arise under traditional state law theories of recovery and, thus, do not invoke any substantive right created by or under the Bankruptcy Code. Lifting the automatic stay serves to eliminate the prospect of the additional expense associated with this Court opining on non-bankruptcy issues relating to breaches of the Operating Agreements, breaches of fiduciary duties, civil conspiracy and fraudulent misrepresentations. See Stern v. Marshall, 131 S. Ct. 2594, 2611 (2011) (bankruptcy court lacked authority to enter a final judgment on claim which arose under state common law, between two private parties, did not flow from a federal statutory scheme, and was not a matter of public right). Because the state court and/or arbitrator has the ability to enter a final order adjudicating all of the rights and obligations under the Operating Agreement and common law

including the ownership of the membership interests claimed by Gayler in Angelus I and Angelus II, relief from the automatic stay should be granted.

### 2. Expertise of the State Court on Nevada Law Favors Relief from the Automatic Stay.

The primary dispute specifically centers on the duties and obligations of Gayler as a Managing Member as set forth in the Angelus I and Angelus II Operating Agreements, which are governed entirely by Nevada law. Experienced and readily familiar with Nevada law, the state court is therefore best equipped to address these issues concerning solely Nevada law. See Gorse v. Long Neck, 107 B.R. 479 (D. Del. 1989) (holding that a state court was better able to respond to questions involving state law); see also Cook v. Griffin, 102 B.R. 875 (N.D. Ga. 1989) (holding that because a determination of who had title to property concerned purely matters of state law, remand of the case by the bankruptcy court to state court was proper). Relief from the automatic stay is accordingly proper.

### 3. There is No Prejudice to the Parties in Lifting the Automatic Stay.

"Where neither prejudice to the bankruptcy estate nor interference with the bankruptcy proceeding is demonstrated, the desire of a stayed party to proceed in another forum is sufficient cause to warrant lifting the automatic stay." In re Kaufman, 98 B.R. 214, 215 (Bankr. E.D. Pa. 1989); Carter v. Larkham (In re Larkham), 31 B.R. 273, 276 (Bankr. D. Vt. 1983). In order to determine whether the membership interests claimed by Gayler in Angelus I and Angelus II are truly assets of his bankruptcy estate, the State Court Litigation must proceed. Indeed, the rightful ownership and entitlement to these membership interests will greatly assist this Court and not interfere with Gayler's bankruptcy proceedings. Sufficient cause therefore exists for the Interested Parties to proceed in another forum (i.e., state court) to determine the parties' rights to subject membership interests under Nevada law.

### 4. Bankruptcy Issues are Not Exclusively Involved in the State Court Litigation.

In the State Court Litigation, the rights and obligations of the parties will be determined exclusively by Nevada law and do not involve issues stemming from bankruptcy law. As already found by the District Court, Gayler participated in manifest self-dealing through his management

Page 9 of 11

of Angelus I and Angelus II.[22]  Due to this self-dealing and Gayler's fraudulent misrepresentations, the Interested Parties seek to disgorge all interests claimed by Gayler in Angelus I and Angelus II.  Further, because the acts giving rise to the disgorgement were pre-petition, it is the Interested Parties' position that Gayler had no interest in Angelus I and Angelus II at the time of his bankruptcy.  Resolving the claims in the State Court Litigation is essential to determine the involvement, if any, of Gayler's bankruptcy estate; therefore, cause exists to lift the automatic stay.

## IV. CONCLUSION

The automatic stay of 11 U.S.C. § 362(a)(1) does not extend to the membership interests claimed by Gayler in Angelus I and Angelus II.  These interests are held by non-debtors.  The Court should accordingly make a determination that the automatic stay is inapplicable to the relief sought by the Interested Parties in the State Court Litigation.

Alternatively, cause exists to lift the automatic stay in order to pursue Gayler for the harm he caused prior to invoking the bankruptcy shield.  The State Court Litigation concerns solely state law issues regarding the rightful ownership of the Angelus I and Angelus II membership interests claimed by Gayler.  No bankruptcy issues are involved whatsoever.  Because of the purely state law nature of the dispute, judicial economy is best served by allowing the State Court Litigation to proceed to arbitration and judgment.  No prejudice will result as it is crucial to adjudicate whether the subject membership interests are even assets of Gayler's bankruptcy estate.  Based on the foregoing, cause exists under 11 U.S.C. § 362(d)(1) to grant the Motion and allow the Interested Parties and Gayler to proceed with the State Court Litigation.  Additionally,

. . .

. . .

. . .

. . .

---

[22] See Ex. 1.

M&A:06277-005 1774680_2 11/14/2012 9:32 AM

1 the Interested Parties request that the fourteen day stay under Bankruptcy Rule 4001(a)(3) be
2 waived.
3    Dated this 14 day of November, 2012.

MARQUIS AURBACH COFFING

By _____
DALE A. HAYES, ESQ.
Nevada Bar No. 3430
LIANE K. WAKAYAMA, ESQ.
Nevada Bar No. 11313
10001 Park Run Drive
Las Vegas, Nevada 89145
Attorneys for Interested Parties

M&A:06277-005 1774680_2 11/14/2012 9:32 AM