**Marquis Aurbach Coffing**
Albert G. Marquis, Esq.
Nevada Bar No. 1919
10001 Park Run Drive
Las Vegas, Nevada 89145
Telephone: (702) 382-0711
Facsimile: (702) 382-5816
amarquis@maclaw.com
   Attorneys for John D. O'Brien
      Profit Sharing Plan

E-Filed: _____

# UNITED STATES BANKRUPTCY COURT

## FOR THE DISTRICT OF NEVADA

| | |
|---|---|
| In Re:<br><br>WILLIAM GAYLER,<br><br>                       Debtor. | Case No:    BK-S-09-31603-MKN<br>Chapter:    7<br><br><br><br><br>Hearing Date:  September 4, 2013<br>Hearing Time:  3:00 pm |

### OPPOSITION TO TRUSTEE'S MOTION TO DISQUALIFY COUNSEL FOR JOHN D. O'BRIEN PROFIT SHARING PLAN AND COUNSEL FOR BARRY R. MOORE AND JANIE MOORE AS CO-TRUSTEES OF THE BAMM LIVING TRUST DATED JULY 16, 2003, GROTH, LLC, CH. PICHON, LLC, AND HARLAN, LLC THROUGH THEIR MANAGING MEMBER JOHN O'BRIEN

MARQUIS AURBACH COFFING
10001 Park Run Drive
Las Vegas, Nevada 89145
(702) 382-0711 FAX: (702) 382-5816

## **TABLE OF CONTENTS**

I.   INTRODUCTION. ...................................................................... 1

II.  STATEMENT OF FACTS. ......................................................... 3

    A.    GAYLER'S BANKRUPTCY PROCEEDING (CASE NO. 09-31603-MKN). ......................................................................... 3

        1.    The Amended Voluntary Petition. ................................. 3

        2.    The Court's Order Disallowing Gayler's Claimed Exemptions. ................ 4

        3.    MAC's Representation of Creditors. ............................... 4

        4.    The Former Trustee and MAC's Employment as Special Counsel. ........... 5

        5.    The Appointment of Trustee Rosenberg. ......................... 6

    B.    HISTORY OF THE STATE DISTRICT COURT LITIGATION. ......................... 6

        1.    The Angelus I/Angelus II Lawsuit (Case No. A596777). ......................... 6

            a.    Summary of Facts. ...................................... 7

            b.    The Bench Trial and Judgments. ....................... 8

            c.    The Alper Settlement. ................................ 8

                (1)    The Court's Approval of the Settlement. ........................ 9

                (2)    The June 14, 2012 Member Meeting. ........................ 9

                (3)    The Court Ordered Disbursement of the Settlement Proceeds and Findings as to New Management. ............... 10

                (4)    The Deposit of $413,322.25 in the Court's Registry. ........ 11

            d.    The Motion to Lift the Stay. ......................... 11

         2.    The Angelus II Lawsuit (Case No. A668997). ......................... 12

            a.    The Unauthorized Angelus II Bankruptcy. ................... 13

            b.    Trustee Rosenberg Requests Time to Get Up to Speed. ............... 13

            c.    Trustee Rosenberg's Representations to the Court that MAC will Remain as Special Counsel. ............................ 14

         3.    The Angelus IV Lawsuit (Case No. A616929). ......................... 15

            a.    Summary of Facts. ...................................... 15

            b.    The Barrett Settlement, Bench Trial and Court's Decision. ......... 16

MARQUIS AURBACH COFFING
10001 Park Run Drive
Las Vegas, Nevada 89145
(702) 382-0711 FAX: (702) 382-5816

i

C.  THE CREDITORS' ADVERSARY PROCEEDINGS. .................................. 16

    1.  The Diamante Rose Adversary Proceeding. ................................ 16

        a.  The Bench Trial and Nondischargeable Judgment. ..................... 17

        b.  Gayler's Criminal Indictment. ..................................... 17

    2.  The Moore Adversary Proceeding. ..................................... 17

D.  MAC'S REPRESENTATION OF THE TRUSTEE AS SPECIAL COUNSEL. ......................................................................... 18

    1.  The Trustee's Adversary Complaints (Case No. 11-01410). .................. 18

    2.  The Creditors Reject Gayler's Settlement Offer. ......................... 19

    3.  The Court Denies Summary Judgment in Favor of the Trustee that Gayler's Interests in Angelus I, Angelus II and the Angelus II Entities are Property of the Bankruptcy Estate. ......................... 20

E.  THE FEBRUARY 4, 2013 MEETING. ...................................... 21

    1.  No Confidential Information Was Ever Conveyed *By* Trustee Rosenberg *To* MAC. ................................................ 21

    2.  MAC Reminds Trustee Rosenberg that the Angelus IV Trial is Set to Commence. ...................................................... 22

F.  TRUSTEE ROSENBERG'S MOTION FOR PARTIAL SUMMARY JUDGMENT PURSUANT TO 11 USC § 541 AND 11 USC §548. .................. 23

G.  MAC'S VOLUNTARY WITHDRAWAL AS SPECIAL COUNSEL. .............. 24

H.  TRUSTEE ROSENBERG'S MOTION TO APPROVE SETTLEMENT AGREEMENT. .................................................................... 24

    1.  Gayler's Lack of Authority To Enter Into a Settlement On Behalf of Angelus I, Angelus II and the Angelus II Entities. ................. 25

    2.  Trustee Rosenberg Confirms His Lack of Knowledge on these Matters. ......................................................... 26

    3.  Trustee Rosenberg's Misrepresentations to the Court and Change in Position. ...................................................... 26

III.  LEGAL STANDARD. ................................................................ 27

IV.  LEGAL ARGUMENT. ............................................................... 28

A.  TRUSTEE ROSENBERG FAILED TO MEET HIS BURDEN UNDER NRPC 1.9(A) TO DISQUALIFY MAC. ...................................... 29

    1.  Trustee Rosenberg Consented to MAC's Concurrent Representation of the Creditors Even When Represented by His

MARQUIS AURBACH COFFING
10001 Park Run Drive
Las Vegas, Nevada 89145
(702) 382-0711 FAX: (702) 382-5816

ii

Own General Counsel. ................................................................ 30

2.  MAC's Representation of the Creditors is Not Materially Adverse to a Former Client. ............................................ 31

   a.   As Special Counsel, MAC Never Advocated for a Settlement Rejected by the Creditors. ........................... 31

   b.   After MAC's Withdrawal as Special Counsel, Trustee Rosenberg Unilaterally Created a Purported Conflict. ............... 32

3.  No Confidential Information Was Ever Conveyed *By* the Former Trustee or Trustee Rosenberg *To* MAC. ........................... 34

B.  TRUSTEE ROSENBERG WAIVED ANY RIGHT TO DISQUALIFY MAC. ................................................................. 36

   1.  Trustee Rosenberg Was Aware of MAC's Representation of the Creditors. ........................................... 36

   2.  Trustee Rosenberg Unreasonably Delayed Moving for Disqualification. ............................................ 38

C.  TRUSTEE ROSENBERG'S REQUEST TO DISQUALIFY MAC IS TO GAIN A TACTICAL ADVANTAGE TO THE DETRIMENT OF THE CREDITORS. ........................................................ 39

   1.  Disqualification Only Serves to Avoid Any Proper Objections to the Settlement. ............................... 40

   2.  The Creditors Will Suffer Extreme Prejudice if MAC is Disqualified. ............................................ 40

V.  CONCLUSION. ................................................................ 41

MARQUIS AURBACH COFFING
10001 Park Run Drive
Las Vegas, Nevada 89145
(702) 382-0711 FAX: (702) 382-5816

MAC:05505-025 2036699_5 8/21/2013 1:58 PM

## <u>TABLE OF AUTHORITIES</u>

### <u>CASES</u>

Brown v. Eighth Jud. Dist. Ct.,
  116 Nev. 1200 14 P.3d 1266 (2000) ............................................................... 39, 40

Caplin v. Marine Midland Grace Trust Co. of New York,
  406 U.S. 416 (1972) ............................................................................................ 33

Coles v. Arizona Charlie's,
  973 F.Supp. 971 (D. Nev. 1997) ........................................................................ 34

Cronin v. Eighth Jud. Dist. Ct.,
  781 P.2d 1150 (Nev. 1989) ................................................................................. 28

Ex parte AmSouth Bank, N.A.,
  589 So.2d 715 (Ala. 1991) .................................................................................. 34

Faison v. Thornton,
  863 F.Supp. 1204, 12151 (D. Nev. 1993) .......................................................... 28

Gould, Inc. v. Mitsui Mining & Smelting Co.,
  738 F.Supp. 1121 (N.D. Ohio 1990) ................................................................... 34

Hackett v. Feeney,
  2010 WL 4102911 (D. Nev. 2010) ..................................................................... 27

Hernandez v. Guglielmo,
  796 F.Supp.2d 1285 (D. Nev. 2011) ................................................................... 28

In re Allboro Waterproofing Corp.,
  224 B.R. 286 (Bank. E.D.N.Y. 1998) ................................................................. 28

In re Cochise Coll. Park, Inc.,
  703 F.2d 1339 (9th Cir. 1983) ............................................................................ 31

In re Coordinated Pretrial Proceedings,
  658 F.2d 1355 (9th Cir. 1981) ............................................................................ 29

In re County of Los Angeles,
  223 F.3d 990 (9th Cir. 2000) .............................................................................. 27

In re Jet 1 Ctr., Inc.,
  310 B.R. 649 (Bankr. M.D. Fla. 2004) .................................................... 28, 36, 40

In re Marvel,
  251 B.R. 869 (Bankr. N.D. Cal. 2000) ............................................................... 28

In re N. Am. Deed Co.,
  334 B.R. 443 (Bankr. D. Nev. 2005) .................................................................. 34

In re Rossana,
  395 B.R. 697 (Bankr. D. Nev. 2008) ............................................................. 34, 35

MARQUIS AURBACH COFFING
10001 Park Run Drive
Las Vegas, Nevada 89145
(702) 382-0711 FAX: (702) 382-5816

iv

Integrated Health Services of Cliff Manor, Inc. v. THCI, Co. LLC,
   327 B.R. 200 (Bankr. D. Del. 2005) ........................................................... 28

Ipatt Grp., Inc. v. Scotts Miracle-Gro Co.,
   2013 WL 3043677 (D. Nev. 2013) ............................................................ 38

Kronemyer v. Am. Contractors Indem. Co. (In re Kronemyer),
   405 B.R. 915 (B.A.P. 9th Cir. 2009) ........................................................ 33

Leibowitz v. Eighth Jud. Dist. Ct.,
   119 Nev. 523, 78 P.3d 515 (2003) ............................................................ 39

Liapis v. Dist. Ct.,
   128 Nev. Adv. Op. 39, 282 P.3d 733(2012) ............................................ 28

MacDonald v. MacDonald (In re MacDonald),
   755 F.2d 715 (9th Cir.1985) ...................................................................... 33

Millen v. Eighth Jud. Dist. Ct.,
   122 Nev. 1245, 148 P.3d 694 (2006) .................................................. 28, 41

Nev. Yellow Cab Corp. v. Eighth Jud. Dist. Ct.,
   123 Nev. 44, 152 P.3d 737 (2007) ............................................................ 29

Optyl Eyewear Fashion Int'l Corp. v. Style Companies, Ltd.,
   760 F.2d 1045 (9th Cir. 1985) .................................................................. 39

Ozai v. Tabuena (In re Ozai),
   34 B.R. 764 (B.A.P. 9th Cir. 1983) .......................................................... 33

Palmer v. Pioneer Hotel & Casino,
   19 F.Supp.2d 1157 (D. Nev. 1998) .......................................................... 28

Pennwalt Corp. v. Plough, Inc.,
   85 F.R.D. 264 (D. Del. 1980) .................................................................... 34

Robbins v. Gillock,
   109 Nev. 1015, 862 P.2d 1195 (1993) ...................................................... 34

Trust Corp. of Montana v. Piper Aircraft Corp.,
   701 F.2d 85 (9th Cir. 1983) ...................................................................... 36

U.S. v. Frega,
   179 F.3d 793 (9th Cir. 1999) .................................................................... 28

U.S. v. Stites,
   56 F.3d 1020 (9th Cir. 1995) .................................................................... 28

Wolf v. Weinstein,
   372 U.S. 633 (1963) .................................................................................. 31

**STATUTES**

11 U.S.C. § 327(c) ............................................................................................ 31

MARQUIS AURBACH COFFING
10001 Park Run Drive
Las Vegas, Nevada 89145
(702) 382-0711 FAX: (702) 382-5816

v

11 U.S.C. § 522(b)(3) ................................................................................................ 3

11 U.S.C. § 523 ......................................................................................................... 4

11 U.S.C. § 523(a)(2) .............................................................................................. 16

11 U.S.C. § 523(a)(2)(A) ........................................................................................ 17

11 U.S.C. § 523(a)(4) .............................................................................................. 16

11 U.S.C. § 541 ....................................................................................................... 23

11 U.S.C. § 541(a)(1) .............................................................................................. 19

11 U.S.C. § 548 ................................................................................................. 18, 23

11 U.S.C. § 707 ....................................................................................................... 13

11 U.S.C. § 727 ......................................................................................................... 4

NRS 112.180 ............................................................................................................ 18

NRS 21.090(1)(z) ...................................................................................................... 3

NRS 86.351 .............................................................................................................. 19

**OTHER AUTHORITIES**

D.C. Ethics Opin. 292 (1999) .................................................................................. 34

Restatement (Third) of Law Governing Law § 132 at pp. 8 & 14 (2000) ................ 34

Ronald D. Rotunda, *Resolving Client Conflicts by Hiring "Conflicts Counsel,"* 62
    Hastings L.J. 677, 686 (2011) ........................................................................... 32

**RULES**

Local Rule 1A 10-7 ................................................................................................. 27

Local Rules of Bankruptcy Practice (LR) 1001(b)(2) ............................................. 27

NRCP 1.0(n) ............................................................................................................ 30

NRPC 1.0(b) ............................................................................................................ 30

NRPC 1.9 ................................................................................................................. 34

NRPC 1.9(a) ............................................................................... 29, 30, 31, 34, 41

MARQUIS AURBACH COFFING
10001 Park Run Drive
Las Vegas, Nevada 89145
(702) 382-0711 FAX: (702) 382-5816

vi

MARQUIS AURBACH COFFING
10001 Park Run Drive
Las Vegas, Nevada 89145
(702) 382-0711 FAX: (702) 382-5816

## OPPOSITION TO TRUSTEE'S MOTION TO DISQUALIFY COUNSEL FOR JOHN D. O'BRIEN PROFIT SHARING PLAN AND COUNSEL FOR BARRY R. MOORE AND JANIE MOORE AS CO-TRUSTEES OF THE BAMM LIVING TRUST DATED JULY 16, 2003, GROTH, LLC, CH. PICHON, LLC, AND HARLAN, LLC THROUGH THEIR MANAGING MEMBER JOHN O'BRIEN

Marquis Aurbach Coffing, attorneys of record for John D. O'Brien Profit Sharing Plan, hereby submit their Opposition to Trustee's Motion to Disqualify Counsel for John D. O'Brien Profit Sharing Plan and Counsel for Barry R. Moore and Janie Moore as Co-Trustees of the BAMM Living Trust Dated July 16, 2003, Groth, LLC, Ch. Pichon, LLC, and Harlan, LLC through their Managing Member John O'Brien. This Opposition is made and based upon the pleadings and papers on file herein, the attached Memorandum of Points and Authorities, and any oral argument permitted at the hearing.

Dated this 21st day of August, 2013.

MARQUIS AURBACH COFFING


By /s/ Albert G. Marquis
    Albert G. Marquis, Esq.
    Nevada Bar No. 1919
    10001 Park Run Drive
    Las Vegas, Nevada 89145
    Attorneys for John D. O'Brien
    Profit Sharing Plan

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.    INTRODUCTION.

For five years, Marquis Aurbach Coffing ("MAC") has represented the interests of the Creditors[1] in numerous lawsuits initiated to prosecute the self-dealing of their once trusted fiduciary, William A. Gayler ("Gayler"). While Gayler and his cronies walked away with

---

[1] Trustee Rosenberg only moved for MAC's disqualification in representing Petitioning Creditor John D. O'Brien Profit Sharing Plan ("O'Brien"); however, MAC represents a number of creditors in these bankruptcy proceedings. Although Trustee Rosenberg should be restricted to his request to only disqualify MAC from representing O'Brien, MAC wants to ensure that its representation of all creditors remains intact. "Creditors" shall therefore refer to John O'Brien, individually and as Trustee of the John D. O'Brien Profit Sharing Plan, Donald J. Campbell, J. Colby Williams, William Godfrey, Barry R. Moore, Janie Moore, Barry R. Moore and Janie Moore, Co-Trustees of the Bamm Living Trust Dated July 16, 2003, John Esposito, Lorraine Esposito, Mario P. Borini, Bianca Borini, Joseph Borini, and Eroom Holdings, LP.

MAC:05505-025 2036699_5 8/21/2013 1:58 PM

MARQUIS AURBACH COFFING
10001 Park Run Drive
Las Vegas, Nevada 89145
(702) 382-0711 FAX: (702) 382-5816

1 | millions of dollars, the Creditors lost or stood to lose their entire investments.  As their counsel

2 | of choice, the Creditors retained MAC to discover and litigate the massive fraud perpetuated by

3 | Gayler.  Through MAC's representation, the Creditors have obtained favorable judgments, one

4 | of which resulted in the criminal indictment of Gayler by the Nevada Attorney General.

5 |     In December 2012 when Chapter 7 Trustee David Rosenberg ("Trustee Rosenberg") was

6 | appointed Successor Trustee over Gayler's bankruptcy proceedings, he knew about MAC's

7 | longstanding representation of the Creditors.  With this knowledge, Trustee Rosenberg alluded to

8 | a purported conflict, but never objected to MAC's concurrent representation – not once even

9 | when represented by his own general counsel.  Instead, Trustee Rosenberg employed MAC as

10 | Special Counsel for over six months and expressly consented to MAC's ongoing representation

11 | of the Creditors.

12 |     As the newly appointed trustee, Trustee Rosenberg requested this Court for additional

13 | time to get up to speed on this case at a January 2013 hearing.  Shortly thereafter, Trustee

14 | Rosenberg met with MAC in February to absorb the history of what had transpired in the state

15 | court litigation and Gayler's bankruptcy proceedings.  No information, confidential or otherwise,

16 | was ever shared *by* Trustee Rosenberg *to* MAC.  MAC was the source of all information and

17 | only summarized the procedural posture of the litigation, information readily available for

18 | Trustee Rosenberg to review in the courts' public records.

19 |     Over seven months after his appointment, Trustee Rosenberg openly admitted to this

20 | Court that he is still not "up to speed" on this case.[2]  Instead of devoting time to learn this case,

21 | Trustee Rosenberg focused his energy – *after* MAC's voluntary withdrawal as Special Counsel–

22 | on reaching a settlement with Gayler, his attorney and the very parties that profited from

23 | Gayler's fraudulent conduct.  To make matters worse, Trustee Rosenberg sat silent while MAC

24 | tried yet another case on behalf of the Creditors to save another investment from foreclosure.

25 | When MAC proved successful yet again, Trustee Rosenberg moved for approval of a self-

26 | serving, debtor-friendly settlement and the belated disqualification of MAC.

27

28 | [2] See Dkt. No. 517, ¶ 13.

MAC:05505-025 2036699_5 8/21/2013 1:58 PM

Consistent with the law in Nevada and the Ninth Circuit, MAC is not in violation of any ethical rule to warrant disqualification. No conflict exists. As a former client, Trustee Rosenberg has only created an appearance of a conflict in order to gain a tactical advantage to the detriment of the Creditors. In his own words, Trustee Rosenberg confirmed the motivating factor in moving for disqualification is "to prevent MAC . . . from filing oppositions" to the settlement.[3] As will be set forth below, such a motivation constitutes an improper purpose that will not support disqualification. Accordingly, MAC requests that this Court deny disqualification and allow the Creditors to continue to be represented by their counsel of choice.

## II. STATEMENT OF FACTS.

### A. GAYLER'S BANKRUPTCY PROCEEDING (CASE NO. 09-31603-MKN).

On November 16, 2009, an Involuntary Bankruptcy Petition in accordance with Chapter 7 of the Bankruptcy Act was filed against Gayler.[4] Through his counsel, Jeffrey Sylvester, Esq. of the law firm of Sylvester & Polednak, Ltd. ("Sylvester"), Gayler filed an Answer to the Involuntary Chapter 7 Petition on December 8, 2009.[5] An Order mandating relief under Chapter 7 of the Bankruptcy Code was issued on March 29, 2010.[6]

#### 1. The Amended Voluntary Petition.

On June 28, 2010, Gayler filed an Amended Voluntary Petition.[7] Within Schedule B, Gayler listed ownership interests in over 60 different entities.[8] Gayler claimed all of his partnership interests set forth in Schedule B to be exempt under 11 U.S.C. § 522(b)(3) and NRS 21.090(1)(z); thus, not assets of the bankruptcy estate.[9]

---

[3] See Dkt. No. 527, ¶ 14.

[4] See Dkt. No. 1.

[5] See Dkt. No. 16.

[6] See Dkt. No. 85.

[7] See Dkt. No. 105.

[8] Id. at Schedule B.

[9] Id. at Schedule C. [10] See Dkt. No. 136.

MARQUIS AURBACH COFFING
10001 Park Run Drive
Las Vegas, Nevada 89145
(702) 382-0711 FAX: (702) 382-5816

MAC:05505-025 2036699_5 8/21/2013 1:58 PM

2.    **The Court's Order Disallowing Gayler's Claimed Exemptions.**

On October 21, 2010, City National Bank ("CNB") objected to Gayler's claimed exempt interest in all entities as listed in Schedule C to the Amended Petition.[10]  In an Order entered on January 7, 2011, the Court granted CNB's objections disallowing Gayler's claimed exemptions for all partnership interests identified in Schedule B to the Amended Petition.[11]

3.    **MAC's Representation of Creditors.**

On June 24, 2010, MAC moved to extend the time to object to Gayler's discharge under 11 U.S.C. § 523 and 11 U.S.C. § 727 on behalf of the following fourteen Creditors:

> John O'Brien, individually and as Trustee of the John D. O'Brien Profit Sharing Plan, Donald J. Campbell, J. Colby Williams, William Godfrey, Barry R. Moore, Janie Moore, Barry R. Moore and Janie Moore, Co-Trustees of the Bamm Living Trust Dated July 16, 2003, John Esposito, Lorraine Esposito, Mario P. Borini, Bianca Borini, Joseph Borini, and Eroom Holdings, LP[12]

All fourteen Creditors were long-standing clients of MAC.[13]  The Court extended the time to object to November 1, 2010.[14]  On November 1, 2010, MAC again requested the Court to extend the time to file an adversary proceeding for non-discharge on behalf of the same fourteen Creditors.[15]  The Court extended the deadline to March 15, 2011.[16]

---

[10] See Dkt. No. 136.

[11] See Dkt. No. 164.

[12] See Dkt. No. 98.

[13] See Declaration of Dale A. Hayes in Support of Marquis Aurbach Coffing's Opposition to Trustee's Motion to Disqualify Counsel for John D. O'Brien Profit Sharing Plan and Counsel for Barry R. Moore and Janie Moore as Co-Trustees of the BAMM Living Trust Dated July 16, 2003, Groth, LLC, Ch. Pichon, LLC, and Harlan, LLC through their Managing Member John O'Brien ("Hayes Declaration") at ¶ 3.

[14] See Dkt. No. 122.

[15] See Dkt. No. 151.

[16] See Dkt. No. 172.

MAC:05505-025 2036699_5 8/21/2013 1:58 PM

MARQUIS AURBACH COFFING
10001 Park Run Drive
Las Vegas, Nevada 89145
(702) 382-0711 FAX: (702) 382-5816

### 4.    The Former Trustee and MAC's Employment as Special Counsel.

On March 29, 2010, James F. Lisowski, Sr. was appointed the Chapter 7 Trustee (the "Former Trustee") to administer the case.[17]  On April 14, 2011, the Former Trustee applied to the Court to employ MAC on a contingency fee basis, as Special Counsel "for the purpose of investigating and proceeding with specific litigation issues regarding multiple potential fraudulent conveyance actions and/or preference actions" (the "Application").[18]

Within the Application, MAC disclosed its "representation of some of the creditors of this bankruptcy estate."[19]  MAC specifically disclosed that it had represented the following individuals and entities:

> Barry R. Moore, Janie Moore, Eroom Holdings, LP and Barry R. Moore and Janie Moore, Co-Trustees of the BAMM Living Trust dated July 16, 2003, John D. O'Brien, as the Trustee of the John D. O'Brien Profit Sharing Plan, Donald Campbell, Colby Williams, Mario P. Borini, individually and as Chairman of the Board of Trustees of the The Alexander Dawson Foundation, John and Lorraine Esposito, CH. Angelus, LLC, Ch. Angelus II, LLC, ICON Real Estate Services, of which William Gayler was the President, in a real estate transaction.[20]

At the time of the Application, MAC was prosecuting five different lawsuits on behalf of the disclosed parties in the State District Court and in Gayler's bankruptcy proceedings:[21]

| NEVADA DISTRICT COURT | | |
|---|---|---|
| **Case No.** | **Case Name** | **Date Filed** |
| A562214 | **Moore et al v. Gayler et al** | **May 1, 2008** |
| Entities Involved:  Maya I-215, LLC, Screaming Eagle, LLC, and One Hundred Year, LLC | | |
| A596777 | **Moore et al v. Gayler et al** | **August 6, 2009** |
| Entities Involved:  Ch. Angelus, LLC and Ch. Angelus II, LLC | | |
| A616929 | **Moore et al v. Ch. Angelus IV et al** | **May 18, 2010** |
| Entity Involved:  Ch. Angelus IV, LLC | | |

---

[17] See Dkt. No. 86.

[18] See Dkt. No. 192.

[19] See Dkt. No. 192 at 5:24-27.

[20] Id. at 2:15-22.

[21] See Hayes Declaration at ¶ 4.

MAC:05505-025 2036699_5 8/21/2013 1:58 PM

MARQUIS AURBACH COFFING
10001 Park Run Drive
Las Vegas, Nevada 89145
(702) 382-0711 FAX: (702) 382-5816

| BANKRUPTCY ADVERSARY PROCEEDINGS | | |
|---|---|---|
| 11-01027 | O'Brien et al v. Gayler | January 28, 2011 |
| Entity Involved: Diamante Rose, LLC | | |
| 11-01088 | Moore et al v. Gayler | March 15, 2011 |
| Entities Involved: Maya I-215, LLC, Screaming Eagle, LLC, One Hundred Year, LLC, Apan Wine, LLC, Ch. Angelus Partners, LLC, Ch. Angelus, LLC, and Ch. Angelus II, LLC | | |

**No** objections to the Application were filed. In an Order entered on May 23, 2011, the Court approved the Application to employ MAC as Special Counsel for the Former Trustee for the specific and *limited* purpose of attempting to recover assets based on fraudulent conveyances.[22]

### 5.    The Appointment of Trustee Rosenberg.

On December 12, 2012, the Court noticed the appointment of Trustee Rosenberg as Successor Trustee, terminating James F. Lisowski.[23]    Trustee Rosenberg moved to employ Howard Kim & Associates ("Kim"), on an hourly basis, as general counsel, which was approved by the Court in an Order entered March 15, 2013.[24] Trustee Rosenberg continued to retain MAC as Special Counsel for approximately six months until MAC's voluntary withdrawal.[25]

### B.    HISTORY OF THE STATE DISTRICT COURT LITIGATION.

For the past five years, MAC has represented the Creditors, as members of various LLCs managed by Gayler, in each of the lawsuits initiated against Gayler, Martin Barrett ("Barrett") and Walter Loerwald ("Loerwald") in the District Court. The lawsuits pending shall be referred to as: (1) the Angelus I/Angelus II Lawsuit; (2) the Angelus II Lawsuit; and (3) the Angelus IV Lawsuit.

### 1.    The Angelus I/Angelus II Lawsuit (Case No. A596777).

On August 6, 2009 - *prior* to Gayler's bankruptcy – the Angelus I/Angelus II Lawsuit commenced against Gayler, Barrett, Loerwald, Alper[26] and others.[27]   Many of the Creditors (the

---

[22] See Dkt. No. 205.

[23] See Dkt. No. 482.

[24] See Dkt. Nos. 488 & 500.

[25] See Dkt. No. 507.

[26] "Alper" shall collectively refer to Eliot A. Alper, Trustee of the Eliot A. Alper Revocable Trust dated March 22, 1999 and the Alper Limited Partnership.

MAC:05505-025 2036699_5 8/21/2013 2:33 PM

MARQUIS AURBACH COFFING
10001 Park Run Drive
Las Vegas, Nevada 89145
(702) 382-0711 FAX: (702) 382-5816

"777 Plaintiffs") initiated the Angelus I/Angelus II Lawsuit in order to save their investments and hold Gayler, Barrett and Loerwald liable for their self-dealing.[28]

### a.    Summary of Facts.

As the Managing Member of Ch. Angelus, LLC ("Angelus I") and Ch. Angelus II, LLC ("Angelus II"), Gayler borrowed $2MM from Alper secured by the five acres owned by Angelus I and five acres owned by Angelus II (the "$2MM Alper Loan").[29]  The $2MM Alper Loan was accomplished by Gayler in direct violation of the governing operating agreements; specifically, Gayler failed to obtain the 51% written consent of the Non-Managing Members of Angelus I and Angelus II.[30]  The entire $2MM Alper Loan was the product of a scheme to increase Gayler's interests in Angelus I and cash out the interests of Barrett and Loerwald to the detriment of the LLCs.[31]

When escrow closed on the $2MM Alper Loan in September 2008, Barrett pocketed over $1.3MM, Gayler absconded with $323,616.28 and the remaining loan proceeds were consumed by fees and commissions.[32]  When the $2MM Alper Loan came due, Alper sought to foreclose on the ten acres owned by Angelus I and Angelus II even though neither LLC received any benefit from the loan.[33]  As part of the relief sought, the 777 Plaintiffs thus asserted claims against Alper for quiet title and declaratory relief.[34]

---

[27] See Declaration of Dale A. Hayes in Support of Marquis Aurbach Coffing's Opposition to Motion to Disqualify ("Hayes Declaration") at ¶ 6.

[28] Id.

[29] Angelus I owned five acres identified as APN 176-10-101-002.  Angelus II owned five acres identified as APN 176-10-101-012; see Hayes Declaration at ¶ 5.

[30] See Hayes Declaration at ¶ 7; see also Hayes Declaration, **Exhibit N1** at 49:21-24.

[31] See Hayes Declaration, **Exhibit N1** at 48:24-26; 49-1-2.

[32] Id. at 13:10-12.

[33] Id. at ¶ 5.

[34] Id. at ¶ 6.

MAC:05505-025 2036699_5 8/21/2013 1:58 PM

MARQUIS AURBACH COFFING
10001 Park Run Drive
Las Vegas, Nevada 89145
(702) 382-0711 FAX: (702) 382-5816

**b.    The Bench Trial and Judgments.**

On or about November 12, 2009, the District Court bifurcated the Angelus I/Angelus II Lawsuit, compelling arbitration for the claims asserted against Gayler, Barrett, Loerwald and others.[35]   The claims against Alper, however, proceeded to trial held in November 2010 and January 2011.[36]

After a six day bench trial and subsequent motion practice, the District Court declared the entire $2MM Alper Loan void and invalid based on the "manifest self-dealing" of Gayler, Barrett and Loerwald.[37]   The Court's Decision declaring the $2MM Deed of Trust in favor of Alper void and invalid was entered on March 15, 2011.[38]   The Court's award of summary judgment declaring the $2MM Promissory Note in favor of Alper void and invalid was entered on July 8, 2011.[39]   On July 21, 2011, Alper appealed the District Court's decisions to the Nevada Supreme Court.[40]

**c.    The Alper Settlement.**

As part of the appellate process, the parties participated in the Nevada Supreme Court's NRAP 16 settlement program held on November 15, 2011.[41]   The conference resumed on November 28, 2011.[42]   Although the parties did not reach a resolution at the conferences, the parties continued to engage in settlement negotiations.[43]

---

[35] See Hayes Declaration, ¶ 6.

[36] Id. at ¶ 7.

[37] Id.

[38] Id. at ¶ 7.

[39] Id.

[40] Id. at ¶ 8.

[41] Id. at ¶ 9.

[42] Id.

[43] Id.

MARQUIS AURBACH COFFING
10001 Park Run Drive
Las Vegas, Nevada 89145
(702) 382-0711 FAX: (702) 382-5816

MAC:05505-025 2036699_5 8/21/2013 1:58 PM

On December 8, 2011, a meeting of the Angelus I and Angelus II members was held where a majority of the members voted to accept $1.3MM or more to settle with Alper.[44]  In exchange, Alper would be able to reinstate the $2MM Promissory Note and Deed of Trust to proceed with foreclosure on the 10 acres owned by Angelus I and Angelus II.[45]  A majority of the members further resolved that the settlement division ratio would be 58% allocated to Angelus I and 42% allocated to Angelus II.[46]

On December 14, 2011, a settlement was reached where Alper would pay Angelus I and Angelus II $1.4MM in exchange for the 10 acres.[47]  On January 20, 2012, the parties filed a voluntary stipulation representing to the Nevada Supreme Court that a settlement had been reached.[48]

### (1)    The Court's Approval of the Settlement.

After Alper tried to terminate the settlement reached, the 777 Plaintiffs moved the District Court to enforce and approve the settlement, which was granted in an Order entered on April 10, 2012.[49]

### (2)    The June 14, 2012 Member Meeting.

On June 14, 2012, the Angelus I and Angelus II members held a meeting to discuss the disbursement of the $1.4MM settlement proceeds and the election of a new Managing Member for the involved entities (the "June Meeting").[50]  A majority of the members unanimously resolved that all legal expenses and delinquent property tax payments would first be paid and reimbursed out of the proceeds and the remaining balance would be divided 58% to Angelus I

---

[44] See Hayes Declaration at ¶ 10.

[45] Id.

[46] Id.

[47] Id. at ¶ 11.

[48] Id.

[49] Id.

[50] Id. at ¶ 12.

MARQUIS AURBACH COFFING
10001 Park Run Drive
Las Vegas, Nevada 89145
(702) 382-0711 FAX: (702) 382-5816

MAC:05505-025 2036699_5 8/21/2013 1:58 PM

and 42% to Angelus II.[51]  Recognizing the claims pending in the Angelus I/Angelus II Lawsuit against Gayler, Barrett and Loerwald, a majority of the members further resolved that any interest claimed to be held by any of them would be held in trust until resolution or adjudication of the remainder of the lawsuit.[52]

At the June Meeting, a majority of the Angelus I and Angelus II members removed Gayler as the Managing Member for cause and elected Barry Moore to serve in his stead.[53] Holding membership interests in Angelus II, a majority of the members of Groth, LLC, Ch. Pichon, LLC and Harlan, LLC (the "Angelus II Entities") removed Gayler as the Managing Member for cause and elected John O'Brien as the new Managing Member for each LLC.[54]

### (3)    The Court Ordered Disbursement of the Settlement Proceeds and Findings as to New Management.

On July 5, 2012, the 777 Plaintiffs moved the Court to approve the member resolutions reached at the June Meeting.[55]  In an Order entered on August 24, 2012, the Court approved the disbursement of the $1.4MM settlement proceeds; however, declined to enter a ruling on the retention of any funds claimed by Gayler, Barrett or Loerwald.[56]  The Court specifically found that it lacked jurisdiction as to such a ruling because the retention of any funds did "not relate to the implementation of the Settlement."[57]

As to the removal of Gayler as Managing Member, the Court found that as a result of the June Meeting:

A majority of the **Angelus I and Angelus II** non-managing members **resolved that Moore shall serve as their new managing member**.

---

[51] See Hayes Declaration at ¶ 12.

[52] Id.

[53] Id.

[54] Id.

[55] Id. at ¶ 13, **Exhibit J1**.

[56] Id. at ¶ 13, **Exhibit K1**.

[57] Id.

MARQUIS AURBACH COFFING
10001 Park Run Drive
Las Vegas, Nevada 89145
(702) 382-0711 FAX: (702) 382-5816

MAC:05505-025 2036699_5 8/21/2013 1:58 PM

MARQUIS AURBACH COFFING
10001 Park Run Drive
Las Vegas, Nevada 89145
(702) 382-0711 FAX: (702) 382-5816

A majority of the non-managing members of **Groth, Pichon and Harlan appointed O'Brien as the new managing member.**[58]

Finding it lacked jurisdiction, the Court declined to enter a ruling on the appointment of a new Managing Member because it did "not relate to the implementation of the Settlement."[59] By declining to enter a ruling, the Court did <u>not</u> find that the member resolutions were in any way invalid.

### (4)    The Deposit of $413,322.25 in the Court's Registry.

After disbursement of the $1.4MM in settlement proceeds, $413,322.25 remained in dispute representing the interests claimed by Gayler in Angelus I and Angelus II.[60]    On September 7, 2012, the 777 Plaintiffs requested the Court to allow the deposit of all $413,322.25 into the Court's registry to protect the interests of the parties until the ownership of the membership interest claimed by Gayler is determined and/or resolved.    In an Order dated October 12, 2012, the Court granted the request and all $413,322.25 remains in the Court's registry.[61]

### d.    The Motion to Lift the Stay.

In order to proceed with the arbitration against Gayler, the 777 Plaintiffs filed a Motion with the Bankruptcy Court on November 14, 2012 for a determination that the automatic stay does not apply or, alternatively, granting relief from the automatic stay (the "Motion to Lift Stay").[62]    Gayler opposed the Motion to Lift Stay on the basis that the Former Trustee was already litigating Gayler's ownership interests in the entities involved in the Angelus I/Angelus II Lawsuit.[63]    Although the Former Trustee's Adversary Proceeding was pending, the Former

---

[58] <u>See</u> Hayes Declaration at ¶¶ 12-14 (emphasis added).

[59] <u>Id.</u>

[60] <u>Id.</u> at ¶ 14, **Exhibit L1**.

[61] <u>Id.</u> at ¶ 14, **Exhibit M1**.

[62] <u>See</u> Dkt. No. 466.

[63] <u>See</u> Dkt. No. 476.

MAC:05505-025 2036699_5 8/21/2013 1:58 PM

Trustee responded that it did <u>not</u> oppose the Motion to Lift Stay, but instead took the following position:

> The Trustee's position is that if the creditors are allowed to proceed with the State Court litigation as a result of the Motion being decided in their favor, then **the Estate will abide by the State Court's ruling in its determination as to whether Gayler has any interest in the non-debtor entities.**[64]

The hearing was held on December 19, 2012.[65]  The Court has yet to enter its ruling on the Motion to Lift the Stay; thus, the 777 Plaintiffs have not proceeded with the arbitration against Gayler, Barrett and Loerwald.

### 2.   The Angelus II Lawsuit (Case No. A668997).

Not only did Angelus II own the 5 acres Gayler encumbered with the unauthorized $2MM Alper Loan, but it also owned another *un*encumbered 1.25 acres.[66]  Despite the District Court's rulings in the Angelus I/Angelus II Lawsuit and the removal of Gayler as Managing Member of Angelus II, Gayler, acting as if he were the manager, sold the 1.25 acres and encumbered it with a $200k Deed of Trust – the exact amount of the purchase price.[67]  None of the Angelus II members had any knowledge that Gayler sold the 1.25 acres without their consent and approval as required under the Operating Agreement.[68]

To remedy the harm caused, the Angelus II Lawsuit was initiated against Gayler and others on September 25, 2012.[69]  On October 19, 2012, Gayler was properly served with the Angelus II Lawsuit Summons, Complaint and Notice of Lis Pendens.[70]

---

[64] <u>See</u> Dkt. No. 478 at 2:5-8 (emphasis added).

[65] <u>See</u> Dkt. 468.

[66] <u>See</u> Hayes Declaration at ¶ 15.

[67] <u>Id.</u>

[68] <u>Id.</u>

[69] <u>Id.</u> at ¶ 16.

[70] <u>Id.</u>

MARQUIS AURBACH COFFING

10001 Park Run Drive
Las Vegas, Nevada 89145
(702) 382-0711 FAX: (702) 382-5816

MAC:05505-025 2036699_5 8/21/2013 1:58 PM

### a.    The Unauthorized Angelus II Bankruptcy.

Seven business days after Gayler was served with the Angelus II Lawsuit, Gayler, who was not the manager, filed a Chapter 7 Voluntary Petition on behalf of Angelus II without the members' knowledge or consent.[71]    Trustee Rosenberg was appointed as the trustee on October 30, 2012.[72]    On November 6, 2011, the Court approved the employment of Kim as general counsel to Trustee Rosenberg.[73]

Barry Moore, the Managing Member of Angelus II, and the Angelus II members never authorized the bankruptcy filing.  As a result, Angelus II moved to dismiss the bankruptcy filing pursuant to 11 U.S.C. § 707 on December 18, 2012.[74]    The Motion to Dismiss was filed by Zachariah Larson of the MAC law firm.[75]    Retained by Gayler, Spencer Judd filed an Opposition to the Motion to Dismiss on January 9, 2013.[76]

### b.    Trustee Rosenberg Requests Time to Get Up to Speed.

The hearing on the Motion to Dismiss was held on January 23, 2013 in front of the Honorable Judge Nakagawa.[77]  Mr. Larson, Mr. Kim and Mr. Judd all appeared at the hearing.[78] At the hearing, Judge Nakagawa asked Mr. Kim why Trustee Rosenberg was not taking a position on the dismissal issue to which Mr. Kim responded as follows:

> MR. KIM:    Because **he hasn't had time to wrap his head around the case, yet**, your Honor.[79]

---

[71] See Hayes Declaration at ¶ 16; see also Bankruptcy No. 12-22209 ("BK 22209") Dkt. No. 1.

[72] See  BK 22209, Dkt. No. 4.

[73] See BK 22209, Dkt. No. 11.

[74] See BK 22209, Dkt. No. 14-16.

[75] Id.

[76] See BK 22209, Dkt. No. 20.

[77] See BK 22209, Dkt. No. 26.

[78] Id.

[79] See BK 22209, Dkt. No. 27 attached hereto as **Exhibit A** at 7:25; 8:1-3 (emphasis added).

MAC:05505-025 2036699_5 8/21/2013 1:58 PM

MARQUIS AURBACH COFFING
10001 Park Run Drive
Las Vegas, Nevada 89145
(702) 382-0711 FAX: (702) 382-5816

MARQUIS AURBACH COFFING

10001 Park Run Drive
Las Vegas, Nevada 89145
(702) 382-0711 FAX: (702) 382-5816

Judge Nakagawa then informed counsel that he could either deny the Motion to Dismiss without prejudice or continue the matter for a sufficient amount of time for Trustee Rosenberg to get up to speed.[80]  Mr. Kim responded that Trustee Rosenberg "would need at least 60 days" but "[i]t may take a little longer."[81]  Based on Mr. Kim's representation, the Court set a status hearing for April 3, 2013.[82]  To date, Trustee Rosenberg has not taken a position on the Motion to Dismiss.

> **c.    Trustee Rosenberg's Representations to the Court that MAC will Remain as Special Counsel.**

At the January 23, 2013 hearing, Mr. Kim informed the Court that Trustee Rosenberg has decided to retain MAC as his special counsel as follows:

> MR. KIM:    And he's also decided to retain this general [sic] counsel for Mr. Lisowski which is Marquis & Aurbach.  The firm that's representing Mr. Larson [sic] is the same firm . . . which . . . raises . . . an interesting issue.[83]

Contrary to Mr. Kim's representation to the Court, MAC has never been retained as general counsel for the Trustee.[84]

Later on during the hearing, Mr. Kim volunteered to the Court that Trustee Rosenberg was "staying with Marquis & Aurbach because they've been working on the case for over two years."[85]  The Court then asked Mr. Kim "[g]iven your prior comment, is he thinking about changing counsel from the Marquis & Aurbach firm?"[86]  Mr. Kim firmly represented to the Court that Trustee Rosenberg was staying with MAC even in the face of a potential conflict as follows:

---

[80] See BK 22209, Dkt. No. 27 attached hereto as **Exhibit A** at 12:16-19.

[81] See BK 22209, Dkt. No. 27, **Exhibit A** at 13:2-4, 15:23-25.

[82] Id. at 16:20-25; see also BK 22209, Dkt. No. 26.

[83] See BK 22209, Dkt. No. 27, **Exhibit A** at 8:18-20.

[84] See Declaration of Phil Aurbach ("Aurbach Declaration") at ¶ 2.

[85] See BK 22209, Dkt. 27, **Exhibit A** at 13:23-24.

[86] Id. at 14:13-14.

MAC:05505-025 2036699_5 8/21/2013 1:58 PM

MR. KIM: Your Honor, without going out on a limb, I don't think so, your Honor, because Marquis & Aurbach was hired on a contingent basis. My understanding –

-- is that they have expended over $900,000 in fees and in costs so far, and --

And **it would be very burdensome for someone else to come up to speed on this case, although, you know, the parties have discussed their potential conflict arising from representing both sides of the fence, so to speak.**

But **I can represent to the Court that Mr. Rosenberg is inclined to stay with Marquis & Aurbach** for now, your Honor.[87]

Although Trustee Rosenberg discussed potential conflict issues with Mr. Aurbach, Trustee Rosenberg never instructed MAC to withdraw as Special Counsel.[88]

### 3.    The Angelus IV Lawsuit (Case No. A616929).

On May 18, 2010, the Angelus IV Lawsuit was commenced against Gayler, Barrett, the Alper Defendants[89] and others.[90]    Although Gayler was named as a defendant, he was never served with a Summons or Complaint given his pending bankruptcy.[91]    Many of the Creditors (the "929 Plaintiffs") initiated the Angelus IV Lawsuit in order to save their investment property from being foreclosed upon by the Alper Defendants and to hold Barrett, his wife and his Trust liable for their wrongful conduct.[92]

#### a.    Summary of Facts.

As Managing Member of Ch. Angelus IV, LLC ("Angelus IV"), Gayler entered into a $550,000 loan with the Alper Defendants secured with the 2.5 acres owned by Angelus IV (the

---

[87] See BK 22209, Dkt. 27, **Exhibit A** at 14:13-25, 15:1-4.

[88] See Aurbach Declaration at ¶ 4.

[89] The "Alper Defendants" refers to Eliot A. Alper, Trustee of the Eliot A. Alper Revocable Trust dated March 22, 1999, Tina A. Alper, Trustee of the Tina A. Alper Revocable Trust dated June 22, 1999 and Livia M. Lindquist.

[90] See Hayes Declaration at ¶ 17.

[91] Id.

[92] Id. at ¶ 18.

MAC:05505-025 2036699_5 8/21/2013 1:58 PM

MARQUIS AURBACH COFFING
10001 Park Run Drive
Las Vegas, Nevada 89145
(702) 382-0711 FAX: (702) 382-5816

"$550k Alper Loan").[93]  The $550k Alper Loan was accomplished by Gayler in direct violation of the governing Operating Agreement; specifically, Gayler failed to first obtain the 51% written consent of the Angelus IV Non-Managing Members.[94]  The $550k Alper Loan was a product of a massive conspiracy engaged in by Gayler and Barrett.

When the $550k Alper Loan came due, the Alper Defendants sought to foreclose on the Angelus IV property.  As part of the relief sought, the 929 Plaintiffs asserted claims against the Alper Defendants for quiet title and declaratory relief.[95]

### b.    The Barrett Settlement, Bench Trial and Court's Decision.

Prior to trial, the Creditors reached a settlement with Barrett; consequently, the claims against the Alper Defendants were all that remained to be litigated.[96]  A non-jury trial was held on various days between March 21 and April, 11, 2013.[97]

On June 20, 2013, the District Court entered its Findings of Fact, Conclusions of Law, granting the 929 Plaintiffs' claims for quiet title and declaratory relief in part subject to a $161,324.74 equitable lien in favor of the Alper Defendants.[98]

## C.    THE CREDITORS' ADVERSARY PROCEEDINGS.

### 1.    The Diamante Rose Adversary Proceeding.

On January 28, 2011, an Adversary Complaint was filed in Gayler's bankruptcy proceedings (the "Diamante Rose Adversary").[99]  The purpose of the Diamante Rose Adversary was to obtain a nondischargeable judgment against Gayler under 11 U.S.C. § 523(a)(2) and 11 U.S.C. § 523(a)(4) based on Gayler's wrongful conduct as Managing Member of Diamante

---

[93] See Hayes Declaration at ¶ 19, **Exhibit N1** at p. 35, ¶ 171.

[94] Id.

[95] Id. at ¶ 17.

[96] Id. at ¶ 18.

[97] Id.

[98] Id. at ¶ 19.

[99] Id. at ¶ 20.

MARQUIS AURBACH COFFING
10001 Park Run Drive
Las Vegas, Nevada 89145
(702) 382-0711 FAX: (702) 382-5816

MAC:05505-025 2036699_5 8/21/2013 2:02 PM

Rose, LLC ("Diamante Rose").[100]    Since the inception of the case, MAC represented the Plaintiffs (creditors) in the Diamante Rose Adversary.

### a.    The Bench Trial and Nondischargeable Judgment.

On August 20, 21 and 22, 2012, the Honorable Judge Thurman presided over the Diamante Rose Adversary trial.    On October 10, 2012, Judge Thurman awarded a nondischargeable Judgment against Gayler under 11 U.S.C. § 523(a)(2)(A) for actual fraud.[101]

### b.    Gayler's Criminal Indictment.

On March 5, 2013, the Nevada Attorney General filed a Criminal Indictment centered on Gayler's fraudulent management of Diamante Rose.[102]    As accused by the Grand Jury of Clark County, the Nevada Attorney General charged Gayler with seven counts of Theft; three counts of Securities Fraud; and two counts of Securities Fraud Against a Person 60 Years of Age or Older.[103]

## 2.    The Moore Adversary Proceeding.

On March 15, 2011, Barry Moore commenced an adversary proceeding to obtain a nondischargeable judgment against Gayler for actual fraud partly based on Gayler's mismanagement of Angelus I and Angelus II (the "Moore Adversary").[104]    The Adversary Complaint contained the identical allegations against Gayler as litigated in the Angelus I/Angelus II Lawsuit.[105]

Pursuant to a settlement reached on September 11, 2012,[106] Gayler confessed to a judgment under 11 U.S.C. 523(a)(2)(A) for actual fraud in favor of Moore.[107]    Gayler

---

[100] See Adv. Pro. 01027, Dkt. No. 1.

[101] Id. at Dkt. No. 155, 2:2-5.

[102] See Hayes Declaration at ¶ 24.

[103] Id.

[104] Id. at ¶ 25; see also Adversary Proceeding 11-01088 ("Adv. Pro. 01088"), Dkt. No. 1.

[105] See Hayes Declaration at ¶ 25

[106] Id. at ¶ 26.

MARQUIS AURBACH COFFING
10001 Park Run Drive
Las Vegas, Nevada 89145
(702) 382-0711 FAX: (702) 382-5816

MAC:05505-025 2036699_5 8/21/2013 1:58 PM

specifically confessed to fraud in relation to his conduct in obtaining the unauthorized $2MM Alper Loan, which resulted in the $1.4MM settlement with Alper.[108]  On or about April 11, 2013, the Confession of Judgment became effective.[109]

### D.    MAC'S REPRESENTATION OF THE TRUSTEE AS SPECIAL COUNSEL.

As Special Counsel, MAC's scope of employment was limited to investigating and bringing assets into the bankruptcy estate based on potential fraudulent conveyance actions and/or preference actions by Gayler.[110]  MAC's investigations included 29 examinations under Rule 2004 and review of over 45,000 documents consisting of bank records, tax returns and transfer documents.[111]    All of the information discovered from MAC's investigation was conveyed *from* MAC *to* the Former Trustee and Trustee Rosenberg.  Moreover, any information concerning the Angelus investments and Diamante Rose was obtained by MAC through its representation of the Creditors, not as Special Counsel   **No** confidential facts or strategies were ever conveyed *by* the Former Trustee or Trustee Rosenberg *to* MAC.[112]

### 1.    The Trustee's Adversary Complaints (Case No. 11-01410).

On December 23, 2011, the Former Trustee commenced an Adversary Proceeding against Gayler for, among other things, fraudulent transfers pursuant to 11 U.S.C. § 548 and NRS 112.180 and alter ego claims.[113]  In March 2012, the Former Trustee requested leave to file

---

[107] See Hayes Declaration at ¶ 26.

[108] Id.

[109] Id.

[110] See Dkt. Nos. 192 & 205.

[111] Id.

[112] Id.

[113] See Dkt. No. 383; see also Adversary Proceeding 11-01410 ("Adv. Pro. 01410") Dkt. 1.

MAC:05505-025 2036699_5 8/21/2013 1:58 PM

MARQUIS AURBACH COFFING
10001 Park Run Drive
Las Vegas, Nevada 89145
(702) 382-0711 FAX: (702) 382-5816

a First Amended Complaint, which was granted by the Court on May 9, 2012.[114]  The First

Amended Complaint was filed on May 10, 2012.[115]

Within the First Amended Complaint, the Former Trustee added Angelus I, Angelus II,

and the Angelus II as Defendants.[116]  To preserve any rights on behalf of the Bankruptcy Estate,

the Former Trustee asserted claims under 11 U.S.C. § 541(a)(1) and NRS 86.351 that Gayler's

claimed interests in Angelus I, Angelus II and the Angelus II Entities were property of the

Estate.[117]  The entire purpose of the Trustee's Adversary Proceeding was to recover assets for the

Bankruptcy Estate as a result of fraudulent transfers by Gayler and to preserve any rights the

Estate *may* have in Gayler's claimed membership interests.[118]

## 2.    The Creditors Reject Gayler's Settlement Offer.

In or about January 2012, settlement discussions began between MAC, as Special

Counsel to the trustee, and Gayler's attorney, Sylvester.[119]  During negotiations, MAC prepared

settlement documents; however, the Former Trustee instructed MAC to disclose the tentative

settlement to the Creditors in order to obtain their feedback.[120]  In or about September 2012,

MAC forwarded the draft settlement proposal to the creditors, which was unanimously

rejected.[121]  MAC specifically confirmed in an email to the Creditors dated September 24, 2012

that:

> **The active creditors who have or are suing Gayler unanimously did not want**
> **the Trustee to settle with Gayler if it meant Gayler received any money.**  The

---

[114] See Adv. Pro. 01410, Dkt. Nos. 63 & 77.

[115] Id. at Dkt. No. 80.

[116] Id.

[117] Id.

[118] See Aurbach Declaration at ¶¶ 2, 4, 7.

[119] Id. at ¶ 9

[120] Id.

[121] Id.

MARQUIS AURBACH COFFING

10001 Park Run Drive
Las Vegas, Nevada 89145
(702) 382-0711 FAX: (702) 382-5816

MARQUIS AURBACH COFFING
10001 Park Run Drive
Las Vegas, Nevada 89145
(702) 382-0711 FAX: (702) 382-5816

creditors also did not want the Trustee to dismiss the claims against Gayler preventing his discharge.[122]

Based on the creditors' adamant objections, settlement discussions with Gayler ended, and Special Counsel began focusing efforts on pursuing litigation to recover assets for the Bankruptcy Estate.[123]    MAC never advocated for or sought court approval of the rejected settlement.[124]

### 3.    The Court Denies Summary Judgment in Favor of the Trustee that Gayler's Interests in Angelus I, Angelus II and the Angelus II Entities are Property of the Bankruptcy Estate.

On October 22, 2012, the Former Trustee moved for partial summary judgment that Gayler's claimed membership interests listed on Schedule B were property of the Bankruptcy Estate ("SJ Motion").[125]    Of the over 60 entities, Gayler specifically claimed an interest in Angelus I, Angelus II and the Angelus II Entities.[126]    In Opposition, Gayler argued that genuine issues of material fact exist as to Gayler's interests in Angelus I, Angelus II and the Angelus II Entities.[127]    Gayler specifically advised the Court that the Motion to Lift the Stay (filed by the 777 Plaintiffs) "exposes the genuine dispute over ownership of the membership interests."[128]    Gayler further acknowledged that whether the Bankruptcy Estate has any interest in the assets Gayler listed on Schedule B is "hotly contested."[129]

Clarifying the scope of the SJ Motion, the Former Trustee elucidated its position that Gayler's claimed interests in Angelus I, Angelus II and the Angelus II Entities should be litigated

---

[122] See Aurbach Declaration at ¶ 9.

[123] Id.

[124] Id.

[125] See Adv. Pro. 01410, Dkt. No. 219.

[126] See Dkt. No. 105, Schedule B.

[127] See Adv. Pro. 01410, Dkt. No. 238.

[128] Id. at pp. 8-10.

[129] See Adv. Pro. 01410, Dkt. No. 238 at p. 10.

*by* the 777 Plaintiffs.[130]  Specifically, if a state court finds that Gayler did not own any interest in Angelus I, Angelus II and the Angelus II Entities *pre*-bankruptcy, the Former Trustee agreed to be bound by that ruling.[131]  On the other hand, if a state court "rules that the assets being sought by Mr. Hayes' clients [the Creditors] were not obtained by Mr. Gayler's fraud, then the Trustee will claim those assets as part of the bankruptcy estate."[132]

In an Order entered on December 4, 2012, the Court denied partial summary judgment in relation to Gayler's claimed interests in Angelus I, Angelus II and the Angelus II Entities.[133]  The Court thus acknowledged that questions remained regarding Gayler's interest in the numerous entities listed on Schedule B of the Amended Petition.[134]

### E.    THE FEBRUARY 4, 2013 MEETING.

As part of the process in getting Trustee Rosenberg up to speed on the Gayler matters, a meeting was held on February 4, 2013 at the MAC law offices (the "February Meeting").[135] Trustee Rosenberg, Mr. Kim and the following MAC attorneys attended the February Meeting: Zach Larson, Phillip Aurbach, Terry Coffing, Dale Hayes and Liane Wakayama.[136]

### 1.    No Confidential Information Was Ever Conveyed *By* Trustee Rosenberg *To* MAC.

The February Meeting lasted over two hours wherein the MAC attorneys explained in detail to Trustee Rosenberg the status of the Angelus I/Angelus II Lawsuit, the Angelus II Lawsuit, the Angelus IV Lawsuit, the Angelus II Chapter 7 bankruptcy filing, the Diamante Rose

---

[130] See Adv. Pro. 01410, Dkt. No. 253, p. 7.

[131] Id.

[132] Id.

[133] See Adv. Pro. 01410, Dkt. No. 272.

[134] Id.

[135] See Hayes Declaration at ¶ 27; see also Aurbach Declaration at ¶ 10; see also Declaration of Liane K. Wakayama, Esq. in Support of Opposition to Trustee's Motion to Disqualify Counsel for John D. O'Brien Profit Sharing Plan and Counsel for Barry R. Moore and Janie Moore as Co-Trustees of the BAMM Living Trust Dated July 16, 2003, Groth, LLC, Ch. Pichon, LLC, and Harlan, LLC through their Managing Member John O'Brien ("Wakayama Declaration") at ¶ 17.

[136] Id.

MARQUIS AURBACH COFFING
10001 Park Run Drive
Las Vegas, Nevada 89145
(702) 382-0711 FAX: (702) 382-5816

MAC:05505-025 2036699_5 8/21/2013 1:58 PM

MARQUIS AURBACH COFFING
10001 Park Run Drive
Las Vegas, Nevada 89145
(702) 382-0711 FAX: (702) 382-5816

Adversary, the Moore Adversary and the Trustee's Adversary Proceeding.[137]   All information conveyed to Trustee Rosenberg and Mr. Kim were matters within the courts' public record.[138] Trustee Rosenberg and Mr. Kim did not share any confidential information with the MAC attorneys as both were new to the Gayler matters and were just learning the case as represented by Mr. Kim to the Court at the January 23, 2013 hearing.[139]

### 2.   MAC Reminds Trustee Rosenberg that the Angelus IV Trial is Set to Commence.

On February 13, 2013, Ms. Wakayama sent Mr. Kim a letter outlining the discussions held at the February Meeting.[140]  Within the letter, Ms. Wakayama also reminded Mr. Kim of the upcoming trial in the Angelus IV Lawsuit as follows:

> **We understand that** as the newly designated Chapter 7 Panel Trustee over William A. Gayler's bankruptcy estate, **Mr. Rosenberg is in the process of getting up to speed on what has transpired over the past three years.  To aid in that process, the purpose of this letter is to remind you that there is a jury trial set to commence on or about March 19, 2013 involving Ch. Angelus IV, LLC ("Angelus IV").**[141]

Reiterating everything that had transpired in relation to the Angelus I/Angelus II Lawsuit including the $413,322.25 sitting in the District Court's registry, Ms. Wakayama reminded Mr. Kim that "[i]f Judge Denton rules in our clients' favor, we may be facing a similar result that occurred in the Angelus I/Angelus II Litigation."[142]  Ms. Wakayama further advised Mr. Kim that "[i]f the jury finds in our clients' favor, findings of fact may be entered that are adverse to Mr. Gayler."[143]

---

[137] See Hayes Declaration at ¶ 27; see also Aurbach Declaration at ¶ 10; see also Wakayama Declaration at ¶ 7.

[138] Id.

[139] Id.

[140] See Wakayama Declaration at ¶ 8, **Exhibit A2.**

[141] Id. (emphasis added).

[142] Id.

[143] Id.

MAC:05505-025 2036699_5 8/21/2013 1:58 PM

In an email dated March 2, 2013, Mr. Kim responded and requested Ms. Wakayama to provide a copy of all substantive pleadings, Angelus IV's Operating Agreement and any deposition transcripts and videos associated with the Angelus IV Lawsuit.[144]    Copies of all requested documents and videos were delivered to Mr. Kim on April 24, 2013.[145]    Throughout the entire 13 day trial, however, Trustee Rosenberg and Mr. Kim were nowhere to be found and never made an appearance on behalf of Gayler's bankruptcy estate.[146]

### F.    TRUSTEE ROSENBERG'S MOTION FOR PARTIAL SUMMARY JUDGMENT PURSUANT TO 11 USC § 541 AND 11 USC §548.

*After* the February Meeting, Trustee Rosenberg moved for partial summary judgment pursuant to 11 U.S.C. § 541 and 11 U.S.C. § 548 (the "Second SJ Motion").[147]    The Second SJ Motion was filed on February 14, 2013.[148]    Of particular importance, Trustee Rosenberg adopted the Former Trustee's position on the interests claimed by Gayler in Angelus I, Angelus II and the Angelus II Entities by recognizing those interests have yet to be arbitrated as follows:

> **The Trustee recognizes that certain creditors have sought relief from the automatic stay to proceed with an arbitration to determine whether or not Gayler, pre-bankruptcy, sold his interests in Ch. Angelus and Ch. Angelus II.** In addition, the arbitration will also determine whether Gayler's actions, pre-bankruptcy, constitute fraud.[149]

Trustee Rosenberg also represented to the Court that the Creditors sought to disgorge Gayler of any claimed membership interests as follows:

> If so, **it is the Trustee's understanding that part of the relief sought would serve to disgorge Gayler of any and all membership interests he claims in Ch. Angelus, LLC and Ch. Angelus II, LLC, including the interests held by Gayler through Ch. Pichon, LLC, Groth, LLC and Harlan, LLC.**[150]

---

[144] See Wakayama Declaration at ¶ 9, **Exhibit B2.**

[145] Id., **Exhibit C2.**

[146] See Wakayama Declaration at ¶ 10.

[147] See Adv. Pro. 01410, Dkt. No. 317.

[148] Id.

[149] Id. at n. 131 (emphasis added).

[150] See Adv. Pro. 01410, Dkt. No. 317 (emphasis added).

MAC:05505-025 2036699_5 8/21/2013 1:58 PM

MARQUIS AURBACH COFFING
10001 Park Run Drive
Las Vegas, Nevada 89145
(702) 382-0711 FAX: (702) 382-5816

1    Trustee Rosenberg further reiterated and emphasized his position that the Creditors should be

2    allowed to proceed with arbitration resulting in the Bankruptcy Estate potentially having <u>no</u>

3    rights to the interests claimed by Gayler in Angelus I, Angelus II and the Angelus II Entities as

4    follows:

5    > **The Trustee further recognizes that theses creditors have indicated in the
     > Motion to Lift Stay that they wish to arbitrate the ownership of Gayler's
6    > membership interests in Ch. Angelus and Ch. Angelus II (including those
     > interests held through other entities) before this Court declares those
7    > interests to be or not be property of the Estate.** Thus, in the event the arbitrator
     > does not find Gayler to have sold or to be disgorged of his interests in Ch.
8    > Angelus and Ch. Angelus II, such interests must be declared to be property of the
     > Estate.[151]

9    Through his independent counsel, Kim, Trustee Rosenberg approved the filing of the Second

10   MSJ Motion on February 14, 2013.[152]

11   ### G.    MAC'S VOLUNTARY WITHDRAWAL AS SPECIAL COUNSEL.

12   On April 11, 2013, MAC requested the Court to allow MAC to withdraw as Special

13   Counsel "based on the fact that the Trustee, after having replaced the previous Trustee, has hired

14   his own counsel."[153]   No objections to MAC's withdrawal were filed.   In an Order entered on

15   June 10, 2013, the Court granted MAC's request and; since that time, Kim remains the only

16   counsel of record for Trustee Rosenberg.[154]

17   ### H.    TRUSTEE ROSENBERG'S MOTION TO APPROVE SETTLEMENT
     ###       AGREEMENT.

18   Sometime *after* MAC's withdrawal as Special Counsel, Trustee Rosenberg entered into

19

20   settlement negotiations with Gayler, Gayler's attorney (Jeff Sylvester), Barrett and Loerwald.[155]

21

22

23

24   [151] See Adv. Pro. 01410, Dkt. No. 317 (emphasis added).

25   [152] See Aurbach Declaration at ¶ 11, **Exhibit B3**.

26   [153] See Dkt. No. 507.

27   [154] See Dkt. No. 513.

28   [155] See Aurbach Declaration at ¶ 12.

**MARQUIS AURBACH COFFING**
10001 Park Run Drive
Las Vegas, Nevada 89145
(702) 382-0711 FAX: (702) 382-5816

MAC:05505-025 2036699_5 8/21/2013 1:58 PM

Trustee Rosenberg and his counsel never once included the Creditors or their counsel in settlement discussions.[156]

On July 3, 2013, Trustee Rosenberg requested the Court to approve a Settlement Agreement signed by Loerwald, Barrett, Sylvester and Gayler, individually and on behalf of 120 entities.[157] As part of the settlement, Gayler agreed to transfer all of his claimed managing and non-managing interests including any distribution from each of the entities listed on Schedule B to the Bankruptcy Estate.[158] Moreover, Trustee Rosenberg agreed to distribute to Gayler $100,000, which would be paid to Sylvester.[159] Sylvester would also be assigned Gayler's claimed rights in Dumol, LLC including any sale proceeds.[160] Trustee Rosenberg further agreed that Gayler shall retain ownership and possession of two homes located in Utah and any previously paid commissions to Gayler or his specific entities.[161] With full knowledge that Gayler has been indicted for fraud, Trustee Rosenberg additionally agreed to grant Gayler a complete discharge and any claims asserted in the Trustee's Adversary Proceeding against Gayler, Barrett and Loerwald would be forever dismissed.[162]

**1.**    **Gayler's Lack of Authority To Enter Into a Settlement On Behalf of Angelus I, Angelus II and the Angelus II Entities.**

At the time Trustee Rosenberg moved to approve the Settlement, the Motion to Dismiss the unauthorized Angelus II Bankruptcy filed by Gayler had been pending for approximately seven months.[163] Since December 2012, Trustee Rosenberg knew that the Motion to Dismiss

---

[156] See Hayes Declaration at ¶ 28; see also Wakayama Declaration at ¶ 11.

[157] See Dkt. No. 516, Exhibit 1.

[158] Id. at Section 3.

[159] Id. at Section 5(a).

[160] See Dkt. No. 516 at Section 8.

[161] Id. at Section 7(a).

[162] Id. at Sections 9 & 10.

[163] See BK 22209, Dkt. No. 14.

MAC:05505-025 2036699_5 8/21/2013 1:58 PM

MARQUIS AURBACH COFFING
10001 Park Run Drive
Las Vegas, Nevada 89145
(702) 382-0711 FAX: (702) 382-5816

was based on Gayler's lack of authority on behalf of Angelus II and the Angelus II Entities.[164] Despite his knowledge, Trustee Rosenberg endorsed the Settlement where Gayler signed as the "Manager/Member" on behalf of these very entities.[165]   At the July 10, 2013 status hearing on the Motion to Dismiss, Trustee Rosenberg, through Kim, represented to the Court that "[i]t doesn't really matter to us whether or not Mr. Gayler had or did not have authority to file a bankruptcy case from this trustee's perspective."[166]

### 2.    Trustee Rosenberg Confirms His Lack of Knowledge on these Matters.

As support for the Settlement, Trustee Rosenberg represented to this Court, under penalties of perjury that he still possessed **no** knowledge of these matters and "it would [still] take time and money for my new counsel to come up to speed with the complexities of this case."[167]

### 3.    Trustee Rosenberg's Misrepresentations to the Court and Change in Position.

Within his Declaration, Trustee Rosenberg represented to the Court facts related to the Angelus I/Angelus II Lawsuit.[168]   In direct contradiction to Trustee Rosenberg's prior acknowledgment of the pending Motion to Lift Stay, Trustee Rosenberg specifically represented that "[n]o parties to the action moved the Court to lift the automatic stay to proceed in this state court action against Gayler."[169]   Focused only on the money sitting in the District Court's registry, Trustee Rosenberg further represented to the Court that "this settlement will assist me in

---

[164] See BK 22209, Dkt. No. 27, **Exhibit A.**

[165] Id.

[166] Id. at 4:7-9.

[167] See Dkt. No. 517, ¶13.

[168] See Dkt. No. 517.

[169] Id. at ¶ 8.

MAC:05505-025 2036699_5 8/21/2013 1:58 PM

MARQUIS AURBACH COFFING

10001 Park Run Drive
Las Vegas, Nevada 89145
(702) 382-0711 FAX: (702) 382-5816

recovering the $413,322.25 currently held by the Court in Case No. A-09-596777-C on behalf Angelus and Angelus II."[170]

As Special Counsel, MAC's position had always been united with the Creditors in relation to Gayler's claimed interests in Angelus I, Angelus II and the Angelus II Entities – allow the state arbitration to proceed to determine if Gayler had any ownership in these entities *pre*-bankruptcy.[171]   Less than five months earlier, Trustee Rosenberg had fully acknowledged in the Second SJ Motion that Gayler's claimed membership interests in these entities needed to be arbitrated by the Creditors, the 777 Plaintiffs.[172]   It was not until *after* MAC's withdrawal and after the Trustee's negotiations with Gayler without MAC's involvement that Trustee Rosenberg took the completely opposite position.[173]   As soon as the Creditors conveyed their disapproval of the Settlement, Trustee Rosenberg cried "conflict" and moved to disqualify MAC in its long-standing representation of the Creditors.

## III.   **LEGAL STANDARD.**

Attorneys admitted to practice before a Nevada federal court must "adhere to the standards of conduct prescribed by the Model Rules of Professional Conduct as adopted and amended from time to time by the Supreme Court of Nevada, except as such may be modified by this Court."  Local Rule 1A 10-7.[174]   Federal courts apply state law in determining whether attorney disqualification is warranted.  Hackett v. Feeney, 2010 WL 4102911 (D. Nev. 2010) (citing In re County of Los Angeles, 223 F.3d 990, 995 (9th Cir. 2000)) (holding "[b]ecause we apply state law in determining matters of disqualification, we must follow the reasoned view of the state supreme court when it has spoken on the issue.")).  District judges have substantial latitude in deciding whether counsel must be disqualified, and the Ninth Circuit will not overturn

---

[170] See Dkt. No. 517 at ¶ 17.

[171] See Dkt. Nos. 466, 478; see also Aurbach Declaration at ¶ 8.

[172] See Adv. Pro. 01410, Dkt. No. 317, n. 131.

[173] See Aurbach Declaration at ¶ 12.

[174] The applicability of Local Rule 1A 10-7 is incorporated by Local Rules of Bankruptcy Practice (LR) 1001(b)(2).

MAC:05505-025 2036699_5 8/21/2013 1:58 PM

MARQUIS AURBACH COFFING

10001 Park Run Drive
Las Vegas, Nevada 89145
(702) 382-0711 FAX: (702) 382-5816

1   a decision absent an abuse of that discretion. See U.S. v. Frega, 179 F.3d 793, 799 (9th Cir.

2   1999) (citing U.S. v. Stites, 56 F.3d 1020, 1024 (9th Cir. 1995)).  Following Nevada law and the

3   ethical rules, this Court should deny the Motion to disqualify MAC.

4   **IV.    LEGAL ARGUMENT.**

5          In Nevada, attorney disqualification is an extreme remedy that will not be imposed

6   lightly.  Millen v. Eighth Jud. Dist. Ct., 122 Nev. 1245, 1256, 148 P.3d 694, 701 (2006).

7   Motions to disqualify counsel are generally viewed with disfavor, which courts should hesitate to

8   grant except when absolutely necessary.  See Hernandez v. Guglielmo, 796 F.Supp.2d 1285,

9   1289-90 (D. Nev. 2011); In re Marvel, 251 B.R. 869, 871 (Bankr. N.D. Cal. 2000); Integrated

10  Health Services of Cliff Manor, Inc. v. THCI, Co. LLC, 327 B.R. 200, 204 (Bankr. D. Del.

11  2005); In re Jet 1 Ctr., Inc., 310 B.R. 649, 654 (Bankr. M.D. Fla. 2004).  An appearance of

12  impropriety, by itself, does not support a lawyer's disqualification.  Liapis v. Dist. Ct., 128 Nev.

13  Adv. Op. 39, 282 P.3d 733, 737 (2012).

14         A heavy burden is placed on the movant to show that disqualification of counsel is

15  necessary.  See In re Allboro Waterproofing Corp., 224 B.R. 286, 294 (Bank. E.D.N.Y. 1998).

16  The movant must also meet a high standard of proof before an attorney is disqualified.  In re Jet,

17  310 B.R. at 654 (citations omitted).  To prevail on a motion to disqualify, the moving party must

18  establish by a reasonable possibility that an ethical violation occurred or other factual predicate

19  upon which the motion depends.  See Hernandez, 796 F.Supp.2d at 1289; see also Palmer v.

20  Pioneer Hotel & Casino, 19 F.Supp.2d 1157, 1162 (D. Nev. 1998) (citing Cronin v. Eighth Jud.

21  Dist. Ct., 781 P.2d 1150, 1153 (Nev. 1989)).  Once an ethical violation is established, the court

22  has broad discretion in determining whether disqualification, or some lesser sanction, is

23  warranted.  Faison v. Thornton, 863 F.Supp. 1204, 12151 (D. Nev. 1993).

24         Trustee Rosenberg has failed to meet his heavy burden of establishing that an ethical

25  violation actually occurred.  Nowhere in the Motion does Trustee Rosenberg articulate a legal

26  basis to disqualify MAC – all arguments are instead directed at Larson.  As mere speculation,

27  there is only a fleeting reference that "the Trustee is informed and believes that MAC, on behalf

28  of petitioning creditor O'Brien, also intends to oppose the Trustee's pending settlement

MAC:05505-025 2036699_5 8/21/2013 1:58 PM

MARQUIS AURBACH COFFING
10001 Park Run Drive
Las Vegas, Nevada 89145
(702) 382-0711 FAX: (702) 382-5816

MARQUIS AURBACH COFFING

10001 Park Run Drive
Las Vegas, Nevada 89145
(702) 382-0711 FAX: (702) 382-5816

1    motion."[175]    Motions for disqualification must be based, however, on present concerns and not

2    those which are speculative or anticipatory.    In re Coordinated Pretrial Proceedings, 658 F.2d

3    1355, 1361 (9th Cir. 1981).    On that basis alone, Trustee Rosenberg's request to disqualify MAC

4    should be denied as nothing within the Motion gives rise to an ethical violation or even a present

5    concern.    In any event, MAC's long-standing clients should not be deprived of their counsel of

6    choice.    MAC therefore requests this Court to deny any request by Trustee Rosenberg for

7    disqualification because: (A) Trustee Rosenberg has failed to meet his burden under NRCP

8    1.9(a); (B) Trustee Rosenberg waived any right to disqualify MAC; and (C) Trustee Rosenberg's

9    motivating factor to disqualify MAC is to purely gain a tactical advantage in pushing through an

10   unfair Settlement.

11       **A.**       **TRUSTEE ROSENBERG FAILED TO MEET HIS BURDEN UNDER**
   **NRPC 1.9(A) TO DISQUALIFY MAC.**

12             Pursuant to Nevada Rule of Professional Conduct ("NRPC") 1.9(a), "[a] lawyer who has

13   formerly represented a client in a matter shall not thereafter represent another person in the same

14   or substantially related matter in which that person's interests are materially adverse to the

15   interests of the former client **unless the former client gives informed consent, confirmed in**

16   **writing.**" (emphasis added).    For disqualification under NRPC 1.9(a), the moving party must

17   establish three elements: (1) that an attorney-client relationship existed; (2) that the former

18   representation is substantially related; and (3) the current representation is adverse to the party

19   seeking disqualification.    Nev. Yellow Cab Corp. v. Eighth Jud. Dist. Ct., 123 Nev. 44, 50, 152

20   P.3d 737, 741 (2007).    Within the Motion, Trustee Rosenberg relies upon NRPC 1.9(a) as

21   grounds for disqualification but dedicates his focus on Larson, not MAC.[176]    Nothing in the

22   Motion articulates an actual ethical violation by MAC of NRPC 1.9(a) – only the mere

23

24

---

25   [175] See Trustee's Motion to Disqualify Counsel for John D. O'Brien Profit Sharing Plan and Counsel for
   Barry R. Moore and Janie Moore as Co-Trustees of The Bamm Living Trust dated July 16, 2003, Groth,

26   LLC, Ch. Pichon, LLC, and Harlan, LLC through their Managing Member John O'Brien ("Motion") at
   12:21-22.

27

28   [176] See Motion at pp. 9-13.

MAC:05505-025 2036699_5 8/21/2013 1:58 PM

1  speculation that MAC may oppose this Court's approval of the Settlement.[177]  Trustee Rosenberg

2  has thus failed to meet his burden and any request to disqualify MAC should be denied.

3  Notwithstanding Trustee Rosenberg's failure to establish an ethical violation by MAC,

4  this Court should find that any opposition by MAC to the Settlement fails to rise to the level of

5  an ethical violation to warrant disqualification because: (1) Trustee Rosenberg consented to

6  MAC's concurrent representation of the Creditors; (2) MAC's representation of the Creditors is

7  not materially adverse to a former client; and (3) no confidential information was ever conveyed

8  *by* the Former Trustee or Trustee Rosenberg *to* MAC.  This Court should therefore deny any

9  request to disqualify MAC from continuing to advocate the interests of the Creditors.

10   **1.    Trustee Rosenberg Consented to MAC's Concurrent Representation**
11        **of the Creditors Even When Represented by His Own General**
       **Counsel.**

12  No conflict exists under NRPC 1.9(a) when a former client gives informed consent,

13  confirmed in writing.  When used in reference to the informed consent of a person, "confirmed in

14  writing" denotes informed consent that is given in writing by the person.  NRPC 1.0(b).

15  "Writing" is defined as "a tangible or electronic record of a communication or representation,

16  including . . . audio or videorecording."  NRCP 1.0(n).

17  At the January 23, 2013 hearing, Trustee Rosenberg was represented by his own

18  independent counsel, Kim.  On more than one occasion, Kim represented to this Court that

19  Trustee Rosenberg was aware of a "potential conflict" with MAC's representation; however,

20  Trustee Rosenberg was "inclined to stay with [MAC]."[178]  As reflected in this Court's transcript,

21  therefore, Trustee Rosenberg gave informed consent, confirmed in writing to MAC's continued

22  involvement as Special Counsel and representation of the Creditors.  Based on his consent,

23  Trustee Rosenberg is barred from asserting any claim for disqualification under NRPC 1.9(a).

24

25

26

27  [177] See Motion at 12:21-24; 13:11-14.

28  [178] See BK 22209, Dkt. No. 27 at pp. 13-15.

MARQUIS AURBACH COFFING
10001 Park Run Drive
Las Vegas, Nevada 89145
(702) 382-0711 FAX: (702) 382-5816

MAC:05505-025 2036699_5 8/21/2013 1:58 PM

## 2.   MAC's Representation of the Creditors is Not Materially Adverse to a Former Client.

Pursuant to 11 U.S.C. § 327(c), an attorney is not disqualified for employment as counsel for a Chapter 7 trustee solely because of such attorney's employment by or representation of a creditor.  A court will only disapprove such employment if there is an actual conflict of interest. 11 U.S.C. § 327(c).  Throughout MAC's representation of the Creditors and Trustee Rosenberg, as Special Counsel, no actual conflict existed.  In fact, the interests of the Creditors and Trustee Rosenberg were aligned because a bankruptcy trustee is a fiduciary to the creditors of the estate. See In re Cochise Coll. Park, Inc., 703 F.2d 1339, 1357 (9th Cir. 1983) (citing Wolf v. Weinstein, 372 U.S. 633, 650 (1963)).  It was not until *after* MAC's voluntary withdrawal as Special Counsel that a conflict developed when Trustee Rosenberg switched sides and entered into secret negotiations with Gayler for the benefit of Gayler and to the detriment of the Creditors.  No dispute would exist if Trustee Rosenberg had not ignored his fiduciary duties to the Creditors by focusing on a settlement designed to benefit Gayler, his attorney and the co-conspirators.  Now that the Creditors intend to object to the Settlement, Trustee Rosenberg cries an ethical violation under NRPC 1.9(a).  No violation of NRPC 1.9(a) , however, has occurred because: (a) MAC never advocated for a debtor-friendly settlement rejected by the creditors; and (b) Trustee Rosenberg, on his own initiative, created this "purported" conflict.  Disqualification must therefore be denied.

### a.   As Special Counsel, MAC Never Advocated for a Settlement Rejected by the Creditors.

Attempting to blur the scope of MAC's involvement as Special Counsel, Trustee Rosenberg characterizes MAC's opposition to the Settlement as "highly offensive."  Trustee Rosenberg specifically represents to this Court that MAC "drafted the majority of the settlement agreement it now intends to oppose."[179]  Trustee Rosenberg fails to inform this Court, however, that MAC prepared a similar settlement that was unanimously rejected by the Creditors.[180]

---

[179] See Motion at 12:21-24; 13:11-14.

[180] See Aurbach Declaration at ¶ 9, **Exhibit A3**.

MAC:05505-025 2036699_5 8/21/2013 1:58 PM

MARQUIS AURBACH COFFING
10001 Park Run Drive
Las Vegas, Nevada 89145
(702) 382-0711 FAX: (702) 382-5816

MARQUIS AURBACH COFFING
10001 Park Run Drive
Las Vegas, Nevada 89145
(702) 382-0711 FAX: (702) 382-5816

Given the unanimous rejection, all settlement negotiations ended and MAC never sought approval of any settlement with this Court – consistent with MAC's fiduciary duties owed to the creditors.[181]    MAC instead re-focused its attention on litigation.[182]    Now, without MAC's knowledge or consent, Trustee Rosenberg used MAC's previously drafted settlement documents as a form for a settlement favorable to Gayler.[183]    Trustee Rosenberg's plagiarism of MAC's work product is not a basis for disqualification.

        **b.**      **After MAC's Withdrawal as Special Counsel, Trustee Rosenberg Unilaterally Created a Purported Conflict.**

Lawyers can be adverse to former clients.[184]    As a general principle, the lawyer's duty of loyalty only applies to current clients, not former ones.[185]    As Special Counsel, MAC initiated an Adversary Proceeding to preserve any rights on behalf of the Bankruptcy Estate in interests determined to be held by Gayler in Angelus I, Angelus II and the Angelus II Entities.[186]    In order to determine Gayler's membership interests, if any, in these entities pre-bankruptcy, the 777 Plaintiffs filed the Motion to Lift Stay.[187]    Given the uncertainty of the Bankruptcy Estate's interest in Angelus I, Angelus II and the Angelus II Entities, the Former Trustee filed a non-opposition to the Motion to Lift the Stay representing to this Court that "the Estate will abide by the State Court's ruling in its determination as to whether Gayler has any interest in the non-debtor entities."[188]    Since the Creditors' arbitration would resolve Gayler's "hotly contested"

---

[181] See Aurbach Declaration at ¶ 9, **Exhibit A3**.

[182] Id.

[183] Id.

[184] Ronald D. Rotunda, *Resolving Client Conflicts by Hiring "Conflicts Counsel*," 62 Hastings L.J. 677, 686 (2011) (citing Model Rules of Prof'l Conduct R. 1.9 (2010) (explaining "[a] lawyer may not sue a current client, but, in general, a lawyer may sue a former client subject to a few restrictions (such as not using confidential information against the former client)).

[185] Id. at pg. 682.

[186] See Adv. Pro. 01088, Dkt. No. 1.

[187] See Dkt. No. 466.  The Complaint also seeks to preserve claims to Gayler's interest in 17 other entities.

[188] See Dkt. No. 478 at 2:5-8.

MAC:05505-025 2036699_5 8/21/2013 1:58 PM

MARQUIS AURBACH COFFING
10001 Park Run Drive
Las Vegas, Nevada 89145
(702) 382-0711 FAX: (702) 382-5816

1    ownership interests, the Former Trustee exercised its business judgment by preserving the

2    Bankruptcy Estate's interests without having to litigate a separate action and risk inconsistent

3    judgments.[189]    There is nothing in the Bankruptcy Code which authorizes a trustee to collect

4    money that is not actually owed to the estate.  See Caplin v. Marine Midland Grace Trust Co. of

5    New York, 406 U.S. 416, 428 (1972).    Accordingly, the Ninth Circuit allows state court

6    litigation to proceed in order to avoid duplicative litigation, to prevent waste of scant federal

7    judicial resources, or to allow a court of special expertise to resolve a dispute within its purview.

8    See MacDonald v. MacDonald (In re MacDonald), 755 F.2d 715, 717 (9th Cir.1985); see also

9    Ozai v. Tabuena (In re Ozai), 34 B.R. 764, 766 (B.A.P. 9th Cir. 1983); and Kronemyer v. Am.

10    Contractors Indem. Co. (In re Kronemyer), 405 B.R. 915, 921 (B.A.P. 9th Cir. 2009).

11    While represented by Kim as general counsel, Trustee Rosenberg approved of MAC

12    filing the Second SJ Motion reiterating the Trustee's position that the 777 Plaintiffs should

13    proceed with arbitration as follows:

14    > **The Trustee recognizes that certain creditors have sought relief from the**
     > **automatic stay to proceed with an arbitration to determine whether or not**
15    > **Gayler, pre-bankruptcy, sold his interests in Ch. Angelus and Ch. Angelus II.**
     > In addition, the arbitration will also determine whether Gayler's actions, pre-
16    > bankruptcy, constitute fraud.[190]

17    Trustee Rosenberg thus adopted the Former Trustee's position that Gayler's interests in Angelus

18    I, Angelus II, and the Angelus II Entities needed to be arbitrated by MAC, on behalf of the 777

19    Plaintiffs, *prior* to the Bankruptcy Estate staking any claim to these potential assets.    While

20    represented by MAC, the Creditors' and Trustee Rosenberg's interests were thus identical and

21    aligned.

22    After MAC's withdrawal as Special Counsel, Trustee Rosenberg then decided to

23    participate in settlement negotiations with Gayler, Sylvester, Barrett and Loerwald.  None of the

24    Creditors were involved in these discussions.  All of a sudden and beyond MAC's control,

25    _____

26    [189] "With or without court approval, the trustee or debtor in possession *may* prosecute or *may* enter an
     appearance and defend any pending action or proceeding by or against the debtor, or commence and
     prosecute any action or proceeding in behalf of the estate before any tribunal." Fed. R. Bankr. P. 6009
27    (emphasis added).

28    [190] See Dkt. No. 317 (emphasis added).

MAC:05505-025 2036699_5 8/21/2013 1:58 PM

Trustee Rosenberg took the opposite position as previously represented to this Court and negotiated a settlement term where the Bankruptcy Estate would obtain all interests claimed by Gayler in Angelus I, Angelus II and the Angelus II Entities.  When Trustee Rosenberg suspected that MAC, on behalf of the Creditors, would object to the Settlement based on the debtor-friendly terms, Trustee Rosenberg moved for disqualification premised on the purported "conflict" he created.[191]    By opposing the Settlement on this issue, MAC is not taking a materially adverse position to a former client but is instead attempting to enforce Trustee Rosenberg's prior position – aligned with the Creditors – and holding him to the very representations he made to this Court.  Failing to meet his heavy burden, Trustee Rosenberg's request for disqualification under NRPC 1.9(a) must be denied.

### 3.  No Confidential Information Was Ever Conveyed *By* the Former Trustee or Trustee Rosenberg *To* MAC.

The purpose of NRPC 1.9 is to prevent a representation in which former client confidences could be shared or a former client injured.  See In re Rossana, 395 B.R. 697, 706 (Bankr. D. Nev. 2008).  NRPC 1.9(a) requires the court to "evaluate whether it is reasonable to infer that the confidential information allegedly given would have been given to a lawyer representing a client in those matters."  In re N. Am. Deed Co., 334 B.R. 443, 450 (Bankr. D. Nev. 2005) (citation omitted); see also Robbins v. Gillock, 109 Nev. 1015, 1018, 862 P.2d 1195, 1197 (1993).  The moving party is not required to divulge confidences actually communicated; however, there is a rebuttable presumption that the "attorney received confidential information during the prior representation."  Coles v. Arizona Charlie's, 973 F.Supp. 971, 974 (D. Nev. 1997) (citation omitted).

In the Motion to Disqualify, Trustee Rosenberg implies that confidential information was passed to MAC in the February meeting.[192]  Eight business days prior to the February Meeting,

---

[191] See Restatement (Third) of Law Governing Law § 132 at pp. 8 & 14 (2000) (citing D.C. Ethics Opin. 292 (1999) (stating that "[s]uch conflicts are sometimes referred to as 'thrust upon' conflicts, reflecting that events beyond the control of the affected lawyer or firm causes the conflict)); see e.g., Gould, Inc. v. Mitsui Mining & Smelting Co., 738 F.Supp. 1121 (N.D. Ohio 1990); Pennwalt Corp. v. Plough, Inc., 85 F.R.D. 264, 273 (D. Del. 1980); Ex parte AmSouth Bank, N.A., 589 So.2d 715, (Ala. 1991).

[192] See Motion at 11:25-28.

MAC:05505-025 2036699_5 8/21/2013 1:58 PM

MARQUIS AURBACH COFFING
10001 Park Run Drive
Las Vegas, Nevada 89145
(702) 382-0711 FAX: (702) 382-5816

however, Kim represented to this Court at the January 23, 2013 hearing that his client, Trustee Rosenberg, needed at least 60 days to get up to speed on this case, but "[i]t may take a little longer."[193]   Kim further represented to this Court that Trustee Rosenberg "hasn't had time to wrap his head around the case, yet, your Honor."[194]   In other words, Rosenberg had no confidential information that he could have possibly conveyed at the February Meeting.[195]   No confidential information was conveyed by Rosenberg; rather, the meeting was called so that MAC could convey information to Rosenberg and get him up to speed.[196]   Indeed, the only information exchanged at the February Meeting was *by* MAC *to* Trustee Rosenberg summarizing the status of all litigation handled by MAC.  None of this information was confidential as Trustee Rosenberg could have easily reviewed each of the court dockets and pleadings on file to obtain the same information.  To further aid with the process of getting Trustee Rosenberg up to speed, Ms. Wakayama even reminded Kim *after* the February Meeting about the upcoming Angelus IV trial and sent copies of all pleadings to Kim.[197]   Nothing of any substance, confidential or otherwise, was ever provided to MAC by Rosenberg.  As recently as July 3, 2013, Trustee Rosenberg represented to this Court, under penalties of perjury, that he still possessed **no** knowledge and "it would [still] take time and money for my new counsel to come up to speed with the complexities of this case."[198]   Given Trustee Rosenberg's complete lack of knowledge, it is <u>not</u> reasonable to infer that any confidential information was conveyed to MAC by Rosenberg.  Therefore, disqualification under NRPC 1.9(a) based on this touchstone inquiry[199] must be denied.

---

[193] <u>See</u> BK 22209, Dkt. 27, **Exhibit A** at 12:16-19.

[194] <u>Id.</u> at 7:25; 8:1-3.

[195] <u>See</u> Motion at p. 35.

[196] <u>Id.</u>

[197] <u>See</u> Wakayama Declaration at ¶ 9, **Exhibit B2.**

[198] <u>See</u> Dkt. No. 517, ¶13

[199] <u>See</u> In re <u>Rossana</u>, 395 B.R. at 706.

MARQUIS AURBACH COFFING
10001 Park Run Drive
Las Vegas, Nevada 89145
(702) 382-0711 FAX: (702) 382-5816

MAC:05505-025 2036699_5 8/21/2013 1:58 PM

## B.   TRUSTEE ROSENBERG WAIVED ANY RIGHT TO DISQUALIFY MAC.

Even if a conflict theoretically existed at some point in time, Trustee Rosenberg clearly waived that conflict. Waiver is a valid basis for the denial of a motion for disqualification. In re Jet, 310 B.R. at 654 (citations omitted). "It is well settled that a former client who is entitled to object to an attorney representing an opposing party on the ground of conflict of interest but who knowingly refrains from asserting it promptly is deemed to have waived that right." Trust Corp. of Montana v. Piper Aircraft Corp., 701 F.2d 85, 87-88 (9th Cir. 1983). In determining whether the moving party has waived its right to object to the opposing party's counsel, consideration should be given to: (1) when the movant learned of the conflict; (2) the length of the delay; (3) whether the movant was represented by counsel during the delay; and (4) why the delay occurred.[200] In re Jet, 310 B.R. at 654 (citations omitted).

Trustee Rosenberg was at all times fully aware of MAC's role as Special Counsel and concurrent representation of the Creditors. Not only did Trustee Rosenberg expressly consent to MAC's concurrent representation, but Trustee Rosenberg knowingly refrained from taking any action to disqualify MAC. Trustee Rosenberg thus waived any rights to move for MAC's disqualification.

### 1.   Trustee Rosenberg Was Aware of MAC's Representation of the Creditors.

A finding of waiver is justified when a former client was concededly aware of the former attorney's representation of an adversary but failed to raise an objection promptly when he had the opportunity. In re Jet, 310 B.R. at 654 (citations omitted). Since June 2010, MAC has represented the Creditors in Gayler's bankruptcy proceedings.[201] When the Former Trustee moved this Court to employ MAC as Special Counsel in April 2011, not one objection was filed.[202] For over two years, MAC concurrently represented the Creditors while acting in the

---

[200] Another factor for consideration is whether disqualification would result in prejudice to the non-moving party, which is fully briefed in Section C of this Opposition.

[201] See Dkt. No. 136.

[202] See Dkt. No. 14.

MAC:05505-025 2036699_5 8/21/2013 1:58 PM

MARQUIS AURBACH COFFING
10001 Park Run Drive
Las Vegas, Nevada 89145
(702) 382-0711 FAX: (702) 382-5816

limited role as Special Counsel to the Trustee without any objections.  On December 12, 2012, Trustee Rosenberg was appointed as Successor Trustee.[203]  Effective February 4, 2013, Kim has represented Trustee Rosenberg as his general counsel.[204]  Thereafter, MAC continued to serve as Special Counsel to Trustee Rosenberg for approximately six months – again without any objections.

Trustee Rosenberg repeatedly acknowledges that he was well aware at the start of his appointment of MAC's concurrent representation of the Creditors in the state court litigation and Gayler's bankruptcy proceedings.[205]  Two days after Trustee Rosenberg's appointment, Mr. Aurbach met with Trustee Rosenberg in an effort to bring him up to speed on this incredibly complex case.[206]  During this meeting, Trustee Rosenberg specifically brought up the fact that MAC also represented the Creditors.[207]  Although Trustee Rosenberg alluded to a possible conflict, he did not instruct MAC to withdraw as Special Counsel or take any other action.[208]  Fully aware that MAC represented the Creditors, Kim represented to this Court at the January 23, 2013 hearing that Trustee Rosenberg was "inclined to stay with [MAC]."[209]

At the subsequent February Meeting, Mr. Hayes and Ms. Wakayama summarized all of the litigation MAC had handled over the years for the Creditors – again fully disclosing to Trustee Rosenberg MAC's concurrent representation.[210]  Days later, Trustee Rosenberg moved this Court for the employment of Kim effective February 4, 2013.[211]  Within the employment

---

[203] See Dkt. No. 482.

[204] See Dkt. Nos. 488 & 500.

[205] See Motion at 3-8.

[206] See Aurbach Declaration at ¶ 4.

[207] Id.

[208] Id.

[209] See BK 22209, Dkt. No. 27, **Exhibit A** at 14:13-25; 15:1-4.

[210] See Hayes Declaration at ¶ 27; see also Wakayama Declaration at ¶¶ 6-7.

[211] See Dkt. No. 488.

MARQUIS AURBACH COFFING
10001 Park Run Drive
Las Vegas, Nevada 89145
(702) 382-0711 FAX: (702) 382-5816

Page 37 of 42

MAC:05505-025 2036699_5 8/21/2013 1:58 PM

application, Trustee Rosenberg confirmed his knowledge of MAC's representation of the Creditors and the existence of a possible conflict as follows:

> Since being assigned the case, Trustee has determined that the estate needs counsel in several pending litigations in which **the estate's special counsel MAC may not be able to represent the estate due to possible conflict.**
>
> **At least one actual conflict exists with MAC as to ongoing litigation in which MAC is also counsel for a party whose interest is clearly adverse to the bankruptcy estate.**
>
> Due to the actual conflict and other pending litigation matters, **Trustee is also investigating whether MAC can continue to serve as Trustee's special counsel.**[212]

Within the application filed in February 2013, Trustee Rosenberg thus confirmed his actual knowledge of what he characterized as an "actual conflict," however unfounded. Trustee Rosenberg was therefore fully aware of MAC's representation of the Creditors, a potential adversary; however, he raised no objection.

### 2. Trustee Rosenberg Unreasonably Delayed Moving for Disqualification.

"A court should deny a motion for disqualification if the moving party unreasonably delayed filing the motion." Ipatt Grp., Inc. v. Scotts Miracle-Gro Co., 2013 WL 3043677 *6 n. 6 (D. Nev. 2013). It is clear that Trustee Rosenberg delayed filing a motion to disqualify with full knowledge that MAC was ramping up for a trial at great cost to its Creditor clients. Since the February Meeting, the Creditors collectively paid MAC $326,629.40 in legal fees and costs.[213] Of this amount, the Creditors paid $269,146.96 just for the Angelus IV trial.[214] The reason Trustee Rosenberg delayed moving for MAC's disqualification for over seven months was to reap the benefits of MAC's representation of the Creditors.

At the February Meeting, Trustee Rosenberg learned that MAC's successful representation of the 777 Plaintiffs in the Angelus I/Angelus II Lawsuit generated $1.4 MM in settlement proceeds with $413,322.25 remaining to be distributed. Also, at and after the

---

[212] See BK 22209, Dkt. No. 27, **Exhibit A** at 14:13-25; 15:1-4.

[213] See Wakayama Declaration at ¶ 5.

[214] Id.

MARQUIS AURBACH COFFING
10001 Park Run Drive
Las Vegas, Nevada 89145
(702) 382-0711 FAX: (702) 382-5816

MAC:05505-025 2036699_5 8/21/2013 1:58 PM

February Meeting, MAC reminded Trustee Rosenberg that the Angelus IV trial was approaching where MAC was advocating the 929 Plaintiffs' interests that could produce a similar result as the Angelus I/Angelus II Lawsuit.[215]  With possession of all pleadings and discovery, Trustee Rosenberg sat silent, declined to participate, and allowed the 929 Plaintiffs to expend hundreds of thousands of dollars in legal fees in an effort to save the Angelus IV investment.  When MAC's efforts proved successful, Trustee Rosenberg immediately attempted to benefit by transferring Gayler's purported Angelus IV membership, by way of "settlement," to the bankruptcy estate, including Gayler's management rights.  After MAC had once again saved an investment from foreclosure, Trustee Rosenberg moved to disqualify MAC.  Trustee Rosenberg's request for disqualification is motivated by his wish to push through the Settlement in hopes of preventing any objections by MAC.  Trustee Rosenberg's unreasonable delay should be viewed as a waiver of any right to move for disqualification.

## C.    TRUSTEE ROSENBERG'S REQUEST TO DISQUALIFY MAC IS TO GAIN A TACTICAL ADVANTAGE TO THE DETRIMENT OF THE CREDITORS.

Parties should not be allowed to misuse motions for disqualification as instruments of harassment or delay.  Leibowitz v. Eighth Jud. Dist. Ct., 119 Nev. 523, 529, 78 P.3d 515, 519 (2003) (citing to Brown v. Eighth Jud. Dist. Ct., 116 Nev. 1200, 1205, 14 P.3d 1266, 1270 (2000)).  "[P]articularly strict judicial scrutiny" should be given to disqualification motions because there is such a significant possibility of abuse for tactical advantage.  Optyl Eyewear Fashion Int'l Corp. v. Style Companies, Ltd., 760 F.2d 1045, 1050 (9th Cir. 1985).  Based on these cautionary measures, this Court should deny Trustee Rosenberg's request for disqualification because: (1) it only serves to avoid any proper objections by the Creditors to the Settlement; and (2) the Creditors will suffer extreme prejudice if MAC is disqualified.

MARQUIS AURBACH COFFING
10001 Park Run Drive
Las Vegas, Nevada 89145
(702) 382-0711 FAX: (702) 382-5816

[215] See Wakayama Declaration at ¶ 8, **Exhibit A2**.

MAC:05505-025 2036699_5 8/21/2013 1:58 PM

MARQUIS AURBACH COFFING
10001 Park Run Drive
Las Vegas, Nevada 89145
(702) 382-0711 FAX: (702) 382-5816

1.     **Disqualification Only Serves to Avoid Any Proper Objections to the Settlement.**

In December 2012, when Trustee Rosenberg was appointed as Successor Trustee, he knew that MAC represented the Creditors.[216]  Even though he repeatedly alluded to a purported conflict, Trustee Rosenberg did nothing to disqualify MAC for over seven months.  Instead, Trustee Rosenberg sat silent while MAC tried another case to save yet another investment, this time Angelus IV.  Piggybacking on MAC's success, Trustee Rosenberg then moved this Court to approve the Settlement that would transfer to the estate all of Gayler's claimed interests in Angelus I, Angelus II, the Angelus II Entities and Angelus IV.  The moment Trustee Rosenberg suspected that MAC would oppose the Settlement on the basis that its terms allowed Gayler, his attorney, Trustee Rosenberg and Kim to profit off the backs of the Creditors' laboring efforts, Trustee Rosenberg moved for disqualification.

The entire purpose for requesting disqualification at this stage is to strip the Creditors of any opportunity to properly object to the Settlement.  Trustee Rosenberg even urged this Court to rule on MAC's disqualification on an order shortening time "to prevent MAC and Larson from filing oppositions" to the Settlement,[217] a settlement designed to potentially line the pockets of Gayler, Sylvester, Trustee Rosenberg and Kim with the money generated by the Creditors as a result of years of costly, heated and time consuming litigation.  Brought as a purely tactical instrument, Trustee Rosenberg's request for disqualification is the exact type of abuse that the law is intended to prevent.

2.     **The Creditors Will Suffer Extreme Prejudice if MAC is Disqualified.**

Disqualification motions present courts with a delicate and sometimes difficult balancing task.  Brown, 116 Nev. 1200, 1205, 14 P.3d 1266, 1269-70 (2000).  When considering whether to disqualify counsel, the district court must balance the prejudices that will ensue to the parties as a result of its decision.  Id. at 1205, 14 P.3d at 1270.  A party's choice of counsel is entitled to substantial deference.  In re Jet, 310 B.R. at 654 (citations omitted).  Invariably, disqualifying an

---

[216] See Aurbach Declaration at ¶ 4.

[217] See Dkt. Nos. 526 & 527.

MAC:05505-025 2036699_5 8/21/2013 1:58 PM

MARQUIS AURBACH COFFING
10001 Park Run Drive
Las Vegas, Nevada 89145
(702) 382-0711 FAX: (702) 382-5816

1    attorney causes delay, increases costs, and deprives parties of the counsel of their choice, and

2    courts should therefore disqualify with considerable reluctance and only when no other practical

3    alternative exists. Millen, 122 Nev. at 1256, 148 P.3d at 701-02.

4           Since 2008, the Creditors have retained MAC to represent and prosecute their interests in

5    six different and extremely complex lawsuits. For years, MAC has taken the laboring oar to save

6    one investment after another and to rectify the harm caused by Gayler, Barrett and Loerwald. In

7    total, the Creditors have collectively paid MAC over $1.4MM in attorney fees and costs – a

8    significant investment for MAC to master the complexities of this case.[218] As grounds to justify

9    the Settlement, Trustee Rosenberg acknowledged the "complexities of this case," the amount of

10   money it would take to learn this case and admitted that after seven months since his

11   appointment he still needs to get "up to speed."[219] Trustee Rosenberg is thus acutely aware that

12   the Creditors will be forced to incur an exorbitant amount of fees for another attorney to get up to

13   speed in time to defeat approval of the Settlement in two short months – a task that Trustee

14   Rosenberg has not even accomplished. Yet, Trustee Rosenberg now seeks to severely handicap

15   the Creditors by MAC's disqualification so the Settlement is approved without the proper

16   objections. Any disqualification of MAC would result in severe prejudice to the Creditors

17   depriving them of their counsel of choice for the past five years; thus, disqualification should be

18   denied.

19   **V.    CONCLUSION.**

20          Any request to disqualify MAC should be denied. Trustee Rosenberg has failed to meet

21   his heavy burden in establishing an ethical violation under NRPC 1.9(a) which would warrant

22   disqualification. While MAC was employed as Special Counsel, Trustee Rosenberg expressly

23   consented to MAC's concurrent representation of the Creditors. As the newly appointed

24   successor trustee, Trustee Rosenberg was not in a position to communicate any confidential

25   information to MAC – the touchstone inquiry for any violation of NRPC 1.9(a). Moreover,

26   _____

27   [218] See Wakayama Declaration at ¶ 4.

28   [219] See Dkt. No. 517.

MAC:05505-025 2036699_5 8/21/2013 1:58 PM

1   Trustee Rosenberg waived any right to move for disqualification given his express consent of

2   MAC's concurrent representation and strategic, unreasonable delay for seven months in moving

3   for disqualification to gain a tactical advantage to the detriment of the Creditors.    Trustee

4   Rosenberg is motivated by only one purpose – to get a self-serving, debtor-friendly settlement

5   approved by this Court without the proper objections by the Creditors through MAC.    Any

6   disqualification of MAC will severely prejudice the Creditors and rob them of their counsel of

7   choice for the past five years.  This Court should therefore deny the Motion for Disqualification.

8          Dated this 21st day of August, 2013.

9

10                                  MARQUIS AURBACH COFFING

11

12                          By /s/ Albert G. Marquis
                               Albert G. Marquis, Esq.
13                             Nevada Bar No. 1919
                               10001 Park Run Drive
14                             Las Vegas, Nevada  89145
                               Attorneys for John D. O'Brien
15                                  Profit Sharing Plan

16

17

18

19

20

21

22

23

24

25

26

27

28

**MARQUIS AURBACH COFFING**
10001 Park Run Drive
Las Vegas, Nevada 89145
(702) 382-0711 FAX: (702) 382-5816

MAC:05505-025 2036699_5 8/21/2013 1:58 PM

# Exhibit A

1

1    UNITED STATES BANKRUPTCY COURT

2         DISTRICT OF NEVADA

3        LAS VEGAS, NEVADA

4  In re:  CH ANGELUS II, LLC,      )  E-Filed:  01/29/13
                                    )
5                                   )
            Debtor.                 )  Case No.
6                                   )  BK-S-12-22209-MKN
   _____)  Chapter 7

7

8

9

10

11         TRANSCRIPT OF PROCEEDINGS
                     OF
12      MOTION TO DISMISS CASE, NO. 14
                  VOLUME 1
13    BEFORE THE HONORABLE MIKE K. NAKAGAWA
         UNITED STATES BANKRUPTCY JUDGE

14
            Wednesday, January 23, 2013
15
                  2:30 p.m.
16

17

18

19

20

21

22

23  Court Recorder:      Helen C. Smith

24

25  Proceedings recorded by electronic sound recording;
    transcript produced by transcription service.

2

```
1    APPEARANCES:

2    For the Debtor:          SPENCER M. JUDD, ESQ.
                              9420 Mountainair Avenue
3                             Las Vegas, Nevada 89134

4    For John O'Brien,        ZACHARIAH LARSON, ESQ.
     and Equity Interest      Marquis Aurbach Coffing
5    Holders in the           10001 Park Run Drive
     Debtor:                  Las Vegas, Nevada 89145
6
     For the Trustee:         HOWARD C. KIM, ESQ.
7                             Howard C. Kim & Associates
                              400 North Stephanie Street
8                             Suite 160
                              Las Vegas, Nevada 89014
9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

3

1          (Court convened at 03:01:52 p.m.)

2              THE COURT:  Item 7, CH Angelus II, LLC.

3          (Colloquy not on the record.)

4              MR. JUDD:  Good morning, Judge.  Spencer Judd on

5      behalf of CH Angelus II.

6              THE COURT:  Okay.  All right.

7              MR. LARSON:  Good afternoon, your Honor.  Zach Larson

8      on behalf of CH Angelus II.

9              THE COURT:  Okay.

10             MR. LARSON:  Your Honor, I guess I'll start with this

11     is a rather factually-heavy motion.

12             THE COURT:  Okay.

13             MR. LARSON:  And I don't know if your Honor's had a

14     chance to read it all.

15             THE COURT:  I've had a brief chance to read through

16     all of it.  It's somewhat, well, not only factually unusual.

17     It's procedurally unusual because we have I guess one party who

18     I guess -- you're representing --

19             MR. LARSON:  John O'Brien --

20             THE COURT:  -- the managing --

21             MR. LARSON:  -- as --

22             THE COURT:  -- the managing member and equity

23     interest holders of the debtor entity, and Mr. Judd is here on

24     behalf of the actual debtor entity in opposition to the motion,

25     correct?

4

1          MR. LARSON:  Yes.  Essentially, this was what we call

2   or what I'll refer to as a rather rogue Chapter 7 bankruptcy,

3   your Honor.

4          THE COURT:  Okay.

5          MR. LARSON:  In a nutshell, we don't believe that

6   procedurally under state law in any manner did CH Angelus have

7   permission to file this bankruptcy.

8          THE COURT:  So then should the Court treat it as an

9   involuntary petition?

10         MR. LARSON:  We're trying to just get it dismissed,

11  your Honor, for the purpose of the fact there's no reason,

12  zero, other than a state court litigation tactic for this

13  case --

14         THE COURT:  Okay.

15         MR. LARSON:  -- to be here.

16         THE COURT:  All right.

17         MR. LARSON:  It was alleged that this had to be filed

18  to stop a tax sale.  Those taxes were paid by all the other

19  members other than Mr. Gayler, so there was no tax sale.

20      The creditor list, the schedules, as insufficient as they

21  are, they're basically all Mr. Gayler's personal debts.  The

22  only thing he really puts on SOFA is disputed contributions or

23  distributions that were Court ordered through a settlement

24  process in one of the various state court litigations.

25         THE COURT:  All right.

1          MR. LARSON:  Simply put, your Honor, after digesting

2   like 35 pages plus of just factual history, basically, there's

3   no reason for this to be here.  It shouldn't be in front of

4   your Honor.

5        There is nothing for a trustee basically to look into

6   because there's really no assets and no debts that should be

7   administered.  This case simply should not be here.

8          THE COURT:  All right.

9          MR. LARSON:  Even giving him the benefit of the doubt

10  assuming, assuming, he was unaware of all the state court

11  actions --

12         THE COURT:  I'm sorry.  When you say he was

13  unaware --

14         MR. LARSON:  Sorry.  Mr. Gayler.

15         THE COURT:  All right.

16         MR. LARSON:  Even assuming he was unaware of all the

17  state court actions wherein the judge has basically allowed

18  various orders withdrawing his ability to be a managing member,

19  let's assume that.

20         THE COURT:  All right.

21         MR. LARSON:  Even if you assume he had no knowledge,

22  under state law here in Nevada in order to file, properly file,

23  a Chapter 7, he would have had to get the permission from all

24  the other nonmanaging members or at least wise a majority.

25  Nothing of that was done.

6

```
 1          In fact, your Honor, he filed a corporate resolution

 2     allowing a Chapter 11 bankruptcy to be filed, and he just

 3     signed it himself, no notice, no nothing.

 4          There is no reason this should be here.  There's no reason

 5     it should be allowed to be here.  It has already delayed and

 6     cost quite a bit of money to be here, and it just shouldn't be.

 7          And, your Honor, in our motion -- you notice why we asked

 8     that this case be dismissed immediately -- we did want to hold

 9     open if your Honor felt it appropriate for possible sanctions

10     in this jurisdiction.  This is the case where you should never

11     be in front of your Honor.  You just shouldn't.

12               THE COURT:  All right.  Anything else?

13               MR. LARSON:  No, your Honor.  I did want to point out

14     -- I did forget.  I believe in the reply, your Honor, which is

15     -- I can't see, your Honor.  It was the last thing filed on

16     January 16th, the docket number.

17          I believe page 13 kind of walks your Honor through the most

18     concise membership interest of how everybody voted via either

19     in-person voting or irrevocable proxy, and you can see exactly

20     how there should be no authority whatsoever of Mr. Gayler to

21     file this Chapter 7.

22               THE COURT:  I see.  Okay.  All right.  Let's see.  Is

23     Mr. Rosenberg here at all?

24               MR. JUDD:  Mr. --

25               THE COURT:  Mr. Rosenberg, the Chapter 7 Trustee in
```

1    this case.  Is he here?

2          MR. KIM:  Your Honor --

3          MR. JUDD:  Mr. Kim is here.

4          MR. KIM:  -- Howard Kim on behalf of Mr. Rosenberg.

5    The trustee --

6          THE COURT:  All right.

7          MR. KIM:  -- reserves his judgment until the hearing

8    comes.  We have no factual basis and no investigation.  We're

9    just going to wait until the parties hash it out.

10         A trustee assumes that every petition is filed in good

11   faith.  There is the opposition from the LLC to file the

12   petition.

13         And the order that Mr. Larson is talking about simply

14   appoints an additional member to the LLC.  It does not remove

15   Mr. Gayler --

16         THE COURT:  Well, isn't --

17         MR. KIM:  -- as the acting manager.

18         THE COURT:  Isn't Mr. Rosenberg the trustee of

19   Mr. Gayler's bankruptcy estate?

20         MR. KIM:  Yes, your Honor.  That --

21         THE COURT:  Why isn't --

22         MR. KIM:  That case --

23         THE COURT:  -- he --

24         MR. KIM:  -- just got converted, and --

25         THE COURT:  Why is he not taking a position with

1    respect to this matter?

2         MR. KIM:  Because he hasn't had time to wrap his head

3    around the case, yet, your Honor.  That is --

4         THE COURT:  I see.

5         MR. KIM:  That case has been going on for over

6    two years now, and he --

7         THE COURT:  Okay.

8         MR. KIM:  He just took the case --

9         THE COURT:  All right.  So --

10        MR. KIM:  -- from Mr. Lisowski.

11        THE COURT:  So Mr. Rosenberg is taking the place of

12   Mr. Lisowski, correct?

13        MR. KIM:  Yes, your Honor.

14        THE COURT:  Is it for all of the adversary

15   proceedings that have arisen out of the Gayler matter?

16        MR. KIM:  That is my understanding, your Honor.

17        THE COURT:  I see.

18        MR. KIM:  And he's also decided to retain this

19   general counsel for Mr. Lisowski which is Marquis & Aurbach.

20   The firm that's representing Mr. Larson is the same firm --

21        THE COURT:  Okay.

22        MR. KIM:  -- which --

23        THE COURT:  All right.

24        MR. KIM:  -- raises --

25        THE COURT:  Thank you.

1          MR. KIM:  -- an interesting issue.

2          THE COURT:  Okay.  Thank you.  All right.

3      Mr. Judd.

4          MR. JUDD:  Good afternoon, Judge.  Really, there's

5  only one issue, does Mr. Gayler have authority to sign a

6  resolution to authorize this bankruptcy.

7      We think if you go through the pages and pages that were

8  filed by the other party -- and there's 16 pages in the motion,

9  25 pages in the reply, 183 pages of exhibits -- really, it

10  comes down to a review of the operating agreement.

11      Section 11.01 makes it clear that all of the nonmanaging

12  members gave to Mr. Gayler a power of attorney to act on their

13  behalf.

14      There is an order at page 51 of 52 in the second set of

15  exhibits of the reply.  It's page 7 of 8 of an order dated

16  08/24/12 in the state court action.

17      And that clearly states that there was a meeting that took

18  place pursuant to an order of the Court involving the LLC.

19  Mr. O'Brien was the person who convened that meeting.

20      Mr. O'Brien was appointed by the Court or asked by the

21  Court or authorized by the Court, however you want to look at

22  it, to hold that meeting simply to authorize a settlement.

23      And if you look at that order on again page 7 of 8 of that

24  order dated 08/24/12, that order clearly states that there is

25  no removal of Mr. Gayler as the managing member.

1        Now, Mr. Gayler is also the managing member of Groth, LLC,

2   CH Pichon, LLC, and Harlan, LLC, who are members of

3   CH Angelus II.  They are the nonvoting, nonmanaging members.

4   He had authority to act on their behalf.  He did so.

5        Your Honor, it was my fault.  In preparing for this

6   bankruptcy, I did have two different resolutions, one for an

7   11, one for 7.

8        We refiled or filed the Chapter 7 resolution after it was

9   brought to our attention that I filed the wrong resolution with

10   the petition, but there was a resolution in place.  I did have

11   that.  I filed the wrong one.  There was authority to file

12   this.

13        Mr. Gayler is currently the managing member.  The

14   Secretary of State's Web site clearly shows that he's the

15   managing member.

16        We have Mr. O'Brien and Mr. Moore who are very

17   sophisticated.  Now, Mr. O'Brien is an attorney.  Mr. Moore is

18   a sophisticated investor listed in over 30 entities on the

19   Secretary of State Web site.  They have Marquis & Aurbach, a

20   very sophisticated law firm.

21        None of those entities saw fit after that August order to

22   go in and change the Secretary of State Web site or to file an

23   amendment.  They didn't --

24             THE COURT:  Okay.

25             MR. JUDD:  -- have authority to do so.  Mr. Gayler is

1   the managing member.  He was authorized to take action on

2   behalf of the LLC.

3      It was his belief that a bankruptcy was necessary.  There

4   were taxes that were due that would affect the assets and

5   liabilities of the company.  Those taxes were paid after the

6   bankruptcy filing.

7      And, Judge, it's simply our position that you go through

8   those.  If you take the time to go through those documents,

9   you'll see there's a lot of red herrings there, but Mr. Gayler

10   is the managing member.

11      He does have authority under the operating agreement to act

12   on behalf of the others.  He was the managing member of those

13   other nonmembers if that's necessary, and he signed that

14   resolution.  He had authority to do so.

15      The bankruptcy was filed, and now we'll turn it over to the

16   trustee to take care of some other issues that we think are

17   there.  But for this --

18          THE COURT:  Okay.

19          MR. JUDD:  For purposes of today, simply, it's our

20   assertion and our belief that he did have authority to do that

21   filing.

22          THE COURT:  Okay.  All right.  Anything else,

23   Mr. Judd?

24          MR. JUDD:  No.

25      Thanks.

1          THE COURT:  That's it?  Okay.  All right.

2     Mr. Larson, anything else to add?

3          MR. LARSON:  Only, your Honor, that the state court

4     specifically didn't rule on removing him as the manager because

5     it wasn't --

6          THE COURT:  Okay.

7          MR. LARSON:  -- before the Court.

8          THE COURT:  All right.

9          MR. LARSON:  And that they didn't feel that they

10    needed to issue an order on that because the members were

11    sophisticated and could vote.  They held that meeting and voted

12    him out.

13         THE COURT:  All right.

14         MR. LARSON:  So that's why it wasn't a court order,

15    your Honor.

16         THE COURT:  Okay.  All right.  Counsel, I can do one

17    of two things.  I can either deny the motion to dismiss without

18    prejudice or I can continue this for a sufficient amount of

19    time for Mr. Rosenberg to get up to speed.

20    Mr. Kim, how much time does Mr. Rosenberg need?

21         MR. KIM:  Your Honor, I think --

22         THE COURT:  Can't you --

23         MR. KIM:  -- he would need --

24         THE COURT:  Come to the microphone --

25         MR. KIM:  -- at least 60 --

1           THE COURT:  -- please.

2           MR. KIM:  Your Honor, I think he would need at least

3    60 days.  It was just not 'til last week he got in touch with

4    Mr. Lisowski, finally, to be able to talk about the case.

5           THE COURT:  All right.  So Mr. Lisowski is out of the

6    Gayler matters for the Gayler case in chief --

7           MR. KIM:  Yes, your Honor.

8           THE COURT:  -- and all the Gayler-related adversary

9    proceedings, correct?

10          MR. KIM:  I cannot speak for all the adversary

11   matters, but I would think that if all the adversaries arise

12   out of Mr. Gayler's personal case I --

13          THE COURT:  All right.

14          MR. KIM:  I think he was in charge of those cases

15   also, your Honor.

16          THE COURT:  All right.  Mr. Rosenberg has filed an

17   application to employ it looks like your firm in connection

18   with --

19          MR. KIM:  With --

20          THE COURT:  -- this --

21          MR. KIM:  Yes, your Honor.

22          THE COURT:  -- Chapter 7, correct?

23          MR. KIM:  And he's staying with Marquis & Aurbach

24   because they've been working on the case for over two years.  I

25   know for a fact --

1           THE COURT:  All right.

2           MR. KIM:  -- that Mr. Rosenberg has been meeting with

3    Mr. Aurbach himself several times --

4           THE COURT:  All right.

5           MR. KIM:  -- to try to come up to speed on this case

6    because there were no documents provided and missing a lot of

7    important information, so he's just now got in touch with

8    Mr. Lisowski there to try communicate --

9           THE COURT:  Okay.

10          MR. KIM:  -- about this case --

11          THE COURT:  All right.

12          MR. KIM:  -- your Honor.

13          THE COURT:  Given your prior comment, is he thinking

14   about changing counsel from the Marquis & Aurbach firm?

15          MR. KIM:  Your Honor, without going out on a limb, I

16   don't think so, your Honor, because Marquis & Aurbach was hired

17   on a contingent basis.  My understanding --

18          THE COURT:  All right.

19          MR. KIM:  -- is that they have expended over $900,000

20   in fees and in costs so far, and --

21          THE COURT:  Okay.

22          MR. KIM:  And it would be very burdensome for someone

23   else to come up to speed on this case, although, you know, the

24   parties have discussed their potential conflict arising from

25   representing both sides of the fence, so to speak.

1       THE COURT:  All right.

2       MR. KIM:  But I can represent to the Court that

3    Mr. Rosenberg is inclined to stay with Marquis & Aurbach for

4    now, your Honor.

5       THE COURT:  All right.  Well, my inclination, then,

6    is to continue this for 60 days for a status to allow

7    Mr. Rosenberg to get up to speed.

8       I need to have a status memo or some type of statement from

9    Mr. Rosenberg filed at least a week prior to the continued

10   hearing.  Does that --

11      MR. KIM:  Would you like --

12      THE COURT:  -- make sense?

13      MR. KIM:  -- it have it filed in both cases,

14   your Honor?

15      THE COURT:  Well, again, it's only affecting this

16   case --

17      MR. KIM:  Okay.

18      THE COURT:  -- for now.

19      MR. KIM:  Right.

20      THE COURT:  But I assume that it will bleed into the

21   other case as well, so I would think that just filing the

22   status memo in this case would be sufficient.  All right?

23      MR. KIM:  Your Honor, I would ask don't hold me too

24   hard and fast to the 60 days.  It may take a little longer,

25   maybe even shorter, but I would definitely inform the Court if

1   we need additional time.

2          THE COURT:  All right.  If you need additional time,

3   again, I assume you'd contact Mr. Larson and Mr. Judd and

4   figure out a different date if the 60 days doesn't work.  Is

5   that fair?

6          MR. KIM:  Yes, your Honor.

7          THE COURT:  All right.  What do we have 60 days out

8   for a status?

9       In the meantime, don't you have a 341 scheduled for

10  February 8th?

11      Is that right, Mr. Judd?

12         MR. JUDD:  We have a continued 341, yes, your Honor.

13         THE COURT:  All right.  And --

14         MR. JUDD:  And my assumption would be that they would

15  have continued that again, but I don't know.

16         THE COURT:  I see.  Did Mr. Gayler appear at the

17  initial 341?

18         MR. JUDD:  Yes.  Yes, he was.  He was there, and he

19  also answered questions.

20         THE COURT:  I see.  Okay.  Well, I'll simply put this

21  out 60 days for a status.

22      What do we have?

23         THE CLERK:  Your Honor, I have April 3rd at 2:30.

24         THE COURT:  April 3 at 2:30?

25         THE CLERK:  Yes.

1          THE COURT:  All right.  Counsel, it will be continued

2   for a status.

3       Mr. Kim, have I guess the status report on file a week

4   before that.

5          MR. KIM:  We'll do, your Honor.

6          THE COURT:  Okay.

7          MR. KIM:  Thank you.

8          THE COURT:  All right.  Thank you.

9          MR. JUDD:  Thank you.

10          MR. LARSON:  Thank you, your Honor.

11          THE COURT:  You're welcome.

12       (Court concluded at 03:15:17 p.m.)

13

14

15

16

17

18

19

20

21

22

23

24

25

1    I certify that the foregoing is a correct transcript

2  from the electronic sound recording of the proceedings in

3  the above-entitled matter.

4

5

6  /s/ Lisa L. Cline                        01/29/13

7  Lisa L. Cline, Transcriptionist            Date

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25