**Marquis Aurbach Coffing**
Albert G. Marquis, Esq.
Nevada Bar No. 1919
10001 Park Run Drive
Las Vegas, Nevada 89145
Telephone: (702) 382-0711
Facsimile: (702) 382-5816
amarquis@maclaw.com
  Attorneys for John D. O'Brien
  Profit Sharing Plan

E-Filed: **September 3, 2013**

UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF NEVADA

| | |
|---|---|
| In Re:<br><br>WILLIAM GAYLER,<br><br>                 Debtor. | Case No.:  BK-S-09-31603-MKN<br>Chapter:    7<br><br>Hearing Date: September 4, 2013<br>Hearing Time: 3:00 p.m. |

## SECOND DECLARATION OF PHILLIP S. AURBACH

I, Phil Aurbach, am submitting the following facts in support of Marquis Aurbach Coffing's (Maclaw's[1]) Opposition to Motion to Disqualify. I have personal knowledge, unless stated otherwise, and am competent to testify to the following facts:

### I.    INTRODUCTION

1.    <u>Background.</u>  Mr. Gayler made a lot of money creating entities[2] (usually limited liability companies ("LLCs")), buying real property for the various LLCs, managing and controlling the LLCs, and, as manager, deciding when to sell the property (usually at a profit) subject to the requisite member approval. Mr. Gayler would own a percentage of each LLC, sometimes individually or through another entity. I believe I had invested with Mr. Gayler, in three or 4 of limited liability companies that Gayler manages: Polyrus, LLC 5% (which may own some of Sunset III); Sunset 8, LLC 2.5%; and Sunset V, LLC 20%. Mr. Gayler's business plan worked well until the real estate downturn. Then, in 2008 and 2009, creditors started suing

---

[1] Maclaw has approximately 40 lawyers located in two buildings in Las Vegas.

[2] On June 29, 2010, Gayler listed 69 entities on his Schedule B (Dkt# 105).

MAC:05505-025 2061210_1 9/3/2013 3:43 PM

Gayler.[3] According to his 2004 examination, Gayler saw the downturn in the economy coming in 2008 and 2009.[4]

2. Mr. Hayes, another shareholder at Maclaw, had an attorney-client relationship with several creditors/investors of Mr. Gayler, John O'Brien, Don Campbell and Colby Williams (all attorneys) as well as Barry Moore and a few others (referred to herein as "Maclaw Creditors" of Mr. Gayler). Dale Hayes represented these Maclaw Creditors in a state court lawsuit where he was attempting to invalidate unauthorized loans entered into by Mr. Gayler and stop foreclosures pending against property owned by CH Angelus, LLC ("Angelus I"), CH Angelus II, LLC ("Angelus II") and Ch. Angelus IV, LLC ("Angelus IV").

3. On November 16, 2009[5] an involuntary Bankruptcy was filed against Mr. Gayler.

4. One of Dale Hayes' clients, John O'Brien, who I had known since 1977 when I started practicing law, passed me in the hallway of one of Maclaw's buildings and told me that Mr. Gayler was about to receive over $100,000, which he believed were assets of the estate, and asked if there was any way I could contact Mr. Lisowski to get that money for the bankruptcy estate instead of allowing it to go to Mr. Gayler. I contacted Mr. Lisowski, and he suggested I get appointed as Special Counsel to help get assets into the bankruptcy estate.

5. In April 2011, I applied and on May 23, 2011,[6] I was appointed Special Counsel to James Lisowski, (former) trustee of the above-captioned bankruptcy estate, to recover, preserve, and protect assets of the bankruptcy estate (the "Estate") for a 1/3 contingency fee.[7]

---

[3] The Involuntary Bankruptcy Petition was filed November 17, 2009 (Dkt# 1), and lists three judgment creditors of Gayler totaling $819,170.

[4] See **Exhibit 1** (October 3, 2011 2004 Examination of William Gayler) at 26–30.

[5] Dkt# 1.

[6] Dkt# 205.

[7] My duties were to assist and advise the trustee regarding potential fraudulent conveyance and preference actions, including but not limited to preparing adversary complaints, conduct discovery, prepare motions, provide support services including 1) instituting or defending adversary proceeding or contested matters in which the Trustee is a party, 2) to assist in recovery, protecting and preserving assets for the estate, and to advise the trustee with other necessary legal services. See Doc 192 Application entered 4/14/11 and Order Doc 205 entered 5/23/11.

MAC:05505-025 2061210_1.docx 9/3/2013 3:16 PM

When I applied to be Special Counsel in May 2011, I did not perceive a conflict since I was going after assets owned by Gayler, individually, pre-bankruptcy, usually fraudulent transfers, to bring them into the estate. On the other hand, the Maclaw creditors were suing to invalidate unauthorized loans entered into by Gayler as Managing Member on behalf of non-bankrupt entities, Angelus I, Angelus II and Angelus IV. Part of the purpose of the Maclaw creditors' lawsuits was to stop foreclosures relating to fraudulent deeds of trust against property owned by Angelus I, Angelus II and Angelus IV. These entities were not owned by Mr. Gayler. Mr. Gayler only claimed to hold membership interests in these entities. If Angelus I, Angelus II and Angelus IV were successful in saving the investment property, Gayler's membership interests would not be wiped out through foreclosure. If the Maclaw creditors were not successful, Mr. Gayler would have no ownership interest to claim in Angelus I, Angelus II, or Angelus IV because the investment properties would be gone. Thus, the interests of the Maclaw creditors and the bankruptcy estate were aligned – save the investment properties. There was no conflict.

6. <u>Orderly Administration of the Estate.</u> Mr. Rosenberg claims that I have prevented an orderly administration of the Gayler estate. This is incorrect. Mr. Rosenberg ignores the fact that all of the entities that Gayler managed were owned by TGF Holdings. None of them are part of Mr. Gayler's bankruptcy estate. Mr. Rosenberg is the trustee of CH Angelus II which is a creditor of the Gayler estate in which he is the trustee as well. He conveniently separates those two for purposes of his administration and fiduciary duties to both sets of creditors, but forgets that Sunset V as well as the CH Angelus entities are not assets of Mr. Gayler.

7. <u>Sunset V, LLC</u>

| **Paragraph 8 -- Rosenberg's Declaration.** | **My response.** |
|---|---|
| Mr. Rosenberg states in his August 28, 2013 declaration Dkt# 556 that in our first meeting I "let it slip" that I was an investor in one of the Gayler entities. | I told Mr. Rosenberg this fact. "Let it slip" sounds like I was hiding something. There was nothing to hide. |

MAC:05505-025 2061210_1.docx 9/3/2013 3:16 PM

| | |
|---|---|
| Rosenberg went on to say that he didn't understand how I could represent the estate "when he had a personal pecuniary interest in the outcome of some of the very same property disputes that we were litigating in bankruptcy." | Sunset V was not a Gayler bankruptcy asset. Gayler's approximate 10% interest in Sunset V had been transferred to TGF Holdings, a limited Partnership. Sunset V owned real property. When it was sold, the net proceeds were distributed to the owners based upon their ownership regardless of Gayler's bankruptcy. |
| Finally, Mr. Rosenberg said that I was defensive and implied that because I was on a contingency, the estate was not being harmed. | Mr. Rosenberg is mistaken. I was not defensive, and didn't slough off his comment because I was on a contingency. However, I could not believe his attack on me and my firm when I worked so hard to recover almost $700,000 in assets for the estate. |

8.   **The Settlement Agreement**

| **Paragraphs 9 & 10 — Rosenberg Declaration.** | **My response.** |
|---|---|
| Mr. Rosenberg states in his August 28, 2013 declaration Dkt# 556 that "According to Aurbach, the Former Trustee did not see much value in the case because the largest creditor was the IRS and there was unlikely to be any distribution to general unsecured creditors. Aurbach also indicated that the former Trustee had, for lack of a better word, abdicated control and decision making authority for the case to him." | Although the IRS is the largest creditor, I did not say these things to Rosenberg. Mr. Lisowski knew that I had experience in pre judgment remedies and fraudulent transfers, so he gave me much responsibility to track down assets. It is not correct that Lisowski "abdicated control and decision making" nor did Lisowski give me complete authority regarding settlement.<br><br>Mr. Lisowski was aware of and was involved in settlement discussions. |

MAC:05505-025 2061210_1.docx 9/3/2013 3:16 PM

| | |
|---|---|
| Mr. Rosenberg states that the two sides were within $20,000 of a mutually agreeable number that could be paid to Gayler in cash as part of the settlement; yet, Aurbach told me he unilaterally ended settlement discussions | When the creditors unanimously rejected the settlement proposal, I went back into the litigation mode preparing several motions for summary judgment. I did not unilaterally end settlement discussions. |
| Mr. Aurbach had an intense emotional dislike for Gayler and his unwillingness to accept blame for a series of poor decisions by Maclaw that carried excessive legal costs and seemed to only result in negative rulings affecting the recovery of assets for the estate. | My emotional state relative to Mr. Gayler was disbelief. I could not believe that someone could get away with stealing millions of dollars from a bankruptcy estate and get away with it. The negative rulings mentioned by Mr. Rosenberg were attempts to shortcut the proceedings by bringing Mr. Gayler's fraudulent transfers to the Court by motion instead of by adversary proceedings. This was corrected. There were never any excessive legal costs to the estate. |

9. **CH Angelus I and CH Angelus II**

| | |
|---|---|
| **Paragraphs 13-18—Rosenberg Declaration.** | My response. |
| Mr. Rosenberg states in his August 28, 2013 declaration Dkt# 556 that he asked Jessica Goodey, my associate, what participation the bankruptcy estate had in the state court proceedings to protect the bankruptcy estate's interest in the proceeds because Maclaw had not filed anything in state court to stay | The CH Angelus I and CH Angelus II lawsuits in state court were intended to halt foreclosures under fraudulent deeds of trust and to declare the unauthorized loans entered into by Mr. Gayler null and void. On behalf of the Maclaw creditors, Dale Hayes and Liane Wakayama were successful. Mr. Gayler's membership interests in these entities were not part of the bankruptcy estate. Additionally, Mr. |

MARQUIS AURBACH COFFING
10001 Park Run Drive
Las Vegas, Nevada 89145
(702) 382-0711 FAX: (702) 382-5816

MAC:05505-025 2061210_1.docx 9/3/2013 3:16 PM

| | |
|---|---|
| the state court proceedings. | Gayler transferred his membership interests to TGF Holdings limit Partnership which was not an asset of the bankruptcy estate. Not only didn't the Trustee have standing to intervene in the state court proceedings, there was no reason for the Trustee to get involved and take a position adverse to the Maclaw creditors as the goal was to save the investments. Any interest that Mr. Gayler owned pre-bankruptcy in these entities needs to be resolved in the future. |
| On November 14, 2012 Dale Hayes and Liane Wakayama filed a Motion to Lift Stay on behalf of Maclaw creditors to allow the state court to strip Gayler of any membership interests he owns in CH Angelus or CH Angelus II.<br><br>Mr. Aurbach did not oppose that motion. I believe this was part of a larger pattern being orchestrated by Maclaw to selectively remove assets from the estate and liquidate them outside of bankruptcy. | It is true that the Motion to Lift Stay has yet to be decided. As Special Counsel, I did not oppose the Motion because it was in the Former Trustee's business judgment that the Maclaw creditors should bear the expense and time of arbitrating the issue. This created a potential conflict, but there was no actual conflict. |

10. **Benefit to Maclaw Creditors**

| | |
|---|---|
| **Paragraphs 19-22—Rosenberg Declaration.** | **My response.** |
| Mr. Rosenberg states in his August | The generalized waste of time described by Mr. |

MAC:05505-025 2061210_1.docx 9/3/2013 3:16 PM

*Marquis Aurbach Coffing, 10001 Park Run Drive, Las Vegas, Nevada 89145, (702) 382-0711 FAX: (702) 382-5816*

| | |
|---|---|
| 28, 2013 declaration Dkt# 556 that an enormous amount of time and energy had been wasted by Maclaw and this waste of time gave Maclaw an excuse to go after real assets—the assets Maclaw Creditors were pursuing in state court. | Rosenberg was:<br><br>1) using 2004 exams to obtain thousands of bank and tax documents to follow Mr. Gayler's cash which bypassed the bankruptcy estate, and<br><br>2) several motions which tried to get Mr. Gayler's assets into the bankruptcy estate without the need of an adversary proceeding. Although I thought a motion was proper, this court thought such action should be brought by an adversary proceeding, which we drafted and filed.<br><br>3) each of Mr. Gayler's transactions was tremendously complex and time-consuming.<br><br>In my opinion Mr. Rosenberg has no basis for claiming that I wasted any amount of time. In any event, it makes no sense to say that my efforts somehow gave Maclaw Creditors an "excuse" to go after "the real assets" – whatever that means. |
| Mr. Rosenberg makes many generalizations that Maclaw made numerous mistakes, arguments had been overlooked, prejudicial errors were made and he concludes that these errors were intentional. | I did NOT make mistakes to intentionally benefit Maclaw Creditors. I was trying to find where Mr. Gayler hid millions of dollars. For example, his custom home went into foreclosure before his bankruptcy then, after a friendly foreclosure, it sold after the bankruptcy for $7 Million. The home was in 23 Golden Sunray, LLC which was owned by TGF Holding. We tried to pursue these claims, but again ran into problems because neither Mr. Gayler nor the estate owned 23 |

MAC:05505-025 2061210_1.docx 9/3/2013 3:16 PM

| | |
|---|---|
| | Golden Sunray, LLC which held the claims for relief. |
| **11.    Benefit to Maclaw Creditors** | |
| **Paragraphs 23-29—Rosenberg Declaration.** | **My response.** |
| Mr. Rosenberg claims he "layed his cards on the table" by telling all of the attorneys his concerns that the estate had been compromised by the lack of representation in state court. Additionally, "had I known that some of the attorneys in the room would someday be adverse to the estate, I would not have talked so openly." | Two days after his appointment, Mr. Rosenberg met with Ms. Goodey and me on December 14, 2012. During this meeting, Mr. Rosenberg brought to my attention that he knew Mr. Hayes represented some of Gayler's creditors. Therefore, prior to the February 4, 2013 meeting, Mr. Rosenberg knew that some attorneys at MAC represented creditors.<br>At the February 4, 2013 meeting, the communications were a one-way street where MAC attorneys were bringing Mr. Rosenberg and his counsel, Mr. Kim, up to speed. Everything discussed in relation to the $413,000 is a matter of public record. Certainly Mr. Rosenberg and I did not discuss any strategies regarding the future distribution of those funds. |
| Rosenberg says that he demanded that Maclaw disclose every attorney who had any relationship with Gayler, and that Aurbach did not appreciate my tone and told me that Maclaw would quit. "I thought Aurbach was overreacting and his behavior did not | I did have an attitude toward Mr. Rosenberg. We just couldn't have a rational discussion about the law and facts. Mr. Rosenberg would continuously overlook the almost $700,000 I had sequestered and brought into the estate, and he instead claimed that we should be taking action that had no basis in law. Plus, Mr. Rosenberg had hired |

MAC:05505-025 2061210_1.docx 9/3/2013 3:16 PM

MARQUIS AURBACH COFFING
10001 Park Run Drive
Las Vegas, Nevada 89145
(702) 382-0711 FAX: (702) 382-5816

| | |
|---|---|
| give me confidence that Maclaw was competent." | Howard Kim as his attorney. I did not believe I could represent Mr. Rosenberg because of our divergent views of who the bad guy was and how the litigation should be handled. I thought Gayler's fraud should be the focus. Mr. Rosenberg thought Maclaw and I should be the focus. Since his appointment, Mr. Rosenberg was further focused on settling with Mr. Gayler no matter if the creditors approve the settlement terms or not. |

12.   **Settlement**

| Paragraphs 30-38—Rosenberg Declaration. | My response. |
|---|---|
| Mr. Rosenberg states in his August 28, 2013 declaration Dkt# 556 that Mr. Kim asked Mr. Hayes how he could be serving two masters. | Mr. Hayes had been representing the Maclaw Creditors for years attempting to stop the foreclosures, to rectify the harm caused by Gayler's self-dealing and fraud, and to save the investments. It took a slide show to explain how Gayler committed his fraud on the Maclaw creditors with undisclosed deeds of trust and how he hid assets from his bankruptcy by fraudulent transfers of over 40 membership interests. There were not two masters. I was going after assets that should be assets of the estate. Mr. Hayes was attempting to stop foreclosures against entities and save assets, which were not part of the bankruptcy estate. |

| | |
|---|---|
| Mr. Rosenberg claims that at that February meeting he first learned that **Gayler had a right to proceeds** coming from settlement of the fraudulent deed of trust on CH Angelus I and CH Angelus II property. | Mr. Rosenberg could not understand that Mr. Gayler had no direct right to any of these proceeds, nor did the bankruptcy estate have standing in the state court action. Mr. Rosenberg decided the law and facts shouldn't get into the way of his attack on the Maclaw attorneys. I think the only way to understand this is from the summary and diagram below: |

    a.    **CH Angelus** (referred to as CH Angelus I) has many investors and it is entitled to $582,000[8] from the title insurance settlement. Gayler claims to own a 50% membership interest even though he walked away with $1.6MM of the unauthorized $2.0MM loan proceeds. Thus, $291,000 of the settlement proceeds is in dispute. Barrett owned 30% ($175,000). Loerwald owned 10% ($58,000) and the Gayler Trust owned 10% ($58,000). The issues to be litigated in state court are: i) who owns Barrett and Loerwald's 40% because those interests are related to Gayler's fraud upon Ch Angelus I; and ii) who gets the distribution to Gayler's trust (which has been transferred to TGF Holdings).



---

[8] I am using round numbers for ease of reference.

MAC:05505-025 2061210_1.docx 9/3/2013 3:16 PM

b. **CH Angelus II** has many investors and it is entitled to $420,000[9] from the title insurance settlement. CH Pichon, Harlan and Groth are separate entities in which Mr. Gayler only owned a small percentage. He transferred his ownership of those entities as well as the Gayler Trust to TGF Holdings.

c. The state court litigation of the ownership rights and distribution of $413,000 in proceeds is at issue and right now. Nothing can happen until Judge Nakagawa decides the Motion to Lift Stay. I have not been involved in the state court litigation that gave rise to the title insurance money since the estate has no interest other than if the Trustee were to win the fraudulent transfer litigation against TGF Holdings.

Dated this 3rd day of September, 2013.

_/s/ Phillip S. Aurbach_
Phillip S. Aurbach, Esq.

---

[9] I am using round numbers for ease of reference.

MARQUIS AURBACH COFFING
10001 Park Run Drive
Las Vegas, Nevada 89145
(702) 382-0711 FAX: (702) 382-5816