**REPL**
HOWARD C. KIM, ESQ.
Nevada Bar No. 10386
E-mail: howard@hkimlaw.com
JACQUELINE A. GILBERT, ESQ.
Nevada Bar No. 10593
E-mail: jackie@hkimlaw.com
KATHERINE C.S. CARSTENSEN, ESQ.
Nevada Bar No. 10656
E-mail: katherine@hkimlaw.com
HOWARD KIM & ASSOCIATES
1055 Whitney Ranch Drive, Suite 110
Henderson, Nevada 89014
Telephone: (702) 485-3300
Facsimile: (702) 485-3301
*Attorneys for David A. Rosenberg, Chapter 7 Trustee*

E-filed on: March 24th, 2014

HOWARD KIM & ASSOCIATES
1055 WHITNEY RANCH DRIVE, SUITE 110
HENDERSON, NEVADA 89014
(702) 485-3300 FAX (702) 485-3301

## UNITED STATES BANKRUPTCY COURT

## DISTRICT OF NEVADA

In re:

WILLIAM A. GAYLER

Debtor.

Case No.: BK-S-09-31603-MKN
Chapter 7

**OMNIBUS REPLY IN SUPPORT OF MOTION FOR LEAVE TO APPEAL**

Hearing Date: N/A
Hearing Time: N/A
Place: Foley Federal Bldg.
300 Las Vegas Blvd. S.
Las Vegas, NV 89101

Hon. Mike K. Nakagawa

David A. Rosenberg, Chapter 7 Trustee ("Trustee") for the bankruptcy estate of William A. Gayler ("Debtor" or "Gayler"), by and through his counsel of record, Howard Kim & Associates, respectfully submits this Omnibus Reply in Support of the Motion for Leave to Appeal ("Reply"). Trustee, by and through his original motion, seeks to appeal the United States Bankruptcy Court District of Nevada's *Order on Trustee's Motion to Disqualify Counsel for John D. O'Brien Profit Sharing Plan and Counsel for Barry R. Moore and Janie Moore as Co-Trustees of the BAMM Living Trust Dated July 16, 2003, Groth, LLC, CH Pichon, LLC and Harlan, LLC Through Their Managing Member John O'Brien* ("Order") entered in the above-captioned bankruptcy case on February 24, 2014 [Dkt. No. 591].

///

This Reply is made and based on the pleadings and papers on file herein and the attached Memorandum of Points and Authorities.

Dated this 24th day of March, 2014.

HOWARD KIM & ASSOCIATES


/s/Howard C. Kim
Howard C. Kim, Esq.
Nevada Bar No. 10386
Jacqueline A. Gilbert, Esq.
Nevada Bar No. 10593
Katherine C.S. Carstensen, Esq.
Nevada Bar No. 10656
1055 Whitney Ranch Drive, Suite 110
Henderson, Nevada 89014
*Attorneys for David A. Rosenberg, Chapter 7 Trustee*

MEMORANDUM OF POINTS AND AUTHORITIES

I.   INTRODUCTION

Marquis Aurbach Coffing's ("MAC"), and by extension Zachariah Larson, Esq.'s ("Larson")(collectively referred to as the "Appellees") attempt to gain leverage for its lucrative and beloved clients, the MAC Creditors,[1] by seeking out and wrongfully obtaining employment as special counsel for James F. Lisowski ("Former Trustee") and Trustee, has forced the Trustee to pursue disqualification in this case.

Trustee believes that Appellees inappropriate dual representation of the Former Trustee, the Trustee, and the MAC Creditors in this case, has significantly interfered and continues to interfere with the Trustee's ability to effectively administer this estate. Among its wrongdoing, Appellees have:  (1) Made false representations to the Bankruptcy Court to gain employment expressly prohibited by the Bankruptcy Code;[2] (2) Taken completely opposition positions on the

_____

[1] The MAC Creditors shall hereinafter refer to some or all of the following:  John O'Brien, individually and as Trustee of the John D. O'Brien Profit Sharing Plan, Donald J. Campbell, J. Colby Williams, William Godfrey, Barry R. Moore, Janie Moore, Barry R. Moore and Janie Moore, Co-Trustees of the Bamm Living Trust Dated July 16, 2003, John Esposito, Lorraine Esposito, Mario P. Borini, Bianca Borini, Joseph Borini, and Eroom Holdings, LP.

[2] In its Memorandum Decision [Dkt. No. 590], the Bankruptcy Court held "MAC's failure to disclose Aurbach's current financial connections with the Debtor was an egregious violation of

HOWARD KIM & ASSOCIATES
1055 WHITNEY RANCH DRIVE, SUITE 110
HENDERSON, NEVADA 89014
(702) 485-3300 FAX (702) 485-3301

same issue—as counsel for the Former Trustee and the Trustee, MAC argued that all of the interests Gayler listed on his Schedule B[3] belonged to the bankruptcy estate[4] but as counsel for the MAC Creditors, MAC seeks to strip Gayler of any interests he may have in Angelus and Angelus II;[5] and (3) Exceeded the scope of its employment to assist the MAC Creditors in their attempt to divest the estate of hundreds of thousands of dollars in the state court.[6]

————— (continued)

FRBP 2014(a).    The Aurbach Verified Statement accompanying the MAC Employment Application represented that Aurbach had no connections with the Debtor, his creditors or other parties in interest even though the Aurbach RAS Declaration revealed that Aurbach had a 20% interest in Sunset V.    And even that was not Aurbach's only financial connection as he only disclosed in response to the Disqualification Motion that he had an interest in Polyrus, LLC, Sunset 8, LLC, and possibly Sunset III, LLC (through Polyrus, LLC).    In view of those connections, neither Aurbach nor MAC were disinterested persons within the meaning of Section 101(14), and so could not have been employed by the bankruptcy estate under Section 327(a)."  *See Memorandum Decision* [590], attached as Exhibit 2 to the Motion for Leave to Appeal, at 42:4-13.    The Bankruptcy Court also noted, in a footnote, that Dale Hayes, another MAC attorney, "also had a prior financial connection to the Debtor through his investment in DA 1147 LLC…which was required to be disclosed under FRBP 2014(a).  *See Memorandum Decision* [590], attached as Exhibit 2 to the Motion for Leave to Appeal, at 42, ft 46.

[3] In his Schedule B, Gayler listed ownership interests in approximately sixty entities ("Gayler Entities"), including interests in CH Angelus, LLC ("Angelus"), CH Angelus II, LLC ("Angelus II"), Apan Wine, LLC ("Apan Wine"), Sunset III, LLC ("Sunset III"), Sunset V, LLC ("Sunset V"), Sunset VIII, LLC ("Sunset VIII"), and Polyrus, LLC ("Polyrus").

[4] On May 9, 2012, MAC, on behalf of the Former Trustee, filed a Motion for Turnover of Non-Exempt Personal Property and Funds Pursuant to 11 U.S.C. §§ 541 and 542 ("Motion for Turnover") [Dkt. No. 443], wherein MAC argued that "all of Debtor's interests listed on his Schedule B are personal property and thus property of the Estate."  *See Motion for Turnover* [Dkt. No. 443] at 6:12-28 and 7:1-14.    Additionally, on June 4, 2012, MAC, on behalf of the Former Trustee, filed a Reply in Support of the Motion for Turnover ("Reply in Support of Turnover") [Dkt. No. 453], where again, MAC argued that Gayler's membership interest in the Gayler Entities were "indisputably property of the Estate."  *See Reply in Support of Turnover* [Dkt. No. 453] at 1:25-27 and 2:1-11.

[5] On November 14, 2012, while still serving as special counsel for the Former Trustee, MAC, on behalf of the MAC Creditors, filed a Motion for Relief from Stay ("Motion for Relief") [Dkt. No. 466] wherein the MAC Creditors sought to "strip [Gayler] of any alleged membership interests he still claims he owns in Angelus and Angelus II."  *See Motion for Relief* [Dkt. No. 466] at 3:1-2.  As Gayler's interests in Angelus and Angelus II were listed in his Schedule B, this position is directly adverse to MAC's previous attempt to bring those interests into the bankruptcy estate.

[6] Gayler's interest in Angelus and Angelus II—taking the form of $413,322.25—is currently being held by the District Court in Case No. A-09-596777-C.  After MAC filed the Motion for Relief on behalf of the MAC Creditors, MAC then filed a Response to the Motion for Relief, allegedly with the Former Trustee's consent, wherein the Former Trustee, surprising, did not oppose the Motion for Relief but rather stated he would "abide by the State Court's ruling in its determination as to whether Gayler has any interest in the non-debtor entities."  *See Response to Motion for Relief* [Dkt. No. 478] at 2:6-8.  In its Memorandum Decision, the Bankruptcy Court noted that MAC's representation of the Former Trustee in connection with the Motion for Relief was "clearly beyond the scope of MAC's employment as special counsel."  *See Memorandum Decision* [Dkt. No. 590], attached as Exhibit 2 to the Motion for Leave to Appeal, at 12, ft 19. The Bankruptcy Court also questioned whether the Former Trustee actually gave MAC consent

HOWARD KIM & ASSOCIATES
1055 WHITNEY RANCH DRIVE, SUITE 110
HENDERSON, NEVADA 89014
(702) 485-3300 FAX (702) 485-3301

HOWARD KIM & ASSOCIATES
1055 WHITNEY RANCH DRIVE, SUITE 110
HENDERSON, NEVADA 89014
(702) 485-3300 FAX (702) 485-3301

This misconduct[7] was expressly documented by the Bankruptcy Court in its Memorandum Decision on the Trustee's Motion to Disqualify ("Memorandum Decision").[8] Blatantly disregarding its own wrongdoing and the conflicts involved in its continued representation of the MAC Creditors, MAC urges this Court to deny Trustee's leave for appeal and just sweep its gross misconduct in this case under the rug.  Trustee, on the other hand, urges this Court to hear this appeal at this time, before further damage can be done to the estate.

Despite Appellees uninformed assertion to the contrary, in at least two instances—one decided by this Court—disqualification orders have been deemed final appealable orders.[9]  For the same reasons those orders were deemed final and appealable, Trustee contends this Order is one and the same and is appealable pursuant to 28 U.S.C. § 158(a)(1).

If however, this Court does not believe this Order is a final order under 28 U.S.C. § 158(a)(1), this Order can be heard on appeal as an interlocutory order.  To the extent this Court

————————————————— (continued)

to file this response on his behalf given his apparent medical condition at the time.  *See Memorandum Decision* [Dkt. No. 590], attached as Exhibit 2 to the Motion for Leave to Appeal, at 12, ft 19 ("On the date MAC filed the response, Lisowski also was the Chapter 7 trustee in a separate case pending in this judicial district, In re Silver State Helicopters, LLC ("SSH"), Case No. 08-10926-MKN ("SSH Proceeding").  In connection with a dispute in that case, Lisowski represented that he underwent emergency back surgery in Colorado on or about November 14, 2012, was admitted to a hospital in Wisconsin for pneumonia through November 22, 2012, and flew to Las Vegas in a debilitated condition to meet with the Office of the U.S. Trustee ("OUST") from December 10 through 13, 2012.  See Reply to Opposition of the Acting United States Trustee's Office and Student Creditor's Objection to the Trustee's Final Report and Application for Compensation and Expenses at ¶¶ 17 through 21 (SSH Docket No. 2905); Declaration of James F. Lisowski, Sr. at ¶¶ 13 and 14 (SSH Docket No. 2905-2); Declaration of Julie A. Lisowski at ¶¶ 4 through 7 (SSH Docket No. 2906).  MAC's representation of Lisowski in connection with the Moore & Campbell RAS Motion clearly was beyond the scope of MAC's employment as special counsel.  Moreover, it is not clear how MAC could even communicate with Lisowski given his apparent medical condition.  Noticeably absent from the record is a declaration from Lisowski attesting to his assent to the relief sought by the Moore & Campbell Parties.")

[7] In addition to this, MAC, on behalf of the MAC Creditors, has and continues to violate the automatic stay in this case.  In District Court Case No. A-10-616929-B, MAC, on behalf of the MAC Creditors, initiated litigation against the Debtor for pre-petition conduct in violation of 11 U.S.C. § 362(a)(1).  More than this, MAC, on behalf of the MAC Creditors, recently filed a lawsuit in the state court against Apan Wine—property that was brought into the estate, with MAC's assistance, by the Former Trustee.  MAC filed this lawsuit against property of the bankruptcy estate on behalf of the MAC Creditors, without lifting stay in the bankruptcy case.

[8] *See Memorandum Decision* [Dkt. No. 590], attached as Exhibit 2 to the Motion for Leave to Appeal.

[9] *See In re 3DFX Interactive, Inc.*, BAP NC-07-1240-KJUMK, 2008 WL 8448326 (B.A.P. 9th Cir. Feb. 6, 2008); *see also In re Albright*, 95 B.R. 560 (N.D. Ill. 1989).

considers the factors enumerated in 28 U.S.C. § 1292(b)[10] in making its decision on whether to grant leave to appeal, Trustee has satisfied all elements of 28 U.S.C. § 1292(b) in this case.

First, this appeal involves a controlling question of law to which there is a substantial ground for a difference of opinion—specifically, whether Nevada has adopted a rebuttable presumption standard in NRPC 1.9. Despite Appellees assertions to the contrary,[11] Nevada law is not clear on this issue. In fact, another Judge from this same Bankruptcy Court previously ruled that the prophylactic nature of NRPC 1.9 discredits any assertion by an attorney that confidential information was not exchanged.[12] Thus, even judges from this same Bankruptcy Court are not in agreement regarding the rebuttable presumption element in NRPC 1.9.

Second, this appeal may materially advance the termination of litigation in this case. If Trustee's settlement agreement is approved, the costly and complex litigation in Adversary Case No. 11-01410-MKN ("Adversary Action") will be terminated. Trustee's chance of defending this settlement from any objections will be greatly increased if Appellees are not permitted to submit objections to the settlement using confidential information they obtained in their over two year representation of the Former Trustee and the Trustee. While the MAC Creditors, of course, will be entitled to retain new counsel in this case and submit objections to the settlement agreement as they see fit, this new counsel, unlike Appellees, will not have intimate knowledge of the strengths and weaknesses of this settlement to derail Trustee's attempt to bring assets into the estate.

Finally, exceptional circumstances exist to warrant this appeal at this time. First, this appeal, unlike other appeals from disqualification orders, is not fact based, but is legally driven. Trustee, for the most part, does not dispute the facts set forth by the Bankruptcy Court in its

---

[10] Pursuant to 28 U.S.C. § 1292(b), the Court may hear an interlocutory appeal if it "involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation…" *See* 28 U.S.C. § 1292(b).

[11] In its Opposition, Appellees state "Nevada law is not unclear and indeed mandates that 'the inference that confidential information was given in the former representation is rebuttable." *See MAC Opposition* [Dkt. No. 616] at 15:2-3.

[12] *See In re Rossana*, 395 B.R. 697, 706 (Bankr. D. Nev. 2008).

HOWARD KIM & ASSOCIATES
1055 WHITNEY RANCH DRIVE, SUITE 110
HENDERSON, NEVADA 89014
(702) 485-3300 FAX (702) 485-3301

HOWARD KIM & ASSOCIATES
1055 WHITNEY RANCH DRIVE, SUITE 110
HENDERSON, NEVADA 89014
(702) 485-3300 FAX (702) 485-3301

1    Memorandum Decision.  Trustee's contention in this appeal is that the Bankruptcy Court erred

2    by adding a rebuttable presumption element to NRPC 1.9—which is unsupported by Nevada

3    Supreme Case precedent[13]—and which effectively led the Bankruptcy Court to the wrong ruling

4    on this issue.  Second, the immediate and irreparable harm that could result if this appeal is not

5    heard at this time warrants leave in this case.  If the Trustee has to wait until the bankruptcy case

6    concludes to appeal this Order, there would be no estate left to administer.  Additionally, the

7    Debtor in this case, has been diagnosed with cancer and given this, Trustee may have only one

8    shot at settling the Adversary Action with the Debtor.[14]  If Trustee is not able to effectuate a

9    settlement in this case, expensive and complex litigation of the Adversary Action will follow and

10   the estate and, ultimately, other creditors, will suffer irreparable harm while the MAC Creditors,

11   with MAC's assistance, will continue pursue their own personal agenda.  These considerations,

12   in addition to MAC's gross misconduct in this case, should qualify as exceptional circumstances

13   to warrant this appeal at this time.

14   ///

15   [13] *See Robbins v. Gillock*, 109 Nev. 1015, 1018, 862 P.2d 1195, 1197 (1993) ("In proving that a
     prior representation is substantially related to present litigation, however, the moving party is not

16   required to divulge the confidences actually communicated, nor should a court inquire into
     whether an attorney actually acquired confidential information in the prior representation which

17   is related to the current representation...The court should instead undertake a realistic appraisal of
     whether confidences might have been disclosed in the prior matter that will be harmful to the

18   client in the later matter."); *see Waid v. Eighth Judicial Dist. Court ex rel. Cnty. of Clark*, 121
     Nev 605, 610, 119 P.3d 1219, 1222-23 (2005) (to determine whether a former and present matter

19   are substantially related, the court must (1) make a factual determination concerning the scope of
     the former representation, (2) evaluate whether it is reasonable to infer that the confidential

20   information allegedly given would have been given to a lawyer representing a client in those
     matters, and (3) determine whether that information is relevant to the issues raised in the present

21   litigation); *see Nevada Yellow Cab Corp. v. Eighth Judicial Dist. Court ex rel. Cnty of Clark*,
     123 Nev. 44, 52, 152 P.3d 737, 742 (2007) (applying the same standard set forth in *Waid* to

22   determine disqualification).  None of these Nevada Supreme Court cases applied a rebuttable
     presumption element in the test for disqualification, presumably because doing so would run

23   counter to the precedent set forth in *Robbins* and *Waid*—specifically that the moving party in a
     disqualification motion is not required to divulge confidences actually communicated, nor should

24   a court inquire into whether an attorney actually acquired confidential information in the prior
     representation which is related to the current representation. *See Robbins*, 109 Nev. at 1018, 862

25   P.2d at 1197; *see also Waid*, 121 Nev at 610, 119 P.3d at 1222.

26   [14] At the status check hearing on Trustee's Motion to Approve Settlement Agreement, held on
     March 20, 2014, Debtor's counsel informed the Bankruptcy Court that the Debtor is suffering

27   from stage 3 throat cancer.

28

HOWARD KIM & ASSOCIATES
1055 WHITNEY RANCH DRIVE, SUITE 110
HENDERSON, NEVADA 89014
(702) 485-3300 FAX (702) 485-3301

## II.  **THE ORDER IS A FINAL ORDER APPEALABLE BY RIGHT**

Appellees argue that the Order is not a final order appealable by right.  They go on to assert, "all disqualification decisions fail to qualify as final orders."[15]  This assertion, like so many others made by the Appellees during the course of this bankruptcy case,[16] is not correct. In at least two instances—one decided by this Court—disqualification orders have been deemed final appealable orders.  *See In re 3DFX Interactive, Inc.*, BAP NC-07-1240-KJUMK, 2008 WL 8448326 (B.A.P. 9th Cir. Feb. 6, 2008); *see also In re Albright*, 95 B.R. 560 (N.D. Ill. 1989). Similar to *3DFX*, Trustee argues that the Bankruptcy Court order should be deemed a final order because the order resolved a substantive issue by stating, "Trustee's Motion to Disqualify Counsel for John D. O'Brien Profit Sharing Plan and Counsel for Barry R. Moore and Janie Moore as Co-Trustees of The BAMM Living Trust Dated July 16, 2013, Groth, LLC, CH Pichon, LLC, and Harlan, LLC Through Their Managing Member John O'Brien, Docket No. 524, be, and the same hereby is, DENIED."  This determination seriously affects the substantive rights of the Trustee to not have confidential information he disclosed to his former counsel used against him in his efforts to bring assets into the estate.  Also similar to *3DFX*, Trustee argues that finality is addressed because there is no risk of this issue coming up on appeal again.  The

---

[15] *See MAC Opposition* [Dkt. No. 616] at 10:15-16.

[16] As thoroughly documented in the Bankruptcy Court's Memorandum Decision, attached as Exhibit 2 to the Motion for Leave to Appeal, the Appellees have shown themselves to be truthfully challenged in this bankruptcy proceeding.  Such examples include but are not limited to:  (1) MAC egregiously violating FRBP 2014(a) by failing to disclose financial connections the MAC attorneys had with the Debtor; (2) MAC, claiming in its Opposition to the Motion to Disqualify, that no conflicts exist in this case despite the fact that MAC knew it would be opposing the settlement agreement proposed by the Trustee—which was originally drafted and modified by MAC for the Trustee and the estate's benefit—and that MAC was actively seeking to divest Gayler, and thereby the estate, of his interests in Angelus and Angelus II despite having tried to bring those interests into the estate in both the bankruptcy case and the Adversary Action; (3) MAC, claiming that the settlement agreement was unanimously rejected by *all* of the creditors in the bankruptcy estate, despite the fact that MAC only appears to have sent the proposed settlement agreement to the MAC Creditors (the IRS, by and far the biggest creditor in this bankruptcy case, holding a secured claim of approximately 1.8 million dollars, was never even sent this proposed settlement agreement); and (4) Larson, in his Opposition to the Motion to Disqualify, claiming that he had not made any appearances in the Gayler bankruptcy case until he filed his opposition and was not involved in MAC's representation of the Trustee as Special Counsel despite the fact that Larson filed a Reply in Support of Trustee's Motion for Turnover in Gayler's bankruptcy case on June 4, 2012, filed a Stipulation, a Motion for Summary Judgment, a Statement of Undisputed Material Facts, and a Notice of Hearing in the Adversary Action, all prior to Larson filing his opposition.

1    Order made a final determination as to the discrete issue to which it addressed, that being MAC's
2    disqualification pursuant to NRPC 1.9.

3         Additionally, as no meaningful review of the Order could ever take place, as a practical
4    matter, this Court should hear this appeal at this  time.  *See In re Marvel Entertainment Group,*
5    *Inc.*, 140 F.3d 463, 470-71 (3d Cir. 1998) ("Were we not to take jurisdiction at this juncture, no
6    meaningful review of the order…could ever take place, as a practical matter.  What we know as
7    men and women we must never forget as judges.  Once bankruptcy reorganization has been
8    completed after months or years and after a plan of reorganization has been hammered out, it
9    strains credulity to suggest that a reviewing court would jettison years of bankruptcy infighting,
10   compromise and final determinations solely for the purpose of reversing the appointment of a
11   trustee and have the proceedings begin again from scratch.  The practical reality is that unless an
12   appeal can be lodged now, there will never be a meaningful review of the order appointing a
13   trustee.  We therefore hold that jurisdiction over the district court's order appointing a trustee is
14   proper pursuant to § 1291.").  Similar to *In re Marvel*, if this Court does not hear this appeal at
15   this time, no meaningful review of the Order could be had.

16        As such, this Court should determine that the Order is final and appealable.[17]

III. **ALTERNATIVELY, THE ORDER IS AN APPEALABLE**
17            **INTERLOCUTORY ORDER**

18    **A.  Standard of Review**

19

20        If however, this Court does not believe this is a final order under 28 U.S.C. § 158(a)(1),
21   as requested in the Motion for Leave to Appeal, this Order can be heard on appeal as an
22   interlocutory order.  *See* 28 U.S.C. § 158(a)(3).  Bankruptcy appellate panels have broad
23   discretionary authority to entertain interlocutory appeals.  *See In re Beverly*, 374 B.R. 221, 231
24   (B.A.P. 9th Cir. 2007) aff'd in part, dismissed in part, 551 F.3d 1092 (9th Cir. 2008).  While this
25   Court tends to follow the standards set forth in 28 U.S.C. § 1292(b),[18] this Court's appellate

26   ───────────────
[17] *Cohen v. Beneficial Indus. Loan Corp.*, 337 U.S. 541 (1949), as referenced by the Appellees,
27   simply recognizes that there are exceptions to the final judgment rule, wherein appellate courts
     are able to treat orders that are interlocutory in nature as final orders.

28   [18] Pursuant to 28 U.S.C. § 1292(b), a court may grant leave to appeal if the order "involves a
     controlling question of law as to which there is substantial ground for difference of opinion and

HOWARD KIM & ASSOCIATES
1055 WHITNEY RANCH DRIVE, SUITE 110
HENDERSON, NEVADA 89014
(702) 485-3300 FAX (702) 485-3301

HOWARD KIM & ASSOCIATES
1055 WHITNEY RANCH DRIVE, SUITE 110
HENDERSON, NEVADA 89014
(702) 485-3300 FAX (702) 485-3301

jurisdiction arises under 28 U.S.C. § 158(a)(3).  *In re Burke,* 95 B.R. 716, 717 (B.A.P. 9th Cir. 1989)*; In re Midgard Corp.*, 204 B.R. 764, 768 (B.A.P. 10th Cir. 1997).  This provision only states, "The district courts of the United States shall have jurisdiction to hear appeals…with leave of the court…"  *See* 28 U.S.C. § 158(a)(3).  Many of the cases cited by the Appellees are either cases from other jurisdictions or cases from the 9th Circuit Court of Appeals, which as previously mentioned, have different standards in play regarding the appealability of interlocutory orders.  In making its determination on whether to grant leave to appeal an interlocutory order, this Court, in addition to considering those factors enumerated in 28 U.S.C. § 1292(b), has also considered whether refusal to grant the appeal would result in wasted litigation and expense.

## B.  This Appeal Involves a Controlling Question of Law to Which There is a Substantial Ground for a Difference of Opinion

First, the Order involves a controlling question of law to which there is a substantial ground for a difference of opinion.  Trustee, in keeping with Nevada Supreme Court case precedent, believes Nevada has not adopted a rebuttable presumption element in NRPC 1.9 as doing so would effectively destroy the established principle set forth in *Robbins* and *Waid*—that being the moving party in a disqualification motion is not required to divulge confidential information and the Court should not inquire into whether confidential information was actually exchanged.[19]  Appellees, on the other hand, finding the District Courts to be more authoritative than the Nevada Supreme Court, asserts that Nevada has adopted a rebuttable presumption element in NRPC 1.9.[20]  Appellees make this bold and incorrect assertion despite the fact that a different judge from this same Bankruptcy Court, Honorable Judge Bruce A. Markell, did not

---

— (continued) —
that an immediate appeal from the order may materially advance the ultimate termination of the litigation".  *See* 28 U.S.C. § 1292(b).

[19] *See Robbins v. Gillock*, 109 Nev. at 1018, 862 P.2d at 1197 (1993); *see also Waid v. Eighth Judicial Dist. Court ex rel. Cnty. of Clark*, 121 Nev at 610, 119 P.3d at 1222.

[20] According to Appellees, "Nevada law is not unclear and indeed mandates that 'the inference that confidential information was given in the former representation is rebuttable.'"  *MAC Opposition* [Dkt. No. 616] at 15:2-3.  To support this assertion, Appellees rely on two federal district court cases, *SHFL Entm't, Inc. v. DigiDeal Corp.*, 2:12-CV-01782-GMN, 2013 WL 178130 (D. Nev. Jan. 16, 2013) and *Edwards v. 360 Commc'ns*, 189 F.R.D. 433 (D. Nev. 1999), and one case from the 7th Circuit, *LaSalle Nat. Bank v. Lake Cnty.*, 703 F.2d 252 (7th Cir. 1983).

1   apply the rebuttable presumption standard in a strikingly similar case in 2008.  *See In re*

2   *Rossana*, 395 B.R. 697 (Bankr. D. Nev. 2008).

3       In that case, Judge Markell issued an order to show cause why an attorney who had

4   represented the Chapter 7 debtors should not be sanctioned for appearing on behalf of the

5   debtors' adversary to set aside a judgment he had previously obtained for the debtors.  *Id.* at 699-

6   701.   The Court held that the prophylactic nature of NRPC 1.9—designed to prevent

7   representation in which former client confidences could be shared or a former client could be

8   injured—discredits any argument from counsel that no confidences were shared.  *Id.* at 706.  The

9   Court, found the attorney's conduct to be an "egregious violation of the Nevada Rules of

10  Professional Conduct that fall outside all accepted norms of the legal profession" that "discredits

11  the work of all attorneys before this court and in the state of Nevada by calling into question

12  whether attorneys will faithfully and loyally serve the interest of their clients."  *Id.* at 706-07.  To

13  punish the attorney for his gross misconduct, the Court publically reprimanded the attorney in its

14  published opinion and delivered a copy of its opinion to the Bar Disciplinary Counsel of the

15  State Bar of Nevada so that it could take whatever action it deemed appropriate.  *Id.* at 707.

16  Thus, not even looking outside the United States Bankruptcy Court of the District of Nevada,

17  there is an obvious difference of opinion on this issue.  Had this case been heard by Judge

18  Markell rather than Judge Nakagawa, the disqualification order would likely have been very

19  different.[21]

20      As this appeal involves a controlling question of law to which there is a substantial

21  ground for a difference of opinion, the first element of 28 U.S.C. § 1292(b) has been met.

22  ///

23  ///

24

25  [21] Similar to the attorney in *Rossana*, MAC represented the Former Trustee and Trustee in his
    efforts to bring assets into the estate, including but not limited to Gayler's interest in Angelus
26  and Angelus II.  To bring these assets into the estate, MAC assisted the Former Trustee in
    negotiating and drafting a settlement agreement with Gayler that would end the costly and
27  complex litigation in the Adversary Action.  Now, as counsel for the MAC Creditors, MAC
    seeks to divest the estate of Gayler's interest in Angelus and Angelus II, currently worth over
28  $400,000.00, and intends to oppose the settlement agreement it helped the Former Trustee draft
    that would bring Gayler's assets into the estate and end the Adversary Action.

HOWARD KIM & ASSOCIATES
1055 WHITNEY RANCH DRIVE, SUITE 110
HENDERSON, NEVADA 89014
(702) 485-3300 FAX (702) 485-3301

**C.  This Immediate Appeal May Materially Advance the Termination of Litigation**

Pursuant to the standard set forth in 28 U.S.C. § 1292(b), this Court may grant leave to appeal if "an immediate appeal…**may** materially advance the ultimate termination of...litigation." *See* 28 U.S.C. § 1292(b) (emphasis added).

Appellees assert that the Trustee failed to meet this element of 28 U.S.C. § 1292(b) because if they were disqualified, the MAC Creditors would get new counsel who would also oppose the Trustee's pending settlement agreement.  While that may be true, and the Trustee has no intention of denying the MAC Creditors their say regarding the proposed settlement, Trustee believes he will be able to successfully defend the settlement from any objections that may come forward.  Trustee, however, believes his chances of defense will be limited if the Appellees are to be able to submit oppositions using confidential information they obtained as counsel for the Former Trustee and the Trustee.  As its former counsel for over two years, Appellees have intimate knowledge of the strengths and weaknesses of the Trustee's proposed settlement.  If the Bankruptcy Court approves Trustee's settlement with Gayler, the costly and complex litigation in the Adversary Action will be terminated.  Thus, an immediate appeal of this issue, and disqualification of the Appellees as counsel for the MAC Creditors, may materially advance termination of the Adversary Action.  As such, the second element of 28 U.S.C. § 1292(b) has been met.

**D.  Denial of this Appeal Would Result in Wasted Litigation and Expense**

As set forth previously, Appellees intend to oppose Trustee's pending settlement agreement, despite the fact that they represented the Former Trustee and Trustee for over two years, obtained confidential information regarding the settlement agreement and the Adversary Action, and originally drafted the settlement agreement on the Former Trustee's behalf.  If Appellees are successful in opposing Trustee's settlement agreement, the Trustee will be forced to continue the expensive and complex litigation in the Adversary Action, which involves approximately thirty (30) different claims for relief and over forty (40) fraudulent transfer claims. *See Adversary Action Complaint*, attached hereto as "**Exhibit 1**".

///

HOWARD KIM & ASSOCIATES
1055 WHITNEY RANCH DRIVE, SUITE 110
HENDERSON, NEVADA 89014
(702) 485-3300 FAX (702) 485-3301

HOWARD KIM & ASSOCIATES
1055 WHITNEY RANCH DRIVE, SUITE 110
HENDERSON, NEVADA 89014
(702) 485-3300 FAX (702) 485-3301

Serving as special counsel in this case for a year and a half, MAC, on behalf of the Former Trustee and Trustee, was only able to bring one entity—Apan Wine—into the estate for the benefit of the creditors.[22]  Trustee, making an unbiased, business decision, believes that settlement with the Debtor is in the best interests of the estate as it will save the estate from wasted litigation and expense.  MAC, with its attorneys having personal, financial connections with Gayler,[23] and the MAC Creditors having intimate, personal relationships with Gayler, are less interested in doing what is best for the estate but are more interested in ensuring Gayler does not get a discharge, even if that means forcing the Adversary Action to continue.  To avoid wasted litigation and expense, this Court should hear this appeal at this time.

**E.  Exceptional Circumstances in this Case Warrant this Appeal at this Time**

Additionally, for what deference this Court may give to 9th Circuit Court of Appeal cases in its rulings under 28 U.S.C. § 158(a)(3), the 9th Circuit Court of Appeals has held that interlocutory appeals should be heard in exceptional circumstances.  *See In re Cement Antitrust Litig.* (MDL No. 296), 673 F.2d 1020, 1026 (9th Cir. 1981) aff'd sub nom. *Arizona v. Ash Grove Cement Co.*, 459 U.S. 1190, 103 S. Ct. 1173, 75 L. Ed. 2d 425 (1983) and cause dismissed sub nom. *Arizona v. U.S. Dist. Court for the Dist. of Arizona*, 459 U.S. 961, 103 S. Ct. 285, 74 L. Ed. 2d 272 (1982).  Similarly, other circuits have also held that exceptional circumstances can warrant the appeal of an interlocutory order.  *See In re Midgard Corp.*, 204 B.R. 764, 769 (B.A.P. 10th Cir. 1997); *see also In re Fox*, 241 B.R. 224, 233 (B.A.P. 10th Cir. 1999); *see also In re Philadelphia Athletic Club, Inc.*, 20 B.R. 328, 332 (E.D. Pa. 1982) (Court granted leave to appeal because the issue on appeal could hardly be characterized as trivial as it asked the Court

[22] On December 4, 2012, the Bankruptcy Court entered an order stating the Debtor was 100% owner of Apan Wine and as such, Debtor's interest in Apan Wine is and was as of the commencement of the case, property of the estate [Adv. Case No. 11-01410-MKN, Dkt. No. 272].  After bringing this asset into the estate as special counsel for the Former Trustee, MAC, on behalf of the MAC Creditors, proceeded to initiate a suit against Apan Wine in District Court Case No. A-13-692956-B without lifting stay in the bankruptcy case.

[23] In its Memorandum Decision [Dkt. No. 590], the Bankruptcy Court noted that two of MAC's attorneys, Aurbach and Hayes, had financial connections with the Debtor.  Aurbach had a 20% interest in Sunset V and had interests in Polyrus, Sunset VIII, and possibly Sunset III.  *See Memorandum Decision* [590], attached as Exhibit 2 to the Motion for Leave to Appeal, at 42:4-11.  In addition, Hayes had a prior financial connection to the Debtor through his investment in DA 1147, LLC.  *See Memorandum Decision* [590], attached as Exhibit 2 to the Motion for Leave to Appeal, at 42, ft 46.

- 12 -

1    to consider a very serious question relating to the fundamental fairness of the bankruptcy

2    proceedings that could erode the public's confidence in the integrity of such proceedings).

3         First, this appeal is not fact based but is legally driven. As stated by the Appellees,

4    "[i]nterlocutory appeals are reserved for 'situations in which the court of appeals can rule on a

5    pure, controlling question of law without having to delve beyond the surface of the record in

6    order to determine the facts.'"[24]  Appelees go on to state, "[i]n other words, where a 'legal issue'

7    is essentially fact based in nature, interlocutory appeal is not appropriate."[25]

8         Here, if this appeal is found to be interlocutory, it is based almost exclusively on a

9    controlling question of law that does not require this Court to look into the specific facts of this

10   case.  In its Memorandum Decision, the Bankruptcy Court found that it could be inferred that

11   confidential information was exchanged between the Former Trustee, the Trustee, and the

12   Appellees.  The Trustee is not asking this Court to make any additional findings of fact, but

13   rather, asserts the Bankruptcy Court erred after making these factual findings by adding an

14   additional element in NRPC 1.9—one unsupported by Nevada Supreme Court case law[26]—

15   which effectively led the Court to deny disqualification in this case.  As the legal issue raised on

16   appeal is not fact based in nature—Trustee, for the most part, believes the Court made

17   appropriate factual findings in this case—this appeal is exceptional from other cases requesting

18   appeals of disqualification orders.

19        Second, if this appeal is not granted at this time, immediate and irreparable harm to the

20   estate could be the result.  The Debtor in this case, has recently been diagnosed with cancer, and

21   as such, it is questionable whether he will be around to enter into any other settlement in the

22   future.  If the Appellees are able to use confidential information they received as special counsel

23   to the Former Trustee and Trustee to successfully oppose Trustee's pending settlement

24   agreement with the Debtor, Trustee would be forced to continue the costly and complex

HOWARD KIM & ASSOCIATES
1055 WHITNEY RANCH DRIVE, SUITE 110
HENDERSON, NEVADA 89014
(702) 485-3300 FAX (702) 485-3301

---

25   [24] *MAC Opposition* [Dkt. No. 616] at 14:18-20.

26   [25] *Id.* at 14:21-22.

27   [26] *See Robbins v. Gillock*, 109 Nev. at 1018, 862 P.2d at 1197 (1993); *see Waid v. Eighth
     Judicial Dist. Court ex rel. Cnty. of Clark*, 121 Nev at 610, 119 P.3d at 1222; *see Nevada Yellow
28   Cab Corp. v. Eighth Judicial Dist. Court ex rel. Cnty of Clark*, 123 Nev. at 52, 152 P.3d at 742
     (2007).

litigation in the Adversary Action and if the Debtor passes away, Trustee may not have another chance to effect a settlement of this litigation.

These considerations, in addition to MAC's gross misconduct in this case, should qualify as exceptional circumstances to warrant this appeal at this time.

IV. **CONCLUSION**

For the reasons stated herein, the Trustee should be afforded an appeal of the Order as an appealable final order. However, in the event that the Court determines the Order to be an interlocutory order, leave should be granted in this extraordinary case, as this appeal involves controlling questions of law that do not require a fact-intensive inquiry, Trustee will suffer immediate and irreparable harm if this appeal is not heard at this time, and an appeal at this junction will serve the purposes of judicial economy as it may materially advance termination of the expensive and complex Adversary Action. As the Trustee has met his burden under 28 U.S.C. § 158(c) and 28 U.S.C. § 1292(b), Trustee respectfully requests this Court hear this appeal at this time.

Dated this 24th day of March, 2014.

HOWARD KIM & ASSOCIATES

*/s/Howard C. Kim*
Howard C. Kim, Esq.
Nevada Bar No. 10386
Jacqueline A. Gilbert, Esq.
Nevada Bar No. 10593
Katherine C.S. Carstensen, Esq.
Nevada Bar No. 10656
1055 Whitney Ranch Drive, Suite 110
Henderson, Nevada 89014
*Attorneys for David A. Rosenberg, Chapter 7 Trustee*

HOWARD KIM & ASSOCIATES
1055 WHITNEY RANCH DRIVE, SUITE 110
HENDERSON, NEVADA 89014
(702) 485-3300 FAX (702) 485-3301

# EXHIBIT 1

1  **Marquis Aurbach Coffing**                           E-Filed: <u>5/10/2012</u>
   PHILLIP S. AURBACH, ESQ.
2  Nevada Bar No. 1501
   APRIL N. BONIFATTO, ESQ.
3  Nevada Bar No. 11924
   10001 Park Run Drive
4  Las Vegas, Nevada 89145
   paurbach@maclaw.com
5  abonifatto@maclaw.com
   (702) 382-0711
6  Special Counsel Attorneys for Chapter 7 Trustee
   James F. Lisowski
7
                    **UNITED STATES BANKRUPTCY COURT**
8
                       **FOR THE DISTRICT OF NEVADA**
9

| In Re: | Case No:   BK-S-09-31603-MKN |
|--------|------------------------------|
| 10 | Chapter:   7 |
| WILLIAM GAYLER, | |
| 11 | |
| Debtor. | Adversary Proceeding No. 11-01410-MKN |
| 12 | |
| JAMES F. LISOWSKI, Chapter 7 Trustee, | |
| 13 | |
| Plaintiff, | |
| 14 | |
| v. | |
| 15 | |
| 23 GOLDEN SUNRAY, L.L.C.; ALTRA VIDA, L.L.C.; APAN WINE, LIMITED LIABILITY COMPANY; AXIOS-TC, LIMITED LIABILITY COMPANY; BYRON LEBOW, as Trustee of THE BYRON LEBOW REVOCABLE FAMILY TRUST; CH. ANGELUS LLC; CH. ANGELUS II LLC; CH. ANGELUS III, LIMITED LIABILITY COMPANY; CH. PICHON I, LLC; DOMINUS M-B, L.L.C.; EDWARD BROWN; GROTH LIMITED LIABILITY COMPANY; HARLAN, LLC; ICON HOLDING COMPANY LLC; ICON REAL ESTATE COMPANIES, INC.; ICON REAL ESTATE DEVELOPMENT, LIMITED LIABILITY COMPANY; IPS II, LIMITED LIABILITY COMPANY; MARTIN BARRETT; MARYELLEN BROWN; MERITAGE-GAYLER LIMITED LIABILITY COMPANY; MORPHEUS ENTERPRISES, LLC; POLYRUS LIMITED LIABILITY COMPANY; THE GAYLER FAMILY EDUCATIONAL, LLC; WALTER LOERWALD a/k/a LEROY LOERWALD; WILLIAM A. GAYLER d/b/a ICON REAL ESTATE SERVICES; WILLIAM A. GAYLER, | <u>**FIRST AMENDED ADVERSARY COMPLAINT**</u><br><br>**Scheduling Conference Date:  4/12/12**<br>**Scheduling Conference Time:  10:00 a.m.** |

MARQUIS AURBACH COFFING
10001 Park Run Drive
Las Vegas, Nevada 89145
(702) 382-0711 FAX: (702) 382-5816

MAC:12089-001 1572488_3 5/10/2012 8:53 AM

MARQUIS AURBACH COFFING
10001 Park Run Drive
Las Vegas, Nevada 89145
(702) 382-0711 FAX: (702) 382-5816

as General Partner of TGF HOLDING LIMITED PARTNERSHIP; WILLIAM A. GAYLER, as Trustee of THE GAYLER 2001 IRREVOCABLE TRUST; WILLIAM A. GAYLER, as Trustee of THE JAYDEN KRISTOPHER GAYLER IRREVOCABLE TRUST; WILLIAM A. GAYLER, as Trustee of THE WILLIAM A. GAYLER SEPARATE PROPERTY TRUST; WILLIAM GAYLER, individually; DOES I–X and ROE CORPORATIONS I–X, inclusive,

Defendants.

---

## FIRST AMENDED ADVERSARY COMPLAINT

Plaintiff, James F. Lisowski, Sr., Chapter 7 Panel Trustee in above referenced action, by and through, Marquis Aurbach Coffing, hereby alleges and states as follows:

### JURISDICTION AND VENUE

1.      This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157(b) and 1334 and 11 U.S.C. §§§ 548, 549 and 727 and Rule 1001(b)(2) of the Local Rules of Practice for the United States District Court for the State of Nevada.

2.      Venue in this Court is proper pursuant to 28 U.S.C. § 1409.

3.      This is a core proceeding under 28 U.S.C. § 157(b)(2)(A), (H), (I) and (O) and is brought pursuant to 11 U.S.C. §§§ 105(a), 548, 549 and 727 and Rule 7001 *et.seq.* of the Federal Rules of Bankruptcy Procedure.

### THE PARTIES

4.      James F. Lisowski, Sr. is the Bankruptcy Trustee duly appointed as Trustee of the William A. Gayler Bankruptcy Estate.

5.      Defendant William A. Gayler ("Gayler" or "Debtor") is the Debtor in the above-referenced bankruptcy case and a resident of Clark County, Nevada.

6.      Based upon information and belief, Defendant Walter Loerwald a/k/a Leroy Loerwald ("Loerwald"), is, and at all times relevant to this action, was a resident of Clark County, Nevada.

MAC:12089-001 1572488_3 5/10/2012 8:53 AM

MARQUIS AURBACH COFFING
10001 Park Run Drive
Las Vegas, Nevada 89145
(702) 382-0711 FAX: (702) 382-5816

7.      Based upon information and belief, Defendant Martin Barrett ("Barrett"), is, and at all times relevant to this action, was a resident of Clark County, Nevada.

8.      Based upon information and belief, Defendant Byron LeBow, as Trustee of the Byron LeBow Revocable Family Trust ("LeBow Trust"), is, and at all times relevant to this action, was a Nevada trust.

9.      Based upon information and belief, Defendant Edward Brown is, and at all times relevant to this action, was a resident of Clark County, Nevada.

10.     Based upon information and belief, Defendant MaryEllen Brown is, and at all times relevant to this action, was a resident of Clark County, Nevada.

11.     Defendants Mr. and Mrs. Brown will be referred to collectively herein as "the Browns."

12.     Defendant William A. Gayler, as Trustee of The William A. Gayler Separate Property Trust ("WAG SPT"), is, and at all times relevant to this action, was a Nevada trust.

13.     Defendant William A. Gayler, as Trustee of The Jayden Kristopher Gayler Irrevocable Trust ("Jayden Trust"), is, and at all times relevant to this action, was a Nevada trust.

14.     Defendant William A. Gayler, as Trustee of The Gayler 2001 Irrevocable Trust ("2001 Trust"), is, and at all times relevant to this action, was a Nevada trust.

15.     Defendant 23 Golden Sunray, L.L.C. ("Golden Sunray") is, and at all times relevant to this action, was a Nevada limited liability company managed and solely owned by the Debtor.

16.     Defendant Morpheus Enterprises, LLC ("Morpheus") is, and at all times relevant to this action, was a Nevada limited liability company managed and solely owned by the Debtor.

17.     Defendant Apan Wine, Limited Liability Company ("Apan") is, and at all times relevant to this action, was a Nevada limited liability company managed and solely owned by the Debtor.

18.     Defendant William A. Gayler, as General Partner of TGF Holding Limited Partnership ("TGF"), is, and at all times relevant to this action, was a Nevada limited partnership managed by the Debtor.

MAC:12089-001 1572488_3 5/10/2012 8:53 AM

MARQUIS AURBACH COFFING

10001 Park Run Drive
Las Vegas, Nevada 89145
(702) 382-0711 FAX: (702) 382-5816

19.     Defendant The Gayler Family Educational, LLC ("GFE") is, and at all times relevant to this action, was a Nevada limited liability company managed by the Debtor.

20.     Defendant Meritage-Gayler Limited Liability Company ("Meritage") is, and at all times relevant to this action, was a Nevada limited liability company managed by the Debtor.

21.     Defendant Polyrus Limited Liability Company ("Polyrus") is, and at all times relevant to this action, was a Nevada limited liability company managed by the Debtor.

22.     Defendant CH. Angelus LLC ("CH Angelus") is, and at all times relevant to this action, was a Nevada limited liability company managed by the Debtor.

23.     Defendant CH. Angelus II LLC ("CHA II") is, and at all times relevant to this action, was a Nevada limited liability company co-managed by the Debtor.

24.     Defendant CH. Angelus III, Limited Liability Company ("CHA III") is, and at all times relevant to this action, was a Nevada limited liability company managed by the Debtor.

25.     Defendant Groth Limited Liability Company ("Groth") is, and at all times relevant to this action, was a Nevada limited liability company managed by the Debtor.

26.     Defendant CH. Pichon I, LLC ("Pichon") is, and at all times relevant to this action, was a Nevada limited liability company managed by the Debtor.

27.     Defendant Harlan, LLC ("Harlan") is, and at all times relevant to this action, was a Nevada limited liability company managed by the Debtor.

28.     Defendant ICON Real Estate Development, Limited Liability Company ("ICON Dvmt.") is, and at all times relevant to this action, was a Nevada limited liability company managed by the Debtor.

29.     Defendant ICON Holding Company, LLC ("ICON Holding") is, and at all times relevant to this action, was a Nevada limited liability company managed by the Debtor.

30.     Defendant Axios-TC, LLC ("Axios") is, and at all times relevant to this action, was a Nevada limited liability company managed by the Debtor.

31.     Defendant IPS II, Limited Liability Company ("IPS II") is, and at all times relevant to this action, was a Nevada limited liability company managed by the Debtor.

MAC:12089-001 1572488_3 5/10/2012 8:53 AM

MARQUIS AURBACH COFFING
10001 Park Run Drive
Las Vegas, Nevada 89145
(702) 382-0711 FAX: (702) 382-5816

32. Defendant Dominus M-B, L.L.C. ("Dominus") is, and at all times relevant to this action, was a Nevada limited liability company managed by the Debtor.

33. Defendant ICON Real Estate Companies, Inc. ("ICON RE") is, and at all times relevant to this action, was a Nevada corporation managed and solely owned by the Debtor. ICON Real Estate held a business license in Clark County which was revoked February 2, 2010.

34. Defendant William A. Gayler, doing business as ICON Real Estate Services ("ICON Svcs."), is, and at all times relevant to this action, was a company doing business in Clark County, Nevada.

35. Defendant Altra Vida, L.L.C. ("Altra Vida") is, and at all times relevant to this action, was a Utah limited liability company owned and managed by the Debtor.

36. The Defendant entities described in paragraphs 12–35 will be referred to collectively as the "Gayler Entities."

37. Upon information and belief, Gayler continues to create limited liability companies and other entities that he is or will be utilizing to hide, transfer or conceal assets that are property of the Bankruptcy Estate. If information becomes available as to the entity, it will be added as a party to this lawsuit.

38. The true names and capacities, whether individual, corporate, associate or otherwise of the Defendants named herein as DOES I through X and ROE corporations I through X, inclusive, are unknown to Plaintiff at this time, who therefore sues said Defendants by fictitious names and will ask leave of the Court to amend this Complaint to show the true names and capacities of Defendants when the same are ascertained. The Defendants are sued as principals and/or agents, servants, attorneys and employees of said principals, and all the acts performed by them were within the course and scope of their authority. Plaintiff is informed and believes and thereupon alleges that each of said Defendants are legally responsible for the events and happenings referred to herein and directly and proximately caused the damages and injuries to Plaintiff as hereinafter alleged.

MAC:12089-001 1572488_3 5/10/2012 8:53 AM

MARQUIS AURBACH COFFING
10001 Park Run Drive
Las Vegas, Nevada 89145
(702) 382-0711  FAX: (702) 382-5816

**GENERAL ALLEGATIONS**

39.     As will be shown below, Gayler operated a complex shell game transferring assets between the Gayler Entities at will and without observance of "separate entity" formalities.  Thus, the following allegations relate to how Gayler used the Gayler Entities as his alter ego, how he executed fraudulent transfers to and from the Gayler Entities for the benefit of those insider entities and insider individuals close to Gayler, and majority of the transfers were made without authorization.

40.     On November 16, 2009, Gayler's Involuntary Petition was filed.

41.     On December 17, 2009, Order Granting Interim Relief was entered.

42.     On March 29, 2010, the Court entered the Order for Relief.

43.     On June 28, 2010, Gayler filed his Schedules under Chapter 7.

44.     Gayler is a licensed real estate broker who has been engaged in real estate investments since the 1990's.

45.     Gayler generally found vacant land, solicited investors and formed partnerships or limited liability companies.

46.     Gayler formed hundreds of such companies.

47.     Gayler, or a shell entity he was the sole owner of, managed and controlled majority of his companies.

48.     Gayler has had multiple entities with "ICON" in their name including a fictitious firm name.  These will be referred to herein as the "ICON Entities."

49.     Gayler used the various ICON Entities for several purposes, but the main purpose was for brokerage commissions.

50.     Currently, ICON Entities has one employee working for it named Gloria Buonaccorsi ("Buonaccorsi").

51.     Gayler knew the real estate market was realizing a significant downturn in 2007 and 2008.

MAC:12089-001 1572488_3 5/10/2012 8:53 AM

MARQUIS AURBACH COFFING
10001 Park Run Drive
Las Vegas, Nevada 89145
(702) 382-0711  FAX: (702) 382-5816

52.     On or about on January 2, 2009, Gayler transferred 41 membership interests (hereinafter, "the 41 Transfers") from 41 entities of which he was a member and/or managing member and/or sole owner to TGF Holdings.

53.     TGF currently holds most of Gayler's assets.

54.     The 41 Transfers to TGF were made because Gayler was very concerned about the upcoming real estate crash and his ability to make enough money to pay his expenses and debts on all membership interests he held individually or through corporate entities he owned and/or controlled.

55.     Based upon information and belief, Gayler stated, and knew, that the market conditions through years 2007–2009 were as follows: 2007 was good; 2008 wasn't terrible and it was not until the end of 2008 and the beginning of 2009 he started reading several books about the real estate crash that was coming and became immediately concerned.

### GAYLER'S SCHEME TO HIDE ASSETS

56.     Based on Gayler's concerns between years 2007–2011, he began a scheme to fraudulently transfer his assets to put them out of reach of his creditors.

57.     Based upon information and belief, Gayler's scheme included backdating documents to January 2, 2009.

58.     It is believed that the 41 Transfers of Gayler's membership interests from Gayler-controlled companies to TGF did not actually occur until October 2010.

59.     Gayler's scheme also included the backdating of at least one operating agreement and partnership amendments to January 2, 2009.

60.     Gayler's scheme included borrowing against property owned by the Gayler Entities without authorization from members and then hiding those funds from the members and creditors and using them for his own personal benefit.

61.     Gayler controlled the Gayler Entities and personally solicited the money to fund those entities—some of which improperly capitalized the Gayler Entities.

62.     Gayler used the Gayler Entities to conduct his personal business and personal interests in other companies—making him inseparable from the Gayler Entities.

MAC:12089-001 1572488_3 5/10/2012 8:53 AM

1

2

3

4

5

6

7

8

9

10

11

MARQUIS AURBACH COFFING
10001 Park Run Drive
Las Vegas, Nevada 89145
(702) 382-0711 FAX: (702) 382-5816

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

63.     Ultimately, the Gayler Entities were not used for their intended purpose, if any. Rather, Gayler partially used them as his personal enterprises to shield himself from personal liability and to finance his personal life.

64.     During 2008–2009, Gayler had many personal and business obligations that became due.

65.     During 2008–2009, Gayler had pending litigation, was threatened with litigation and had judgments filed against him personally.

66.     On or about July 2008, Gayler resigned as the registered agent on over 105 entities of which he owned and managed.

67.     On or about August 2009, Gayler placed his girlfriend, Emilee Bruschke ("Bruschke"), without her knowledge, as the registered agent on over 105 entities.

68.     Gayler's purpose was to make his registered agent difficult to find in the event any of the companies Gayler owned or managed would be served with legal documents.

69.     Gayler's resignation as the registered agent on over 105 entities and replacement with Bruschke was part of Gayler's scheme to evade service upon any of the Gayler owned or managed companies.

70.     Gayler's resignation as the registered agent was executed with the intent to hinder, delay or defraud creditors.

71.     Gayler continued to fraudulently transfer assets after the commencement of his case.

72.     Gayler continued to fraudulently transfer assets after this Court's order forbidding Gayler to transfer, convey or conceal any property over $10,000.

73.     Gayler's scheme was, and continues to be, to shuffle and transfer assets owned by and between his shell companies and trusts to benefit himself and insiders while defrauding his creditors and members of his limited liability companies in order to diminish assets that would be available to his bankruptcy estate.

MAC:12089-001 1572488_3 5/10/2012 8:53 AM

## GAYLER HAD PENDING LITIGATION, THREATENED LITIGATION AND JUDGMENTS AGAINST HIM PERSONALLY

74.     Before Gayler made certain transfers or incurred certain obligations, he had been sued or threatened with lawsuits, including, but not limited to:

a.      In 2008, Gayler was sued by Mr. Pius Reiger ("Reiger"), a member of two Gayler-owned and controlled entities.  Reiger obtained a judgment against Gayler for $480,000.

b.      In September 2008, suit was filed against Gayler, Screaming Eagle, LLC Maya I-215, LLC and One Hundred Year, LLC, and the lawsuit is currently pending.

c.      In 2009, Gayler was sued by Mr. John O'Brien ("O'Brien"), a frequent investor of Gayler's.  O'Brien obtained a judgment for $400,000.

d.      On August 6, 2009, Gayler was sued by O'Brien, Donald Campbell, Barry Moore ("Moore") and Colby Williams.  The case is currently on appeal in the Nevada Supreme Court as to Defendant Alper and the claims are pending against Gayler.

e.      In 2009, the Internal Revenue Service assessed a $1.55 million federal tax lien against Gayler.

f.      In August 2009, Moore filed a lawsuit against Gayler for breach of contract.

g.      On May 18, 2010, Gayler was threatened with another lawsuit by Moore against Gayler individually and CH. Angelus IV, LLC, another Gayler entity.

h.      On January 28, 2011, an Adversary Complaint was filed by O'Brien, Donald Campbell, Colby Williams and Mario Borini against Gayler.  The case is currently pending.

## GAYLER'S VIOLATIONS OF THE BANKRUPTCY COURT ORDER

75.     On December 17, 2009 this Court entered an Order granting interim relief pursuant to 11 U.S.C. §303(f).[1]

76.     The Court Order is to remain in effect until further order of this Court.

---

[1] Order Granting Interim Relief in Case No. BK-S-09-31603-MKN (Doc. # 85) ("the Court Order").

MAC:12089-001 1572488_3 5/10/2012 8:53 AM

MARQUIS AURBACH COFFING
10001 Park Run Drive
Las Vegas, Nevada 89145
(702) 382-0711 FAX: (702) 382-5816

MARQUIS AURBACH COFFING
10001 Park Run Drive
Las Vegas, Nevada 89145
(702) 382-0711 FAX: (702) 382-5816

77.    The Court Order enjoined Gayler from transferring, conveying, or concealing any real or personal property, in which he has an interest, directly or indirectly, with a value in excess of $10,000.

78.    The Court Order further enjoined Gayler from causing any entity which he owns or controls, directly or indirectly (including but not limited to, through additional limited liability companies which Gayler controls and which in turn have an interest in the entities with which he is conducting business), from transferring any real or personal property with a value in excess of $10,000 without further order of the court, or the majority vote of the non-related members, shareholders or partners (defined as non-affiliates or insiders of Gayler).

79.    Gayler has violated and continues to violate the Court Order.

**(Golden Sunray $200,000 Check and Transfers)**

80.    On January 31, 2010, the Golden Sunray account balance was $0.00.

81.    On February 1, 2010, Gayler's entity, Golden Sunray, received and deposited a check for $200,000.

82.    The check was written to Golden Sunray by Loerwald.  Loerwald was Gayler's friend.

83.    The check compensated Golden Sunray for "artwork, furniture, TV's and audio visual etc."

84.    Gayler was in default of an $866,000 note from Loerwald ("the Loerwald Note") secured by a deed of trust on the property located at 23 Golden Sunray, Las Vegas, Nevada ("the Golden Sunray House").

85.    Loerwald foreclosed on the the Golden Sunray House on January 4, 2010.

86.    Gayler caused Golden Sunray to default on the Loerwald Note.

87.    In 2010, Gayler owned 100% of Golden Sunray.

88.    In 2010, Gayler was the Manager of Golden Sunray.

89.    Gayler has a direct interest in Golden Sunray as a 100% owner forbidding transfers pursuant to the Court Order.

MAC:12089-001 1572488_3 5/10/2012 8:53 AM

90.     On or about February 2, 2010, Gayler began transferring the funds out of the Golden Sunray account in violation of the Court Order.

91.     Gayler, as Manager of Golden Sunray, immediately transferred $190,250 of the funds out of the Golden Sunray account.

92.     The check was endorsed by Gayler and Morpheus.

93.     Morpheus is the manager of Golden Sunray.

94.     Morpheus is owned 100% by Gayler and he was the Manager of Morpheus at that time.

95.     Gayler has a direct interest in Morpheus because he is the 100% owner.

96.     On February 11, 2010, all $200,000 had been transferred out of Golden Sunray's account.

97.     In twelve transactions, Gayler extracted all of the funds from the Golden Sunray account.

98.     Eight of the twelve transactions were in violation of the Court Order comprising of the following:

a.      February 3, 2010: $25,000 was transferred to Gayler, as trustee of Bruschke's son's trust;

b.      February 3, 2010: $18,000 was transferred to the TGF Holding, LP account (TGF Holding, LP was a limited partnership where Gayler was the only limited partner and the only general partner);

c.      February 3, 2010: $43,000 cash withdrawal by Gayler;

d.      February 4, 2010: $25,000 cash withdrawal by Gayler;

e.      February 5, 2010: $25,000 was deposited into the TGF Holding, LP account from Golden Sunray;

f.      February 5, 2010: $25,000 check was written to Gayler as trustee of the William Gayler Irr Life Ins Trust (memo line stated "Loan RePay");

g.      February 8, 2010: $19,200 two checks were written to and cashed by Gayler's children (one check was for $9,200 and the other check was for $10,000);

MAC:12089-001 1572488_3 5/10/2012 8:53 AM

MARQUIS AURBACH COFFING
10001 Park Run Drive
Las Vegas, Nevada 89145
(702) 382-0711 FAX: (702) 382-5816

MARQUIS AURBACH COFFING
10001 Park Run Drive
Las Vegas, Nevada 89145
(702) 382-0711 FAX: (702) 382-5816

h.    February 11, 2010: $10,050 was transferred to ICON Svcs., one of Gayler's solely owned and controlled entities.

99.    The above-mentioned $190,250 was transferred from the Golden Sunray account to Gayler individually, other Gayler Entities, or insiders of Gayler in violation of the December 17, 2009 Court Order.

### (GFE Transfer of Interest to Gayler's Daughter)

100.    On October 15, 2010, Gayler caused his company, GFE, to amend its Operating Agreement resulting in a transfer of 1% of Apan's ownership in GFE to Gayler's daughter Briana Gayler.

101.    GFE is owned 100% by Gayler or entities owned 100% by him.

102.    On June 11, 2002, Gayler, as trustee of the WAG SPT, acquired the property located at 1953 Mahre Drive, Park City, Utah ("the Park City House").

103.    On August 16, 2007, Gayler and his daughter purchased the home located at 1338 E. Kensington, Salt Lake City, Utah ("the Salt Lake City House") for approximately $336,000.

104.    GFE holds title to both the Salt Lake City House and the Park City House with a combined approximate value of $1,800,000.

105.    Gayler owns 100% of Apan, thus having a direct interest in the company.

106.    Gayler has a direct interest in and controls GFE.

107.    The transfer of Apan's 1% in GFE to Briana Gayler amounts to a direct or indirect transfer of interest of approximately $17,000.

### (Gayler Transfers Money as a Loan to GFE)

108.    On March 18, 2010, Gayler deposited a check for $90,925.30 into TGF's account and on the same day caused TGF to write a check to ETitle Loan Servicing Company for $53,620.49 in violation of the Court Order.

109.    The memo line contained on the check notated "Loan to Gayler Fam Ed LLC."

110.    The check was used to pay Gayler's defaulted mortgage amount on the Park City House.

MAC:12089-001 1572488_3 5/10/2012 8:53 AM

111.    At the time of the $53,620.49 transfer, the Park City House was in the name of Gayler's entity, GFE.

112.    Gayler has a direct and/or indirect interest in GFE and controls GFE.

**(Gayler Sells His Indirect Interest in Sunset II)**

113.    On August 22, 2011, Gayler caused his membership interests in an entity named Sunset II, LLC ("Sunset II"), which was indirectly held through his children, to be sold to Rod Leavitt (current Sunset II manager) for $14,000 cash and $11,000 to Sunset II to cover delinquent assessments—a total value of $25,000.

114.    Gayler himself, through his company Altra Vida, received the $14,000 payment from Rod Leavitt through a wire transfer in August 2011 to Altra Vida's bank account.

115.    This sale was in violation of the Court Order.

**(Gayler Forms New LLC to Conduct Transfers and Hold His Real Estate License)**

116.    On or about November 2011, Gayler formed Origin Capital Partners, LLC ("Origin").

117.    Gayler is currently using Origin as a transferee company to hold real and personal property.

118.    On December 23, 2011, Gayler transferred his Nevada Real Estate Broker's license from ICON Svcs. to Origin.

119.    Gayler held his previous broker's license in ICON Svcs.'s name from 2001–December 23, 2011.

120.    On or about January 2012, Gayler executed an amendment to a purchase agreement(s) for certain Sunset I-VI limited liability company properties.

121.    The amendment's purpose was to transfer his real estate broker's commissions in excess of $100,000 from ICON Svcs. to Origin.

122.    Gayler has violated the Court Order on at least 11 occasions to date.

MARQUIS AURBACH COFFING
10001 Park Run Drive
Las Vegas, Nevada 89145
(702) 382-0711 FAX: (702) 382-5816

MAC:12089-001 1572488_3 5/10/2012 8:53 AM

**THE GOLDEN SUNRAY HOUSE FORECLOSURE SCHEME AND SUBSEQUENT SALE TO THE BROWNS**

123.    Gayler engaged in a fraudulent scheme with Loerwald, Barrett and possibly the Browns to purposely default on the note owed to Loerwald to coordinate a collusive and irregular foreclosure.

124.    The purpose of the collusive foreclosure and subsequent sale was for Loerwald and Barrett to be repaid in full for their loans and investments in Gayler's investments.

125.    The foreclosure transfer was intended to frustrate efforts of creditors to collect on their debts.

126.    The Golden Sunray home was used to repay loans to those friends and investors closest to Gayler outside of the bankruptcy.  Here is how Gayler did it:

a.    Gayler owned the Golden Sunray House through his 100% owned company Golden Sunray.

b.    Gayler held an equitable interest in the Golden Sunray House by virtue of his 100% ownership of Golden Sunray.

c.    The consideration received by Golden Sunray as a result of the Trustee's Sale was $500,000 (i.e., $500,000 was the amount Loerwald bid at the Trustee's Sale of his $866,000 Deed of Trust).

d.    The $500,000 paid by Loerwald was less than "reasonably equivalent value" as required by 11 U.S.C. § 548(a)(2).

e.    The $500,000 foreclosure price was 7.14% of the fair market value price of $7,000,000.

f.    With a signed purchase agreement to the Browns, dated December 24, 2011, Loerwald sold the Golden Sunray House to the Browns for $7,000,000.

g.    The sales proceeds in excess of $5.1 million were used to pay all loans to Gayler's friends and investors—some in excess of their principal loan amounts.

127.    Gayler's strategic default and foreclosure of the Golden Sunray House occurred after his involuntary petition was filed.  The default and foreclosure was during a period when he

MAC:12089-001 1572488_3 5/10/2012 8:53 AM

MARQUIS AURBACH COFFING
10001 Park Run Drive
Las Vegas, Nevada 89145
(702) 382-0711 FAX: (702) 382-5816

MARQUIS AURBACH COFFING
10001 Park Run Drive
Las Vegas, Nevada 89145
(702) 382-0711 FAX: (702) 382-5816

1   was prohibited by the Court Order from conducting any transfers or conveyances of property in

2   which he or any of his entities had a direct or indirect interest in.

3       128.    The Golden Sunray House had over $5 million of equity prior to Gayler's default

4   and Loerwald's subsequent foreclosure.

5       129.    Based upon information and belief, Gayler knew there was a possibility that the

6   equity resulting in over $5 million in proceeds from the sale of the Golden Sunray House would

7   be deemed property of the Bankruptcy Estate for pro rata distribution.

8       130.    Instead of selling the Golden Sunray House and paying off his creditors,

9   Loerwald, Barrett and Gayler colluded in a plan for Gayler to purposely default so Barrett would

10  receive 100% of his money back and Loerwald would receive approximately $1.5 million in

11  excess of his Deed of Trust, some of which Loerwald would kick back to Gayler.

12      131.    To accomplish this scheme and collusive foreclosure, Gayler, Loerwald and

13  Barrett played active voluntary roles.

14      132.    The amounts to Loerwald and Barrett exceeded any amount they would have

15  received upon a pro rata distribution by the Bankruptcy Estate.

16  **(Loerwald's Conspiracy in the Conclusive Foreclosure)**

17      133.    On or about September 26, 2008, Barrett and Loerwald executed a Subordination

18  Agreement where Loerwald subordinated his trust deed on the Golden Sunray House recorded

19  on August 18, 2008 for $866,000 to Barrett's $1,300,000 deed of trust on the Golden Sunray

20  House "in the case of foreclosure proceedings leading to a trustee's sale."

21      134.    If Loerwald foreclosed without this subordination, Barrett would not have been

22  paid from the equity in the Golden Sunray House.

23      135.    On or about December 8, 2008, Barrett and Loerwald signed another

24  Subordination Agreement where Loerwald again subordinated his $866,000 Note to Barrett's

25  $1,300,000 deed of trust in the case of foreclosure proceedings leading to a trustee's sale.

26      136.    On or about March 26, 2009, Walter Loerwald ("Loerwald") signed a Notice of

27  Default and Election to Sell for the sale of the Golden Sunray House to start the foreclosure

28

MAC:12089-001 1572488_3 5/10/2012 8:53 AM

because Gayler allegedly failed to meet the obligations of the Loerwald Note, issued on August 20, 2008.

137.    On July 16, 2009, six months prior to Loerwald's foreclosure, Loerwald was a party to escrow instructions for the sale of the Golden Sunray House to the Browns.

138.    Loerwald was a party to the escrow instructions.

139.    However, Loerwald had not yet foreclosed.

140.    On August 18, 2009, the Loerwald Note for $866,000 became due in full from Gayler.

141.    On November 16, 2009, Gayler's Involuntary Bankruptcy was filed.

142.    On December 10, 2009, Loerwald signed a listing agreement with a real estate company to list the Golden Sunray House in the Multiple Listing System ("MLS").

143.    On or about December 24, 2009, Loerwald and the Browns signed a counteroffer and a Purchase Agreement.

144.    The December 2009 Purchase Agreement was referenced in the July 2009 Lawyers Title Escrow Instructions for the Golden Sunray House.

145.    On January 4, 2010, Loerwald initiated foreclosure proceedings as a result of Gayler's default on the $866,000 note.

146.    Based upon information and belief, the Browns were advised by Gayler and/or Loerwald to not appear at the Trustee's Sale.

147.    On the same day, Loerwald purchased the Golden Sunray House for $500,000 at the Trustee's Sale.

148.    On January 29, 2010 three weeks later Loerwald closed the sale to the Browns for $7,000,000.

149.    Loerwald received $2,379,344.04 in proceeds from the sale.

150.    The amount Loerwald received was a windfall because it was in excess of the outstanding deeds of trust encumbered on the Golden Sunray House.

151.    Barrett, as a priority creditor, received a total amount of $2,726,495.00.

MARQUIS AURBACH COFFING
10001 Park Run Drive
Las Vegas, Nevada 89145
(702) 382-0711 FAX: (702) 382-5816

MAC:12089-001 1572488_3 5/10/2012 8:53 AM

MARQUIS AURBACH COFFING
10001 Park Run Drive
Las Vegas, Nevada 89145
(702) 382-0711 FAX: (702) 382-5816

**THE $200,000 KICKBACK FROM LOERWALD TO GAYLER**

152.    On February 3, 2010, Loerwald issued a cashier's check from his bank account to Golden Sunray for $200,000.  Furniture, artwork, TV's and audio visual were written in the memo line of the check.

153.    The furniture, artwork, TV's and audio visual were part of the purchase price—yet Gayler received $200,000 for the personal property belonging to Golden Sunray who was not a party of the purchase agreement.

154.    Within several days, Gayler transferred the Golden Sunray funds out of the Golden Sunray account in violation of the Court Order for his personal use as referenced above.

155.    The foreclosure of the Golden Sunray House and the subsequent sale by Loerwald was collusive and fraudulent between Gayler, Loerwald, Barrett and the Browns.

**THE BARRETT "LOAN" TO GAYLER**

156.    On September 19, 2008, Gayler opened an additional bank account in Golden Sunray's name to accept $1,300,000 it would receive a few days later by Barrett.

157.    On or about September 26, 2008, Gayler repaid the $1,300,000 loan from Barrett.

a.    The money owed to Barrett originated from Gayler's purchase of Barrett's membership interest in CH Angelus.

b.    Gayler never paid Barrett cash, but secured his obligation to repay Barrett by executing a deed of trust on CH Angelus land without permission or notice to its members.

c.    In September 2008, Gayler borrowed money from another individual to pay Barrett the $1.3 for his interest—the loan was also secured by a deed of trust on CH Angelus and CHA II's land without permission.

158.    On or about September 26, 2008, Barrett received an excess of $1,300,000 from Stewart Title as a payoff of the loan owed to Barrett from Gayler's CH Angelus property.

159.    On or about the same day, September 26, 2008, Gayler and Barrett executed a Promissory Note for the $1,300,000 secured by a deed of trust on the Golden Sunray House.

160.    On or about the same day, September 26, 2008, Gayler deposited the $1,300,000 into Golden Sunray's bank account.

MAC:12089-001 1572488_3 5/10/2012 8:53 AM

161.    If Gayler had sold the Golden Sunray House to the Browns, he would have had sufficient equity in the home to sell it on his own and sufficiently satisfy all lien holders.

162.    Instead, the parties engaged in a scheme to diminish assets of the Estate available to the Bankruptcy Creditors.

**FIRST CLAIM FOR RELIEF**
**(Declaratory Relief)**
**(The 41 Transfers of Ownership in Various Assets to TGF Was Fraudulent)**
**(TGF Assets Are Property of the Bankruptcy Estate)**
**(11 U.S.C. § 541(a) and NRS 86.351)**

163.    Trustee realleges and incorporates for this reference each and every allegation contained above, inclusive, as if fully set forth herein.

164.    There presently exists a justiciable controversy in this matter related to the Trustee acting on behalf of the Bankruptcy Estate against named Defendants.

165.    The Trustee, on behalf of the Bankruptcy Estate and its creditors, has a legally protectable interest to ensure the Estate is properly administered, including, but limited to, investigating the financial affairs of the Estate, attaining property belonging to the Estate and reducing property attained to money.

166.    In 2008, Gayler knew the real estate crash was coming.  He had lawsuits filed against him and had many millions of dollars in loans coming due in 2008, 2009 and 2010.

167.    Based upon information and belief, Gayler created documents that are believed to have been backdated to January 2, 2009 to effectuate the 41 Transfers from Gayler-owned, controlled and managed entities to Gayler's entity TGF.

168.    On January 2, 2009, Gayler transferred 33 of the 41 ownership assets from the WAG SPT to TGF and the remaining 8 from himself individually to TGF.

169.    Gayler admitted in his 2004 Examination that he made the transfers to TGF on January 2, 2009 because that was when he became "very concerned with the real estate market and [his] ability to make enough money to pay the interest, expenses, debts and whatever."

MARQUIS AURBACH COFFING
10001 Park Run Drive
Las Vegas, Nevada 89145
(702) 382-0711 FAX: (702) 382-5816

170.    In 2009 and 2010, Gayler individually and the WAG SPT previously owned the following properties:

| | Transfer Date | Name Gayler Held Interest In | Entity | % Transferred to TGF | Consideration |
|---|---|---|---|---|---|
| 1 | 01/02/09 | William A. Gayler | 23 Golden Sunray L.L.C. | 100.0000% | 0 |
| 2 | 01/02/09 | William A. Gayler | Arietta L.L.C. | 50.0000% | 0 |
| 3 | 01/02/09 | William A. Gayler | Ch. Angelus III, L.L.C. | 1.0000% | 0 |
| 4 | 01/02/09 | William A. Gayler | G.C.S., LLC | 10.0000% | 0 |
| 5 | 01/02/09 | William A. Gayler | ICON Holding Company L.L.C. | 1.0000% | 0 |
| 6 | 01/02/09 | William A. Gayler | ICON Real Estate Companies, Inc. | 100.0000% | 0 |
| 7 | 01/02/09 | William A. Gayler | ICON Real Estate Development L.L.C. | 99.0000% | 0 |
| 8 | 01/02/09 | William A. Gayler | Redstone Grille, L.L.C. | 35.0000% | 0 |
| 9 | 01/02/09 | WAG Separate Prop Trust | Caine Five, L.L.C. | 5.0000% | 0 |
| 10 | 01/02/09 | WAG Separate Prop Trust | Ch. Angelus II L.L.C. | 7.5000% | 0 |
| 11 | 01/02/09 | WAG Separate Prop Trust | Ch. Angelus ii L.L.C. | 7.5000% | 0 |
| 12 | 01/02/09 | WAG Separate Prop Trust | Ch. Angelus IV, L.L.C. | 15.0000% | 0 |
| 13 | 01/02/09 | WAG Separate Prop Trust | Ch. Angelus Partners L.L.C. | 90.0000% | 0 |
| 14 | 01/02/09 | WAG Separate Prop Trust | Ch. Baron L.L.C. | 12.7894% | 0 |
| 15 | 01/02/09 | WAG Separate Prop Trust | Ch. Montrose L.L.C. | 37.5000% | 0 |
| 16 | 01/02/09 | WAG Separate Prop Trust | Ch. Pichon L.L.C. | 22.5000% | 0 |
| 17 | 01/02/09 | WAG Separate Prop Trust | Charles Krug L.L.C. | 22.5000% | 0 |
| 18 | 01/02/09 | WAG Separate Prop Trust | Diamante Rose L.L.C. | 4.2500% | 0 |
| 19 | 01/02/09 | WAG Separate Prop Trust | Govan Cross L.L.C. | 100.0000% | 0 |
| 20 | 01/02/09 | WAG Separate Prop Trust | Harlan L.L.C. | 50.0000% | 0 |
| 21 | 01/02/09 | WAG Separate Prop Trust | ICON Holding Company L.L.C. | 99.0000% | 0 |
| 22 | 01/02/09 | WAG Separate Prop Trust | ICON Profit Sharing L.L.C. | 35.0000% | 0 |
| 23 | 01/02/09 | WAG Separate Prop Trust | IPS 4 L.L.C. | 50.0000% | 0 |
| 24 | 01/02/09 | WAG Separate Prop Trust | IPS II L.L.C. | 60.0000% | 0 |
| 25 | 01/02/09 | WAG Separate Prop Trust | IPS III L.L.C. | 50.0000% | 0 |
| 26 | 01/02/09 | WAG Separate Prop Trust | Martha's Vineyard L.L.C. | 100.0000% | 0 |

MAC:12089-001 1572488_3 5/10/2012 8:53 AM

MARQUIS AURBACH COFFING
10001 Park Run Drive
Las Vegas, Nevada 89145
(702) 382-0711 FAX: (702) 382-5816

| | Transfer Date | Name Gayler Held Interest In | Entity | % Transferred to TGF | Consideration |
|---|---|---|---|---|---|
| 27 | 01/02/09 | WAG Separate Prop Trust | Maya I-215 L.L.C. | 1 Share | 0 |
| 28 | 01/02/09 | WAG Separate Prop Trust | Meritage-Gayler L.L.C. | 61.5400% | 0 |
| 29 | 01/02/09 | WAG Separate Prop Trust | One Hundred Year L.L.C. | 24.2986% | 0 |
| 30 | 01/02/09 | WAG Separate Prop Trust | Plump Jack L.L.C. | 100.0000% | 0 |
| 31 | 01/02/09 | WAG Separate Prop Trust | Polyrus L.L.C. | 20.0000% | 0 |
| 32 | 01/02/09 | WAG Separate Prop Trust | Screaming Eagle II L.L.C. | 60.0000% | 0 |
| 33 | 01/02/09 | WAG Separate Prop Trust | Screaming Eagle L.L.C. | 56.2500% | 0 |
| 34 | 01/02/09 | WAG Separate Prop Trust | Sunset I L.L.C. | 4.5600% | 0 |
| 35 | 01/02/09 | WAG Separate Prop Trust | Sunset II L.L.C. | 6.5000% | 0 |
| 36 | 01/02/09 | WAG Separate Prop Trust | Sunset III L.L.C. | 35.5000% | 0 |
| 37 | 01/02/09 | WAG Separate Prop Trust | Sunset IV L.L.C. | 4.0000% | 0 |
| 38 | 01/02/09 | WAG Separate Prop Trust | Sunset V L.L.C. | 4.0000% | 0 |
| 39 | 01/02/09 | WAG Separate Prop Trust | Sunset VI L.L.C. | 9.0000% | 0 |
| 40 | 01/02/09 | WAG Separate Prop Trust | Sunset VII L.L.C. | 12.5000% | 0 |
| 41 | 01/02/09 | Gayler Family Trust | Dominus M-B, LLC | 40.0000% | 0 |

171.    Neither the WAG SPT bank account, nor Gayler's personal accounts, received any consideration related to The 41 Transfers to TGF.

172.    No reasonable equivalent value was received in exchange for The 41 Transfers from WAG SPT or Gayler individually.

173.    Gayler individually is the General Partner of TGF.

174.    Gayler individually is the Limited Partner of TGF.

175.    Gayler exercises exclusive dominion and control over TGF.

176.    Gayler's interests in TGF are personal property pursuant to 11 U.S.C. § 541(a) and NRS 86.351.

MAC:12089-001 1572488_3 5/10/2012 8:53 AM

MARQUIS AURBACH COFFING
10001 Park Run Drive
Las Vegas, Nevada 89145
(702) 382-0711 FAX: (702) 382-5816

177. This Court should declare The 33 Transfers from the WAG SPT to TGF are void and accordingly revert the interests back to WAG SPT and deem those interests property of the Bankruptcy Estate pursuant to 11 U.S.C. § 541(a).

178. This Court should further declare The 8 Transfers from Gayler individually to TGF are void and accordingly revert the interests back to Gayler and deem those interests property of the Bankruptcy Estate pursuant to 11 U.S.C. § 541.

179. Any interests this Court deems belongs to TGF should be declared property of the Estate, including, but not limited to, Gayler's individually held general and limited partnership interests and any other entity he owns that holds an ownership interest in TGF.

180. It has become necessary for the Trustee to engage the services of an attorney to prosecute this matter. The Trustee is, therefore, entitled to an award of reasonable attorney's fees and costs as special and general damages.

### SECOND CLAIM FOR RELIEF
### (Alter Ego—WAG SPT)

181. Trustee realleges and incorporates for this reference each and every allegation contained above, inclusive, as if fully set forth herein.

182. Gayler is the alter ego of the William A. Gayler Separate Property Trust.

183. WAG SPT is influenced and governed by Gayler.

184. Gayler engaged in numerous transactions where he conveyed real property to himself individually and back to WAG SPT.

185. Gayler lived at the property or properties held by WAG SPT.

186. Gayler deducted interest expenses from his personal tax return related to the property held by WAG SPT.

187. There is such a unity of interest in ownership that WAG SPT is inseparable from Gayler.

188. Gayler has unfettered access to and dominion and control over WAG SPT.

189. Gayler has abused his unfettered access to WAG SPT.

MARQUIS AURBACH COFFING
10001 Park Run Drive
Las Vegas, Nevada 89145
(702) 382-0711  FAX: (702) 382-5816

MAC:12089-001 1572488_3 5/10/2012 8:53 AM

190.    Gayler used his unfettered access over the trust income to use it for whatever he deemed necessary for his support and maintenance.

191.    Gayler's personal use of the trust income amounts to a beneficial interest.

192.    WAG SPT became a mere shell and instrumentality for the conduct of Gayler's personal business and activities.

193.    Prior to January 2, 2009, Gayler placed the majority of his business and personal assets in WAG SPT.

194.    On January 2, 2009, Gayler transferred all of the assets WAG SPT held to TGF for his own personal benefit.

195.    The assets transferred to TGF were valued at approximately $3.1 million on Gayler's tax return.

196.    WAG SPT never received reasonably equivalent value for the 41 Transfers fraudulently removed from WAG SPT.

197.    WAG SPT was not used for its intended purpose as a trust, rather, it was used as a personal enterprise to shield Gayler from personal liability through multiple property transfers.

198.    Gayler has comingled the funds in the WAG SPT account with his personal bank account(s).

199.    Gayler has ignored the WAG SPT trust formalities.

200.    Under the facts and circumstances of this case, adherence to the fiction of a separate entity would promote and manifest injustice and sanction of fraud among the Bankruptcy Estate and its creditors.

201.    The financial structure of WAG SPT will render it unable to pay a judgment against it because it is the alter ego of Gayler absent of independence, financial structure and identity.

202.    This Court should disregard the trust fiction of WAG SPT because it is and has been used to defraud creditors.

MARQUIS AURBACH COFFING
10001 Park Run Drive
Las Vegas, Nevada 89145
(702) 382-0711 FAX: (702) 382-5816

MAC:12089-001 1572488_3 5/10/2012 8:53 AM

203.    The Trustee requests that this Court make a determination that Gayler is the alter ego of WAG SPT and that the assets of WAG SPT be declared property of the Bankruptcy Estate pursuant to 11 U.S.C. § 541(a).

204.    It has become necessary for the Trustee to engage the services of an attorney to prosecute this matter.  The Trustee is, therefore, entitled to an award of reasonable attorney's fees and costs as special and general damages.

### THIRD CLAIM FOR RELIEF
**(Declaratory Relief)**
**(Gayler's Managing Member Interests Are Property of the Bankruptcy Estate)**
**(11 U.S.C. § 541(a)(1) and 3(c) and NRS 86.351)**

205.    Trustee realleges and incorporates for this reference each and every allegation contained above, inclusive, as if fully set forth herein.

206.    There presently exists a justiciable controversy in this matter related to the Trustee acting on behalf of the Bankruptcy Estate against named Defendants.

207.    The Trustee, on behalf of the Bankruptcy Estate and its creditors, has a legally protectable interest to ensure the Estate is properly administered, including, but not limited to, investigating the financial affairs of the Estate, attaining property belonging to the Estate and reducing the property attained to money.

208.    Gayler's managing member interests are a legal or equitable interest in each of the limited liability companies pursuant to § 541(a)(1) and (c).

209.    Gayler, as managing member of the entities outlined below, enjoys the ability to participate in management which is deemed property of the Estate under § 541(c).

210.    Gayler's solely held partnership interests through his positions as a General and Limited partner are deemed a legal or equitable interest in each of the partnerships and are deemed property of Estate under § 541.

MARQUIS AURBACH COFFING
10001 Park Run Drive
Las Vegas, Nevada 89145
(702) 382-0711 FAX: (702) 382-5816

MAC:12089-001 1572488_3 5/10/2012 8:53 AM

211. Gayler holds direct and indirect management interests in the following companies either through himself individually, a company wholly owned and controlled by himself, his children or as a managing member of a company controlled and directed by himself:

| Entity | Manager |
|---|---|
| 23 Golden Sunray, L.L.C. | William Gayler – Managing Member |
| Apan Wine, Limited Liability Company | William Gayler – Managing Member |
| Arietta L.L.C. | Barry Moore – Manager<br>William Gayler – Manager |
| Axios-TC, Limited Liability Company | Apan Wine LLC - Manager |
| Caine Five, L.L.C. | William A. Gayler – Managing Member |
| Ch. Angelus II L.L.C. | William A. Gayler – Managing Member |
| Ch. Angelus III, L.L.C. | Apan Wine LLC – Manager |
| Ch. Angelus IV, Limited Liability Company | William Gayler – Managing Member |
| Ch. Angelus Partners, LLC | Apan Wine LLC – Manager |
| Ch. Baron LLC | William A. Gayler – Managing Member |
| Ch. Montrose, LLC | TGF Holding LP – Managing Member |
| Ch. Pichon I, LLC | William A. Gayler – Managing Member |
| Charles Krug LLC | William A. Gayler – Managing Member |
| Diamante Rose, LLC | Apan Wine LLC – Manager |
| Dominus M-B, L.L.C. | William A. Gayler – Manager |
| Gayler Family Educational LLC | Brianna M. Gayler – Managing Member<br>William Gayler - Manager |
| Harlan, LLC | William A. Gayler – Managing Member |
| ICON Holding Company LLC | William A. Gayler – Managing Member |
| ICON Profit Sharing LLC | William A. Gayler – Managing Member |
| ICON Real Estate Companies, Inc. | William A. Gayler – Director<br>TGF Holding LP – President<br>Gloria Buonaccorsi – Secretary<br>TGF Holding LP – Treasurer |
| ICON Real Estate Development LLC | Apan Wine LLC – Managing Member |
| IPS II, Limited Liability Company | William Gayler – Managing Member |
| IPS 4, LLC | William Gayler – Managing Member |
| Martha's Vineyard LLC | William Gayler – Managing Member |
| Maya I-215, LLC | Screaming Eagle LLC – Manager (Gayler manager of Screaming Eagle) |
| Meritage-Gayler LLC | William A. Gayler – Managing Member |
| Morpheus Enterprises, LLC | William A. Gayler – Manager |
| One Hundred Year, LLC | William Gayler – Managing Member |
| Plump Jack Limited Liability Company | Apan Wine LLC – Manager |
| Polyrus LLC | TGF Holding, LP – Managing Member |
| Redstone Grille, LLC | William A. Gayler – Manager |
| Screaming Eagle LLC | William A. Gayler – Managing Member |
| Screaming Eagle II, LLC | William A. Gayler – Managing Member |
| Sunset I, LLC | TGF Holding, LP – Managing Member |
| Sunset VI, LLC | William A. Gayler – Managing Member |
| Sunset 7, LLC | William Gayler – Managing Member |
| TGF Holding LP | William Gayler – General Partner |

MAC:12089-001 1572488_3 5/10/2012 8:53 AM

MARQUIS AURBACH COFFING
10001 Park Run Drive
Las Vegas, Nevada 89145
(702) 382-0711 FAX: (702) 382-5816

MARQUIS AURBACH COFFING
10001 Park Run Drive
Las Vegas, Nevada 89145
(702) 382-0711 FAX: (702) 382-5816

212.   Plaintiff requests a declaration by the Court that all the following managing membership interests held by:

       a.     The WAG SPT;

       b.     William A. Gayler individually;

       c.     Partnerships or Companies deemed to be Gayler's alter ego; and

       d.     The Gayler Entities

are property of the Bankruptcy Estate.

213.   Plaintiff also requests a declaration by the Court that all managing member interests of named Defendant companies which Gayler manages are personal property of Gayler and thus property of the Estate pursuant to 11 U.S.C § 541 and NRS 86.351, including sole member entities and multi-member entities.

214.   It has become necessary for the Trustee to engage the services of an attorney to prosecute this matter.  The Trustee is, therefore, entitled to an award of reasonable attorney's fees and costs as special and general damages.

### FOURTH CLAIM FOR RELIEF
#### (Declaratory Relief)
#### (Gayler's Interest in G.C.S., Inc. is Property of the Bankruptcy Estate)
#### (11 U.S.C. § 541(a)(1) and NRS 86.351)

215.   Trustee realleges and incorporates for this reference each and every allegation contained above, inclusive, as if fully set forth herein.

216.   There presently exists a justiciable controversy in this matter related to the Trustee acting on behalf of the Bankruptcy Estate against named Defendants.

217.   The Trustee, on behalf of the Bankruptcy Estate and its creditors, has a legally protectable interest to ensure the Estate is properly administered, including, but limited to, investigating the financial affairs of the Estate, attaining property belonging to the Estate and reducing property attained to money.

218.   Gayler is a ten-percent (10%) shareholder in G.C.S., Inc., the gaming operation branch of the G.C.S. companies comprised of G.C.S., LLC and G.C.S., Inc. (collectively referred herein as "G.C.S. Companies").

MAC:12089-001 1572488_3 5/10/2012 8:53 AM

MARQUIS AURBACH COFFING
10001 Park Run Drive
Las Vegas, Nevada 89145
(702) 382-0711 FAX: (702) 382-5816

1   219.   Gayler individually holds a ten-percent (10%) stock interest in G.C.S., Inc.

2   220.   Gayler as an individual maintains a gaming license with the Clark County Liquor

3   and Gaming Licensing Board respective of his ten-percent (10%) interest in G.C.S., Inc., as

4   required by the county, as long as he has interest in the bar business.

5   221.   Gayler's shareholder interest is a legal or equitable interest and thus property of

6   the Estate under § 541(a)(1).

7   222.   Plaintiff requests a declaration by the Court that Gayler's ten percent (10%)

8   interest in the stock of G.C.S., Inc. is property of the Bankruptcy Estate pursuant to § 541(a)(1).

9   223.   It has become necessary for the Trustee to engage the services of an attorney to

10  prosecute this matter. The Trustee is therefore entitled to an award of reasonable attorney's fees

11  and costs as special and general damages.

12  
13  **FIFTH CLAIM FOR RELIEF**
    **(Declaratory Relief)**
    **(Gayler's Interest in IPS II is Property of the Bankruptcy Estate)**
14  **(11 U.S.C. § 541(a)(1) and 86.351)**

15  224.   Trustee realleges and incorporates for this reference each and every allegation

16  contained above, inclusive, as if fully set forth herein.

17  225.   There presently exists a justiciable controversy in this matter related to the

18  Trustee acting on behalf of the Bankruptcy Estate against named Defendants.

19  226.   The Trustee, on behalf of the Bankruptcy Estate and its creditors, has a legally

20  protectable interest to ensure the Estate is properly administered, including, but limited to,

21  investigating the financial affairs of the Estate, attaining property belonging to the Estate and

22  reducing property attained to money.

23  227.   On or about August 2005, Gayler formed and managed IPS II.

24  228.   Gayler's assistant, Gloria Buonaccorsi, is the only other member holding the

25  remaining forty-percent (40%) interest.

26  229.   On January 2, 2009, Gayler's sixty-percent (60%) membership interest in IPS II

27  was purportedly transferred without consideration from the WAG SPT for the benefit of insider

28  transferee company TGF.

MAC:12089-001 1572488_3 5/10/2012 8:53 AM

230. Gayler's transfer of IPS II as part of the 41 Transfers was made with intent to hinder, delay or defraud creditors.

231. Gayler is the General Partner and the person in control of TGF.

232. There was no consideration given to transferor WAG SPT for the transfer mentioned immediately above.

233. A transfer without consideration to such a transferee is void pursuant to 11 U.S.C. § 548(a)(1) and NRS 112.180.

234. This Court should declare that the transfer mentioned above was fraudulent, set the transfer aside and declare that the membership interest is property of the Bankruptcy Estate pursuant to § 11 U.S.C. § 541(a)(1) and NRS 86.351.

235. It has become necessary for the Trustee to engage the services of an attorney to prosecute this matter. The Trustee is therefore entitled to an award of reasonable attorney's fees and costs as special and general damages.

### SIXTH CLAIM FOR RELIEF
**(Declaratory Relief)**
**(Gayler's Interest in Polyrus is Property of the Bankruptcy Estate)**
**(11 U.S.C. § 541(a)(1) and NRS 86.351)**

236. Trustee realleges and incorporates for this reference each and every allegation contained above, inclusive, as if fully set forth herein.

237. There presently exists a justiciable controversy in this matter related to the Trustee acting on behalf of the Bankruptcy Estate against named Defendants.

238. The Trustee, on behalf of the Bankruptcy Estate and its creditors, has a legally protectable interest to ensure the Estate is properly administered, including, but limited to, investigating the financial affairs of the Estate, attaining property belonging to the Estate and reducing property attained to money.

239. On or about August 2005, Gayler formed Polyrus.

240. Gayler formed the company and was the only managing member.

241. Gayler managed and controlled Polyrus.

MAC:12089-001 1572488_3 5/10/2012 8:53 AM

MARQUIS AURBACH COFFING
10001 Park Run Drive
Las Vegas, Nevada 89145
(702) 382-0711 FAX: (702) 382-5816

242.    On January 2, 2009, Gayler's twenty-percent (20%) membership interest in Polyrus was purportedly transferred without consideration from the WAG SPT for the benefit of transferee insider company TGF.

243.    Gayler is the General Partner and the person in control of TGF.

244.    There was no consideration given to transferor WAG SPT for the transfer mentioned immediately above.

245.    A transfer without consideration to such a transferee is void pursuant to 11 U.S.C. § 548(a)(1) and NRS 112.180.

246.    This Court should declare that the transfer mentioned above was fraudulent, set the transfer aside and declare that the membership interest is property of the Bankruptcy Estate pursuant to § 11 U.S.C. § 541(a)(1) and NRS 86.351.

247.    It has become necessary for the Trustee to engage the services of an attorney to prosecute this matter.  The Trustee is therefore entitled to an award of reasonable attorney's fees and costs as special and general damages.

**SEVENTH CLAIM FOR RELIEF**
**(Declaratory Relief)**
**(Gayler's Interest in Groth is Property of the Bankruptcy Estate)**
**(11 U.S.C. § 541(a)(1) and NRS 86.351)**

248.    Trustee realleges and incorporates for this reference each and every allegation contained above, inclusive, as if fully set forth herein.

249.    There presently exists a justiciable controversy in this matter related to the Trustee acting on behalf of the Bankruptcy Estate against named Defendants.

250.    The Trustee, on behalf of the Bankruptcy Estate and its creditors, has a legally protectable interest to ensure the Estate is properly administered, including, but limited to, investigating the financial affairs of the Estate, attaining property belonging to the Estate and reducing property attained to money.

251.    On or about 1999, Gayler formed Groth.

252.    Gayler individually is the only managing member of Groth.

253.    Gayler holds his managing membership interest in his individual capacity.

MAC:12089-001 1572488_3 5/10/2012 8:53 AM

MARQUIS AURBACH COFFING
10001 Park Run Drive
Las Vegas, Nevada 89145
(702) 382-0711 FAX: (702) 382-5816

MARQUIS AURBACH COFFING
10001 Park Run Drive
Las Vegas, Nevada 89145
(702) 382-0711 FAX: (702) 382-5816

254.    Gayler individually owns a fifteen-percent (15%) membership interest.

255.    Gayler's individual 15% ownership is personal property and a legal or equitable interest pursuant to § 541(a)(1) and NRS 86.351.

256.    This Court should declare that Gayler's fifteen-percent (15%) membership interest in Groth is property of the Bankruptcy Estate pursuant to § 541(a)(1) and NRS 86.351.

257.    It has become necessary for the Trustee to engage the services of an attorney to prosecute this matter.  The Trustee is therefore entitled to an award of reasonable attorney's fees and costs as special and general damages.

### EIGHTH CLAIM FOR RELIEF
**(Declaratory Relief)**
**(Gayler's Interest in CH Pichon I, LLC is Property of the Bankruptcy Estate)**
**(11 U.S.C. § 541(a)(1) and NRS 86.351)**

258.    Trustee realleges and incorporates for this reference each and every allegation contained above, inclusive, as if fully set forth herein.

259.    There presently exists a justiciable controversy in this matter related to the Trustee acting on behalf of the Bankruptcy Estate against named Defendants.

260.    The Trustee, on behalf of the Bankruptcy Estate and its creditors, has a legally protectable interest to ensure the Estate is properly administered, including, but limited to, investigating the financial affairs of the Estate, attaining property belonging to the Estate and reducing property attained to money.

261.    On or about April 1998, Gayler formed Pichon.

262.    Gayler originally held his interest in the name of WAG SPT.

263.    Gayler is the only managing member and controls the company.

264.    On January 2, 2009, Gayler's 25% membership interest in Pichon was purportedly transferred without consideration from the WAG SPT for the benefit of transferee insider company TGF.

265.    Gayler is the general partner and the person in control of TGF.

266.    There was no consideration given to transferor WAG SPT for the transfer mentioned immediately above.

1    267.    A transfer without consideration to such a transferee is void pursuant to 11 U.S.C.

2    § 548(a)(1) and NRS 112.180.

3    268.    This Court should declare that the transfer mentioned above was fraudulent, set

4    the transfer aside and declare that the interest is property of the Bankruptcy Estate pursuant to §

5    11 U.S.C. § 541(a)(1) and NRS 86.351.

6    269.    It has become necessary for the Trustee to engage the services of an attorney to

7    prosecute this matter.  The Trustee is therefore entitled to an award of reasonable attorney's fees

8    and costs as special and general damages.

9
                        **NINTH CLAIM FOR RELIEF**
10                           **(Declaratory Relief)**
     **(Gayler's Interest in Harlan, LLC is Property of the Bankruptcy Estate)**
11                  **(11 U.S.C. § 541(a)(1) and NRS 86.351)**

12    270.    Trustee realleges and incorporates for this reference each and every allegation

13    contained above, inclusive, as if fully set forth herein.

14    271.    There presently exists a justiciable controversy in this matter related to the

15    Trustee acting on behalf of the Bankruptcy Estate against named Defendants.

16    272.    The Trustee, on behalf of the Bankruptcy Estate and its creditors, has a legally

17    protectable interest to ensure the Estate is properly administered, including, but limited to,

18    investigating the financial affairs of the Estate, attaining property belonging to the Estate and

19    reducing property attained to money.

20    273.    On or about January 2003, Gayler formed Harlan.

21    274.    Gayler is the only managing member and controlled the company holding a fifty-

22    percent (50%) membership interest.

23    275.    On January 2, 2009, Gayler's 50% membership interest in Harlan was purportedly

24    transferred without consideration from the WAG SPT for the benefit of transferee insider

25    company TGF.

26    276.    Gayler is the general partner and the person in control of TGF to satisfy its insider

27    status.

28

MARQUIS AURBACH COFFING
10001 Park Run Drive
Las Vegas, Nevada 89145
(702) 382-0711 FAX: (702) 382-5816

MAC:12089-001 1572488_3 5/10/2012 8:53 AM

277.    There was no consideration given to transferor WAG SPT for the transfer mentioned immediately above.

278.    Gayler's 50% membership interest is personal property amounting to a legal or equitable interest pursuant to § 541(a)(1) and NRS 86.351.

279.    A transfer without consideration to such a transferee is void pursuant to 11 U.S.C. § 548(a)(1) and NRS 112.180.

280.    This Court should declare that the transfer mentioned above was fraudulent, set the transfer aside and declare that the interest is property of the Bankruptcy Estate pursuant to 11 U.S.C. § 541(a)(1).

281.    It has become necessary for the Trustee to engage the services of an attorney to prosecute this matter.  The Trustee is therefore entitled to an award of reasonable attorney's fees and costs as special and general damages.

### TENTH CLAIM FOR RELIEF
**(Declaratory Relief)**
**(Gayler's Interest in CH Angelus is Property of the Bankruptcy Estate)**
**(11 U.S.C. § 541(a)(1) and NRS 86.351)**

282.    Trustee realleges and incorporates for this reference each and every allegation contained above, inclusive, as if fully set forth herein.

283.    There presently exists a justiciable controversy in this matter related to the Trustee acting on behalf of the Bankruptcy Estate against named Defendants.

284.    The Trustee, on behalf of the Bankruptcy Estate and its creditors, has a legally protectable interest to ensure the Estate is properly administered, including, but limited to, investigating the financial affairs of the Estate, attaining property belonging to the Estate and reducing property attained to money.

285.    On or about December 2002, Gayler formed CH Angelus.

286.    Gayler is the only managing member controlling the company.

287.    Gayler owns a ten-percent (10%) membership interest.

288.    Based upon information and belief, Gayler's membership interest in CH Angelus is, and always has been, held in his individual capacity.

MARQUIS AURBACH COFFING
10001 Park Run Drive
Las Vegas, Nevada 89145
(702) 382-0711 FAX: (702) 382-5816

MAC:12089-001 1572488_3 5/10/2012 8:53 AM

289. Gayler's 10% individually held membership interest is personal property amounting to a legal or equitable interest under § 541(a)(1) and NRS 86.351.

290. Plaintiff requests a declaration by the Court that Gayler's individually held ten-percent (10%) interest in CH Angelus be deemed property of the Bankruptcy Estate pursuant to § 541(a)(1).

291. It has become necessary for the Trustee to engage the services of an attorney to prosecute this matter. The Trustee is therefore entitled to an award of reasonable attorney's fees and costs as special and general damages.

### ELEVENTH CLAIM FOR RELIEF
### (Declaratory Relief)
### (Gayler's Interest in CHA II is Property of the Bankruptcy Estate)
### (11 U.S.C. § 541(a)(1) and NRS 86.351)

292. Trustee realleges and incorporates for this reference each and every allegation contained above, inclusive, as if fully set forth herein.

293. There presently exists a justiciable controversy in this matter related to the Trustee acting on behalf of the Bankruptcy Estate against named Defendants.

294. The Trustee, on behalf of the Bankruptcy Estate and its creditors, has a legally protectable interest to ensure the Estate is properly administered, including, but limited to, investigating the financial affairs of the Estate, attaining property belonging to the Estate and reducing property attained to money.

295. On or about April 2002, Gayler formed CHA II.

296. Gayler is a managing member and co-manages the company holding a 5.62% membership interest individually.

297. Gayler's membership interest in CHA II is, and always has been held in his individual capacity.

298. On January 2, 2009, Gayler's 5.62% membership interest in CHA II was purportedly transferred without consideration from WAG SPT for the benefit of transferee company TGF, an insider entity.

299. Gayler is the General Partner and the person in control of TGF.

MAC:12089-001 1572488_3 5/10/2012 8:53 AM

MARQUIS AURBACH COFFING
10001 Park Run Drive
Las Vegas, Nevada 89145
(702) 382-0711 FAX: (702) 382-5816

1      300.     Gayler is the Limited Partner of TGF.

2      301.     There was no consideration given to transferor WAG SPT for the transfer

3 mentioned immediately above.

4      302.     A transfer without consideration to such a transferee is void pursuant to 11 U.S.C.

5 § 548(a)(1) and NRS 112.180.

6      303.     Gayler's individual membership interest is personal property amounting to a legal

7 or equitable interest under § 541(a)(1) and NRS 86.351.

8      304.     This Court should declare that the transfer mentioned above was fraudulent, set

9 the transfer aside and declare that the interest is property of the Bankruptcy Estate pursuant to 11

10 U.S.C. § 541(a)(1).

11      305.     It has become necessary for the Trustee to engage the services of an attorney to

12 prosecute this matter. The Trustee is therefore entitled to an award of reasonable attorney's fees

13 and costs as special and general damages.

### TWELFTH CLAIM FOR RELIEF
#### (Declaratory Relief)
#### (Gayler's Interest in CHA III is Property of the Bankruptcy Estate)
#### (11 U.S.C. § 541(a)(1) and NRS 86.351)

17      306.     Trustee realleges and incorporates for this reference each and every allegation

18 contained above, inclusive, as if fully set forth herein.

19      307.     There presently exists a justiciable controversy in this matter related to the

20 Trustee acting on behalf of the Bankruptcy Estate against named Defendants.

21      308.     The Trustee, on behalf of the Bankruptcy Estate and its creditors, has a legally

22 protectable interest to ensure the Estate is properly administered, including, but limited to,

23 investigating the financial affairs of the Estate, attaining property belonging to the Estate and

24 reducing property attained to money.

25      309.     On or about January 2004, Gayler formed CHA III.

26      310.     Gayler is a managing member holding a 12.50% membership interest.

MARQUIS AURBACH COFFING
10001 Park Run Drive
Las Vegas, Nevada 89145
(702) 382-0711 FAX: (702) 382-5816

MAC:12089-001 1572488_3 5/10/2012 8:53 AM

311.    On January 2, 2009, Gayler's 12.50% membership interest in CHA III was purportedly transferred without consideration from WAG SPT for the benefit of transferee company TGF, an insider entity.

312.    Gayler is the general partner and the person in control of TGF.

313.    There was no consideration given to transferor WAG SPT for the transfer mentioned immediately above.

314.    A transfer without consideration to such a transferee is void pursuant to 11 U.S.C. § 548(a)(1) and NRS 112.180.

315.    Gayler's membership interest is personal property amounting to a legal or equitable interest under 541(a)(1) and NRS 86.351.

316.    This Court should declare that the transfer mentioned above was fraudulent, set the transfer aside and declare that the interest is property of the Bankruptcy Estate pursuant to 11 U.S.C. § 541(a)(1).

317.    It has become necessary for the Trustee to engage the services of an attorney to prosecute this matter.  The Trustee is therefore entitled to an award of reasonable attorney's fees and costs as special and general damages.

### THIRTEENTH CLAIM FOR RELIEF
#### (Declaratory Relief)
**(Gayler's Interest in Apan is Property of the Bankruptcy Estate)**
**(11 U.S.C. § 541(a)(1) and NRS 86.351)**

318.    Trustee realleges and incorporates for this reference each and every allegation contained above, inclusive, as if fully set forth herein.

319.    There presently exists a justiciable controversy in this matter related to the Trustee acting on behalf of the Bankruptcy Estate against named Defendants.

320.    The Trustee, on behalf of the Bankruptcy Estate and its creditors, has a legally protectable interest to ensure the Estate is properly administered, including, but limited to, investigating the financial affairs of the Estate, attaining property belonging to the Estate and reducing property attained to money.

321.    On or about March 2005, Gayler formed Apan.

MAC:12089-001 1572488_3 5/10/2012 8:53 AM

MARQUIS AURBACH COFFING
10001 Park Run Drive
Las Vegas, Nevada 89145
(702) 382-0711 FAX: (702) 382-5816

MARQUIS AURBACH COFFING
10001 Park Run Drive
Las Vegas, Nevada 89145
(702) 382-0711 FAX: (702) 382-5816

322.    Gayler is the 100% sole member and manager.

323.    Gayler's 100% membership interest in Apan is been held in his individual capacity as trustee of the WAG SPT.

324.    Gayler's membership interest is personal property amounting to a legal or equitable interest under § 541(a)(1) and NRS 86.351.

325.    Plaintiff requests a declaration by the Court that Gayler's one-hundred percent (100%) interest in Apan be deemed property of the Bankruptcy Estate pursuant to § 541(a)(1).

326.    It has become necessary for the Trustee to engage the services of an attorney to prosecute this matter.  The Trustee is therefore entitled to an award of reasonable attorney's fees and costs as special and general damages.

## FOURTEENTH CLAIM FOR RELIEF
### (Alter Ego—Jayden Trust)

327.    Trustee realleges and incorporates for this reference each and every allegation contained above, inclusive, as if fully set forth herein.

328.    Gayler is the alter ego of the Jayden Trust.

329.    The Jayden Trust was formed by Gayler for a non-biological child of his former girlfriend, Emilee Bruschke.

330.    The Jayden Trust is not a spend thrift trust.

331.    The Jayden Trust is influenced and governed by Gayler.

332.    Gayler is the Grantor and Trustee having the ability to make any payments he desires from the Jayden Trust.

333.    Gayler as the Trustee of the Jayden Trust possesses the power at his sole discretion to invade the corpus of the Trust and make distributions for his own personal benefit.

334.    There is such a unity of interest and ownership that Jayden is inseparable from Gayler.

335.    Gayler maintains unfettered access to and dominion and control over the Jayden Trust and its assets to use for what he (Gayler) may deem as necessary.

MAC:12089-001 1572488_3 5/10/2012 8:53 AM

MARQUIS AURBACH COFFING
10001 Park Run Drive
Las Vegas, Nevada 89145
(702) 382-0711 FAX: (702) 382-5816

336.    Gayler has treated the Jayden Trust account as his own personal account invading the corpus of the Jayden Trust to pay for personal expenses which do not uphold the purpose of the Jayden Trust or benefit Jayden Kristopher Gayler as the beneficiary.

337.    Gayler confirmed under oath that Jayden was "taking care of his daddy" when asked why he was paying expenses unrelated to the benefit of the child.

338.    Gayler further testified under oath that Jayden, an 8 year old child, chose to pay Gayler's expenses.

339.    The bank account for the Jayden Trust became active in August 2009—a period when Gayler was having financial difficulty.

340.    Gayler has commingled the funds in the account of the Jayden Trust with his personal funds.

341.    Gayler transferred money to and from the Jayden Trust account pre-petition, post-petition and in violation of the Court Order prohibiting Gayler from transferring, conveying or concealing any real or personal property over $10,000.

342.    Gayler's fraudulent transfer of assets from the Gayler Entities, trusts and insurance policies to the Jayden Trust is to the detriment of the Bankruptcy Estate and its creditors.

343.    Gayler has ignored the Jayden Trust formalities.

344.    Under the facts and circumstances of this case, adherence to the fiction of a separate entity would promote a manifest injustice and sanction a fraud among the bankruptcy Estate and its creditors.

345.    The financial set up of the Jayden Trust will render it unable to pay a judgment against it because it is the alter ego of Gayler absent of independence, financial structure and identity.

346.    This Court should disregard the Jayden Trust's fiction because it is and has been used to defraud creditors through the transfers mentioned immediately above.

347.    Gayler is personally liable for damages in an amount to be proven at trial.

MAC:12089-001 1572488_3 5/10/2012 8:53 AM

348.    The Trustee requests that this Court make a determination that Gayler is the alter ego of the Jayden Trust and that the assets of the Jayden Trust be declared property of the Bankruptcy Estate pursuant to 11 U.S.C. § 541(a).

349.    It has become necessary for the Trustee to engage the services of an attorney to prosecute this matter. The Trustee is, therefore, entitled to an award of reasonable attorney's fees and costs as special and general damages.

### FIFTEENTH CLAIM FOR RELIEF
#### (Alter Ego—2001 Trust)

350.    Trustee realleges and incorporates for this reference each and every allegation contained above, inclusive, as if fully set forth herein.

351.    Gayler is the alter ego of the 2001 Trust.

352.    The 2001 Trust is a grantor trust meaning all income is taxable to the Grantor, Gayler.

353.    Gaylor is the Trustee of the 2001 Trust.

354.    The 2001 Trust is not a spend thrift trust.

355.    Gayler has formed, controlled, influenced and governed the 2001 Trust.

356.    Gayler is the only person who has authorized or directed any transactions on behalf of the 2001 Trust.

357.    Gayler possesses the power to invade the corpus at his sole discretion.

358.    Gayler authorized the 2001 Trust to purchase from GFE its ninety-nine percent (99%) interest in TGF.

359.    Gayler has made distributions from the trust for his own benefit.

360.    There is such a unity of interest and ownership between the 2001 Trust that Gayler in inseparable from the 2001 Trust.

361.    Gayler engaged the 2001 Trust in a scheme of transfers to own 99% of TGF.

362.    On January 2, 2009, Gayler executed two rounds of ownership transfers within the 2001 Trust to further shield himself from creditor liability resulting in the 2001 Trust's 99% ownership in TGF.

MAC:12089-001 1572488_3 5/10/2012 8:53 AM

MARQUIS AURBACH COFFING
10001 Park Run Drive
Las Vegas, Nevada 89145
(702) 382-0711 FAX: (702) 382-5816

363.    The 2001 Trust has not paid any principal or interest payments to GFE for its 99% transfer of interest TGF.

364.    The nature of the 2001 Trust's existence is solely for the purpose of Gayler to conduct his personal business and interests in his other limited liability companies and trusts.

365.    The 2001 Trust was not used for its intended purpose as a trust, rather it was used as a personal enterprise to shield Gayler from personal liability through multiple transfers.

366.    The 2001 Trust does not operate independently because its business activities are dependant upon Gayler and TGF.

367.    The 2001 Trust does not have an income.

368.    The bank account for the 2001 Trust reflects a zero balance.

369.    Reflective of a zero dollar balance, Gayler improperly used the 2001 Trust to capitalize GFE and never directed any funds to be paid to GFE for its interest in TGF after its 2009 transfer.

370.    Gayler failed to maintain an arm's length relationship among the 2001 Trust, GFE and TGF.

371.    Under the facts and circumstances of this case, adherence to the fiction of separate entity and trust would promote a manifest injustice and sanction a fraud among the estate and its creditors.

372.    The financial structure of the 2001 Trust will render the 2001 Trust unable to pay a judgment against it because it is the alter ego of Gayler and does not have an independent financial structure or identity.

373.    The Trustee requests that this Court make a determination that Gayler is the alter ego of the 2001 Trust and that the assets of the 2001 Trust be declared property of the Bankruptcy Estate pursuant to 11 U.S.C. § 541(a).

374.    It has become necessary for the Trustee to engage the services of an attorney to prosecute this matter.  The Trustee is, therefore, entitled to an award of reasonable attorney's fees and costs as special and general damages.

MARQUIS AURBACH COFFING
10001 Park Run Drive
Las Vegas, Nevada 89145
(702) 382-0711 FAX: (702) 382-5816

MAC:12089-001 1572488_3 5/10/2012 8:53 AM

MARQUIS AURBACH COFFING
10001 Park Run Drive
Las Vegas, Nevada 89145
(702) 382-0711 FAX: (702) 382-5816

## SIXTEENTH CLAIM FOR RELIEF
### (Alter Ego—TGF)

375. Trustee realleges and incorporates for this reference each and every allegation contained above, inclusive, as if fully set forth herein.

376. Gayler is the alter ego of TGF.

377. Gayler uses TGF as a vehicle to put assets out of reach of creditors and avoid liability.

378. Gayler engaged in a scheme manufacturing documents to change the ownership of the Gayler Entities to suit tax requirements of his entities not owning each other while shielding himself and concealing assets from investors and creditors.

379. TGF is influenced and governed by Gayler.

380. Gayler has exercised complete dominance and control over TGF such that TGF has become a mere shell and instrumentality for the conduct of Gayler's personal business and activities.

381. There is such a unity of interest and ownership that TGF is inseparable from Gayler.

382. The nature of TGF's existence is solely for the purpose of Gayler to conduct his personal business and personal interests in other limited liability companies to defraud and shield himself from creditors making him inseparable from TGF.

383. On or about January 2, 2009, Gayler manufactured two sets of amendments to the TGF Partnership Agreement transferring TGF's ownership interests from one Gayler-owned entity, GFE, to Gayler's 2001 Trust and his four children.

384. GFE paid no consideration to any Gayler Entity for its seventy-nine percent (79%).

385. None of the four children paid any consideration for each of their five-percent (5%) interest.

386. In 2009, TGF's investment holdings went from holding a percentage ownership interest in three (3) entities to forty-three (43) entities.

MAC:12089-001 1572488_3 5/10/2012 8:53 AM

387.   Gayler directed, controlled and authorized the transfers of 43 ownership interests in the 43 other Gayler controlled and owned entities to TGF as follows:

a.   32 of the 43 transfers were from the WAG SPT to TGF;

b.   One transfer from the William A. Gayler Irrevocable Trust to TGF;

c.   One transfer from the Gayler Family Trust to TGF;

d.   One transfer from the William A. Gayler Family Limited Partnership/BB&G; and

e.   8 transfers from Gayler individually to TGF.

388.   On or about January 2, 2009, Gayler drafted the First Amendment to GFE Operating Agreement transferring one percent (1%) of his 100% ownership in GFE to Apan Wine, LLC ("Apan") and the remaining ninety-nine percent (99%) to TGF.

389.   TGF never paid any consideration for The 43 Transfers of membership interest.

390.   Gayler's diversion of assets from the 43 entities to TGF is to the detriment of the Estate and its creditors.

391.   Based upon information and belief, most of Gayler's assets are concentrated in TGF.

392.   TGF was capitalized with a one-percent (1%) interest in Morpheus, a Gayler wholly-owned management company, for a phantom value unilaterally dictated by Gayler.

393.   Gayler assigned the value of Morpheus's one-percent transfer to TGF without conducting an appraisal to satisfy Morpheus as to the value of the real property it was transferring to TGF.

394.   The one-percent transfer of interest from Morpheus to TGF was an insider exchange as Gayler is the sole owner and individual in control of Morpheus.

395.   The capitalization of TGF is a financial sham given the circular ownership and transactions it has performed given such ownership.

396.   Gayler has commingled the funds in the TGF account with his personal funds.

397.   Gayler has commingled TGF's funds with those of his other wholly owned entities such as Golden Sunray and the Jayden Trust.

MAC:12089-001 1572488_3 5/10/2012 8:53 AM

MARQUIS AURBACH COFFING
10001 Park Run Drive
Las Vegas, Nevada 89145
(702) 382-0711 FAX: (702) 382-5816

398.    The notes included on the memorandum line of the executed checks into and from TGF illustrate Gayler's personal use of the TGF accounts.

399.    Monetary withdraws made by Gayler from the TGF bank account thinned any capitalization that may have existed at the time.

400.    Gayler has severely undercapitalized TGF and channeled any and all of the assets of TGF's liquid assets to his personal accounts or trusts.

401.    Gayler ignored the corporate formalities of TGF.

402.    TGF did not open a bank account until December 1, 2009—11 months after the January 2, 2009 purported transfers whereby the transfer documents state valuable consideration was given to each respective entity.

403.    Gayler failed to maintain an arm's length relationship among TGF and other Gayler related entities.

404.    Gayler failed to maintain proper company records, balance sheet or profit and loss statements and failed to notice meetings to members.

405.    Gayler has intentionally used TGF to breach his obligations including, but not limited to, each of the 43 Transferor entities.

406.    Under the facts and circumstances of this case, adherence to the fiction of a separate entity would promote a manifest injustice and sanction a fraud among the bankruptcy Estate and its creditors.

407.    The financial set up of TGF will render it unable to pay a judgment against it because it is the alter ego of Gayler absent of independence, financial structure and identity.

408.    This Court should disregard the corporate fiction and pierce the corporate veil of TGF.

409.    Gayler is personally liable for damages in an amount to be proven at trial.

410.    The Trustee requests that this Court make a determination that Gayler is the alter ego of TGF and that the assets of TGF be declared property of the Bankruptcy Estate pursuant to 11 U.S.C. § 541(a).

MARQUIS AURBACH COFFING
10001 Park Run Drive
Las Vegas, Nevada 89145
(702) 382-0711 FAX: (702) 382-5816

MAC:12089-001 1572488_3 5/10/2012 8:53 AM

MARQUIS AURBACH COFFING
10001 Park Run Drive
Las Vegas, Nevada 89145
(702) 382-0711 FAX: (702) 382-5816

411.    It has become necessary for the Trustee to engage the services of an attorney to prosecute this matter.  The Trustee is, therefore, entitled to an award of reasonable attorney's fees and costs as special and general damages.

### SEVENTEENTH CLAIM FOR RELIEF
(Alter Ego—GFE)

412.    Trustee realleges and incorporates for this reference each and every allegation contained above, inclusive, as if fully set forth herein.

413.    Gayler is the alter ego of GFE.

414.    GFE is influenced and governed by Gayler.

415.    Gayler has exercised complete dominance and control over GFE such that GFE has become a mere shell and instrumentality for the conduct of Gayler's personal business and activities.

416.    There is such a unity of interest and ownership that GFE is inseparable from Gayler.

417.    The nature of GFE's existence is solely for the purpose of Gayler to conduct his personal business and personal interests in other limited liability companies to defraud and shield himself from creditors, making him inseparable from GFE.

418.    Gayler engaged in several rounds of amendments to GFE's operating agreement where Gayler's 100% interest in GFE was transferred into Apan (1%) and TGF (99%).

419.    TGF paid no consideration for its percentage interest in GFE.

420.    The transfers made where GFE owned TGF and TGF owned GFE were deemed improper on October 10, 2010 by Gayler's certified personal accounts because the companies were caused to own each other amounting to improper circular ownership for tax purposes.

421.    Upon receiving information from his accountants, Gayler transferred Apan's 1% to his daughter, Brianna Gayler, and TGF's 99% to the 2001 Trust.

422.    GFE did not receive reasonably equivalent value in exchange for TGF's transfer of its 99% interest to the 2001 Trust because TGF never gave consideration to GFE.  As a result,

MAC:12089-001 1572488_3 5/10/2012 8:53 AM

TGF sold its interest in GFE to the 2001 Trust for an unknown amount in an alleged promissory note.

423.    No consideration was paid to GFE by Apan, TGF, 2001 Trust or Brianna Gayler.

424.    Gayler directed the 2001 Trust, as an insider, to assume an unknown amount of debt in the effort to advance his scheme to defraud creditors.

425.    The 2001 Trust had no income, no revenue and no way to repay the debt to GFE.

426.    Gayler ignored the corporate formalities of GFE.

427.    GFE did not have a bank account.

428.    Gayler failed to maintain an arm's length relationship(s) among GFE and other Gayler related entities.

429.    In or about April 2009, Gayler transferred his interest in his Park City, Utah vacation home to GFE for $10.

430.    In or about April 2009, Gayler caused GFE to assume a mortgage note Gayler personally held on the property for $1,050,000.

431.    GFE never made a payment and the home went into default.

432.    Gayler failed to maintain proper company records, balance sheet or profit and loss statements and failed to notice meetings to members.

433.    Gayler has severely undercapitalized GFE and channeled any and all of the assets of GFE to his personal accounts.

434.    The capitalization of GFE is a financial sham given the circular ownership between insiders and transactions it has performed given such ownership.

435.    Gayler made unauthorized monetary transfers from TGF to GFE framed as loans whereby GFE never had the ability to repay to repay principal or interest on those loans.

436.    Gayler has severely undercapitalized GFE and channeled any and all of the assets of GFE to his personal accounts or trusts.

437.    Gayler has intentionally used GFE to breach its obligations to the 2001 Trust, TGF and the transferor entities of TGF.

MARQUIS AURBACH COFFING
10001 Park Run Drive
Las Vegas, Nevada 89145
(702) 382-0711 FAX: (702) 382-5816

MAC:12089-001 1572488_3 5/10/2012 8:53 AM

438.    Under the facts and circumstances of this case, adherence to the fiction of a separate entity would promote a manifest injustice and sanction a fraud among the bankruptcy Estate and its creditors.

439.    The non-existent financial set up of GFE will render it unable to pay a judgment against it because it is the alter ego of Gayler absent of independence, financial structure and identity.

440.    This Court should disregard the corporate fiction of GFE and pierce the corporate veil.

441.    Gayler is personally liable for damages in an amount to be proven at trial.

442.    The Trustee requests that this Court make a determination that Gayler is the alter ego of GFE and that the assets of GFE be declared property of the Bankruptcy Estate pursuant to 11 U.S.C. § 541(a).

443.    It has become necessary for the Trustee to engage the services of an attorney to prosecute this matter.  The Trustee is, therefore, entitled to an award of reasonable attorney's fees and costs as special and general damages.

## EIGHTEENTH CLAIM FOR RELIEF
### (Alter Ego—Golden Sunray)

444.    Trustee realleges and incorporates for this reference each and every allegation contained above, inclusive, as if fully set forth herein.

445.    Gayler is and was the alter ego of Golden Sunray.

446.    Gayler used Golden Sunray as a vehicle to put assets out of reach of creditors.

447.    Golden Sunray was influenced and governed by Gayler.

448.    Golden Sunray's manager was Apan, a limited liability company wholly owned and controlled by Gayler.

449.    Gayler was the sole member of Golden Sunray owning 100% of the company.

450.    Gayler exercised complete dominance and control over Golden Sunray.

451.    Golden Sunray became a mere shell and instrumentality for the conduct of the personal business and activities of Gayler.

MARQUIS AURBACH COFFING
10001 Park Run Drive
Las Vegas, Nevada 89145
(702) 382-0711 FAX: (702) 382-5816

MAC:12089-001 1572488_3 5/10/2012 8:53 AM

452. The entity was not used for its intended purpose.

453. Golden Sunray became a vehicle for Gayler to shield himself from creditors and personal liability while also using Golden Sunray as a mechanism to pay debts to insider individuals and companies.

454. There is such a unity of interest and ownership between Golden Sunray and Gayler that Gayler is inseparable from Golden Sunray.

455. Gayler ignored corporate formalities of Golden Sunray.

456. Gayler failed to maintain an arm's length relationship among related entities.

457. Gayler commingled funds between other entities he managed and Golden Sunray.

458. Gayler made unauthorized diversions of funds from Golden Sunray.

459. Written notes on the memorandum line of executed checks illustrate personal use of the Golden Sunray account.

460. Gayler made ad hoc withdraws from the account in the form of advances to himself when the company's debt was not being paid.

461. Gayler's withdraws thinned the capitalization of the Golden Sunray.

462. Gayler's execution of numerous deeds of trusts secured by Golden Sunray for personal loans further thinned the capitalization of Golden Sunray.

463. Gayler treated the corporate assets of Golden Sunray as his own.

464. On September 19, 2008, Gayler opened another bank account with $100.00 in Golden Sunray's name.

465. On September 26, 2008, Gayler signed a promissory note to borrow $1,300,000 on behalf of Golden Sunray.

466. On September 26, 2008, Gayler deposited the $1,300,000 in the Golden Sunray account.

467. On September 26, 2008, the same day, Gayler caused $1,295,100 to be transferred out of Golden Sunray's bank account to his personal bank account.

468. Gayler left Golden Sunray without the necessary funds to repay his debt and the Golden Sunray House was foreclosed upon on or about January 29, 2010.

MAC:12089-001 1572488_3 5/10/2012 8:53 AM

MARQUIS AURBACH COFFING
10001 Park Run Drive
Las Vegas, Nevada 89145
(702) 382-0711 FAX: (702) 382-5816

469.    Gayler has intentionally caused Golden Sunray to breach obligations to creditors and other Gayler owned and controlled entities.

470.    Under the facts and circumstances of this case, adherence to the fiction of a separate entity would promote a manifest injustice and sanction a fraud among the bankruptcy Estate and its creditors.

471.    This Court should disregard the corporate fiction of Golden Sunray and pierce the corporate veil.

472.    Gayler is personally liable for damages in an amount to be proven at trial.

473.    The Trustee requests that this Court make a determination that Gayler is the alter ego of Golden Sunray and that the assets of Golden Sunray be declared property of the Bankruptcy Estate pursuant to 11 U.S.C. § 541(a).

474.    It has become necessary for the Trustee to engage the services of an attorney to prosecute this matter.  The Trustee is, therefore, entitled to an award of reasonable attorney's fees and costs as special and general damages.

## NINETEENTH CLAIM FOR RELIEF
### (Alter Ego—Apan)

475.    Trustee realleges and incorporates for this reference each and every allegation contained above, inclusive, as if fully set forth herein.

476.    Gayler is the alter ego of Apan.

477.    Apan is influenced and governed by Gayler.

478.    Gayler is the sole owner of Apan holding one-hundred percent (100%) interest.

479.    Gayler has exercised complete dominance and control over Apan.

480.    Apan has become a mere shell and instrumentality for the conduct of Gayler's personal business and activities.

481.    There is such a unity of interest and ownership that Apan is inseparable from Gayler.

482.    Apan was operated by Gayler with no apparent independent business operation, rather it acted as a manager to certain Gayler's Entities.

MARQUIS AURBACH COFFING
10001 Park Run Drive
Las Vegas, Nevada 89145
(702) 382-0711 FAX: (702) 382-5816

MAC:12089-001 1572488_3 5/10/2012 8:53 AM

1    483.    Gayler testified under oath that Apan was only set up to be a manager.

2    484.    Instead, Apan holds ownership interests including, but not limited to, Sunset V,

3 GFE and Dumol, LLC—all Gayler Entities.

4    485.    Apan's name is not indicative or illustrative of a manager to entities that hold real

5 property in Las Vegas, Nevada.

6    486.    The nature of Apan's existence is solely for the purpose of Gayler to conduct his

7 personal business and personal interests in other limited liability companies to defraud and shield

8 himself from creditors making him inseparable from Apan.

9    487.    Gayler ignored the corporate formalities of Apan.

10    488.    Apan did not have a bank account.

11    489.    Based upon information and belief, Apan has not filed a United States Tax Return

12 since its existence.

13    490.    Apan manages at least two Gayler Entities.

14    491.    It did not maintain proper corporate records, balance sheets or profit and loss

15 statements for those entities it managed.

16    492.    Gayler caused Apan to divert funds, assets and membership interests including,

17 but not limited to, Golden Sunray, GFE and Sunset V without authorization.

18    493.    Apan did not follow the corporate formalities required by the entities it managed.

19    494.    Gayler severely undercapitalized Apan and used it as a mechanism to channel any

20 assets it managed to Gayler's personal accounts for his personal use.

21    495.    Gayler has intentionally caused Apan as a manager to breach its duties to Golden

22 Sunray and other Gayler controlled entities.

23    496.    Under the facts and circumstances of this case, adherence to the fiction of a

24 separate entity would promote a manifest injustice and sanction a fraud among the bankruptcy

25 Estate and its creditors.

26    497.    The financial set up of Apan will render it unable to pay a judgment against it

27 because it is the alter ego of Gayler absent of independence, financial structure and identity.

28    498.    This Court should disregard the corporate fiction and pierce the corporate veil.

MARQUIS AURBACH COFFING
10001 Park Run Drive
Las Vegas, Nevada 89145
(702) 382-0711 FAX: (702) 382-5816

MAC:12089-001 1572488_3 5/10/2012 8:53 AM

1    499.    Gayler is personally liable for damages in an amount to be proven at trial.

2    500.    The Trustee requests that this Court make a determination that Gayler is the alter

3    ego of Apan and that the assets of Apan be declared property of the Bankruptcy Estate pursuant

4    to 11 U.S.C. § 541(a).

5    501.    It has become necessary for the Trustee to engage the services of an attorney to

6    prosecute this matter.  The Trustee is, therefore, entitled to an award of reasonable attorney's

7    fees and costs as special and general damages.

### TWENTIETH CLAIM FOR RELIEF
**(Alter Ego—Meritage)**

10    502.    Trustee realleges and incorporates for this reference each and every allegation

11    contained above, inclusive, as if fully set forth herein.

12    503.    Gayler is the alter ego of Meritage.

13    504.    Meritage is influenced and governed by Gayler.

14    505.    Gayler comprises of the majority interest holding 61.54%.

15    506.    The non-managing members are unable to exercise any powers since they

16    comprise of the minority interest.

17    507.    Gayler has exercised complete dominance and control over Meritage.

18    508.    Meritage has become an instrumentality for the conduct of Gayler's personal

19    business and activities.

20    509.    There is such a unity of interest and ownership that Meritage is inseparable from

21    Gayler.

22    510.    Gayler has ignored the corporate formalities of Meritage.

23    511.    Gayler did not maintain separate books and accounting for Meritage and its

24    holdings in nine other Gayler controlled and owned companies.

25    512.    Gayler did not open a bank account for Meritage.

26    513.    Gayler used an account named ICON Trust B to pay Meritage's expenses and

27    accept any deposits.

28

MARQUIS AURBACH COFFING
10001 Park Run Drive
Las Vegas, Nevada 89145
(702) 382-0711 FAX: (702) 382-5816

MAC:12089-001 1572488_3 5/10/2012 8:53 AM

514.    Gayler has commingled the funds in the account of ICON Trust B with those of Meritage and his personal accounts.

515.    Meritage was not the sole company that ICON Trust B conducted banking and paid expenses on behalf of.

516.    Meritage was undercapitalized as a result of Gayler's misconduct and has not paid its debts to the respective Sunset properties it holds an ownership interest in.

517.    Meritage has not paid its capital calls and expenses in other Gayler owned and controlled entities it is an investor within.

518.    Gayler transferred his membership interest of 61.54% in Meritage to TGF without notice or first right of refusal to the Meritage members in violation of its operating agreement.

519.    Under the facts and circumstances of this case, adherence to the fiction of a separate entity would promote a manifest injustice and sanction a fraud among the bankruptcy Estate and its creditors.

520.    Based upon information and belief, the financial set up of Meritage will render it unable to pay a judgment against it because it is the alter ego of Gayler absent of independence, financial structure and identity.

521.    This Court should disregard the corporate fiction of Meritage and pierce the corporate veil.

522.    The Trustee requests that this Court make a determination that Gayler is the alter ego of Meritage and that the assets of Meritage be declared property of the Bankruptcy Estate pursuant to 11 U.S.C. § 541(a).

523.    It has become necessary for the Trustee to engage the services of an attorney to prosecute this matter.  The Trustee is, therefore, entitled to an award of reasonable attorney's fees and costs as special and general damages.

### TWENTY-FIRST CLAIM FOR RELIEF
(Alter Ego—Morpheus)

524.    Trustee realleges and incorporates for this reference each and every allegation contained above, inclusive, as if fully set forth herein.

MAC:12089-001 1572488_3 5/10/2012 8:53 AM

MARQUIS AURBACH COFFING
10001 Park Run Drive
Las Vegas, Nevada 89145
(702) 382-0711 FAX: (702) 382-5816

525.    Gayler is the alter ego of Morpheus.

526.    Morpheus is the General Partner of TGF Holdings holding a 1% interest.

527.    Morpheus is influenced and governed by Gayler.

528.    Gayler owns one-hundred percent (100%) of Morpheus.

529.    Gayler is Morpheus' manager.

530.    Gayler admitted under oath that Morpheus was formed to be a corporate manager and not to own assets.

531.    Gayler further admitted under oath he controlled both Morpheus and TGF and through his positions as such the decisions "trickled down" to him.

532.    There is such a unity of interest and ownership that Morpheus is inseparable from Gayler.

533.    The nature of Morpheus's existence is solely for the purpose of Gayler to conduct his personal business and personal interests in other limited liability companies to defraud and shield himself from creditors making him inseparable from Morpheus.

534.    Gayler failed to observe corporate formalities.

535.    Morpheus was capitalized with a 1% interest in TGF for some phantom value given by Gayler while TGF was capitalized with a one percent (1%) interest in Morpheus, for some phantom value also unilaterally dictated by Gayler, resulting in a financial sham given circular ownership.

536.    Gayler assigned the value of Morpheus' 1% transfer to TGF without conducting an appraisal to satisfy Morpheus as to the value of the property it was transferring to TGF.

537.    The 1% transfer of interest from Morpheus to TGF was an insider exchange because Gayler was the sole owner of Morpheus.

538.    Morpheus held a 1% interest in TGF until March 2010, at which time Morpheus' corporate status was revoked for non-payment of fees to the Nevada Secretary of State and Gayler took over ownership individually.

539.    Morpheus did not pay any consideration for its one-percent (1%) of TGF.

MAC:12089-001 1572488_3 5/10/2012 8:53 AM

MARQUIS AURBACH COFFING
10001 Park Run Drive
Las Vegas, Nevada 89145
(702) 382-0711 FAX: (702) 382-5816

MARQUIS AURBACH COFFING
10001 Park Run Drive
Las Vegas, Nevada 89145
(702) 382-0711 FAX: (702) 382-5816

540.    Gayler's transfer of the 1% in TGF from Morpheus as general partner of TGF to Morpheus violated the TGF Partnership Agreement.

541.    The TGF agreement was violated because Gayler did not provide written notice to the partners as required, receive consent from the partners or provide the partners with first right of refusal.

542.    Gayler caused Morpheus to engage in the unauthorized diversion of funds.

543.    Gayler treated corporate assets as his own.

544.    Gayler caused Morpheus to endorse a cashier's check in the amount of $200,000 distributed for the furniture, artwork, TV's and audio visual equipment belonging to Golden Sunray.

545.    The $200,000 funds were not deposited into the Morpheus bank account.

546.    Gayler deposited the $200,000 funds into the Golden Sunray account.

547.    Gayler immediately transferred all funds to some Gayler Entities including the Jayden Trust account, TGF account, Gayler Life Insurance account and his personal credit line for his personal benefit.

548.    Under the facts and circumstances of this case, adherence to the fiction of a separate entity would promote a manifest injustice and sanction a fraud among the bankruptcy Estate and its creditors.

549.    The financial set up of Morpheus will render it unable to pay a judgment against it because it is the alter ego of Gayler absent of independence, financial structure and identity.

550.    This Court should disregard the corporate fiction and pierce the corporate veil.

551.    The Trustee requests that this Court make a determination that Gayler is the alter ego of Morpheus and that the assets of Morpheus be declared property of the Bankruptcy Estate pursuant to 11 U.S.C. § 541(a).

552.    It has become necessary for the Trustee to engage the services of an attorney to prosecute this matter.  The Trustee is, therefore, entitled to an award of reasonable attorney's fees and costs as special and general damages.

MAC:12089-001 1572488_3 5/10/2012 8:53 AM

MARQUIS AURBACH COFFING
10001 Park Run Drive
Las Vegas, Nevada 89145
(702) 382-0711 FAX: (702) 382-5816

# TWENTY-SECOND CLAIM FOR RELIEF
## (Alter Ego—ICON Entities)

553.    Trustee realleges and incorporates for this reference each and every allegation contained above, inclusive, as if fully set forth herein.

554.    The ICON Entities, collectively listed in the chart below ("ICON Entities") in their entirety are and were the alter ego of Gayler.

555.    The ICON Entities were treated as one in the same.

556.    The ICON Entities believed to be inseparable, include, but are not limited to, the following:

| Entity Name | Entity Information |
| --- | --- |
| ICON Real Estate Development, LLC | Revoked Status<br>Manager = Apan Wine, LLC. |
| ICON Real Estate Companies, Inc. | Default Status<br>Director = WAG<br>Treasurer = TGF<br>President = TGF<br>Secretary = Gloria Buonaccorsi<br>Might do consulting or creative development work. |
| ICON Real Estate Services, Inc. | William A. Gayler d/b/a ICON Real Estate Services, Inc.<br>Conducts brokerage business and receives real estate commissions |
| ICON Holding Company, LLC | Used for Sunset V, Romeo settlement |
| ICON Real Estate Trust B | Bank account only<br>Gayler used ICON Trust B if checks needed to be written for entities without checking accounts. |
| ICON Commission Account | Not included within Petition<br>Maintained Bank Account |

557.    All of the ICON Entities are or were influenced and governed by Gayler.

558.    Gayler is the sole owner of each of the listed ICON Entities.

559.    Gayler exercised complete dominance and control over each of the companies.

560.    ICON Entities have become a mere shell and instrumentality for the conduct of Gayler's personal business activities of certain named Defendants.

561.    There is such a unity of interest and ownership that the ICON Entities are inseparable from Gayler.

MAC:12089-001 1572488_3 5/10/2012 8:53 AM

MARQUIS AURBACH COFFING
10001 Park Run Drive
Las Vegas, Nevada 89145
(702) 382-0711 FAX: (702) 382-5816

562.    Gayler's ICON Real Estate Services, Inc. ("ICON Svcs.") is an ICON entity that conducts and/or conducted the brokerage business and is listed to receive a commission between six–ten percent (6–10%) in nearly every operating agreement of which Gayler is a part of.

563.    Based upon information and belief, Gayler filed a Fictitious Name Certificate doing business as ICON Svcs.

564.    During 1994–2011, ICON Svcs. held an active business license with Clark County.  ICON Svcs.'s business license was subsequently revoked by Clark County Business Licensing.

565.    During the relevant time periods, Gayler formerly held his real estate brokerage license individually, thereby conducting business as an individual under the ICON name.

566.    ICON Svcs. is listed on Schedule B of the Voluntary Petition as a d/b/a of Gayler and was the real estate broker of record until January 2012.

567.    Gayler admitted under oath that all of the ICON Entities were a team and may as well as be "lumped" together because they are there to manage all the LLC's.

568.    Gayler maintained several bank accounts that did not correspond with names of the ICON Entities.

569.    The Gayler ICON Trust B checking account accepted and generated checks on behalf of many of the ICON Entities listed above.  As a result, Gayler has commingled funds between the ICON Entities and his personal funds.

570.    Gayler admitted under oath, and bank transactions records reveal the established ICON Trust B bank account accepted and executed checks on behalf of many of Gayler's managed LLC's without checking accounts. As a result, Gayler has commingled funds between those respective entities and his own funds.

571.    Gayler used other created ICON Entities' accounts as vehicles to commingle funds to pay business and personal expenses unrelated to the respective banking company.

572.    Gayler has used these bank accounts on behalf of ICON Entities to divert funds without proper authority by and between the ICON Entities and the Gayler Entities.

573.    Gayler ignored the corporate formalities of each of the ICON Entities.

MAC:12089-001 1572488_3 5/10/2012 8:53 AM

574. Under the facts and circumstances of this case, adherence to the fiction of separate entities of each of the ICON Entities would promote injustice.

575. This Court should disregard the corporate fiction of the ICON Entities and pierce the corporate veil.

576. This Court should find each of the ICON Entities as an alter ego of Gayler pursuant to NRS 78.747.

577. The Trustee requests that this Court make a determination that Gayler is the alter ego of the ICON Entities and that the assets of the ICON Entities be declared property of the Bankruptcy Estate pursuant to 11 U.S.C. § 541(a).

578. It has become necessary for the Trustee to engage the services of an attorney to prosecute this matter. The Trustee is, therefore, entitled to an award of reasonable attorney's fees and costs as special and general damages.

### TWENTY-THIRD CLAIM FOR RELIEF
**(Fraudulent Transfer From WAG SPT of Meritage to TGF)**
**(11 U.S.C. § 548 Fraudulent Transfer and NRS 112.180)**

579. Trustee realleges and incorporates for this reference each and every allegation contained above, inclusive, as if fully set forth herein.

580. On or about 1999, Gayler attained a 61.54% managing membership interest in Meritage.

581. The purpose of Meritage was to acquire long term investments in real property.

582. Gayler caused Meritage to hold numerous 1% minority interests in other partnerships and limited liability companies only owned and controlled by Gayler.

583. On or about January 2, 2009, Gayler transferred his 61.54% interest in Meritage to TGF.

584. TGF did not give Meritage any consideration.

585. TGF is an insider pursuant to 11 U.S.C. § 101(31)(A)(ii)–(iv) and (E) and NRS 112.150(7) to Gayler.

586. During the time of the transfer, Gayler was the General Partner of TGF through his wholly owned corporation Morpheus.

MAC:12089-001 1572488_3 5/10/2012 8:53 AM

MARQUIS AURBACH COFFING
10001 Park Run Drive
Las Vegas, Nevada 89145
(702) 382-0711 FAX: (702) 382-5816

MARQUIS AURBACH COFFING
10001 Park Run Drive
Las Vegas, Nevada 89145
(702) 382-0711 FAX: (702) 382-5816

1    587.    Morpheus is an insider and affiliate of Gayler.

2    588.    Gayler became general partner of TGF on or about March 2010 when Morpheus's

3 corporate status was revoked by the Nevada Secretary of State.

4    589.    Gayler retained control over the 61.54% interest in Meritage after the fraudulent

5 transfer was made to TGF.

6    590.    Gayler had been, and was threatened, with several lawsuits prior to making the

7 transfer.

8    591.    Gayler executed The 41 Transfers in an attempt to conceal his assets to avoid

9 creditors and frustrate the Estate's collection of those assets.

10    592.    Gayler was, or became, insolvent shortly after the transfer was made because his

11 debts owed were greater than a fair valuation of his assets.

12    593.    Neither Gayler, nor TGF, gave reasonably equivalent value in exchange for the

13 61.54% transfer of Meritage to TGF.

14    594.    The transfer was made for the benefit of Gayler's insider company TGF.

15    595.    During this timeframe, Gayler executed 42 other membership interest transfers to

16 remove all assets from himself individually or as trustee of the WAG SPT—leaving Gayler with

17 little or no remaining assets.

18    596.    Gayler transferred all of his ownership and managing member interests to other

19 Gayler owned and controlled insider or affiliate entities.

20    597.    The January 2, 2009 membership interest transfer of Gayler's interest in Meritage

21 to TGF was at Gayler's direction.

22    598.    The transfer was intended to hinder, delay, or defraud his creditors.

23    599.    The transfer should be determined to be void because it was intended to defraud

24 creditors and Gayler failed to pay WAG SPT reasonably equivalent value pursuant to § 548.

25    600.    As such, the membership interest upon reversion for fraudulent transfer to

26 Gayler's WAG SPT becomes property of The Bankruptcy Estate pursuant to § 541(a)(1).

27

28

MAC:12089-001 1572488_3 5/10/2012 8:53 AM

601.   It has become necessary for the Trustee to engage the services of an attorney to prosecute this matter.  The Trustee is, therefore, entitled to an award of reasonable attorney's fees and costs as special and general damages.

### TWENTY-FOURTH CLAIM FOR RELIEF
**(Fraudulent Transfer From WAG SPT of Dominus to TGF)**
**(11 U.S.C. § 548 Fraudulent Transfer and NRS 112.180)**

602.   Trustee realleges and incorporates for this reference each and every allegation contained above, inclusive, as if fully set forth herein.

603.   Gayler owned 50% of Dominus prior to October 1999.

604.   In October 1999, Gayler transferred a portion of his ownership interest in Dominus to John O'Brien ("O'Brien").

605.   Gayler was left with a 40% ownership interest in Dominus.

606.   Gayler subsequently transferred his 40% ownership in Dominus to the WAG SPT.

607.   On January 2, 2009, the WAG SPT purportedly transferred its forty-percent (40%) ownership interest to TGF.



608.   There was no consideration for this transfer of 40% of Dominus to TGF.

609.   TGF is an insider to Gayler pursuant to 11 U.S.C. § 101(31)(A)(ii)–(iv) and (E).

610.   At the time of the transfer, Gayler was the General Partner of TGF through his wholly owned corporation Morpheus.

611.   Gayler, individually, is the current General Partner of TGF.

612.   Gayler became General Partner of TGF in or about March 2010 when Morpheus's corporate status was revoked by the Nevada Secretary of State.

MAC:12089-001 1572488_3 5/10/2012 8:53 AM

MARQUIS AURBACH COFFING
10001 Park Run Drive
Las Vegas, Nevada 89145
(702) 382-0711 FAX: (702) 382-5816

MARQUIS AURBACH COFFING
10001 Park Run Drive
Las Vegas, Nevada 89145
(702) 382-0711 FAX: (702) 382-5816

613.    Gayler retained control over the transferred 40% interest in Dominus after it was made to TGF.

614.    Gayler had been and was threatened with lawsuits prior to making the transfer.

615.    It is believed Gayler executed this transfer in an attempt to conceal assets held individually to avoid creditors.

616.    It is believed Gayler was or became insolvent shortly after the transfer was made because his debts owed were greater than a fair valuation of his assets.

617.    At the time of the transfer, Gayler executed 42 other transfers to remove all assets from himself individually or himself as trustee of the WAG SPT—leaving Gayler with little or no remaining assets.

618.    Gayler transferred all of his ownership and management member interests to other Gayler owned and controlled entities.

619.    This Court should declare the January 2, 2009 transfer was intended to hinder, delay, or defraud his creditors for no reasonably equivalent value and thus the transfer should be determined to be void pursuant to § 548.

620.    This Court should declare the 40% ownership interest should be reverted back to the WAG SPT and as such is thus deemed property of the Bankruptcy Estate pursuant to § 541(a)(1).

621.    It has become necessary for the Trustee to engage the services of an attorney to prosecute this matter.  The Trustee is, therefore, entitled to an award of reasonable attorney's fees and costs as special and general damages.

**TWENTY-FIFTH CLAIM FOR RELIEF**
**(Fraudulent Transfer From Apan to Axios, then Axios to TGF)**
**(11 U.S.C. § 548 Fraudulent Transfer and NRS 112.180)**

622.    Trustee realleges and incorporates for this reference each and every allegation contained above, inclusive, as if fully set forth herein.

623.    In 2006, Apan and the LeBow Trust each owned five-percent (5%) of Sunset V, LLC ("Sunset V").

624.    On or about April 2006, Gayler caused Apan and LeBow's interests to be transferred to Gayler's entity Axios.

625.    Gayler, through Apan, and the LeBow Trust each owned 50% of Axios.

626.    Gayler's membership interest transfer from Apan to Axios was a violation of Sunset V's Operating Agreement and is void.

627.    LeBow's interest transfer from the LeBow Trust to Axios was a violation of Sunset V's Operating Agreement and is void.

628.    The transfers collectively violated Sunset V's Operating Agreement and are void because approval of the Sunset V members was never obtained as required by its Operating Agreement.

629.    On January 2, 2009, Gayler as manager of Axios transferred his fifty-percent (50%) interest in Axios to TGF for no consideration and without consent of the Sunset V members.



630.    The January 2, 2009 transfer from Axios to TGF was intended to hinder, delay, or defraud Gayler's creditors.

MAC:12089-001 1572488_3 5/10/2012 8:53 AM

MARQUIS AURBACH COFFING
10001 Park Run Drive
Las Vegas, Nevada 89145
(702) 382-0711 FAX: (702) 382-5816

1     631.    TGF is an insider of Gayler pursuant to § 101(31)(A)(i)–(iv) and NRS 112.150(7).

2     632.    At the time of transfer, Gayler was the General Partner of TGF through his wholly

3  owned and controlled corporation Morpheus.

4     633.    Gayler became General Partner of TGF in or about March 2010 when Morpheus's

5  corporate status was revoked by the Nevada Secretary of State.

6     634.    Gayler retained control over the percentage interest after the transfer was made

7  from Axios to TGF.

8     635.    Gayler had been and was threatened with lawsuits prior to making the transfer.

9     636.    It is believed Gayler executed these particular transfers in an attempt to conceal

10  assets to avoid creditors.

11     637.    It is believed Gayler was or became insolvent shortly after the transfer was made

12  because his debts owed were greater than a fair valuation of his assets.

13     638.    Apan through Gayler, did not receive reasonably equivalent value from Axios in

14  exchange for the transfer.

15     639.    In the second transfer from Axios to TGF, Axios did not receive any

16  consideration from TGF.

17     640.    At the time of the transfers mentioned immediately above, Gayler executed 42

18  other transfers to remove all assets from himself individually or himself as trustee of the WAG

19  SPT—leaving Gayler with little or no remaining assets.

20     641.    This Court should declare that the April 5, 2006 transfer to Axios from Apan and

21  subsequent transfer on January 2, 2009 from Axios to TGF at Gayler's direction were intended to

22  hinder, delay, or defraud his creditors and thus the transfer should be determined to be void and

23  reverted back to Apan.

24     642.    It has become necessary for the Trustee to engage the services of an attorney to

25  prosecute this matter.  The Trustee is, therefore, entitled to an award of reasonable attorney's

26  fees and costs as special and general damages.

27

28

MARQUIS AURBACH COFFING
10001 Park Run Drive
Las Vegas, Nevada 89145
(702) 382-0711 FAX: (702) 382-5816

MAC:12089-001 1572488_3 5/10/2012 8:53 AM

MARQUIS AURBACH COFFING
10001 Park Run Drive
Las Vegas, Nevada 89145
(702) 382-0711 FAX: (702) 382-5816

## TWENTY-SIXTH CLAIM FOR RELIEF
### (Fraudulent Transfer of the Utah Houses From Gayler to GFE)
### (11 U.S.C. § 548 Fraudulent Transfer and NRS 112.180)

643.    Trustee realleges and incorporates for this reference each and every allegation contained above, inclusive, as if fully set forth herein.

644.    In 2002, Gayler purchased a vacation home located at 1953 Mahre Drive, Park City, Utah ("the Park City House").

645.    In 2007, Gayler purchased another home located at 1338 E. Kensington, Salt Lake City, Utah ("the Salt Lake City House").

646.    Until 2009, Gayler held the deeds to the Salt Lake City House and The Park City House (collectively, "the Utah Houses") in his individual name.

647.    On or about June 9, 2009, Gayler executed a warranty deed conveying the Park City House to his entity GFE for consideration of $10 with the intent to hinder, delay or defraud creditors.

648.    On or about the same day, Gayler executed a warranty deed conveying the Salt Lake City House to GFE also with the intent to hinder, delay or defraud creditors.

649.    GFE is an insider to Gayler pursuant to 11 U.S.C. § 101(31)(A)(i)–(iv) and (E) and NRS 112.150(7) to Gayler.

650.    Gayler is the manager and exclusively controls GFE.

651.    Gayler remains in possession of the Park City House and stays in the home when he vacations in Utah.

652.    Gayler remains in possession of the Salt Lake City House.

653.    Gayler's domicile is in Nevada.

654.    Gayler had been and was threatened with several lawsuits prior to making the transfer.

655.    Gayler received less than a reasonably equivalent value—$10.00—in exchange for the Park City House transfer to GFE.

656.    Gayler received less than a reasonably equivalent value—$10.00—in exchange for the Salt Lake City House transfer to GFE.

MAC:12089-001 1572488_3 5/10/2012 8:53 AM

657. The transfers were made for the benefit of Gayler's insider company GFE.

658. During this timeframe, Gayler also executed the 41 Transfers to remove all assets from himself individually or as trustee of the WAG SPT.

659. The 41 Transfers left Gayler with little or no remaining assets.

660. The June 2009 transfers of Gayler's individual interests in the Utah Houses to GFE were intended to hinder, delay, or defraud his creditors to further diminish the assets that would be available to creditors.

661. A transfer for less than reasonable consideration with the intent to hinder, delay, or defraud creditors is void pursuant to 11 U.S.C. § 548 and NRS 112.180 and thus this Court should determine the transfer of the Utah homes to GFE are fraudulent pursuant to 11 U.S.C. § 541(a)(1).

662. As such, this Court should set aside the transfers and deem both of the Utah Houses property of the Bankruptcy Estate.

663. It has become necessary for the Trustee to engage the services of an attorney to prosecute this matter. The Trustee is, therefore, entitled to an award of reasonable attorney's fees and costs as special and general damages.

## TWENTY-SEVENTH CLAIM FOR RELIEF
### (Post-Petition Transfer from Sunset II to Altra Vida)
### (11 U.S.C. § 549(a))

664. Trustee realleges and incorporates for this reference each and every allegation contained above, inclusive, as if fully set forth herein.

665. Gayler formed Sunset II in March 2005.

666. Until 2012, Gayler managed and controlled Sunset II.

667. On or about August 22, 2011, Gayler caused the five-percent (5%) interest he held indirectly through his children in Sunset II to be sold.

668. Gayler's children's interests were sold to Rod Leavitt, the current manager of Sunset II.

669. The sale occurred after commencement of this case.

MARQUIS AURBACH COFFING
10001 Park Run Drive
Las Vegas, Nevada 89145
(702) 382-0711 FAX: (702) 382-5816

MAC:12089-001 1572488_3 5/10/2012 8:53 AM

MARQUIS AURBACH COFFING
10001 Park Run Drive
Las Vegas, Nevada 89145
(702) 382-0711 FAX: (702) 382-5816

670.   Gayler's membership interest held in the names of his children are personal property pursuant to 11 U.S.C. § 541(a) and NRS 86.351.

671.   Gayler maintained exclusive dominion and control over the Sunset II interests.

672.   Gayler's rights to the children's interest are legal or equitable and property of the Estate.

673.   The transfer sale of the children's interests was effected by Gayler.

674.   Gayler sold the children's interest to another member of Sunset II for a total value of $25,000.  $14,000 cash went to Gayler's Altra Vida account.  The remaining $11,000 went to cover Gayler's delinquent assessments in Sunset II.

675.   Gayler caused the membership interests sale proceeds of $14,000 to be deposited into an account held by Altra Vida, via a wire transfer by Rod Leavitt.

676.   Altra Vida is a Utah entity owned and controlled by Gayler.

677.   Altra Vida was formed in April 2011.

678.   The sale of the membership interests were not authorized by the Court.

679.   Gayler was forbidden to execute these transfers pursuant to the Bankruptcy Court's December 17, 2009 Order forbidding transfers of Gayler's indirect interests over $10,000.

680.   This Court should declare the transfer mentioned immediately above as void and declare that Gayler, on behalf of and as manager of Altra Vida, to turnover the value realized in the amount of $25,000 pursuant to § 550(a)(1).

681.   It has become necessary for the Trustee to engage the services of an attorney to prosecute this matter.  The Trustee is, therefore, entitled to an award of reasonable attorney's fees and costs as special and general damages.

### TWENTY-EIGHTH CLAIM FOR RELIEF
**(The Golden Sunray House Foreclosure)**
**(Post-Petition Transfer Pursuant to 11 U.S.C. § 549(a))**

682.   Plaintiff incorporates and realleges for this reference each and every allegation contained above, inclusive, as if fully set forth herein.

MAC:12089-001 1572488_3 5/10/2012 8:53 AM

MARQUIS AURBACH COFFING
10001 Park Run Drive
Las Vegas, Nevada 89145
(702) 382-0711 FAX: (702) 382-5816

683.    The Trustee asserts that, as alleged in the General Allegations above, the Estate has been damaged by the fraudulent and intentional acts and omissions of Gayler in an amount to be proven at trial.

684.    On March 26, 2009, Loerwald executed a Notice of Default and Election to Sell the Golden Sunray House.

685.    The Notice of Default was executed because Gayler failed to meet the obligations of the Promissory Note issued by Loerwald in the amount of $866,000 on August 20, 2008.

686.    The foreclosure of the Golden Sunray House (or the Trustee's Deed Upon Sale) by Loerwald and Loerwald's subsequent sale are avoidable as post-petition transfers.

687.    Gayler's Involuntary Petition was filed on November 16, 2009.

688.    On December 7, 2009, Loerwald purchased the Golden Sunray House for $500,000 at the Trustee's Sale he initiated through Nevada Trust Deed Services.

689.    The Golden Sunray House foreclosure was perfected by Loerwald on January 4, 2010.

690.    The subsequent sale of the Golden Sunray House by Loerwald to the Browns was recorded on January 29, 2010 for $7,000,000.

691.    The foreclosure of the Golden Sunray House is deemed as a transfer pursuant to 11 U.S.C. § 101(54).

692.    Gayler owned 100% of Golden Sunray.

693.    Golden Sunray held the single asset of the Golden Sunray House.

694.    Gayler solely managed and controlled Golden Sunray.

695.    Gayler's 100% membership interest in Golden Sunray is a legal or equitable interest and is property of the Estate pursuant to 11 U.S.C. § 541(a).

696.    Gayler's membership interest constitutes personal property pursuant to NRS 86.351 and therefore is property of the Bankruptcy Estate pursuant to § 541(a).

697.    At the time of the foreclosure by Loerwald, Gayler's rights to the 100% interest became property of the Bankruptcy Estate.

MAC:12089-001 1572488_3 5/10/2012 8:53 AM

MARQUIS AURBACH COFFING
10001 Park Run Drive
Las Vegas, Nevada 89145
(702) 382-0711 FAX: (702) 382-5816

698.    Instead of selling the Golden Sunray House on his own, Gayler voluntarily engaged in a scheme to strategically default on the Loerwald Note in order for the foreclosure to occur.

699.    Gayler was a willing participant.

700.    The transfer was effected by Gayler in the scheme between himself, Loerwald and Barrett to purposely default on the August 2008 Loerwald Note instead of selling the property to the Browns himself.

701.    The foreclosure was not authorized by any Court or other statute.

702.    The foreclosure was not performed in the ordinary course of Gayler's business.

703.    Gayler's default on the Loerwald Note and Loerwald's subsequent foreclosure and purchase of the Golden Sunray House for $500,000 or 7.14% of the fair market value of the Golden Sunray House was in bad faith.

704.    Loerwald and the Browns did not purchase the Golden Sunray House in good faith.

705.    Loerwald, the Browns, and Barrett had knowledge of the commencement of Gayler's Bankruptcy.

706.    Loerwald's purchase of the Golden Sunray House for $500,000 was not "present fair equivalent value."

707.    As a result of the post-petition transfer in violation of 11 U.S.C. § 549 and the Court Order, Loerwald and Barrett together received over $5 million to the detriment of creditors

708.    Loerwald received $2,379,344.04 and Barrett received $2,726,632.71 from the proceeds of the $7,000,000 sale to the Browns.

709.    This Court should allow the Trustee to avoid the post-petition foreclosure of the 23 Golden Sunray home by Gayler and Loerwald and, as a result, Loerwald's resale to the Browns.  Accordingly, the Court should allow the Trustee to recover the monetary value of such property belonging to the Estate, amounting to $5,105,976.75, pursuant to 11 U.S.C.§ 550(a)(1) and (2).

MARQUIS AURBACH COFFING
10001 Park Run Drive
Las Vegas, Nevada 89145
(702) 382-0711 FAX: (702) 382-5816

### TWENTY-NINTH CLAIM FOR RELIEF
**(Deeds of Trust Resulting in Foreclosure and Resale of the Golden Sunray House)**
**(Defendants Gayler, Loerwald, Barrett and the Browns)**
**(11 U.S.C. § 548 Fraudulent Transfer and NRS 112.180)**

710.     Trustee realleges and incorporates for this reference each and every allegation contained above, inclusive, as if fully set forth herein.

711.     The Golden Sunray House is a custom home in the affluent Ridges community in Las Vegas, Nevada.

712.     The foreclosure and subsequent sale of the Golden Sunray House is a fraudulent transfer because the foreclosure sale was collusive between Defendants Gayler, Loerwald and Barrett.

713.     In the early 2000's, Gayler owned the Golden Sunray House through WAG SPT.

714.     On or about November 28, 2006, Gayler transferred the ownership of the Golden Sunray House through a Grant, Bargain and Sale Deed to his wholly owned company, Golden Sunray.

715.     Golden Sunray was a single-member company 100% owned and controlled by Gayler.

716.     Golden Sunray's only asset was the Golden Sunray House.

717.     Gayler's 100% membership interest in Golden Sunray constitutes personal property amounting to a legal or equitable interest of the Debtor pursuant to 11 U.S.C. § 541(a)(1) and NRS 86.351.

718.     Gayler's interest in Golden Sunray is and was property of the Estate.

719.     Gayler issued deeds of trust secured by the Golden Sunray House to Loerwald and Barrett for loans made to Gayler personally.

720.     Barrett had three outstanding deeds of trust secured by the Golden Sunray House that Gayler issued to him.

721.     Each of Barrett's deeds fall within the fraudulent transfer period pursuant to 11 U.S.C. § 548(a) and NRS 112.230.

MAC:12089-001 1572488_3 5/10/2012 8:53 AM

MARQUIS AURBACH COFFING
10001 Park Run Drive
Las Vegas, Nevada 89145
(702) 382-0711 FAX: (702) 382-5816

722. Loerwald had two outstanding deeds of trust secured by the Golden Sunray House that Gayler issued to him as security for the Loerwald loans.

723. Each of Loerwald's deeds fall within the fraudulent transfer period pursuant to 11 U.S.C. § 548(a) and NRS 112.230.

724. The deeds of trust issued to Loerwald and Barrett are "transfers" as defined by 11 U.S.C. § 101(54).

725. The deeds of trust were all recorded within the fraudulent transfer periods of § 548 and NRS 112.230.

726. The foreclosure of the Golden Sunray House is a "transfer" of Gayler's interest in Golden Sunray as defined by 11 U.S.C. § 101(54).

727. The execution of the deeds of trust and subsequent foreclosure sale were executed with the intent to hinder, delay or defraud Gayler's creditors.

728. Loerwald and Barrett are insiders to Gayler.

729. Loerwald was Gayler's consultant on the construction of the Golden Sunray House.

730. Loerwald is a close friend of Gayler.

731. Barrett is a close friend of Gayler.

732. Loerwald and Barrett are investors in several other Gayler Entities.

733. Loerwald provided significant financing to Gayler for his investments.

734. Barrett provided significant financing to Gayler for his investments.

735. On December 17, 2009, the Court Order was issued prohibiting Gayler from transferring, conveying or concealing any real or personal property in which he has an interest in directly or indirectly that exceeded $10,000.

736. In addition, the Court Order also prohibited Gayler from transferring, conveying or concealing interest in any limited liability companies Gayler controls and which in turn have an interest in the entities with which he is conducting business directly or indirectly that exceeded $10,000.

MAC:12089-001 1572488_3 5/10/2012 8:53 AM

737. Gayler, Loerwald and Barrett had motivation to structure a default on the Loerwald Note and collude in a foreclosure since the Court Order was in place and Gayler's Involuntary Bankruptcy was filed.

738. If Gayler sold the Golden Sunray House instead of defaulting on the Note, the proceeds would have been realized by the Bankruptcy Estate.

739. Receipt of the proceeds by the Estate would have resulted in a pro rata distribution to Barrett as a bankruptcy creditor and nothing to Loerwald since he is not a creditor in the Involuntary Bankruptcy.

740. The collusive foreclosure of the Golden Sunray House occurred shortly after Gayler incurred substantial debt.

741. Gayler was threatened with lawsuits prior to and during the time period of the default and subsequent sale of the home.

742. Gayler's strategic default of the Loerwald Note resulting in the subsequent foreclosure of the Golden Sunray House by Loerwald was collusive and irregular amounting to a fraudulent transfer.

743. The strategic foreclosure and subsequent sale of the Golden Sunray House for $7,000,000 by Loerwald to the Browns ensured that both Barrett and Loerwald would receive the full loan amounts secured by their deeds of trust.

744. Loerwald agreed to subordinate his deeds of trust in September and December 2008 to Barrett's because Loerwald would be the foreclosing individual guaranteed the proceeds of the sale while Barrett's deeds of trust would receive priority over his.

745. Barrett's deeds of trust prior to the subordination were in the fifth and sixth positions.

746. Loerwald prematurely took the position as the representative and owner of the Golden Sunray House before the Loerwald Note was due and before the Trustee's Sale occurred.

MAC:12089-001 1572488_3 5/10/2012 8:53 AM

MARQUIS AURBACH COFFING
10001 Park Run Drive
Las Vegas, Nevada 89145
(702) 382-0711 FAX: (702) 382-5816

747.    Gayler intended to defraud creditors of the Bankruptcy Estate by having Loerwald prematurely and collusively sign pertinent documents to administer the sale of the Golden Sunray House including, but not limited to, the following documents:

a.    On or about July 2009, Loerwald was named as the selling party to the closing instructions with Lawyers Title.  The Browns signed as the buyers.  The December 23, 2009 Purchase Agreement was referenced as incorporated within the escrow instructions.

b.    On December 10, 2009, Loerwald signed a listing agreement to list the Golden Sunray House on MLS.

c.    On or about mid-December, Loerwald executed the first purchase and sale agreement with the Browns signing and initialing all buyers' spaces.

d.    On December 22, 2009, Loerwald and the Browns executed an addendum to the Purchase Agreement to include furniture, artwork, TV's and audio visual equipment.

e.    On or about December 23, 2009, Loerwald signed a Consent to Act form stating the agent is representing him with Gayler's name scratched out and replaced with Loerwald's name.

f.    On December 24, 2009, Loerwald and the Browns executed the final Purchase Agreement.

748.    Gayler intended to defraud creditors with the knowledge he would default on the obligation to Loerwald to further diminish assets that would be available to creditors of the Estate.

749.    It is believed Gayler secured the Browns as buyers for Loerwald's resale of the Golden Sunray House.

750.    Gayler had sufficient equity in the Golden Sunray House to sell the property on his own and pay the outstanding obligations secured by deeds of trust.

751.    Gayler controlled Golden Sunray and could have caused the company to sell the real property and distribute the sales proceeds to his Bankruptcy Estate.

752.    Gayler purposely and intentionally evaded other options available for disposing of the Golden Sunray House.

MAC:12089-001 1572488_3 5/10/2012 8:53 AM

MARQUIS AURBACH COFFING
10001 Park Run Drive
Las Vegas, Nevada 89145
(702) 382-0711 FAX: (702) 382-5816

753.    Gayler had knowledge the Browns were viable buyers since July 2009—six months before Loerwald's foreclosure sale and resale to the Browns.

754.    The transfer to Loerwald was performed for less than "reasonably equivalent value."

755.    On January 4, 2010, Loerwald recorded the purchase of the Golden Sunray House from the Trustee's Sale for $500,000 or 7.14% of the fair market value of $7,000,000.

756.    The $500,000 paid by Loerwald was not fair market value because the Browns were in contract to pay $7,000,000 as of July 2009.

757.    Gayler, Loerwald and Barrett knew the fair market value was at least $7,000,000 prior to the foreclosure.

758.    On January 29, 2010, Loerwald closed the subsequent sale with the Browns for $7,000,000.

759.    Gayler retained possession of the Golden Sunray House and continued to live in the home with Loerwald's permission after Loerwald foreclosed.

760.    Loerwald received proceeds in the amount of $2,379,344.04 from the sale.

761.    Barrett received payment in the amount of $2,726,632.71 from the sale.

762.    Loerwald and Barrett each received more than they each would have as a creditor in the Chapter 7 liquidation of Gayler's Estate.

763.    A transfer for less than reasonable equivalent value with the intent to hinder, delay or defraud creditors is void pursuant to 11 U.S.C. § 548(a)(2)(A) and NRS 112.180.

764.    This Court should determine the deeds of trust given to Loerwald and Barrett by Gayler are fraudulent transfers.

765.    Accordingly, this Court should also determine that the foreclosure was collusive and irregular as a result of Gayler, Loerwald and Barrett's scheme amounting to a fraudulent transfer and order the disgorgement of the funds received as a result of the foreclosure and resale in the estimated amount of $5.1 million.

766.    The Trustee requests a recovery of the value of Gayler's equity in the property pursuant to 11 U.S.C. § 550(a)(1)–(d) and (2).

MAC:12089-001 1572488_3 5/10/2012 8:53 AM

MARQUIS AURBACH COFFING
10001 Park Run Drive
Las Vegas, Nevada 89145
(702) 382-0711 FAX: (702) 382-5816

MARQUIS AURBACH COFFING
10001 Park Run Drive
Las Vegas, Nevada 89145
(702) 382-0711 FAX: (702) 382-5816

767.　It has become necessary for the Trustee to engage the services of an attorney to prosecute this matter.　The Trustee is, therefore, entitled to an award of reasonable attorney's fees and costs as special and general damages.

### THIRTIETH CLAIM FOR RELIEF
### (Post-Petition Transfer from Loerwald to Golden Sunray to Gayler)
### (11 U.S.C. § 549 Post-Petition Transfer and NRS 86.351)

768.　Plaintiff incorporates and realleges for this reference each and every allegation contained above, inclusive, as if fully set forth herein.

769.　Gayler's Involuntary Bankruptcy was filed on November 16, 2009.

770.　On January 4, 2010, the Trustee's Deed Upon Sale was recorded in the name of Loerwald for $500,000.

771.　On January 29, 2010, Loerwald subsequently sold the Golden Sunray House to the Browns for $7,000,000.

772.　Loerwald received $2,502,189.04 in proceeds from the sale.

773.　On February 1, 2010, Gayler had Loerwald issue Golden Sunray a check for $200,000 to be paid for artwork, furniture, TVs and audio visual equipment from the January 29, 2010 sale of the Golden Sunray property.

774.　Gayler owns a 100% membership interest in Golden Sunray.

775.　Gayler's 100% membership interest constitutes personal property pursuant to NRS 86.351.

776.　Gayler's rights to the 100% interest of Golden Sunray is property of the Estate, amounting to Gayler having a legal or equitable interest in Golden Sunray.

777.　The Purchase and Sale Agreement between Loerwald and the Browns included that the artwork, furniture, TVs and audio visual equipment would be included in the $7,000,000 purchase price of the property.

778.　Loerwald and Gayler had an agreement for Loerwald to issue a check to Golden Sunray for $200,000 as a result of the resale to the Browns.

779.　Gayler, on behalf of Golden Sunray, accepted and endorsed the $200,000 check in the name of himself individually and Morpheus.

MAC:12089-001 1572488_3 5/10/2012 8:53 AM

780.    The February 1, 2010 transfer of $200,000 was not authorized by the Court or statute.

781.    Once Gayler deposited the money into the Golden Sunray bank account, he transferred the majority of the $200,000 in funds out of the Golden Sunray bank account to other Gayler accounts.

782.    The subsequent transfers were not authorized by the Court and were forbidden pursuant to the Court's December 17, 2009 Order forbidding Gayler to transfer, convey or conceal any property he had interest in directly or indirectly until further notice of the Court.

783.    Within a span of six days, Gayler transferred the funds as follows:

    a.    Cash transfers into TGF for $18,000 and $25,000, totaling $43,000;

    b.    Transfer to The Jayden Trust in the amount of $25,000;

    c.    Gayler's cash withdrawal in the amount of $25,000;

    d.    Gayler's deposit into WAG Life Insurance Trust Account in the amount of $25,000;

    e.    Gayler gave his ex-wife, Donna Alderson, cash in the amount of $10,000;

    f.    Gayler gives his children, Brandy and Brianna Gayler, cash in the total amount of $19,200; and

    g.    Cash transfer to Gayler's company ICON Real Estate in the amount of $10,050.

784.    Gayler executed the post-petition transfers in an attempt to conceal assets to avoid creditors and frustrate collection efforts of the Estate.

785.    This Court should declare that the February 1, 2010 monetary transfer from Loerwald to Golden Sunray and the subsequent transfers effected by Gayler are avoidable post-petition transfers pursuant to 11 U.S.C. § 549(a).

786.    This Court should declare that the February 1, 2010 monetary transfer of $200,000 from Loerwald to Golden Sunray and subsequently cashed by Gayler is property of the Estate pursuant to 11 U.S.C. § 541(a) and NRS 86.351.

MAC:12089-001 1572488_3 5/10/2012 8:53 AM

MARQUIS AURBACH COFFING
10001 Park Run Drive
Las Vegas, Nevada 89145
(702) 382-0711 FAX: (702) 382-5816

MARQUIS AURBACH COFFING
10001 Park Run Drive
Las Vegas, Nevada 89145
(702) 382-0711 FAX: (702) 382-5816

787.    It has become necessary for the Trustee to engage the services of an attorney to prosecute this matter.  The Trustee is, therefore, entitled to an award of reasonable attorney's fees and costs as special and general damages.

### THIRTY-FIRST FOR RELIEF
### (Gayler's Refusal to Obey Lawful Order of the Court)
### (11 U.S.C. § 727(a)(6)(A))

788.    Plaintiff incorporates and realleges for this reference each and every allegation contained above, inclusive, as if fully set forth herein.

789.    The Trustee requests revocation of the Bankruptcy discharge of Gayler pursuant to 11 U.S.C. § 727(a)(6)(A).

790.    The Trustee asserts Gayler is not entitled to a discharge and that the Bankruptcy discharge be revoked, because, as alleged in paragraphs 75-122 above (titled "Gayler's Violations of the Bankruptcy Court Order"), Gayler has violated the lawful Bankruptcy Court Order entered on December 17, 2009 on at least eleven occasions.

791.    Gayler has caused his direct or indirect interest in real or personal property valued in excess of $10,000 to be transferred, conveyed or concealed in direct violation of the Court Order.

792.    Gayler has caused entities in which he owns or controls, directly or indirectly, to transfer real or personal property in excess of $10,000 in violation of the Court Order.

793.    Gayler's violations of the Court Order includes, but is not limited to:

a.    The strategic default and foreclosure of the Golden Sunray House on January 4, 2010 which resulted in the $7,000,000 subsequent sale to the Browns on January 29, 2010;

b.    Golden Sunray's acceptance of a $200,000 check from Loerwald and Gayler's subsequent execution of eight transfer transactions totaling $190,250 from the Golden Sunray account to several other Gayler accounts between February 1, 2010 through February 11, 2010;

c.    The $53,620.49 transfer on March 18, 2010  from TGF to ETitle to pay the Gayler Family Educational, LLC's defaulted mortgage on Gayler's vacation homes;

MAC:12089-001 1572488_3 5/10/2012 8:53 AM

d.    The sale of Gayler's interests indirectly held through his children in Sunset II, LLC for a value of $25,000 on August 22, 2011 where the cash received went into another Gayler entity account; and

e.    Gayler's transfer of Apan's interest in the Gayler Family Educational, LLC to Briana Gayler having a value in real property value approximately $17,000 in October 2010.

794.    The Trustee requests, pursuant to the Court Order and Gayler's violations, that this Court declare Gayler is in contempt of the December 17, 2009 Court Order.

795.    The Trustee further requests that this Court revoke the Bankruptcy discharge of Gayler.

796.    The Trustee asserts the Estate has been damaged by the violative actions of the Defendant in an amount to be determined in this adversary proceeding, including interest thereon as permitted by law.

## THIRTY-SECOND CLAIM FOR RELIEF
### (Damages)

797.    Plaintiff incorporates and realleges for this reference each and every allegation contained above, inclusive, as if fully set forth herein.

798.    The Trustee asserts that, as alleged in the General Allegations above, the Estate has been damaged by the fraudulent and intentional acts and omissions of Gayler in an amount to be proven at trial.

799.    These damages were the direct and proximate result of Debtor's actions and/or omissions in this bankruptcy case.

. . .

. . .

. . .

. . .

. . .

. . .

MARQUIS AURBACH COFFING
10001 Park Run Drive
Las Vegas, Nevada 89145
(702) 382-0711 FAX: (702) 382-5816

MAC:12089-001 1572488_3 5/10/2012 8:53 AM

MARQUIS AURBACH COFFING
10001 Park Run Drive
Las Vegas, Nevada 89145
(702) 382-0711 FAX: (702) 382-5816

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for judgment as follows:

1.  For a declaration from this Court in the Trustee's favor that the following transfers were fraudulent and deemed void pursuant to 11 U.S.C. § 548 and, as such, are reverted back to the respective ownership of either WAG SPT or Gayler individually and thus are deemed property of the Bankruptcy Estate under 11 U.S.C. § 541(a).

    a.  The 41 Transfers of ownership in various assets to TGF;

    b.  Debtor's transfer of IPS II to TGF;

    c.  Debtor's transfer of Polyrus to TGF;

    d.  Debtor's transfer of Harlan to TGF;

    e.  Debtor's transfer of CHA II to TGF;

    f.  Debtor's transfer of CHA III to TGF;

    g.  Debtor's transfer of Apan's 5% interest in Sunset V to Axios and TGF;

    h.  The transfer of ownership of the Park City Property; and

    i.  The transfer of ownership of the Salt Lake City Property.

2.  For a declaration from this Court in the Trustee's favor that the following is property of the Bankruptcy Estate pursuant to 11 U.S.C. § 541(a)(1) and NRS 86.351:

    a.  Debtor's Managing Member Interests in all Limited Liability Companies;

    b.  Debtor's interest in G.C.S., Inc.;

    c.  Debtor's interest in G.C.S., LLC;

    d.  Debtor's individually held interest in Groth;

    e.  Debtor's individually held interest in CH. Angelus;

    f.  Debtor's 100% interest in Apan Wine;

    g.  Debtor's 10% individual interest in Dominus; and

    h.  Debtor's interest in GFE.

MAC:12089-001 1572488_3 5/10/2012 8:53 AM

3.     For Judgment against the Debtor for determination that the following entities and trusts are the alter ego of Debtor and that Debtor should be held responsible and liable for all obligations and fraudulent transfers executed by the entity or trust:

        a.      The Jayden Kristopher Gayler Irrevocable Trust;

        b.      The Gayler 2001 Irrevocable Trust;

        c.      TGF Holdings, LP;

        d.      The Gayler Family Educational, LLC;

        e.      23 Golden Sunray, LLC;

        f.      Apan Wine, LLC;

        g.      Meritage-Gayler a/k/a Gayler-Meritage Limited Liability Company;

        h.      Morpheus Enterprises, LLC;

        i.      ICON Companies; and

        j.      William A. Gayler Separate Property Trust.

4.     For judgment in the Trustee's favor avoiding the fraudulent transfer caused by Gayler of WAG SPT's transfer of the 61.54% interest in Meritage-Gayler to TGF for no consideration pursuant to 11 U.S.C. § 548 and NRS 112.180.

5.     For judgment in the Trustee's favor avoiding the fraudulent transfer caused by Gayler of WAG SPT's transfer of 40% interest in Dominus to TGF for no consideration pursuant to 11 U.S.C. § 548 and NRS 112.180.

6.     For judgment in the Trustee's favor avoiding the sequence of fraudulent transfers involving Axios.  Gayler's transfer of Apan's 5% and LeBow's 5% interests in Sunset V into Axios and the subsequent transfer effected by Gayler of Gayler's 50% interest in Axios to TGF for no consideration pursuant to 11 U.S.C. § 548 and NRS 112.180.

7.     For judgment in the Trustee's favor avoiding the fraudulent transfer of Debtor's vacation home in Park City, Utah transferred from Gayler individually to GFE for no consideration pursuant to 11 U.S.C. § 548 and NRS 112.180.

MARQUIS AURBACH COFFING
10001 Park Run Drive
Las Vegas, Nevada 89145
(702) 382-0711 FAX: (702) 382-5816

MAC:12089-001 1572488_3 5/10/2012 8:53 AM

8.      For judgment in the Trustee's favor avoiding the fraudulent transfer of Debtor's vacation home in Salt Lake City, Utah transferred from Gayler individually to GFE for no consideration pursuant to 11 U.S.C. § 548 and NRS 112.180.

9.      For judgment in the Trustee's favor avoiding the post-petition transfer caused by Gayler from Sunset II to Altra Vida pursuant to 11 U.S.C § 549(a).

10.     For judgment in the Trustee's favor avoiding the post-petition foreclosure and resale of the 23 Golden Sunray home by Loerwald to the Browns and monetary recovery for the benefit of the Estate for the value of the transferred property amounting to $2,379,344.04 to Loerwald and $2,726,632.71 to Barrett (or $5.1 million total) pursuant to 11 U.S.C. § 549(a) and 11 U.S.C. § 550(a)(1) and (2).

11.     For judgment in the Trustee's favor avoiding the fraudulent transfers of the 23 Golden Sunray deeds of trust, collusive foreclosure and resale to the Browns executed by Defendants Gayler, Loerwald, Barrett and the Browns pursuant to 11 U.S.C. § 548(a)(2)(A) and NRS 112.180.

12.     For monetary judgment in the Trustee's favor for the value of Gayler's equity paid to Loerwald and Barrett as a result of the fraudulent transfer/foreclosure of 23 Golden Sunray in the amounts paid by escrow to each Defendant pursuant to 11 U.S.C. § 548(a)(2)(A), NRS 112.180 and 11 U.S.C. § 550(a)(1)–(d).

13.     For judgment from this Court in the Trustee's favor revoking Debtor's Bankruptcy discharge for refusal to obey a lawful Order of this Court pursuant to 11 U.S.C. § 727(a)(6)(A) in an amount to be determined in the Adversary Proceeding, including interest thereon as permitted by law.

14.     For a Declaration in the Trustee's favor that Gayler violated the lawful Bankruptcy Court Order entered on December 17, 2009.

15.     For a Declaration by the Court that Gayler is in contempt of the Bankruptcy Court Order entered on December 17, 2009.

16.     For attorneys fees and costs of suit in an amount to be determined in the Adversary Proceeding.

MARQUIS AURBACH COFFING
10001 Park Run Drive
Las Vegas, Nevada 89145
(702) 382-0711  FAX: (702) 382-5816

MAC:12089-001 1572488_3 5/10/2012 8:53 AM

1    17.    For damages in excess of an amount to be proven at trial, exclusive of interest and

2  costs.

3    18.    For such and further relief as this Court may deem just and proper.

4  DATED this 10th day of May, 2012.

5

6                                                    MARQUIS AURBACH COFFING

7

8                                                    By: /s/ April N. Bonifatto, Esq.
                                                        Phillip S. Aurbach, Esq.
9                                                       Nevada Bar No. 1501
                                                        April N. Bonifatto, Esq.
10                                                      Nevada Bar No. 11924
                                                        10001 Park Run Drive
11                                                      Las Vegas, Nevada  89145
                                                        Attorney(s) for Chapter 7 Trustee,
12                                                      James F. Lisowski

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

MARQUIS AURBACH COFFING
10001 Park Run Drive
Las Vegas, Nevada 89145
(702) 382-0711 FAX: (702) 382-5816

MAC:12089-001 1572488_3 5/10/2012 8:53 AM