**Marquis Aurbach Coffing**
Dale A. Hayes, Esq.
Nevada Bar No. 3430
Liane K. Wakayama, Esq.
Nevada Bar No. 11313
10001 Park Run Drive
Las Vegas, Nevada 89145
Telephone: (702) 382-0711
Facsimile: (702) 382-5816
dhayes@maclaw.com
lwakayama@maclaw.com
  Attorneys for Objecting Creditors

E-Filed:    __April 11, 2014__

# UNITED STATES BANKRUPTCY COURT

## FOR THE DISTRICT OF NEVADA

| | |
|---|---|
| In Re:<br><br>WILLIAM GAYLER,<br><br>                     Debtor. | Case No:    BK-S-09-31603-MKN<br>Chapter:      7<br><br>Date of Hearing:  May 30, 2014<br>Time of Hearing: 12:30 p.m. |

## OPPOSITION TO AMENDED MOTION TO APPROVE SETTLEMENT AGREEMENT[1]

Marquis Aurbach Coffing ("MAC"), attorneys of record for Objecting Creditors, Barry Moore, Donald J. Campbell, J. Colby Williams, John D. O'Brien, individually and as Trustee of the John D. O'Brien Profit Sharing Plan and as Trustee of the Alexander Dawson Foundation, Bianca Borini, Mario Borini and Joseph Borini (hereinafter collectively the "Objecting Creditors"), hereby submit their Opposition to the Amended Motion to Approve Settlement Agreement. This Opposition is made and based upon the pleadings and papers on file herein, the attached Memorandum of Points and Authorities, and any oral argument permitted at the hearing.

Pursuant to Federal Rule of Bankruptcy Procedure 9017 and Federal Rule of Evidence 201, the Objecting Creditors request that the Court take judicial notice of the papers and pleadings filed in this bankruptcy case, all related Adversary Proceedings identified as Case No.

---

[1] On October 22, 2013, the Court granted the Objecting Creditors' request to exceed the page limit imposed by Bankruptcy Local Rule 9014(e)(1). See Dkt. No. 585.

MAC:06277-005 2026578_2 4/11/2014 11:40 AM

MARQUIS AURBACH COFFING
10001 Park Run Drive
Las Vegas, Nevada 89145
(702) 382-0711 FAX: (702) 382-5816

Adv. Pro No. 11-01027-MKN and Adv. Pro. No. 11-01088-MKN and the pleadings filed in the Eighth Judicial District Court, Clark County, Nevada identified as Case No. A-09-596777 and Case No. A-10-616929-B.

At the evidentiary hearing scheduled in this matter for May 30, 2014, the Objecting Creditors reserve the right to call the following witnesses: (1) Mark Schnippel; (2) Donald J. Campbell; (3) J. Colby Williams; (4) John D. O'Brien; (5) Barry R. Moore; (6) Phillip S. Aurbach; and (7) William A. Gayler.

Dated this 11th day of April, 2014

MARQUIS AURBACH COFFING

By _____
Dale A. Hayes, Esq.
Nevada Bar No. 3430
Liane K. Wakayama, Esq.
Nevada Bar No. 11313
10001 Park Run Drive
Las Vegas, Nevada 89145
Attorneys for Objecting Creditors

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.    INTRODUCTION.

Since his appointment in December 2012, Chapter 7 Trustee David Rosenberg ("Trustee Rosenberg") through his counsel, Howard Kim ("Kim"), has done nothing to litigate the merits of the adversary proceeding initiated by his predecessor – no discovery and no substantive motion practice. Trustee Rosenberg has instead caused all litigation to be stayed in hopes of pushing through a settlement that provides no benefit to the bankruptcy estate or its creditors. By design, the settlement only benefits Debtor William A. Gayler ("Gayler"), Gayler's counsel, Gayler's cohorts, Trustee Rosenberg and Kim. None of the Objecting Creditors stand to benefit – the ones that have been embroiled in litigation for the past five years to salvage what is left of their investments due to Gayler's manifest fraud. As a result of the Objecting Creditors' success, Trustee Rosenberg now seeks to reap the rewards by prematurely and improperly seizing these very assets for the benefit of Gayler and his bankruptcy estate. Trustee Rosenberg does so with

MAC:06277-005 2026578_2 4/11/2014 10:22 AM

MARQUIS AURBACH COFFING
10001 Park Run Drive
Las Vegas, Nevada 89145
(702) 382-0711 FAX: (702) 382-5816

full knowledge that this Court has entered three non-dischargeable judgments against Gayler under 11 U.S.C. § 523(a)(2)(A), one of which led to the criminal indictment of Gayler by the Nevada Attorney General. Cognizant of Gayler's fraudulent activity, Trustee Rosenberg, under penalties of perjury, acknowledges that Gayler "purposefully acted to fraudulently transfer his assets out of the Estate"[2] – a bankruptcy crime. Yet, somehow Trustee Rosenberg has allowed Gayler to dictate settlement terms to the detriment of the creditor body and now advocates for this Court to approve what can only be characterized as a corrupt bargain.

By abandoning claims valued over $5.0MM, Trustee Rosenberg has agreed to release Gayler's co-conspirators, Defendants Martin Barrett ("Barrett") and Walter Loerwald ("Loerwald") from any liability. In exchange, Barrett and Loerwald will pay nothing to the Estate – a free walk. Moreover, Gayler's attorney, Jeff Sylvester ("Sylvester"),[3] will receive $100,000 plus future distributions to collect unpaid attorney fees and costs.[4] Sylvester is not a creditor, but through this settlement the Estate will pay for Gayler's personal legal bill that it would not otherwise be required to do. Indeed, a large part of Sylvester's legal expenses were incurred for having to defend Gayler's interests against creditors in adversary proceedings that ultimately led to non-dischargeable judgments based on actual fraud. The proposed settlement further allows Gayler to maintain ownership of two Utah houses, retain all previously paid commissions (even if unauthorized) and provides Gayler a stream of future income. Not only does the proposed settlement line Gayler's pockets with substantial assets, but it also grants a known indicted fraud a discharge in direct violation of public policy. As the proponent, Trustee Rosenberg has thus failed to meet his burden of persuasion that this corrupt bargain is in the best interests of the Estate.

Importantly, the true motives behind this settlement are to prematurely seize assets that were recovered by the Objecting Creditors' efforts in state court litigation. Strategically, Trustee

---

[2] See Dkt. No. 562, ¶14.

[3] Mr. Sylvester is with the law firm of Sylvester & Polednak, Ltd.

[4] See Dkt. No. 551-2, Email from Jeff Sylvester to Howard Kim dated 04/23/13, attached hereto as **Exhibit A.**

MAC:06277-005 2026578_2 4/11/2014 11:39 AM

MARQUIS AURBACH COFFING
10001 Park Run Drive
Las Vegas, Nevada 89145
(702) 382-0711 FAX: (702) 382-5816

Rosenberg waited to file this settlement proposal until after another investment gutted by Gayler was saved from foreclosure. To the further detriment of his investors, Gayler purports to now transfer his management rights and claimed membership interests to the Estate for Trustee Rosenberg to control. At the time of his bankruptcy, however, Gayler may not hold any interest in these entities making any transfer premature. When the Objecting Creditors have asked Trustee Rosenberg for documentation confirming that Gayler actually owned a membership interest pre-bankruptcy, every request went ignored. Additionally, Trustee Rosenberg has known since his appointment that Gayler was removed as Manager and thus lacks authority to take any action on behalf of certain LLCs. Following the *A&C* factors, the proposed settlement is unreasonable, unfair and in violation of public policy; approval should therefore be denied.

## II.    STATEMENT OF FACTS.

### A.    GAYLER'S BANKRUPTCY PROCEEDING (CASE NO. 09-31603-MKN).

On November 16, 2009, Gayler was forced into involuntary bankruptcy in accordance with Chapter 7 of the Bankruptcy Act.[5] Through his counsel, Sylvester, Gayler filed an Answer to the Involuntary Chapter 7 Petition on December 8, 2009.[6] Sylvester has remained Gayler's counsel throughout these bankruptcy proceedings. An Order mandating relief under Chapter 7 of the Bankruptcy Code was issued on March 29, 2010.[7]

### 1.    The Interim 303(f) Order.

Pursuant to 11 U.S.C. §303(f), an Order Granting Interim Relief was entered on December 17, 2009 enjoining Gayler from "transferring conveying, or concealing any real or personal property, in which he has an interest, directly or indirectly, with a value in excess of $10,000.00 without further order of this Court" (the "Interim 303(f) Order").[8] The Interim 303(f) Order further enjoined Gayler from causing any entity which he owns or controls, directly

---

[5] See Dkt. No. 1.

[6] See Dkt. No. 16.

[7] See Dkt. No. 85.

[8] See Dkt. No. 32.

MARQUIS AURBACH COFFING
10001 Park Run Drive
Las Vegas, Nevada 89145
(702) 382-0711 FAX: (702) 382-5816

or indirectly including through limited liability companies "from transferring any real or personal property with a value in excess of $10,000.00 without further order of this Court, or the majority vote of the non-related members, shareholders or partners."[9]

### 2. The Amended Voluntary Petition.

On June 28, 2010, Gayler filed an Amended Voluntary Petition.[10] Within Schedule B, Gayler listed ownership interests in over 60 different entities.[11] Gayler claimed all of his partnership interests set forth in Schedule B to be exempt under 11 U.S.C. § 522(b)(3) and NRS 21.090(1)(z); thus, not assets of the bankruptcy estate.[12]

### 3. The Court's Order Disallowing Gayler's Claimed Exemptions.

On October 21, 2010, City National Bank ("CNB") objected to Gayler's claimed exempt interest in all entities.[13] In an Order entered on January 7, 2011, the Court granted CNB's objections disallowing Gayler's claimed exemptions for all partnership interests identified in Schedule B to the Amended Petition.[14]

### 4. The Chapter 7 Trustees and Trustee's Counsel.

On March 29, 2010, James F. Lisowski, Sr. was appointed the Chapter 7 Trustee (the "Former Trustee") to administer the case.[15] On April 14, 2011, the Former Trustee applied to the Court to employ MAC, on a contingency fee basis, as Special Counsel "for the purpose of investigating and proceeding with specific litigation issues regarding multiple potential fraudulent conveyance actions and/or preference actions" (the "Application").[16] In an Order

---

[9] See Dkt. No. 32.

[10] See Dkt. No. 105.

[11] Id. at Schedule B.

[12] Id. at Schedule C.

[13] See Dkt. No. 136 at Schedule C.

[14] See Dkt. No. 164.

[15] See Docket Report for Bankruptcy Petition #: 09-31603.

[16] See Dkt. No. 192.

MARQUIS AURBACH COFFING
10001 Park Run Drive
Las Vegas, Nevada 89145
(702) 382-0711 FAX: (702) 382-5816

MAC:06277-005 2026578_2 4/11/2014 11:39 AM

MARQUIS AURBACH COFFING
10001 Park Run Drive
Las Vegas, Nevada 89145
(702) 382-0711 FAX: (702) 382-5816

entered on May 23, 2011, the Court approved the Application to employ MAC as Special Counsel for the Former Trustee.[17]

On December 12, 2012, Trustee Rosenberg was appointed as Successor Trustee, terminating James F. Lisowski.[18]  Trustee Rosenberg moved to employ Howard Kim & Associates ("Kim"), on an hourly basis, as general counsel, which was approved by the Court in an Order entered March 15, 2013.[19]

### 5.    The Proof of Claims.

According to the Claims Register, 35 Proof of Claims were filed in Gayler's bankruptcy.[20]  The IRS filed a secured Proof of Claim for $1,891,092.85.[21]  Aside from Barry Moore, the other Objecting Creditors collectively filed unsecured Proof of Claims totaling $1,201,000.[22]

## B.    THE STATE COURT LITIGATION.

As a Certified Commercial Investment Member (CCIM), Gayler served as a trusted investment advisor, real estate broker and Managing Member of numerous LLCs for the Objecting Creditors.[23]  For many years, the Objecting Creditors trusted Gayler to manage their investments for their benefit, some of which included money earmarked for their employees.[24]  To line his own pockets, however, Gayler engaged in a massive fraudulent scheme with Barrett and Loerwald.[25]  As a result of Gayler's deceit and self-dealing, the Objecting Creditors each lost

---

[17] See Dkt. No. 205.

[18] See Dkt. No. 482.

[19] See Dkt. Nos. 488 & 500.

[20] See Claims Register for Bankruptcy Petition #: 09-31603-mkn ("Claims Register").

[21] Id.

[22] See Claims Register.

[23] See Adversary Proceeding 11-01027 ("Adv. Pro. 01027"), Dkt. No. 176, Transcript of Court Proceedings held on 10/10/12, attached hereto as **Exhibit B**.

[24] Id.

[25] See Eighth Judicial District Court, Clark County, Nevada Case Nos. A-09-596777 and A-10-616929-B.

MAC:06277-005 2026578_2 4/11/2014 11:39 AM

a significant portion of their life savings while Gayler, Barrett and Loerwald walked away with millions of dollars.[26]

Upon discovering Gayler's betrayal, most of the Objecting Creditors initiated one lawsuit after another in the Eighth Judicial District Court, Clark County, Nevada. The main lawsuits shall be referred to as: (1) the Angelus I/Angelus II Lawsuit; (2) the Angelus II Lawsuit; (3) the Angelus IV Lawsuit; and (4) the Dumol Lawsuit.

### 1.    The Angelus I/Angelus II Lawsuit (Case No. A596777).

On August 6, 2009 - *prior* to Gayler's bankruptcy – the Angelus I/Angelus II Lawsuit commenced against Gayler, Barrett, Loerwald, Alper[27] and others. Many of the Objecting Creditors initiated the Angelus I/Angelus II Lawsuit in order to save their investments from foreclosure and hold Gayler, Barrett and Loerwald liable for their self-dealing.

### a.    Summary of Facts.[28]

As the Managing Member of Ch. Angelus, LLC ("Angelus I") and Ch. Angelus II, LLC ("Angelus II"), Gayler borrowed $2MM from Alper secured by real property owned by Angelus I and Angelus II (the "$2MM Alper Loan").[29] The $2MM Alper Loan was accomplished by Gayler in direct violation of the governing operating agreements; specifically, Gayler failed to obtain the 51% written consent of the Non-Managing Members of Angelus I and Angelus II. The entire $2MM Alper Loan was the product of a scheme to increase Gayler's interests in Angelus I and cash out the interests of Barrett and Loerwald to the detriment of the LLCs.

When escrow closed on the $2MM Alper Loan in September 2008, Barrett pocketed over $1.3MM, Gayler absconded with $323,616.28 and the remaining loan proceeds were consumed by fees and commissions. When the $2MM Alper Loan became due, Alper sought to foreclose

---

[26] See Eighth Judicial District Court, Clark County, Nevada Case Nos. A-09-596777 and A-10-616929-B.

[27] "Alper" shall collectively refer to Eliot A. Alper, Trustee of the Eliot A. Alper Revocable Trust dated March 22, 1999 and the Alper Limited Partnership.

[28] The findings contained in this section are supported by the Findings of Fact and Conclusions of Law filed March 15, 2011 ("the "AGI/AGII Findings"), attached hereto as **Exhibit C**.

[29] Angelus I owned five acres identified as APN 176-10-101-002. Angelus II owned five acres identified as APN 176-10-101-012.

MAC:06277-005 2026578_2 4/11/2014 11:39 AM

MARQUIS AURBACH COFFING
10001 Park Run Drive
Las Vegas, Nevada 89145
(702) 382-0711 FAX: (702) 382-5816

MARQUIS AURBACH COFFING
10001 Park Run Drive
Las Vegas, Nevada 89145
(702) 382-0711 FAX: (702) 382-5816

on the ten acres owned by Angelus I and Angelus II even though neither LLC received any benefit from the loan. As part of the relief sought, some of the Objecting Creditors (the "777 Plaintiffs") thus asserted claims against Alper for quiet title and declaratory relief.

### b.    The Bench Trial and Judgments.

On or about November 12, 2009, the District Court bifurcated the Angelus I/Angelus II Lawsuit, compelling arbitration for the claims asserted against Gayler, Barrett, Loerwald and others. The claims against Alper, however, proceeded to trial.

After a six day bench trial and subsequent motion practice, the District Court declared the entire $2MM Alper Loan void and invalid based on the "manifest self-dealing" of Gayler, Barrett and Loerwald.[30] The Court's Decision declaring the $2MM Deed of Trust in favor of Alper void and invalid was entered on March 15, 2011.[31] The Court's award of summary judgment declaring the $2MM Promissory Note in favor of Alper void and invalid was entered on July 8, 2011.[32] On July 21, 2011, Alper appealed the District Court's decisions to the Nevada Supreme Court.[33]

### c.    The Alper Settlement.

As part of the appellate process, the parties participated in the Nevada Supreme Court's NRAP 16 settlement program held on November 15, 2011.[34] The conference resumed on

---

[30] See AGI/AGII Findings at p. 24, ¶ 16, Exhibit C.

[31] Id.

[32] See Order Denying Defendants Eliot A. Alper, Trustee of the Eliot A. Alper Revocable Trust Dated march 22, 1999 and the Alper Partnership's Motion for Summary Judgment and Granting Plaintiffs' Cross Motion for Summary Judgment filed July 8, 2011 (the"AGI/AGII Order"), attached hereto as **Exhibit D.**

[33] See Eliot A. Alper, Trustee of the Eliot A. Alper Revocable Trust Dated March 22, 1999 and the Alper Partnerships Notice of Appeal filed July 21, 2011, on file in Eighth Judicial District Court, Clark County, Nevada Case No. A-09-596777-C.

[34] See Settlement Program Status Reports filed on November 18, 2011 and December 1, 2011 ("Status Reports"), on file in The Supreme Court of the State of Nevada Case Nos. 58861 and 59174.

MAC:06277-005 2026578_2 4/11/2014 11:39 AM

November 28, 2011.[35]  Although the parties did not reach a resolution at the conferences, the parties continued to engage in settlement negotiations.[36]

On December 8, 2011, a meeting of the Angelus I and Angelus II members was held where a majority of the members voted to accept $1.3MM or more to settle with Alper.  In exchange, Alper would be able to reinstate the $2MM Promissory Note and Deed of Trust to proceed with foreclosure on the ten acres owned by Angelus I and Angelus II.  A majority of the members further resolved that the settlement division ratio would be 58% allocated to Angelus I and 42% allocated to Angelus II.

On December 14, 2011, a settlement was reached where Alper would pay Angelus I and Angelus II $1.4MM in exchange for the ten acres.  On January 20, 2012, the parties filed a voluntary stipulation representing to the Supreme Court that a settlement had been reached.

### (1)    The Court's Approval of the Settlement.

After Alper tried to terminate the settlement reached, the 777 Plaintiffs moved the District Court to enforce and approve the settlement, which was granted in an Order entered on April 10, 2012.[37]

### (2)    The June 14, 2012 Member Meeting.

On June 14, 2012, the Angelus I and Angelus II members held a meeting to discuss the disbursement of the $1.4MM settlement proceeds and the election of a new Managing Member for the involved entities (the "June Meeting").[38]  A majority of the members unanimously resolved that all legal expenses and delinquent property tax payments would first be paid and reimbursed out of the proceeds and the remaining balance would be divided 58% to Angelus I and 42% to Angelus II.[39]  Recognizing the claims pending in the Angelus I/Angelus II Lawsuit

---

[35] See Status Reports.

[36] Id.

[37] See Order filed April 10, 2012, attached hereto as **Exhibit E**.

[38] See Transcript of Ch. Angelus, LLC and Ch. Angelus II, LLC Member Meeting taken on June 14, 2012 ("the AGI/AGII Transcript"), attached hereto as **Exhibit F**.

[39] Id.

MAC:06277-005 2026578_2 4/11/2014 11:39 AM

MARQUIS AURBACH COFFING
10001 Park Run Drive
Las Vegas, Nevada 89145
(702) 382-0711 FAX: (702) 382-5816

against Gayler, Barrett and Loerwald, a majority of the members further resolved that any interest claimed to be held by any of them would be held in trust until resolution or adjudication of the remainder of the lawsuit.[40]

At the June Meeting, **a majority of the Angelus I and Angelus II members removed Gayler as the Managing Member for cause** and elected Barry Moore to serve in his stead.[41] Holding membership interests in Angelus II, **a majority of the members of Groth, LLC, Ch. Pichon, LLC and Harlan, LLC (the "Angelus II Entities") removed Gayler as the Managing Member for cause** and elected John O'Brien as the new Managing Member for each LLC.[42]

(3)    **The Court Ordered Disbursement of the Settlement Proceeds and Findings as to New Management.**

On July 5, 2012, the 777 Plaintiffs moved the Court to approve the member resolutions reached at the June Meeting.[43]  In an Order entered on August 24, 2012, the Court approved the disbursement of the $1.4MM settlement proceeds; however, declined to enter a ruling on the retention of any funds claimed by Gayler, Barrett or Loerwald.[44]  The Court specifically found that it lacked jurisdiction as to such a ruling because the retention of any funds did "not relate to the implementation of the Settlement."[45]

As to the removal of Gayler as Managing Member, the Court found that as a result of the June Meeting:

A majority of the **Angelus I and Angelus II** non-managing members **resolved that Moore shall serve as their new managing member**.

---

[40] See AGI/AGII Transcript, Exhibit F.

[41] Id.

[42] Id.

[43] See Motion to Approve Member Resolutions on Order Shortening Time filed July 5, 2012, on file in Eighth Judicial District Court, Clark County, Nevada Case No. A-09-596777-C.

[44] See Order filed August 24, 2012 ("8/24/12 Order"), attached hereto as **Exhibit G**.

[45] Id.

MAC:06277-005 2026578_2 4/11/2014 11:39 AM

MARQUIS AURBACH COFFING
10001 Park Run Drive
Las Vegas, Nevada 89145
(702) 382-0711 FAX: (702) 382-5816

A majority of the non-managing members of **Groth, Pichon and Harlan appointed O'Brien as the new managing member.**[46]

Finding it lacked jurisdiction, the Court declined to enter a ruling on the appointment of a new Managing Member because it did "not relate to the implementation of the Settlement."[47]  By declining to enter a ruling, the Court did <u>not</u> find that the member resolutions were invalid.

### (4)    The Deposit of $413,322.25 in the Court's Registry.

After disbursement of the $1.4MM in settlement proceeds, $413,322.25 remained in dispute representing the interests claimed by Gayler in Angelus I and Angelus II.[48]   On September 7, 2012, the 777 Plaintiffs requested the Court to allow the deposit of all $413,322.25 into the Court's registry to protect the interests of the parties until the ownership of the membership interest claimed by Gayler is determined and/or resolved.[49]   Pursuant to an Order dated October 12, 2012, all $413,322.25 remains in the Court's registry.[50]

### (5)    Gayler's Claimed Interests in Angelus I and Angelus II.

On Schedule B, Gayler claims a 50% interest in Angelus I as his personal property.[51]  Gayler does so even though he used Angelus I and Angelus II's property to increase his interest by 40% and cashed out a total of $1,626,101.28 as a result of the unauthorized $2.0MM Alper Loan.[52]   Moreover, Section 3.06 of the Angelus I Operating Agreement required Gayler to contribute $64,000 towards the purchase of Angelus I's property in exchange for his claimed

---

[46] <u>See</u> 8/24/12 Order at ¶¶ 13 and 14, Exhibit G.

[47] <u>Id.</u> at ¶ 15.

[48] <u>See</u> Motion to Deposit Funds with the Court Pursuant to NRCP 67 filed September 7, 2012, , on file in Eighth Judicial District Court, Clark County, Nevada Case No. A-09-596777-C.

[49] <u>Id.</u>

[50] <u>See</u> Order Granting Motion to Deposit Funds with the Court Pursuant to NRCP 67 filed October 12, 2012, attached as **Exhibit H.**

[51] <u>See</u> Dkt. No. 105, Schedule B.

[52] <u>See</u> Wells Fargo September 2008 PMA Prime Checking Account Statement for Martin Barrett, attached hereto as **Exhibit I;** <u>see also</u> Borrower's Final Closing Statement, attached hereto as **Exhibit J.**

MAC:06277-005 2026578_2 4/11/2014 11:39 AM

MARQUIS AURBACH COFFING
10001 Park Run Drive
Las Vegas, Nevada 89145
(702) 382-0711 FAX: (702) 382-5816

1    10% interest.[53]  There is no evidence that Gayler actually complied with Section 3.06.  Similarly,

2    the Operating Agreements for Angelus II, Ch. Pichon, and Groth required Gayler to make certain

3    capital contributions in exchange for a membership interest.[54]  There is no evidence that Gayler

4    actually complied with any of these requirements.  Yet, Gayler claims to have owned an interest

5    in the Angelus II Entities prior to his bankruptcy.

6                    **d.    The Motion to Lift the Stay.**

7                    In order to determine if Gayler actually owned any interest in Angelus I and the Angelus

8    II Entities, the 777 Plaintiffs filed a Motion with the Bankruptcy Court on November 14, 2012

9    for a determination that the automatic stay does not apply or, alternatively, granting relief from

10   the automatic stay (the "Motion to Lift Stay").[55]  Gayler opposed the Motion to Lift Stay on the

11   basis that the Former Trustee was already litigating Gayler's ownership interests in the entities

12   involved in the Angelus I/Angelus II Lawsuit.[56]  The hearing was held on December 19, 2012.[57]

13   The Court has yet to enter its ruling on the Motion to Lift the Stay; thus, the 777 Plaintiffs have

14   not proceeded with the arbitration against Gayler.

15                   **2.    The Angelus II Lawsuit (Case No. A668997).**

16                   Not only did Angelus II own the five acres Gayler encumbered with the unauthorized

17   $2MM Alper Loan, but it also owned another *un*encumbered 1.25 acres.[58]  Despite the District

18   Court's rulings in the Angelus I/Angelus II Lawsuit and the removal of Gayler as Managing

19   Member of Angelus II, Gayler, acting as if he were the manager, sold the 1.25 acres and

20

21

22   _____

     [53] See Operating Agreement of Ch. Angelus, LLC, attached hereto as **Exhibit K**.

23   [54] See Operating Agreement of Ch. Angelus II, LLC, attached hereto as **Exhibit L**; see also Operating
     Agreement of Ch. Pichon I, LLC, attached hereto as **Exhibit M** and Operating Agreement of Groth, LLC,
24   attached hereto as **Exhibit N**.

25   [55] See Dkt. No. 466.

26   [56] See Dkt. No. 476.

27   [57] See Dkt. 468.

28   [58] See Complaint filed September 25, 2012 ("9-25-10 Complaint"), attached hereto as **Exhibit O**.

MARQUIS AURBACH COFFING
10001 Park Run Drive
Las Vegas, Nevada 89145
(702) 382-0711 FAX: (702) 382-5816

MAC:06277-005 2026578_2 4/11/2014 11:39 AM

MARQUIS AURBACH COFFING
10001 Park Run Drive
Las Vegas, Nevada 89145
(702) 382-0711 FAX: (702) 382-5816

encumbered it with Deeds of Trust totaling $200,000 – the exact amount of the purchase price.[59] Part of the $200,000 included an unauthorized $20,000 commission to Gayler through his entity, Origin Capital Partners, LLC.[60] None of the Angelus II members had any knowledge that Gayler sold the 1.25 acres without their consent and approval as required under the Operating Agreement. [61]

To remedy the harm caused, the Angelus II Lawsuit was initiated against Gayler and others on September 25, 2012.[62] On October 19, 2012, Gayler was properly served with the Angelus II Lawsuit Summons, Complaint and Notice of Lis Pendens.[63]

### a.    The Unauthorized Angelus II Bankruptcy.

Seven business days after Gayler was served with the Angelus II Lawsuit, Gayler, who was not the manager, filed a Chapter 7 Voluntary Petition on behalf of Angelus II without the members' knowledge or consent.[64] Trustee Rosenberg was appointed as the trustee on October 30, 2012.[65] On November 6, 2011, the Court approved the employment of Mr. Kim as general counsel to Trustee Rosenberg.[66]

Barry Moore, the Managing Member of Angelus II, and the Angelus II members never authorized the bankruptcy filing. As a result, Angelus II moved to dismiss the bankruptcy filing pursuant to 11 U.S.C. § 707 on December 18, 2012.[67] The Motion to Dismiss was filed by

---

[59] See 9-25-10 Complaint, Exhibit O.

[60] Id.

[61] Id.

[62] Id.

[63] See Affidavit of Service, attached hereto as **Exhibit P**.

[64] See Bankruptcy No. 12-22209 ("BK 22209") Dkt. No. 1.

[65] See BK 22209, Dkt. No. 4.

[66] See BK 22209, Dkt. No. 11.

[67] See BK 22209, Dkt. Nos. 14-16.

MAC:06277-005 2026578_2 4/11/2014 11:39 AM

Zachariah Larson, who at the time was an attorney at the MAC law firm.[68]  Retained by Gayler, Spencer Judd filed an Opposition to the Motion to Dismiss on January 9, 2013.[69]

**b.    Trustee Rosenberg Requests Time to Get Up to Speed.**

The hearing on the Motion to Dismiss was held on January 23, 2013 in front of the Honorable Judge Nakagawa.[70]  Mr. Larson, Mr. Kim and Mr. Judd all appeared at the hearing.[71] At the hearing, Judge Nakagawa asked Mr. Kim why Trustee Rosenberg was not taking a position on the dismissal issue to which Mr. Kim responded as follows:

> MR. KIM:    Because **he hasn't had time to wrap his head around the case, yet**, your Honor.[72]

Judge Nakagawa then informed counsel that he could either deny the Motion to Dismiss without prejudice or continue the matter for a sufficient amount of time for Trustee Rosenberg to get up to speed.[73]  Mr. Kim responded that Trustee Rosenberg "would need at least 60 days" but "[i]t may take a little longer."[74]  Based on Mr. Kim's representation, the Court set a status hearing for April 3, 2013.[75]  To date, Trustee Rosenberg has not taken a position on the Motion to Dismiss.

**3.    The Angelus IV Lawsuit (Case No. A616929).**

On May 18, 2010, the Angelus IV Lawsuit was commenced against Gayler, Barrett, the Alper Defendants[76] and others.[77]  Although Gayler was named as a defendant, he was never

---

[68] See BK 22209, Dkt. Nos. 14-16.

[69] See BK 22209, Dkt. No. 20.

[70] See BK 22209, Dkt. No. 26.

[71] Id.

[72] See BK 22209, Dkt. No. 27, Transcript of Proceedings Held on January 12, 2013 attached hereto as **Exhibit Q** at 7:25; 8:1-3 (emphasis added).

[73] Id. at 12:16-19.

[74] See BK 22209, Dkt. No. 27, Exhibit X at 13:2-4, 15:23-25.

[75] Id. at 16:20-25; see also BK 22209, Dkt. No. 26.

[76] The "Alper Defendants" refers to Eliot A. Alper, Trustee of the Eliot A. Alper Revocable Trust dated March 22, 1999, Tina A. Alper, Trustee of the Tina A. Alper Revocable Trust dated June 22, 1999 and Livia M. Lindquist.

MARQUIS AURBACH COFFING
10001 Park Run Drive
Las Vegas, Nevada 89145
(702) 382-0711 FAX: (702) 382-5816

MAC:06277-005 2026578_2 4/11/2014 11:39 AM

1    served with a Summons or Complaint given his pending bankruptcy.[78]    Many of the Objecting

2    Creditors (the "929 Plaintiffs") initiated the Angelus IV Lawsuit in order to save their investment

3    property from being foreclosed upon by the Alper Defendants and to hold Barrett, his wife and

4    his Trust liable for their wrongful conduct.[79]

### a.    Summary of Facts.

As Managing Member of Ch. Angelus IV, LLC ("Angelus IV"), Gayler entered into a $550,000 loan with the Alper Defendants secured with the 2.5 acres owned by Angelus IV (the "$550k Alper Loan").[80]    The $550k Alper Loan was accomplished by Gayler in direct violation of the governing operating agreement; specifically, Gayler failed to first obtain the 51% written consent of the Angelus IV Non-Managing Members.[81]    The $550k Alper Loan was a product of a massive conspiracy engaged in by Gayler and Barrett.

When the $550k Alper Loan came due, the Alper Defendants sought to foreclose on the Angelus IV property.    As part of the relief sought, the 929 Plaintiffs asserted claims against the Alper Defendants for quiet title and declaratory relief.[82]

### b.    MAC Reminds Trustee Rosenberg that the Angelus IV Trial is Set to Commence.

On February 13, 2013, Ms. Wakayama sent Mr. Kim a letter reminding Trustee Rosenberg of the upcoming trial in the Angelus IV Lawsuit.[83]    Reiterating everything that had transpired in relation to the Angelus I/Angelus II Lawsuit including the $413,322.25 sitting in the District Court's registry, Ms. Wakayama reminded Mr. Kim that "[i]f Judge Denton rules in our clients' favor, we may be facing a similar result that occurred in the Angelus I/Angelus II

---

[77] See Complaint filed May 18, 2010 ("5-18-10 Complaint"), attached hereto as **Exhibit R.**

[78] Id.

[79] Id.

[80] Id.

[81] Id.

[82] Id.

[83] See February 13, 2013 Letter to Howard Kim, Esq. ("2-13-13 Letter"), attached hereto as **Exhibit S.**

MARQUIS AURBACH COFFING
10001 Park Run Drive
Las Vegas, Nevada 89145
(702) 382-0711 FAX: (702) 382-5816

MAC:06277-005 2026578_2 4/11/2014 11:39 AM

Litigation."[84]  Ms. Wakayama further advised Mr. Kim that "[i]f the jury finds in our clients' favor, findings of fact may be entered that are adverse to Mr. Gayler."[85]

In an email dated March 2, 2013, Mr. Kim responded and requested Ms. Wakayama to provide a copy of all substantive pleadings, Angelus IV's Operating Agreement and any deposition transcripts and videos associated with the Angelus IV Lawsuit.[86]  Copies of all requested documents and videos were delivered to Mr. Kim on April 24, 2013.[87]  Throughout the entire 13 day trial, however, Trustee Rosenberg and Mr. Kim were nowhere to be found and never made an appearance on behalf of Gayler's bankruptcy estate.

**c.**    **The Barrett Settlement, Bench Trial and Court's Decision.**

Prior to trial, the 929 Plaintiffs reached a settlement with Barrett; consequently, the claims against the Alper Defendants were all that remained to be litigated.[88]  A non-jury trial was held on various days between March 21 and April, 11, 2013.[89]  On June 20, 2013, the District Court entered its Findings of Fact, Conclusions of Law, granting the 929 Plaintiffs' claims for quiet title and declaratory relief in part subject to a $161,324.74 equitable lien in favor of the Alper Defendants.[90]  In reaching its decision, the District Court specifically found that Gayler **never** contributed any amounts to Angelus IV, including Section 3.05 of the Operating Agreement requiring Gayler to make a capital contribution of $71,250 in exchange for a 15%

---

[84] See 2-13-13 Letter, Exhibit S.

[85] Id.

[86] See March 2, 2013 Email to Howard Kim, Esq., attached hereto as **Exhibit T**.

[87] See Receipt of Copy dated April 24, 2013, attached hereto as **Exhibit U**.

[88] See Stipulation and Order for Dismissal with Prejudice as to Martin G. Barrett and Robin D. Barrett and Martin G. Barrett and Robin D. Barrett as Co-Trustees of The Old Landing Trust, Only filed April 2, 2013, on file in Eighth Judicial District Court, Clark County, Nevada Case No. A-10-616929-B.

[89] See Findings of Fact, Conclusions of Law filed June 20, 2013 ("6-20-13 Findings"), attached as **Exhibit V**.

[90] Id.

MARQUIS AURBACH COFFING
10001 Park Run Drive
Las Vegas, Nevada 89145
(702) 382-0711 FAX: (702) 382-5816

MAC:06277-005 2026578_2 4/11/2014 11:39 AM

membership interest.[91]   On Schedule B, however, Gayler claims to own a 15% interest in Angelus IV.[92]

The parties subsequently reached a settlement where Angelus IV would pay a certain sum to rid its property of any interest claimed by the Alper Defendants and their successor-in-interest, First American Title Co.[93]   With full notice of the settlement, neither Gayler nor Trustee Rosenberg contributed any amount towards the settlement payment or provided any proof that Gayler actually owned a 15% membership interest.

### d.    The Removal of Gayler as Manager.

Upon saving the Angelus IV investment, a majority of the Non-Managing Members removed Gayler as manager for cause in accordance with the governing operating agreement.[94] In his stead, Barry Moore, through his entity, was elected as the new Managing Member.[95]

### 4.    The Dumol Lawsuit.

Pursuant to the Operating Agreement for Dumol, LLC ("Dumol"), the majority of the Non-Managing Members were vested with the power to remove and appoint any manager and approve or disapprove any indebtedness, encumbrance or sale of Dumol's real property.[96] Disregarding the Non-Managing Members' rights, Gayler – while his bankruptcy proceedings were pending – violated the Operating Agreement by continuing to act as Manager for Dumol despite his removal, entering into an unauthorized $30,000 loan and improperly listing the Dumol property for sale.[97]   On December 11, 2013, Dumol and some of its members filed a

[91] See 6-20-13 Findings at p. 15, ¶ 7 and p. 17, ¶ 83, Exhibit V; see also Operating Agreement of Ch. Angelus VI, LLC at Section 3.05, attached hereto as **Exhibit W**.

[92] See Dkt. No. 105, Schedule B at p. 5.

[93] See Written Consent and Agreement to Resolution by a Majority of the Non-Managing Membership of Ch. Angelus IV, LLC ("Ch. Angelus IV Resolution"), attached hereto as **Exhibit X**.

[94] Id.

[95] Id.

[96] See Operating Agreement of Dumol, LLC ("Dumol OA") at Sections 6.01(d), 7.01(f), 8.01(f), (g), (h) and (i), attached hereto as **Exhibit Y**.

[97] See Complaint filed December 11, 2013 ("12-11-13 Complaint"), attached hereto as **Exhibit Z**.

MAC:06277-005 2026578_2 4/11/2014 11:39 AM

MARQUIS AURBACH COFFING
10001 Park Run Drive
Las Vegas, Nevada 89145
(702) 382-0711 FAX: (702) 382-5816

Complaint against Gayler, Apan Wine and Lewis Sonerholm, which primarily sought to invalidate the unauthorized $30,000 loan.[98]  Gayler and Apan Wine have yet to be served with the Complaint and Summons.

### a.    The Removal of Gayler as Manager.

When Dumol was formed in 2006, Gayler as Manager of Apan Wine, LLC was designated as the Managing Member.[99]  As of January 2013, over 78% of the Non-Managing Members of Dumol removed Apan Wine as the Manager and appointed Mark A. Schnippel as President of Tioga, Inc. to serve as Manager.[100]  Trustee Rosenberg was notified in this change of management; however, took the position that he was the Manager and not Mr. Schnippel.[101]  Yet, Trustee Rosenberg advocates for approval of the Settlement where Gayler signs as the Managing Member of Dumol.[102]

### b.    The Delinquent Property Taxes and Unauthorized Loan.

Section 8 of the Settlement provides that as of May 13, 2013, Dumol is in default on its tax payments in the amount of $11,380.96.[103]  Trustee Rosenberg was therefore aware of the delinquent tax issues.[104]

Without the knowledge or requisite consent of the Non-Managing Members and post-bankruptcy, Gayler borrowed $30,000 from Lewis Sonerholm secured by the Dumol Property in or about June 2013.[105]  Gayler executed the Deed of Trust as the Manager of Dumol despite his

---

[98] See 12-11-13 Complaint, Exhibit Z.

[99] See Dumol OA at Section 2.02, Exhibit Y.

[100] See Declaration of Mark Schnippel in Support of Opposition to Amended Motion to Approve Settlement Agreement filed concurrently herewith ("Schnippel Declaration") at ¶ 4 and Exhibit B thereto.

[101] Id. at ¶ 5.

[102] See Amended Motion to Approve Settlement Agreement ("Motion"), Dkt. No. 516, Exhibit 1 at p. 12.

[103] See Motion, Dkt. No. 516, Exhibit 1 at Section 8.

[104] Id.

[105] See Schnippel Declaration at ¶ 6 and Exhibit C thereto.

MAC:06277-005 2026578_2 4/11/2014 11:39 AM

MARQUIS AURBACH COFFING
10001 Park Run Drive
Las Vegas, Nevada 89145
(702) 382-0711 FAX: (702) 382-5816

removal over five months earlier.[106]  It was later discovered that the delinquent taxes were paid off the same month as the unauthorized $30,000 loan through an escrow opened at Chicago Title. The Objecting Creditors that are Non-Managing Members in Dumol do not know what happened to the money that remained after the $11,380.96 in back taxes were paid.[107]

### c.    The Unauthorized Listing to Sell the Dumol Property.

Without the knowledge or requisite consent of the Non-Managing Members, Gayler listed the Dumol Property for sale for $800,000.[108]  According to Section 3.05, a 10% brokerage fee of the total sale price will be paid to "the Managing Member or in the alternative ICON Real Estate Companies, Inc.," which Gayler is the principal.[109]

Upon discovering the unauthorized listing, Mr. Schnippel in an email dated May 10, 2013, asked Trustee Rosenberg whether he listed the Dumol Property for sale.[110]  On May 13, 2013, Mr. Schnippel reminded Mr. Kim that the Dumol Property was still listed.[111]  The next day on May 14, 2013, Mr. Schnippel provided Mr. Kim with the recent comparable values in relation to the Dumol Property and reminded Mr. Kim that if Trustee Rosenberg was "going to list the property you will need a majority vote of the partners even though the Trustee is the Manager."[112]  Trustee Rosenberg never took any action to rectify the improper listing of Dumol's property.

---

[106] See Schnippel Declaration at ¶ 6 and Exhibit C thereto.

[107] See 12-11-13 Complaint, Exhibit Z.

[108] See Schnippel Declaration at ¶ 7 and Exhibit D thereto.

[109] See Dumol OA, Exhibit Y at Section 3.05.

[110] See Schnippel Declaration at ¶ 8 and Exhibit E thereto.

[111] See Schnippel Declaration at ¶ 8 and Exhibit F thereto.

[112] See Schnippel Declaration at ¶ 8 and Exhibit G thereto.

MAC:06277-005 2026578_2 4/11/2014 11:39 AM

MARQUIS AURBACH COFFING
10001 Park Run Drive
Las Vegas, Nevada 89145
(702) 382-0711 FAX: (702) 382-5816

MARQUIS AURBACH COFFING
10001 Park Run Drive
Las Vegas, Nevada 89145
(702) 382-0711 FAX: (702) 382-5816

**d.    The Settlement and Gayler's Claimed Membership Interest.**

As a result of the litigation, Dumol subsequently entered into a settlement with Sonerholm.[113]  Dumol agreed to pay Sonerholm $11,566.85 in exchange for ridding its property of any interest claimed by Sonerholm.[114]  A majority of the Dumol members resolved that the settlement payment would be paid by the members on a pro rata basis.[115]

In a letter dated January 23, 2014, Dumol's counsel requested Trustee Rosenberg to provide documentation confirming that Gayler actually owned the claimed 11.25% in Dumol.[116]  Specifically, Dumol's counsel highlighted the provisions of the Operating Agreement requiring that Gayler was to contribute no less than $200,000 in exchange for a membership interest in Dumol.  Trustee Rosenberg never provided any of the requested documentation.  In fact, Dumol's 2006 tax return confirmed that Gayler failed to contribute any capital towards the purchase of the property.[117]  Without any evidence showing that Gayler properly acquired any interest in Dumol, Trustee Rosenberg continues to represent to this Court that Gayler owns 11.25% interest.[118]

**C.    THE OBJECTING CREDITORS' ADVERSARY PROCEEDINGS.**

**1.    The Diamante Rose Adversary Proceeding.**

On January 28, 2011, an Adversary Complaint was filed in Gayler's bankruptcy proceedings (the "Diamante Rose Adversary").[119]  The purpose of the Diamante Rose Adversary was to obtain a nondischargeable judgment against Gayler under 11 U.S.C. § 523(a)(2) and 11

---

[113] See Written Consent and Agreement to Resolution by A Majority of the Non-Managing Membership of Dumol, LLC, attached hereto as **Exhibit AA**.

[114] Id.

[115] Id.

[116] See Letter dated January 23, 2014, attached hereto as **Exhibit BB**.

[117] See Schnippel Declaration at ¶ 9 and Exhibit H thereto.

[118] See Motion, Dkt. No. 516, Exhibit 1 at Section 8

[119] See Adv. Pro. 01027, Dkt No. 1

MAC:06277-005 2026578_2 4/11/2014 11:39 AM

U.S.C. § 523(a)(4) based on Gayler's wrongful conduct as Managing Member of Diamante Rose, LLC ("Diamante Rose").

### a.    The Bench Trial and Nondischargeable Judgments.

On August 20, 21 and 22, 2012, the Honorable Judge Thurman presided over the Diamante Rose Adversary trial.    On October 10, 2012, Judge Thurman awarded a nondischargeable Judgment in the amount of $500,000 against Gayler under 11 U.S.C. § 523(a)(2)(A) for actual fraud.[120]    On March 5, 2013, Judge Thurman entered another nondischargeable Judgment in the amount of $120,828.05 against Gayler awarding the Diamante Rose plaintiffs all reasonable attorney fees and costs.[121]

### b.    Gayler's Criminal Indictment.

On March 5, 2013, the Nevada Attorney General filed a Criminal Indictment centered on Gayler's fraudulent management of Diamante Rose.[122]    As accused by the Grand Jury of Clark County, the Attorney General charged Gayler with seven counts of Theft; three counts of Securities Fraud; and two counts of Securities Fraud Against a Person 60 Years of Age or Older.[123]

### 2.    The Moore Adversary Proceeding.

On March 15, 2011, Barry Moore commenced an adversary proceeding to obtain a nondischargeable judgment against Gayler for actual fraud partly based on Gayler's mismanagement of Angelus I and Angelus II (the "Moore Adversary").[124]    The Adversary Complaint contained the identical allegations against Gayler as litigated in the Angelus I/Angelus II Lawsuit.[125]

---

[120] See Adv. Pro. 01027, Dkt. No. 155.

[121] See Adv. Pro. 01027, Dkt. No. 185

[122] See Indictment filed March 5, 2013, attached hereto as **Exhibit CC.**

[123] Id.

[124] See Adversary Proceeding 11-01088 ("Adv. Pro. 01088"), Dkt. No. 1.

[125] Id.

MAC:06277-005 2026578_2 4/11/2014 11:39 AM

MARQUIS AURBACH COFFING
10001 Park Run Drive
Las Vegas, Nevada 89145
(702) 382-0711 FAX: (702) 382-5816

Pursuant to a settlement reached on September 11, 2012, Gayler confessed to a judgment under 11 U.S.C. 523(a)(2)(A) for actual fraud in favor of Mr. Moore in the amount of $750,000.[126]  Gayler specifically confessed to fraud in relation to his conduct in obtaining the unauthorized $2MM Alper Loan, which resulted in the $1.4MM settlement with Alper.  On or about April 11, 2013, the Confession of Judgment became effective.

**D.     THE TRUSTEE'S ADVERSARY PROCEEDINGS AGAINST GAYLER.**

On December 23, 2011, the Former Trustee commenced an adversary proceeding against Gayler for, among other things, fraudulent transfers pursuant to 11 U.S.C. § 548 and NRS 112.180 and alter ego claims (the "Adversary Proceeding").[127]  In March 2012, the Former Trustee requested leave to file a First Amended Complaint, which was granted by the Court on May 9, 2012.[128]  The First Amended Complaint was filed on May 10, 2012.[129]

The entire purpose of the Trustee's Adversary Proceeding was to recover assets for the Bankruptcy Estate as a result of fraudulent transfers by Gayler and to preserve any rights the Estate *may* have in Gayler's claimed membership interests.[130]  As part of the First Amended Complaint, the Former Trustee sought to also revoke Gayler's discharge under 11 U.S.C. § 727(a)(6)(A) based on Gayler causing in excess of $10,000 to be transferred, conveyed or concealed in direct violation of the Interim 303(f) Order.[131]

**1.     Gayler's Interests in Angelus I, Angelus II and the Angelus II Entities are Not Automatically Property of the Bankruptcy Estate.**

On October 22, 2012, the Former Trustee moved for partial summary judgment that Gayler's claimed membership interests listed on Schedule B were property of the Bankruptcy

---

[126] See Adv. Pro. 01088, Dkt. No. 56.

[127] See Dkt. No. 383; see also Adversary Proceeding 11-01410 ("Adv. Pro. 01410") Dkt. 1.

[128] See Adv. Pro. 01410, Dkt. Nos. 63 and 77.

[129] Id. at Dkt. No. 80.

[130] See Dkt. No. 546 at ¶¶ 2, 4 and 7.

[131] See Dkt. No. 446 at Thirty-First Claim for Relief.

MARQUIS AURBACH COFFING
10001 Park Run Drive
Las Vegas, Nevada 89145
(702) 382-0711 FAX: (702) 382-5816

MAC:06277-005 2026578_2 4/11/2014 11:39 AM

1    Estate ("SJ Motion").[132]    Of the over 60 entities, Gayler specifically claimed an interest in

2    Angelus I, Angelus II and the Angelus II Entities.[133]    In opposition, Gayler argued that genuine

3    issues of material fact exist as to Gayler's interests in Angelus I, Angelus II and the Angelus II

4    Entities.[134]    Gayler specifically advised the Court that the Motion to Lift the Stay (filed by the

5    777 Plaintiffs) "exposes the genuine dispute over ownership of the membership interests."[135]

6    Gayler further acknowledged that whether the Bankruptcy Estate has any interest in the assets

7    Gayler listed on Schedule B is "hotly contested."[136]

8         Clarifying the scope of the SJ Motion, the Former Trustee elucidated its position that

9    Gayler's claimed interests in Angelus I, Angelus II and the Angelus II Entities should be litigated

10    *by* the 777 Plaintiffs.[137]    Specifically, if a state court finds that Gayler did not own any interest in

11    Angelus I, Angelus II and the Angelus II Entities *pre*-bankruptcy, the Former Trustee agreed to

12    be bound by that ruling.[138]    On the other hand, if a state court "rules that the assets being sought

13    by Mr. Hayes' clients [the Creditors] were not obtained by Mr. Gayler's fraud, then the Trustee

14    will claim those assets as part of the bankruptcy estate."[139]

15         In an Order entered on December 4, 2012, the Court denied partial summary judgment in

16    relation to Gayler's claimed interests in Angelus I, Angelus II and the Angelus II Entities.[140]    The

---

[132] See Adv. Pro. 01410, Dkt. No. 219.

[133] See Dkt. No. 105, Schedule B.

[134] See Adv. Pro. 01410, Dkt. No. 238.

[135] See Adv. Pro. 01410, Dkt. No. 238 at pp. 8-10.

[136] See Adv. Pro. 01410, Dkt. No. 238 at p. 10.

[137] See Adv. Pro. 01410, Dkt. No. 253, p. 7.

[138] Id.

[139] Id.

[140] See Adv. Pro. 01410, Dkt. No. 272.

MARQUIS AURBACH COFFING
10001 Park Run Drive
Las Vegas, Nevada 89145
(702) 382-0711 FAX: (702) 382-5816

MAC:06277-005 2026578_2 4/11/2014 11:39 AM

Court thus acknowledged that questions remained regarding Gayler's interest in the numerous entities listed on Schedule B of the Amended Petition.[141]

### 2. The Pending Dispositive Motions filed by MAC.

#### a. Gayler's Fraudulent Transfers.

On February 14, 2013, Trustee Rosenberg, through MAC, moved for partial summary judgment pursuant to 11 U.S.C. § 541 and 11 U.S.C. § 548 (the "Fraudulent Transfer SJ Motion"). Pursuant to 11 U.S.C. § 548(a)(1)(A), MAC requested the Court to set aside approximately 43 transfers of valuable assets made by Gayler as these transfers were fraudulent.[142] The Trustee specifically argued that these fraudulent transfers were accomplished by Gayler with the intent to "defraud his creditors."[143] In addition, the Trustee pointed out to the Court the severity of Gayler backdating certain transfers in order "to circumvent both state and bankruptcy time limitations on fraudulent transfers."[144]

#### b. 23 Golden Sunray – Gayler's Alter Ego.

On February 26, 2013, Trustee Rosenberg, through MAC, moved for partial summary judgment as to the Eighteenth claim for relief that 23 Golden Sunray, LLC ("23 Golden Sunray") is the alter ego of Gayler (the "Golden Sunray SJ Motion").[145] As support, the Trustee alleged that Gayler was the sole owner of 23 Golden Sunray, repeatedly transferred its assets to himself or to his other entities and treated 23 Golden Sunray's primary assets as his own.[146] Given Gayler's complete control over 23 Golden Sunray, it was further alleged that Gayler along with Loerwald and Barrett successfully transferred over $6.2 Million outside of Gayler's

---

[141] See Adv. Pro. 01410, Dkt. No. 272.

[142] See Dkt. No. 317 at pp. 11-25.

[143] Id. at 16:8-18.

[144] Id. at 23:12-15.

[145] See Adv. Pro. 01410, Dkt. No. 338.

[146] Id. at pp. 10-13.

MAC:06277-005 2026578_2 4/11/2014 11:39 AM

MARQUIS AURBACH COFFING
10001 Park Run Drive
Las Vegas, Nevada 89145
(702) 382-0711 FAX: (702) 382-5816

bankruptcy.[147]  In total, Loerwald collected $2,595,796.21 and Barrett collected $2,726,632.71 from the sale proceeds of 23 Golden Sunray.[148]

### 3.    MAC's Voluntary Withdrawal as Special Counsel.

On April 11, 2013, MAC requested the Court to allow MAC to withdraw as Special Counsel.[149]  No objections to MAC's withdrawal were filed.  In an Order entered on June 10, 2013, the Court granted MAC's request and; since that time, Kim remained the only counsel of record for Trustee Rosenberg.[150]

### 4.    The Stipulation to Stay the Adversary Proceeding.

In March 2013, Trustee Rosenberg entered into a stipulation with Gayler, Barrett and Loerwald to stay the entire adversary proceeding based on Trustee Rosenberg's new appointment and "to allow the parties to entertain settlement negotiations."[151]  The Court entered an Order to stay the proceedings on March 13, 2013.[152]

At the time Trustee Rosenberg entered into this Stipulation, two motions for summary judgment had already been prepared and filed by MAC and were pending before this Court.[153] Instead of seeing these motions through, Trustee Rosenberg stayed the litigation and Gayler has not opposed either dispositive request.

### E.    THE CORRUPT BARGAIN.

In or about April 2013 and without MAC's involvement, Trustee Rosenberg entered into settlement negotiations with Gayler, Gayler's attorney (Sylvester), Barrett and Loerwald.[154]

---

[147] See Adv. Pro. 01410, Dkt. No. 338 at 13:2-5.

[148] Id.

[149] See Dkt. No. 507.

[150] See Dkt. No. 513.

[151] See Adv. Pro. 01410, Dkt. No. 347.

[152] See Adv. Pro. 01410, Dkt. No. 348.

[153] See Adv. Pro. 01410, Dkt. No. 338; see also Adv. Pro. 01410, Dkt. No. 317.

[154] See Dkt. No. 545 at ¶ 12.

MAC:06277-005 2026578_2 4/11/2014 11:39 AM

MARQUIS AURBACH COFFING
10001 Park Run Drive
Las Vegas, Nevada 89145
(702) 382-0711 FAX: (702) 382-5816

Trustee Rosenberg and his counsel never once included any of the Objecting Creditors in settlement discussions.[155] The Settlement Agreement was signed by Loerwald, Barrett, Sylvester and Gayler, individually and on behalf of 120 entities.[156] As support for the Settlement, Trustee Rosenberg represented to this Court, under penalties of perjury that he still possessed **no** knowledge of these matters and "it would [still] take time and money for my new counsel to come up to speed with the complexities of this case."[157]

As part of the settlement, Gayler agreed to transfer all of his claimed managing and non-managing interests including any distribution from each of the entities listed on Schedule B to the Bankruptcy Estate.[158] Moreover, Trustee Rosenberg agreed to distribute to Gayler $100,000, which would be paid to Sylvester.[159] Sylvester would also be assigned Gayler's claimed interests in Dumol, including any sale proceeds.[160] Trustee Rosenberg agreed to this premature transfer in spite of the fact that Gayler may have never owned any interest in Angelus I, the Angelus II Entities, Angelus IV and Dumol *pre*-bankruptcy. Not to mention, Trustee Rosenberg was fully aware that Gayler had been removed as Manager for all of these entities.

In addition to the premature transfers, Trustee Rosenberg agreed that Gayler shall retain ownership and possession of two homes located in Utah and any previously paid commissions to Gayler or his specific entities.[161] For any future commissions and development fees that Gayler may be entitled to receive pursuant to real estate contracts and/or operating agreements, Trustee Rosenberg agreed to an equal split, with Gayler receiving 50% and Trustee Rosenberg receiving

---

[155] See Dkt. No. 545 at ¶ 12.

[156] See Motion, Dkt. No. 516, Exhibit 1.

[157] See Dkt. No. 517 at ¶ 13.

[158] See Motion, Dkt. No. 516, Exhibit 1 at Section 3.

[159] Id. at Section 5(a).

[160] See Motion, Dkt. No. 516, Exhibit 1 at Section 8.

[161] Id. at Section 7(a).

MAC:06277-005 2026578_2 4/11/2014 11:39 AM

MARQUIS AURBACH COFFING
10001 Park Run Drive
Las Vegas, Nevada 89145
(702) 382-0711 FAX: (702) 382-5816

50%.[162]    With full knowledge that Gayler has been indicted for fraud, Trustee Rosenberg additionally agreed to grant Gayler a complete discharge and any claims asserted in the Trustee's Adversary Proceeding against Gayler, Barrett and Loerwald would be forever dismissed.[163]

### 1.    The $413,322.25 Held in the Court's Registry for the Benefit of Angelus I and Angelus II.

Within his Declaration, Trustee Rosenberg represented to the Court facts related to the Angelus I/Angelus II Lawsuit.[164]    Ignoring the pending Motion to Lift Stay filed in November 2012, Trustee Rosenberg represented that "[n]o parties to the action moved the Court to lift the automatic stay to proceed in this state court action against Gayler."[165]    Focused only on the money sitting in the District Court's registry, Trustee Rosenberg further represented to the Court that "this settlement will assist me in recovering the $413,322.25 currently held by the Court in Case No. A-09-596777-C on behalf Angelus and Angelus II."[166]    Trustee Rosenberg has failed to provide this Court with any documentation confirming that Gayler complied with the governing Operating Agreements and actually owned an interest in Angelus I and the Angelus II entities *pre*-bankruptcy.

### 2.    Gayler's Lack of Authority to Enter Into a Settlement on Behalf of Angelus I, Angelus II and the Angelus II Entities.

At the time Trustee Rosenberg first moved to approve the Settlement, the Motion to Dismiss the unauthorized Angelus II Bankruptcy filed by Gayler had been pending for approximately seven months.[167]    Since December 2012, Trustee Rosenberg knew that the Motion to Dismiss was based on Gayler's lack of authority on behalf of Angelus II and the Angelus II

---

[162] See Motion, Dkt. No. 516, Exhibit 1 at Section 6.

[163] Id. at Sections 9 & 10.

[164] See Dkt. No. 517.

[165] Id. at ¶ 8.

[166] Id. at ¶ 17.

[167] See BK 22209, Dkt. No. 14.

MARQUIS AURBACH COFFING
10001 Park Run Drive
Las Vegas, Nevada 89145
(702) 382-0711 FAX: (702) 382-5816

MAC:06277-005 2026578_2 4/11/2014 11:39 AM

Entities.[168]  Despite his knowledge, Trustee Rosenberg endorsed the Settlement where Gayler signed as the "Manager/Member" on behalf of these very entities.[169]  At the July 10, 2013 status hearing on the Motion to Dismiss, Trustee Rosenberg, through Kim, represented to the Court that "[i]t doesn't really matter to us whether or not Mr. Gayler had or did not have authority to file a bankruptcy case from this trustee's perspective."[170]

### 3.    Gayler's Discharge.

According to Section 10 of the Settlement, Gayler shall receive a full discharge from bankruptcy "in conformance with the appropriate Official Form pursuant to F.R.B.P. 4004."[171] Trustee Rosenberg agreed to Gayler's discharge even though he testified under oath that "I readily acknowledge [Gayler] purposefully acted to fraudulently transfer his assets out of the Estate."[172]

## III.    LEGAL ARGUMENT.

Trustee Rosenberg's settlement must be denied.  Fed. R. Bankr. P. ("FRBP") 9019(a) authorizes the bankruptcy court to approve a settlement on motion by the trustee and after notice and a hearing.  In deciding whether to approve a proposed settlement, the bankruptcy court must make an informed decision.  In re Endoscopy Ctr. of S. Nev., LLC, 451 B.R. 527, 536 (D. Nev. 2011).  The trustee's business judgment is **not** alone determinative of the issue of court approval. Id.  "[T]he court is not permitted to act as a mere rubber stamp but must make an independent determination that the compromise is fair and equitable." Id. (internal quotations omitted).  "The proponent of the settlement must persuade the court that the settlement is in the best interests of the estate."  Id.  As the trustee, Trustee Rosenberg must demonstrate more than a "mere good

---

[168] See BK 22209, Dkt. No. 27.

[169] Id.

[170] See BK 22209, Dkt. No. 52 at 4:7-9.

[171] See Motion, Dkt. No. 516, Exhibit 1 at Section 10.

[172] See Dkt. No. 562, ¶ 14.

MAC:06277-005 2026578_2 4/11/2014 11:39 AM

MARQUIS AURBACH COFFING

10001 Park Run Drive
Las Vegas, Nevada 89145
(702) 382-0711 FAX: (702) 382-5816

faith negotiation of the settlement." Id.  Trustee Rosenberg must show that he made an "informed judgment after diligent investigation." Id.

In advocating for approval of the Settlement, Trustee Rosenberg has failed to meet his burden of persuasion that the settlement is fair, equitable and in the best interests of the estate. Of particular importance, the Settlement is not the product of an informed judgment after a diligent investigation as Trustee Rosenberg admits that he is still not up to speed on this case.[173] On its face, the Settlement only serves to benefit Gayler, Sylvester, Barrett, Loerwald, Trustee Rosenberg and his counsel, Kim.  None of the creditors stand to benefit.  Specifically, the Settlement is designed to prematurely transfer interests in Angelus I, Angelus II, and the Angelus II Entities in order to seize the $413,322.25 sitting in the District Court's registry and prematurely transfer interests in and rights to Angelus IV and Dumol to obtain future commissions and sale proceeds – all without any proof that Gayler actually owned any interest *pre*-bankruptcy.  Moreover, the settlement allows Trustee Rosenberg to take control of LLCs when the investors have taken affirmative steps to remove Gayler as Manager and elect an alternate fiduciary.  Even worse, the settlement sanctions Gayler's unauthorized conduct, gives Gayler, Loerwald and Barrett a free walk, and lines the pockets of an indicted fraud (Gayler), his attorney (Sylvester), Trustee Rosenberg and Kim.  An independent analysis reveals that the Settlement is anything but fair and equitable for the estate and should thus be denied because: (A) the Settlement fails to satisfy the *A&C* factors; and (B) allowing Gayler a discharge is contrary to public policy.

### A.    THE SETTLEMENT FAILS TO SATISFY THE A&C FACTORS AND MUST BE DENIED.

In *A&C Properties*, the circuit panel articulated a four-part test to determine the fairness, reasonableness and adequacy of a proposed settlement agreement.  See In re A&C Properties, 784 F.2d 1377, 1383 (9th Cir. 1986).  When presented with a settlement, the court is directed to consider: (1) the probability of success in litigation of the dispute; (2) the difficulties to be

---

[173] See Amended Declaration of David A. Rosenberg in Support of Motion to Approve Settlement Agreement ("Trustee Rosenberg Declaration") (Dkt. No. 517) at ¶ 13.

MAC:06277-005 2026578_2 4/11/2014 11:39 AM

MARQUIS AURBACH COFFING
10001 Park Run Drive
Las Vegas, Nevada 89145
(702) 382-0711 FAX: (702) 382-5816

MARQUIS AURBACH COFFING
10001 Park Run Drive
Las Vegas, Nevada 89145
(702) 382-0711 FAX: (702) 382-5816

encountered, if any, in the collection of an award; (3) the complexity, expense, inconvenience and delay of litigation; and (4) the interest of creditors in the case, giving deference to any reasonable views expressed. Id. at 1381. In canvassing the issues, the court's function is "to examine the proposed settlement to determine if it falls below the lowest point in the range of reasonableness." In re Cmty. Bankcorp, 2013 WL 4441925 *15 (B.A.P. 9th Cir. 2013). Trustees, however, must do more than parrot the standards or announce that the A&C factors are satisfied. See Endoscopy, 451 B.R. at 536. To meet their burden of persuasion, trustees "must present a cogent and detailed factual explanation, discussing how the factors apply to the specific litigation and proposed settlement." Id. (citing to A&C Properties, 784 F.2d at 1383). To tolerate less would make the Court into a rubber stamp, allowing the trustee's evaluation to be determinative. Id. An approval of a compromise, absent a sufficient factual foundation which establishes that it is fair and equitable, inherently constitutes an abuse of discretion. A&C Properties, 784 F.2d at 1383.

Failing to meet his fact-intensive burden, Trustee Rosenberg offers only generalities to support approval of the Settlement. In hopes that it will carry the day, Trustee Rosenberg specifically relies on his business judgment that "the settlement offer is fair and reasonable, and is in the best interest of estate (sic) and creditors."[174] Without any detailed factual explanation, Trustee Rosenberg has merely parroted the standard, which is exactly what the law in Nevada forbids trustees from doing. See Endoscopy, 451 B.R. at 536. Indeed, Trustee Rosenberg admits that he is still not up to speed on this case to provide the Court with an informed judgment.[175] Application of the A&C factors shows that the Settlement falls well below the range of reasonableness, is not in the best interests of the estate and creditors and should thus be denied.

### 1.    Probability of Success in the Litigation.

It is difficult to evaluate the probability of success in litigating the claims when a trustee has not provided a substantive and specific analysis of the risk factors in pursuing the claims

---

[174] See Motion, Dkt. No. 516 at 6-9.

[175] See Trustee Rosenberg Declaration, Dkt. No. 517 at ¶ 3.

MAC:06277-005 2026578_2 4/11/2014 11:39 AM

MARQUIS AURBACH COFFING
10001 Park Run Drive
Las Vegas, Nevada 89145
(702) 382-0711 FAX: (702) 382-5816

other than it will save the estate money and be in the best interest of the creditors. <u>See</u> <u>In re Hyloft, Inc.</u>, 451 B.R. 104, 115 (Bankr. D. Nev. 2011). If a trustee is basing his evaluation of the claims on the advice of counsel, then counsel's explanation of the litigation risks associated with the claims must be provided. <u>Id.</u> at 116.

Trustee Rosenberg and his counsel fail to provide **any** analysis of the risk factors in pursuing litigation versus a settlement. Inconsistent with *Hyloft*, the primary focus is instead improperly centered on saving costs for the estate. Trustee Rosenberg specifically believes that the Settlement is in the best interests of the estate because it would be costly to litigate the claims asserted by the Former Trustee in the pending Adversary Proceeding.[176] In spite of his appointment as trustee over ten months ago, Trustee Rosenberg further states:

> This is particularly true as the **Trustee <u>recently</u> had to obtain new counsel and it would take time and money for Trustee's new counsel to come up to speed with the complexities of the case.**

Effective February 4, 2013, however, Kim has been employed as counsel for Trustee Rosenberg for over eight months.[177] Yet, Trustee Rosenberg has done nothing to discover or litigate the merits of the Adversary Proceeding through Kim. Not one dispositive motion has been filed, not one deposition taken and not one subpoena issued. In fact, Trustee Rosenberg and Kim have only focused their energy on staying the Adversary Proceeding and pending dispositive motions, entering into settlement negotiations with Gayler, Sylvester, Barrett and Loerwald and moving to disqualify MAC in order to push through this Settlement.[178] Trustee Rosenberg is thus ill-equipped to meet his burden of persuasion that the risks of litigation warrant approval of the Settlement. When properly analyzed, the probability of success in litigation is high and will prevent any premature, improper transfer into the bankruptcy estate.

---

[176] <u>See</u> Motion, Dkt. No. 516 at 14:7-11.

[177] <u>See</u> Dkt. Nos. 488 & 500.

[178] <u>See</u> Dkt. No. 524, (Adv. Pro. 01410 Dkt. Nos. 348 & 359).

MAC:06277-005 2026578_2 4/11/2014 11:39 AM

### a. The Benefits of Litigation Weighs in Favor of Rejecting the Settlement.

A judge must compare the "terms of the compromise with the likely rewards of litigation." In re Foster Mortgage Corp., 68 F.3d 914, 917 (5th Cir. 1995). To justify an abandonment of the litigation, Trustee Rosenberg argues that since the Court found certain transactions time barred and only Gayler's interest in Apan Wine as property of the estate through summary judgment practice, the likelihood of success is somehow diminished.[179] Right now, the Fraudulent Transfer SJ Motion and Golden Sunray SJ Motion are pending before the Court. Based on the undisputed facts filed concurrently with each motion, there is a strong likelihood of success that the Court will grant all or part of the relief requested.[180] If 23 Golden Sunray is found to be the alter ego of Gayler and Gayler fraudulently transferred his interest in 23 Golden Sunray, the estate could potentially recover millions of dollars of the money Gayler transferred outside of bankruptcy.[181] Moreover, the Fraudulent Transfer SJ Motion seeks to void 43 transfers of property made within two years of Gayler's bankruptcy in order to bring any interest Gayler may have had into the estate. The heavy lifting is therefore done for these pivotal requests and the potential reward in seeing the litigation through is far greater than allowing Trustee Rosenberg to settle.

### b. The $413,322.25 is Not Automatically an Asset of Gayler's Bankruptcy Estate.

Pursuant to 11 U.S.C. § 541(a)(1), all legal or equitable interests of the debtor in property as of the commencement of the case is property of the estate. The estate's legal and equitable interests in property, however, rise no higher than those of the debtor. See Endoscopy, 451 B.R. at 542. Filing a bankruptcy petition does not expand or change a debtor's interest in an asset; it merely changes the party who holds that interest. Id. A trustee takes property subject to the

---

[179] See Motion, Dkt. No. 516 at 14:3-7.

[180] See Adv. Pro. 01410, Dkt. Nos. 317, 338 and 339.

[181] See Dkt. No. 446 at Eighteenth Claim for Relief,

MAC:06277-005 2026578_2 4/11/2014 11:39 AM

MARQUIS AURBACH COFFING
10001 Park Run Drive
Las Vegas, Nevada 89145
(702) 382-0711 FAX: (702) 382-5816

MARQUIS AURBACH COFFING
10001 Park Run Drive
Las Vegas, Nevada 89145
(702) 382-0711 FAX: (702) 382-5816

same restrictions that existed at the commencement of the case. Id. To the extent an interest in property is limited in the hands of the debtor it is equally limited as property of the estate. Id.

In an effort to deprive the 777 Plaintiffs their day in court, Trustee Rosenberg urges this Court to rubber stamp approval that Gayler's claimed interests are automatically property of the estate. Gayler specifically executed the Settlement claiming a 50% interest in Angelus I, 6.5% interest in Angelus II, 25% interest in Ch. Pichon, 15% interest in Groth, and 50% interest in Harlan.[182] Not only does Gayler attempt to expand his interests in Angelus I, Angelus II and the Angelus II Entities, but Trustee Rosenberg has also allowed Gayler to execute the Settlement on behalf of these entities even though Gayler was removed as Manager in June 2012.[183] In doing so, Trustee Rosenberg admits the motivating purpose is that "this settlement will assist the Trustee in recovering the $413,322.25" currently held in District Court.[184] Trustee Rosenberg thus hopes for approval of the Settlement in order to convince the District Court to turn over the $413,322.25 to the bankruptcy estate prior to this Court ruling on the Motion to Lift Stay and without the 777 Plaintiffs proceeding to arbitration. At the time of this bankruptcy, if Gayler did not own any interest in Angelus I, Angelus II and the Angelus II Entities, neither should the Estate. Trustee Rosenberg's attempt at a backdoor approach fails as a matter of law because the bankruptcy estate is restricted to the property that the debtor owned pre-bankruptcy. See Endoscopy, 451 B.R. at 542. Approval for the Settlement should therefore be denied as it endeavors to transfer potentially non-debtor assets into the Estate.

### 2.    Collection Difficulties.

Trustee Rosenberg does not advance any evidence regarding the solvency of the settling defendants. Speculating, Trustee Rosenberg only states that collection "may be an issue here for some of the defendants."[185] Indeed, Trustee Rosenberg has not faced any collection difficulties

---

[182] See Motion, Dkt. No. 516, Exhibit 1.

[183] See Motion, Dkt. No. 516, Exhibit 1.

[184] See Motion, Dkt. No. 516 at 15:3-6.

[185] See Motion, Dkt. No. 516 at 14:15-19.

MAC:06277-005 2026578_2 4/11/2014 11:39 AM

as it relates to Gayler.  Moreover, Trustee Rosenberg has made no effort to actively investigate into the solvency of the settling defendants or to compensate for any collection issues down the road.  There are accordingly no unusual barriers to collection that weigh in favor of settlement.

**a.    There are No Collection Difficulties as it Relates to Gayler's Claimed Membership Interests.**

Prior to Trustee Rosenberg's appointment, the Former Trustee recovered almost $700,000 in assets claimed by Gayler into the Estate.[186]  Of this money, Trustee Rosenberg is currently in possession of $477,584.46 for distributions from Dominus M-B, LLC.[187]  In relation to future distributions, any recovery for the Estate will be predicated on the economy.  Specifically, if an asset owned by an LLC is sold, Trustee Rosenberg can either instruct escrow to hold any distribution of Gayler's interest or retain the distribution in trust until proper ownership is adjudicated or resolved.  In fact, that is the exact scenario for the sale proceeds from the Sunset II, LLC property.[188]    All $24,961.06 representing Gayler's claimed 3.5% membership interest through Meritage-Gayler, LLC and ICON Profit Sharing Plan II is held in trust until further court order.[189]  Any future sales of LLC assets would create the same result.  Moreover, upon the adjudication of the rightful ownership of Gayler's claimed interests in Angelus I, Angelus II and the Angelus II Entities, the District Court will release the $413,322.25 accordingly.  It is therefore highly unlikely that Trustee Rosenberg will face any collection difficulties for the Estate as Gayler's distributional share would be frozen pending resolution of ownership.

---

[186] See Dkt. No. 546.

[187] See Trustee Rosenberg Declaration, Dkt. No. 517 at ¶¶ 12 and 18.

[188] See Dkt. No. 487.

[189] See Dkt. No. 512.

MARQUIS AURBACH COFFING
10001 Park Run Drive
Las Vegas, Nevada 89145
(702) 382-0711 FAX: (702) 382-5816

MAC:06277-005 2026578_2 4/11/2014 11:39 AM

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

MARQUIS AURBACH COFFING
10001 Park Run Drive
Las Vegas, Nevada 89145
(702) 382-0711 FAX: (702) 382-5816

### b.    The Settlement Fails to Account for Any Collection Difficulties against Barrett and Loerwald.

Trustee Rosenberg confirms that the Settlement only "ensures that the majority of the Debtor's assets will come to the estate" – nothing from Barrett or Loerwald.[190]    Trustee Rosenberg has instead reached a pact with Barrett and Loerwald allowing them to walk free without ensuring a return for the Estate to compensate for the so-called collection difficulties. The Adversary Proceeding initiated by the Former Trustee sought to recover upwards of $2,379,344.04 from Loerwald and $2,726,632.71 from Barrett.[191]    Although Barrett was dismissed as a defendant, a request for the Court to set aside/vacate, or in the alternative, to reconsider its prior ruling is pending.[192]    As support, Trustee Rosenberg through MAC requested Barrett's dismissal to be set aside based on the Court's recent finding that Gayler owned or controlled TGF.[193]    This ruling supports a finding of an alter ego relationship between 23 Golden Sunray and Gayler.[194]    Upon finding an alter ego relationship, 23 Golden Sunray's assets become property of the Estate, such that Trustee Rosenberg may proceed with claims against Barrett for post-petition and fraudulent transfer of Estate property.[195]    Like all other pleadings, Trustee Rosenberg caused any decision on these crucial requests to be stayed.

Pursuant to Section 9 of the Settlement, Trustee Rosenberg instead agreed to give Loerwald and Barrett a complete dismissal from the Adversary Proceeding.  With potential claims valued over $5.0MM, Trustee Rosenberg negotiated a deal where the Estate would receive nothing in return to offset any collection issues that may arise – not one penny.  Trustee Rosenberg has failed to ensure that the Estate's and creditors' interests were paramount to those of Loerwald and Barrett.  Even worse, Trustee Rosenberg seeks to bring in money generated by

---

[190] See Motion, Dkt No. 516 at 14:18-19.

[191] See Dkt. No. 446 at Twenty-Eight and Twenty-Ninth Claims for Relief.

[192] See Dkt. No. 340.

[193] Id.

[194] Id.

[195] Id.

MAC:06277-005 2026578_2 4/11/2014 11:39 AM

MARQUIS AURBACH COFFING
10001 Park Run Drive
Las Vegas, Nevada 89145
(702) 382-0711 FAX: (702) 382-5816

the efforts of the 777 Plaintiffs on behalf of non-bankrupt entities (aside from the unauthorized Angelus II bankruptcy) into the Estate instead of obtaining a recovery from the very people that were involved in the unauthorized $2.0MM Alper Loan.  Any claimed collection difficulties concocted by Trustee Rosenberg are unsupported and this factor weighs in favor of rejecting the Settlement.

### 3.    Complexity, Expense, Inconvenience and Delay in Litigation.

With over 29 examinations under Rule 2004 conducted and over 45,000 documents discovered, the Former Trustee aggressively discovered this case.  Based on his discovery efforts, the Former Trustee reduced the evidence to undisputed facts to support numerous requests for summary judgment.  As a result, the Former Trustee successfully obtained rulings from this Court that Apan Wine is property of the Estate and Gayler owned or controlled TGF Holding.[196]  In order to further streamline the issues presented at trial, additional requests for summary judgment are pending with the Court seeking to void fraudulent transfers and recover additional assets in relation to 23 Golden Sunray.  Yet, Trustee Rosenberg through his counsel, Kim, abandoned these dispositive motions that could potentially bring millions into the Estate.  Any inconvenience or delay in litigation has therefore been caused by the inaction of Trustee Rosenberg.

Moreover, the primary purpose of the Adversary Proceeding is to void fraudulent transfers made by Gayler within two years of his bankruptcy.  Governed by 11 U.S.C. § 548(a)(1)(A), the elements to prove fraudulent transfers are not complex.  As set forth in the Fraudulent SJ Motion, each element has been met with undisputed facts to support judgment in favor of the Estate.  In fact, Trustee Rosenberg represented to this Court that Gayler "purposefully acted to fraudulently transfer his assets out of the Estate," acknowledging the strength of the § 548 claims.[197]  Any substantial recovery derived from Gayler's fraudulent

---

[196] See Adv. Pro. 01410, Dkt. Nos. 272 and 305.

[197] See Dkt. No. 562 at ¶ 14.

MAC:06277-005 2026578_2 4/11/2014 11:39 AM

MARQUIS AURBACH COFFING
10001 Park Run Drive
Las Vegas, Nevada 89145
(702) 382-0711 FAX: (702) 382-5816

transfers would offset any litigation expenses. The Settlement must therefore be denied as the complexities, expense, inconvenience and delay in litigation do not weigh in favor of approval.

### 4.    The Interest of the Creditors.

Creditors' objections to a compromise must be afforded deference. A&C Properties, 784 F.2d at 1384. The interest of creditors is paramount and the bankruptcy court is obligated to preserve the rights of the creditors. Id.; see also In re Wilson, 196 B.R. 777, 779 (Bankr. N.D. Ohio 1996). To support approval, Trustee Rosenberg argues that this Settlement "maximizes the return for creditors, as it minimizes litigation and administrative costs and ensures the return of assets to the estate in a timely manner."[198] Not only does the Settlement fail to provide any benefit to the creditors, but it also serves to prematurely transfer economic and noneconomic rights that Gayler may have never owned. Specifically, Trustee Rosenberg seeks to cripple some of the Objecting Creditors' rights in adjudicating the rightful ownership of the $413,322.25 sitting in the District Court's registry. Trustee Rosenberg is well aware that the Objecting Creditors' position is that Gayler never properly acquired any interest in Angelus I, Angelus II and the Angelus II Entities or, alternatively, sold any interest pre-bankruptcy. Even worse, the Settlement serves to transfer the management of Angelus I, Angelus II, the Angelus Entities, Angelus IV and Dumol in the hands of Trustee Rosenberg to control the very assets that the Objecting Creditors saved from foreclosure. In all of these LLCs, however, a majority of the Non-Managing Members removed Gayler as manager, which Trustee Rosenberg has continuously refused to acknowledge and has allowed Gayler to execute the Settlement on behalf of these entities. Based on these examples alone, the Settlement could not be more debtor/trustee-friendly and anti-creditor. Factoring in the creditors' interests, the Settlement should thus be denied because: (a) Trustee Rosenberg failed to involve any of the Objecting Creditors in settlement negotiations; (b) the Settlement provides no benefit to the creditors; and (c) the Settlement serves to benefit Trustee Rosenberg and his counsel.

---

[198] See Motion, Dkt. No. 516 at 15:12-13.

MAC:06277-005 2026578_2 4/11/2014 11:39 AM

### a.    None of the Objecting Creditors Participated in Settlement Negotiations.

A trustee has a fiduciary relationship with all creditors of the estate. In re Martin, 91 F.3d 389, 394 (3rd Cir. 1996) (citing Commodity Futures Trading Comm'n v. Weintraub, 471 U.S. 343, 354-55 (1985)). When a settlement is negotiated and determined between insiders of the debtor without the participation of the remaining creditors, there is not proper deference to the views of the creditors. See Hyloft, 451 B.R. at 117. The court must evaluate "the extent to which the settlement is truly the product of arms-length bargaining and not of fraud or collusion." Foster, 68 F.3d 914, 918 (5th Cir. 1995); In re Roqumore, 393 B.R. 474, 480 (Bankr. S.D. Tex. 2008).

Ignoring his fiduciary relationship with the creditors, Trustee Rosenberg engaged in settlement negotiations with everyone *but* the creditors. Starting in April 2013 and over the course of the next three months, Trustee Rosenberg, Sylvester and counsel for Barrett and Loerwald worked together to prepare the Settlement now before the Court. None of the creditors participated in these negotiations. It is by no coincidence that only those parties involved in settlement negotiations actually stand to benefit. One need only look to the proposed terms to determine that the Settlement is not the product of arms-length bargaining. In abandoning claims valued over $5.0MM without anything in return for the Estate, Trustee Rosenberg seeks to profit from unauthorized sales of LLC assets with Gayler's help (e.g., Dumol), prematurely bring assets into the Estate (the $413,322.25) sold pre-bankruptcy, give Gayler and his attorney a cash out and potentially have any remaining assets to pay the Chapter 7 professionals. Failing to give any deference to the creditors' views, Trustee Rosenberg has negotiated an unfavorable settlement for the creditor body.

### b.    The Settlement Provides No Benefit to the Creditors.

In general, the focus of FRBP 9019 is to protect other creditors against bad deals made between one creditor and the debtor. In re Fortran Printing, Inc., 297 B.R. 89, 96 (Bankr. N.D. Ohio 2003). A bankruptcy court, however, has a special responsibility to guard against a compromise that so clearly serves a debtor's interest at the expense of his creditors. See In re

MAC:06277-005 2026578_2 4/11/2014 11:39 AM

MARQUIS AURBACH COFFING
10001 Park Run Drive
Las Vegas, Nevada 89145
(702) 382-0711 FAX: (702) 382-5816

MARQUIS AURBACH COFFING
10001 Park Run Drive
Las Vegas, Nevada 89145
(702) 382-0711 FAX: (702) 382-5816

1   Woodson, 839 F.2d 610, 620 (9th Cir. 1988).  In Woodson, the compromise allocated $100,000

2   of the $1 million to the company's creditors and the remaining $900,000 to the debtor, Woodson.

3   Id.  Woodson's personal creditors were given nothing.  Id.  In reversing the bankruptcy court's

4   approval of the compromise, the Ninth Circuit held that "[n]o responsible trustee would have

5   proposed as 'fair and equitable' a compromise that gave $900,000 to the debtor and not a cent to

6   his creditors."  Id. at 620-21 (citing to A&C Properties, 784 F.2d at 1381).  A Rule 9019(a)

7   motion should alert creditors in the event that they probably will receive little to no benefit from

8   the proposed settlement, and, in such circumstances, should provide a reasonably detailed

9   explanation of the trustee's reasons for nevertheless agreeing to such a compromise.  In re

10  Remsen Partners, 294 B.R. 557, 567 (S.D.N.Y. 2003).

11          Similar to Woodson, the Settlement advocated by Trustee Rosenberg serves to promote

12  Gayler's interests to the detriment of the creditors.  Out of the liquid assets, Gayler will receive

13  $100,000.  Gayler will also retain ownership in two Utah houses, retain any previously paid

14  commissions (even if unauthorized) and continue to collect 50% of any future commissions or

15  development fees.  Gayler's attorney, Sylvester, will be assigned Gayler's claimed interests in

16  Dumol receiving approximately 11.25% of any future sale proceeds while Trustee Rosenberg

17  attempts to collect 50% of any sale commission – all stemming from an interest that Gayler

18  failed to pay any consideration for.  Not one penny or asset will be distributed to the creditors

19  from this Settlement, including those Objecting Creditors that hold non-dischargeable judgments

20  against Gayler valued over $1.3MM.  In advocating for its approval, Trustee Rosenberg fails to

21  provide any explanation for agreeing to such a corrupt bargain.  Consistent with the Ninth

22  Circuit's reasoning in Woodson, the Settlement should therefore be denied.

### c.    The Settlement Benefits an Interested, Duly Appointed Chapter 7 Trustee and his Chosen Counsel.

23
24          The possibility that a proponent of a settlement is not disinterested raises a "red flag."  In

25  re Matco Electronics Group, Inc., 287 B.R. 68, 76-78 (Bankr. N.D.N.Y. 2002).  When it appears

26  that the settlement proceeds will be paid entirely or almost entirely to chapter 7 professionals, the

27  court will somewhat discount the trustee's recommendation and look more closely at whether the

28

MAC:06277-005 2026578_2 4/11/2014 11:39 AM

FRBP 9019 motion adequately informed creditors of the merits of the proposed settlement. See Remsen Partners, 294 B.R. at 567. Accordingly, in order to completely ascertain whether a settlement will result in the maximum benefit to the estate and its creditors, all information must be provided that is potentially crucial to approving the settlement. See Hyloft, 451 B.R. at 116.

After the distributions to Gayler and Sylvester, it is unclear how the remaining assets will be distributed. Although the IRS holds a secured $1,891,092.85 claim, the Chapter 7 professionals hold priority. Pursuant to 11 U.S.C. § 507(a)(1)(C), the administrative expenses of the Chapter 7 trustee allowed under § 503(b) shall be paid prior to payment of claims other than for domestic support obligations. The allowed administrative expenses include compensation for Trustee Rosenberg's services including attorney fees and reimbursement for actual, necessary expenses. See 11 U.S.C. § 503(b)(2); 11 U.S.C. § 330(a). In addition to Trustee Rosenberg's compensation, Kim was retained at an hourly rate of $350.00 and $150.00 per hour for paraprofessionals.[199] Since his employment effective February 4, 2013, it is unknown the amount of fees and costs incurred over the past eight months. Indeed, none of this information was provided to the Court in order to properly evaluate whether Trustee Rosenberg and his counsel are completely disinterested in this Settlement. All of the remaining bankruptcy assets may be gobbled up by Chapter 7 professional fees, without having to lift a finger in litigating the merits. Pursuing litigation against Barrett and Loerwald alone could potentially generate sufficient assets to pay off the IRS and put money in the creditors' pockets after administrative expenses are paid. Approval of the Settlement should therefore be denied.

**B.    ALLOWING GAYLER A DISCHARGE IS CONTRARY TO PUBLIC POLICY.**

Pursuant to 11 U.S.C. § 727(a)(6), a court will not grant a discharge where the debtor has refused "to obey any lawful order of the court, other than an order to respond to a material question or to testify." In whole, § 727 is a Congressional codification of the conditions an individual debtor must meet to obtain a bankruptcy discharge. Wilson, 196 B.R. at 778. The Act limits the opportunity for a discharge to obtain a "fresh start" to the "honest but unfortunate

---

[199] See Dkt. No. 488.

MARQUIS AURBACH COFFING
10001 Park Run Drive
Las Vegas, Nevada 89145
(702) 382-0711 FAX: (702) 382-5816

debtor." Id. (citing Local Loan Co. v. Hunt, 292 U.S. 234, 244 (1934); see also Marrama v. Citizens Bank of Mass., 549 U.S. 365, 367 (2007). "[E]xceptions to discharge should be limited to dishonest debtors seeking to abuse the bankruptcy system in order to evade the consequences of their misconduct." In re Sherman, 658 F.3d 1009, 1016 (9th Cir. 2011).

If a § 727 adversary proceeding is successful, it provides a benefit to all creditors in the case, because the debtor's discharge is denied in full. In re De Armond, 240 B.R. 51, 57 (Bankr. C.D. Cal. 1999). Consequently, a discharge in bankruptcy is not an appropriate element of a quid pro quo as it involves questions of public policy previously determined by Congress. Wilson, 196 B.R. at 779. "Under no circumstances, not even where the intent is innocent, may a debtor purchase a repose from objections to discharge." Id. "A discharge in bankruptcy depends on the debtor's conduct; it is not an object of bargain." Id. The rationale merits further explanation as follows:

> **Selling discharges would be a disease that would attack the heart of the bankruptcy process, its integrity.** A trustee seeking to get paid may coerce an honest debtor into paying something to get rid of a complaint that has no merit. **A dishonest debtor may cover up even greater sins than those that gave rise to the complaint in the first place.**

Id. (emphasis added). Discharges ought to be granted or denied. De Armond, 240 B.R. at 56. Nothing in the Bankruptcy Code authorizes a trustee to seek funds from a debtor as a price for giving up on a discharge complaint. Id. Discharges are not property of the estate and are not for sale. Id. The fraudulent payment or receipt of consideration for withdrawal of a complaint objecting to discharge is a criminal offense. Wilson, 196 B.R. at 779 (citing Collier on Bankruptcy, ¶ 7041.03 pg. 7041-5-6 (15th ed. 1988)). Discharge is general to the public and cannot be waived especially when private greed outruns community spirit. See id. Accordingly, compromises of § 727 claims are viewed with heightened scrutiny. Roqumore, 393 B.R. at 483.

Based on Gayler's refusal to obey the Interim 303(f) Order prohibiting Gayler from transferring, conveying or concealing personal property with a value in excess of $10,000, the Former Trustee sought to revoke Gayler's discharge under § 727(a)(6).[200] Although the Court

---

[200] See Dkt. No. 446 at Thirty-First Claim for Relief.

MARQUIS AURBACH COFFING
10001 Park Run Drive
Las Vegas, Nevada 89145
(702) 382-0711 FAX: (702) 382-5816

MAC:06277-005 2026578_2 4/11/2014 11:39 AM

MARQUIS AURBACH COFFING
10001 Park Run Drive
Las Vegas, Nevada 89145
(702) 382-0711 FAX: (702) 382-5816

found the 23 Golden Sunray transfers time barred, Gayler's $206,545.79 in transfers involving Sassicaia, the Jayden Account, Barrett and TGF remain valid grounds to revoke Gayler's discharge.[201]  Ignoring that a discharge should only be granted to the "honest but unfortunate debtor," Trustee Rosenberg, however, advocates for approval of the Settlement that will grant Gayler, a known indicted fraud, a complete discharge.  In return, Trustee Rosenberg will turn a blind eye to Gayler transferring over $200,000 in assets in direct violation of this Court's order, abandon the proceedings in place to revoke Gayler's discharge and receive 50% of any future commissions and development fees.  Notably, even after Mr. Schnippel notified Trustee Rosenberg that over 78% of the Dumol members removed Gayler as manager in accordance with the governing operating agreement, Trustee Rosenberg still proceeded to allow Gayler to sign the Settlement as manager in hopes of collecting a $40,000 fee from an unauthorized sale.

When viewed under the *Wilson* and *De Armond* lens, this is the exact type of scenario that requires the Court to evaluate with heightened scrutiny.  Discharges are not for sale and one that grants Gayler a discharge in light of his fraudulent transfers totaling over $200,000, the non-dischargeable judgments against Gayler mounting over $1.3MM and a pending criminal indictment directly violates public policy.  On behalf of the estate, Trustee Rosenberg should be required to proceed with litigation in order to revoke Gayler's discharge especially since he himself has fully acknowledged that "[Gayler] purposefully acted to fraudulently transfer his assets out of the Estate"[202] – a bankruptcy crime under 18 U.S.C. § 152.[203]  Based on Trustee Rosenberg's personal knowledge of the fraudulent transfers and coupled with the fact that he has been the Chapter 7 Trustee over Gayler's bankruptcy since December 2012, Trustee Rosenberg is in the best position to see the Adversary Proceeding to the end.  Any settlement proposal that grants Gayler a discharge should thus be denied.

---

[201] See Adv. Pro. 01410, Dkt. No. 305.

[202] See Dkt. No. 562 at ¶ 14.

[203] Pursuant to 18 U.S.C. § 152(1), a person who "knowingly and fraudulently conceals from a . . . trustee . . . in connection with a case under title 11, from creditors or the United States Trustee, any property belonging to the estate of a debtor shall be fined under this title, imprisoned not more than 5 years, or both."

MAC:06277-005 2026578_2 4/11/2014 11:39 AM

## IV.    **CONCLUSION.**

As the proponent of the Settlement, Trustee Rosenberg has failed to meet his burden of persuasion. When properly evaluated, the *A&C* factors weigh heavily in favor of rejecting a settlement designed to benefit Gayler, Sylvester, Barrett, Loerwald and the Chapter 7 professionals and none of the creditors. Forcing Trustee Rosenberg to litigate the claims against Barrett and Loerwald will result in potentially far greater benefits for the Estate and, in turn, the creditors. Moreover, the 777 Plaintiffs will be given the opportunity to arbitrate the rightful ownership of the $413,322.25 sitting in District Court without Trustee Rosenberg attempting to prematurely bring any portion of this asset into the Estate. Trustee Rosenberg has failed to present any evidence that collection difficulties will result especially since his predecessor did not face any issues as it relates to Gayler's distributional interest in LLCs. By rejecting the Settlement, Gayler and his attorney will not be allowed to walk away with substantial Estate assets while the creditors are left with nothing. Consistent with public policy, Gayler should not be granted a discharge as he does not fit the mold of an "honest but unfortunate debtor" as readily acknowledged by Trustee Rosenberg. The Settlement is unreasonable, unfair and not in the best interests of the Estate or creditors and therefore should be denied.

Dated this 11th day of April, 2014

MARQUIS AURBACH COFFING

By _____
Dale A. Hayes, Esq.
Nevada Bar No. 3430
Liane K. Wakayama, Esq.
Nevada Bar No. 11313
10001 Park Run Drive
Las Vegas, Nevada 89145
Attorneys for Objecting Creditors

MARQUIS AURBACH COFFING
10001 Park Run Drive
Las Vegas, Nevada 89145
(702) 382-0711 FAX: (702) 382-5816

MAC:06277-005 2026578_2 4/11/2014 10:22 AM