Zachariah Larson, Esq.
Nevada Bar No. 7787
**LARSON & ZIRZOW, LLC**
810 S. Casino Center Blvd. #101
Las Vegas, NV 89101
Tel: (702) 382-1170
Fax: (702) 382-1169
*Attorney(s) for Managing Member and Equity Interest Holders in CH. Angelus II, LLC*

**E-filed on: June 12, 2014**

**LARSON & ZIRZOW**
**810 South Casino Center Blvd. #101**
**Las Vegas, Nevada 89101**
**Tel: (702) 382-1170 Fax: (702) 382-1169**

**UNITED STATES BANKRUPTCY COURT**

**DISTRICT OF NEVADA**

| In re: WILLIAM A. GAYLER, Debtor. | Case No.: BK-S-09-31603-MKN<br>Chapter 7<br><br>DATE: June 26, 2014<br>TIME: 11:00 AM |
|---|---|

**OPPOSITION TO FIRST AND FINAL APPLICATION FOR ALLOWANCE OF ATTORNEYS' FEES ($66,025.00) AND REIMBURSEMENT OF EXPENSES ($8,587.19) OF HOWARD KIM & ASSOCIATES, LLC AS CHAPTER 7 ADMINISTRATIVE EXPENSES AND REQUEST FOR PAYMENT**

Managing Member of CH Angelus, II, LLC, Barry Moore; Equity Interest Holders of CH Angelus, II, LLC, Barry R. Moore and Janie Moore as Co-Trustees of the BAMM Living Trust Dated July 16, 2003, Groth, LLC, CH Pichon, LLC, and Harlan LLC through their managing member John O'Brien (collectively, "Angelus II Members"), by and through their attorney of record, the law firm of Larson & Zirzow, LLC, hereby submit their opposition (the "Opposition") to the *First and Final Application for Allowance of Attorneys' Fees ($66,025.00) and Reimbursement of Expenses ($8,587.19) of Howard Kim & Associates, LLC as Chapter 7 Administrative Expense and Request for Payment* (the "Fee Application") [ECF No. 687] filed by Howard C. Kim, Esq. of Howard Kim & Associates, LLC (the "Kim Firm").

. . .

. . .

LARSON & ZIRZOW
810 South Casino Center Blvd. #101
Las Vegas, Nevada 89101

This Opposition is made and based upon the pleadings and papers on file herein, the attached Memorandum of Points and Authorities, any Exhibits hereto, the papers and pleadings on file herein, the Declaration of John O'Brien filed in support the dismissal of the CH Angelus II, LLC bankruptcy case, Case No. BK-S-12-22209-MKN at ECF No. 16 (the "O'Brien Decl.") and the Declaration of Barry Moore filed in support the dismissal of the CH Angelus II, LLC bankruptcy case, Case No. BK-S-12-22209-MKN at ECF No. 15 ("Moore Decl."), and any oral argument permitted by this Honorable Court at the hearing.

Angelus II Members request that the Court take judicial notice of the papers and pleadings filed in this bankruptcy case pursuant to Federal Rule of Bankruptcy Procedure 9017 and Federal Rule of Evidence 201.

Given the extensive factual background of this case, Angelus II Members requested leave of Court to exceed the page limits set forth in LR 9014(e)(1). The Court granted this request on June 12, 2014. [ECF No. 724].

## MEMORANDUM OF POINTS AND AUTHORITIES

## I. FACTUAL BACKGROUND

### A. Gayler's Bankruptcy

Debtor William A. Gayler is a real estate broker and an investment advisor and manager. *See* Moore Decl.; *see also* O'Brien Decl. Gayler carries the designation Certified Commercial Investment Manager ("CCIM"). *See id.*

On November 16, 2009, John D. O'Brien, The Pius Rieger FLP and Addison Glass, Inc. filed an Involuntary Bankruptcy Petition in accordance with Chapter 7 of the Bankruptcy Act against Gayler. *See* ECF No. 1. On December 17, 2009, an Order Granting Interim Relief was entered which enjoined Gayler from "transferring conveying, or concealing any real or personal property, in which he has an interest, directly or indirectly, with a value in excess of $10,000.00 without further order of this Court." The Order Granting Interim Relief further enjoined Gayler by and through any entity which he owns or controls, directly or indirectly including through

LARSON & ZIRZOW
810 South Casino Center Blvd. #101
Las Vegas, Nevada 89101

limited liability companies "from transferring any real or personal property with a value in excess of $10,000.00 without further order of this Court, or the majority vote of the non-related members, shareholders or partners." *See* ECF No. 32

On June 28, 2010, Gayler filed his Amended Voluntary Petition (the "Petition"). *See* ECF No. 105. In Schedule B of the Petition, Gayler listed ownership, membership, and/or partnership interests in over 60 different entities, including CH Angelus II, LLC, Groth, LLC, CH Pichon, LLC, and Harlan LLC. *See id.* In Schedule C of the Petition, Gayler claimed all of his stock, ownership, membership, and/or partnership interests set forth in Schedule B to be exempt under 11 U.S.C. § 522(b)(3) and NRS 21.090(1)(z). *See id.* However, in an Order entered on January 7, 2011, the Court granted an objection filed by City National Bank and thereby disallowed Gayler's claimed exemptions for all partnership, stock, and membership interests identified in Schedule C to the Petition. *See* ECF No. 164.

On or about March 29, 2010, James F. Lisowski, Sr. (the "Lisowski") was appointed the Chapter 7 Trustee. In an Order entered on May 23, 2011, the Court approved the Application to employ Marquis Aurbach Coffing ("MAC") as Special Counsel for Lisowski "for the purpose of investigating and proceeding with specific litigation issues regarding multiple potential fraudulent conveyance actions and/or preference actions." *See* ECF Nos. 192 and 205.

On January 28, 2011, the Diamante Rose Adversary Complaint was filed in Gayler's bankruptcy proceedings to obtain a nondischargeable judgment against Gayler under 11 U.S.C. § 523(a)(2) and 11 U.S.C. § 523(a)(4) based on Gayler's wrongful conduct as Managing Member of Diamante Rose, LLC ("Diamante Rose"). *See* Docket of Adversary Case No. 11-01027 ("Diamante Rose Docket") at ECF No. 1. On October 10, 2012, a nondischargeable Judgment in the amount of $500,000 was awarded against Gayler under 11 U.S.C. § 523(a)(2)(A) for actual fraud. *See* Diamante Rose Docket at ECF No. 155. On March 5, 2013, another nondischargeable Judgment in the amount of $120,828.05 was awarded against Gayler to the Diamante Rose plaintiffs for all reasonable attorney fees and costs. *See* Diamante Rose Docket at ECF No. 185.

Gayler's conduct associated with the Diamante Rose matter resulted in a Criminal Indictment centered on Gayler's fraudulent management of Diamante Rose filed by the Nevada

LARSON & ZIRZOW
810 South Casino Center Blvd. #101
Las Vegas, Nevada 89101

Attorney General. As indicted by a Grand Jury in Clark County, Nevada, the Attorney General charged Gayler with seven counts of Theft; three counts of Securities Fraud; and two counts of Securities Fraud Against a Person 60 Years of Age or Older.

On March 15, 2011, Barry Moore ("Moore") commenced an adversary proceeding to obtain a nondischargeable judgment against Gayler for actual fraud partly based on Gayler's mismanagement of Angelus I and Angelus II (the "Moore Adversary"). *See* Docket of Adversary Case No. 11-01088 ("Moore Docket") at ECF No. 1. The Moore Adversary Complaint contained the identical allegations against Gayler as litigated in the 777 Case discussed below. *See id.*

Pursuant to a settlement reached on September 11, 2012 and approved by the Court, Gayler confessed to a judgment under 11 U.S.C. 523(a)(2)(A) for actual fraud in favor of Moore in the amount of $750,000. *See* Moore Docket at ECF Nos. 45, 49, 56. Gayler specifically confessed to fraud in relation to his conduct regarding the allegations against Gayler as litigated in the 777 Case. *See* Moore Docket at ECF No. 56.

On December 23, 2011, Lisowski commenced an Adversary Proceeding against Gayler for numerous claims including, but not limited to, fraudulent transfers, alter ego claims, and seeking to bring in various assets of the estate, including membership interests, to the extent they exist. *See* Docket of Adversary Case No. 11-01410 ("Trustee Docket") at ECF No. 1. The First Amended Complaint was filed on May 10, 2012. *See* Trustee Docket at ECF No. 80.

### B. Gayler's Lack of Authority for CH Angelus II, LLC, Groth, LLC, CH Pichon, LLC, and Harlan LLC

Gayler has fraudulently held himself out to still be the managing member of CH Angelus II, LLC, Groth, LLC, CH Pichon, LLC, and Harlan LLC. *See* Moore Decl.; *see also* O'Brien Decl. CH Angelus II, LLC ("Angelus II") is owned by Barry Moore as Trustee of BAMM Living Trust ("BAMM") (8.5%), Groth, LLC ("Groth") (26.8%), CH Pichon, LLC ("Pichon") (30.73%), Harlan, LLC ("Harlan") (24.57%), TGF Holdings, LP (an entity owned and managed by Gayler) (5.62%), and Walter Loerwald (3.78%). *See id.*

LARSON & ZIRZOW
810 South Casino Center Blvd. #101
Las Vegas, Nevada 89101

**1. The 777 Case.**

On August 6, 2009, Angelus II Members, BAMM and other plaintiffs, including Mr. O'Brien (collectively "777 Plaintiffs"), filed a complaint in the Eighth Judicial District Court in Clark County, Nevada, Case No. A-09-596777-C ("777 Case") against Gayler and others, which sought, among other things, to quiet title of the property owned by Angelus II in the name of the respective LLC and to declare a $2 million loan made by Defendants Eliot A. Alper, Trustee of the Eliot A. Alper Revocable Trust Dated March 22, 1999 and Alper Limited Partnership (hereinafter collectively "Alper") to Angelus II, and another entity, Ch. Angelus I, LLC ("Angelus I"), by reason of Gayler's self-dealing and wrongful conduct. *See id.*

On or about November 12, 2009 and prior to the filing of the Involuntary Petition, the District Court bifurcated the 777 Case, compelling arbitration for the claims asserted against Gayler, Barrett, Loerwald and others. The claims against Alper, however, proceeded to trial. It had been determined by the 777 Plaintiffs that through Gayler's unauthorized conduct, Alper loaned $2 million to Angelus I and Angelus II on September 26, 2008, which was all due and payable on September 26, 2009. *See id.* The 777 Plaintiffs in the 777 Case had no knowledge of the $2 million loan and did not consent to same. *See id.* The $2 million loan was secured by 5 acres of real property owned by Angelus II and other property owned by Angelus I. When the $2 million loan became due and payable on September 26, 2009, the loan was defaulted. *See id.* Accordingly, Alper initiated foreclosure proceedings in December 2009 while the 777 Case was pending. *See id.* A Notice of Breach and Election to Sell Under Deed of Trust was recorded on Angelus I and Angelus II's property on January 5, 2010. *See id.* Three months later, a Notice of Trustee's Sale was recorded on both parcels with the Trustee's Sale scheduled for April 28, 2010. *See id.*

On April 15, 2010, the 777 Plaintiffs moved in the 777 Case for the Court to issue a preliminary injunction to enjoin Alper from foreclosing on Angelus I and Angelus II property. On April 26, 2010, the Court entered its Order granting the preliminary injunction. *See id.* Subsequently, a six-day bench trial occurred in front of the Honorable Judge Denton in the 777

LARSON & ZIRZOW
810 South Casino Center Blvd. #101
Las Vegas, Nevada 89101

State Court Case. *See id.* On March 15, 2011, Judge Denton entered Findings of Fact and Conclusions of Law in favor of the 777 Plaintiffs. *See id.* The Findings entered in favor of the 777 Plaintiffs quieted title of the real property identified as property APN 176-10-101-012 in the name of Angelus II. The Findings further declared the Deeds of Trust in favor of Alper in the amount of $2 million void and invalid based upon the self-dealing of Gayler, Barrett, and Loerwald. *See id.* After the entry of Findings of Fact and Conclusions of Law by the Court, on or about July 21, 2011, Alper appealed the decision to the Nevada Supreme Court. *See id.*

While the matter was before the Supreme Court, a settlement was reached between 777 Plaintiffs and Alper in the 777 Case, wherein Alper agreed to pay $1.4 million to Angelus I and Angelus II. *See id.* At the December 8, 2011 meeting, a majority of Angelus I and Angelus II members voted to accept $1.3 million or more to settle the claim with Alper. *See id.* Based on the December 8, 2011 meeting, settlement negotiations resumed with Alper and a settlement was subsequently reached on December 14, 2011 wherein Alper was to pay Angelus I and Angelus II $1.4 million in consideration for the Promissory Note dated September 25, 2008 secured by the Deed of Trust recorded on September 26, 2008 in the amount of $2 million in favor of Alper being reinstated in relation to the Angelus I and Angelus II properties. *See id.*

By Order dated April 6, 2012 in the 777 Case, the District Court enforced and approved the settlement reached between the 777 Plaintiffs and Alper. *See id.* Within the April 6, 2012 Order, the Court directed John Waroe as the appointed manager of Angelus I and Angelus II to execute any and all documents to finalize the settlement. *See id.* After the entry of the April 6, 2012 Order, Mr. Waroe hesitated and later resigned as managing member of Angelus I and Angelus II. *See id.* On May 18, 2012, and pursuant to NRCP 70, the 777 Plaintiffs in the 777 State Court Case requested the District Court to appoint John O'Brien, an Angelus I and Angelus II member, to act in place of John Waroe. *See id.* No opposition being filed, the Court granted the NRCP 70 motion authorizing and directing John O'Brien "to take all actions necessary on behalf of Angelus I and Angelus II to ensure that prompt action is taken to finalize the settlement reached with Alper." *See id.* The above Order was entered on June 11, 2012 and a copy of the Order was mailed to all Angelus I and Angelus II members. *See id.* Acting under the Court Order,

LARSON & ZIRZOW
810 South Casino Center Blvd. #101
Las Vegas, Nevada 89101

Mr. O'Brien executed the 777 settlement agreement instead of Mr. Waroe for the benefit of Angelus I and Angelus II. *See id.*

**2. <u>Gayler's Manager Status in Angelus I and Angelus II is Revoked</u>.**

On June 14, 2012, the Angelus I and Angelus II members held a meeting to discuss the disbursement of the $1.4 Million settlement proceeds and the election of a new Managing Member for Angelus I, Angelus II, Groth, Pichon, and Harlan. *See id.* A majority of the members unanimously resolved that all legal expenses and delinquent property tax payments would first be paid and reimbursed out of the proceeds and the remaining balance would be divided 58% to Angelus I and 42% to Angelus II. *See id.* Recognizing the claims still pending in the 777 Case against Gayler, Barrett and Loerwald, a majority of the members further resolved that any interest claimed to be held by any of them would be held in trust until resolution or adjudication of the remainder of the 777 Case through arbitration or otherwise. *See id.*

At the June 14, 2012 Meeting, a majority of the Angelus I and Angelus II members removed Gayler as the Managing Member for cause and elected Barry Moore to serve in his stead. *See id.* Holding membership interests in Angelus II, a majority of the members of Groth, Pichon, and Harlan, removed Gayler as the Managing Member for cause and elected John O'Brien as the new Managing Member for Groth, Pichon, and Harlan. *See id.* Pursuant to Section 8.01(f) of the operating agreements of the LLCs, the non-managing members of each of the companies, Angelus I, Angelus II, Groth, Pichon, and Harlan, had the full authority to "remove a Managing Member or any successor Managing Member for cause." *See id.* Accordingly, it was confirmed at the June 14, 2012 membership meeting that Gayler was removed as the managing member of Angelus I, Angelus II, Groth, Pichon and Harlan. *See id.*

After disbursement of the $1.4 Million in settlement proceeds, $413,322.25 remained in dispute representing the interests claimed by Gayler in Angelus I and Angelus II. In an Order dated October 12, 2012, the Court granted the request of the 777 Plaintiffs to allow the deposit of the $413,322.25 into the Court's registry to protect the interests of the parties until the ownership

LARSON & ZIRZOW
810 South Casino Center Blvd. #101
Las Vegas, Nevada 89101

of the membership interest claimed by Gayler in Angelus I and Angelus II is determined and/or resolved. The $413,322.25 remains in the Court's registry and Gayler's membership interest in Angelus I and Angelus II remains disputed.

As the 777 Case was bifurcated to compel arbitration for the claims asserted against Gayler, Barrett, Loerwald and others, the 777 Plaintiffs sought relief from the automatic stay on November 14, 2012 (the "777 Stay Relief Motion"). *See* ECF No. 466. The Court has taken the 777 Stay Relief Motion under advisement. As such, the 777 Plaintiffs have not proceeded with the arbitration against Gayler, Barrett and Loerwald.

**3. The 997 Case.**

While the above issues were litigated on the merits and resolved relating to Angelus II's 5 acres that Gayler encumbered without his investors' requisite authorization, Gayler moved forward with a second unauthorized and fraudulent scheme on the other unencumbered 1.25 acres owned by Angelus II. Gayler, after his manager status had been revoked and the members had appointed Barry Moore as manager, continued to act as if he were the manager of Angelus II and sold the 1.25 acres and encumbered it with a $200,000.00 Deed of Trust. As is Gayler's modus operandi, Gayler failed to advise any of the Angelus II non-managing members of his actions and perpetrated the scheme without consent and approval as required under the Angelus II Operating Agreement.

On September 25, 2012, the 997 Case was filed. *See* Docket, *generally*, of Case No. A-668997 filed with the Eighth Judicial District Court, Clark County, Nevada (the "997 Case"). On October 19, 2012, Gayler was served with the Summons, Complaint and Notice of Lis Pendens in the 997 Case.

**C. Gayler's Unauthorized Filing of the Angelus II Bankruptcy, The Appointment of Rosenberg as Trustee, and the Kim Firm's Employment as Counsel For Rosenberg in the Angelus II Bankruptcy.**

One week after Gayler was served with the Summons and Complaint in the 997 Case, Gayler filed a Chapter 7 Voluntary Petition on behalf of Angelus II without the members'

LARSON & ZIRZOW
810 South Casino Center Blvd. #101
Las Vegas, Nevada 89101

knowledge or consent acting as if he was the manager of Angelus II despite his removal effective for months. *See* Docket of Bankruptcy Case No. 12-22209 ("Angelus II Docket") at ECF No. 1.

Trustee Rosenberg was appointed as the trustee in the Angeles II Bankruptcy on October 30, 2012. *See* Angelus II Docket at ECF No. 4. On November 6, 2011, the Court approved the employment of Howard Kim & Associates (the "Kim Firm") as general counsel to Trustee Rosenberg in the Angelus II Bankruptcy. *See* Angelus II Docket at ECF No. 11.

Barry Moore, the Managing Member of Angelus II, and the Angelus II Members never authorized the bankruptcy filing of Angelus II. Barry Moore, the Managing Member of Angelus II, and the Angelus II Members moved to dismiss the bankruptcy filing due to the lack of Gayler's corporate authority on December 18, 2012. *See* Angelus II Docket at ECF No. 14. The Motion to Dismiss was opposed by Gayler. The hearing on the Motion to Dismiss was held on January 23, 2013 in front of this Court, almost three (3) months after the appointment of Trustee Rosenberg in the Angelus II matter. At the hearing, Trustee Rosenberg had yet to take a position on the Motion to Dismiss in the Angelus II matter because, despite being trustee for almost three (3) month in the Angelus II matter, he had not "had time to wrap his head around the case yet." *See* Angelus II Docket at ECF No. 27, p. 7, l. 25 to p. 8, l. 3. The Kim Firm requested 60 days to come "up to speed" in the Angelus II matter. To date, the Motion to Dismiss in the Angelus II matter remains pending and, throughout his reign as Trustee, Rosenberg failed to take any position on the dismissal.

**D. The Appointment of Rosenberg as Trustee in the Gayler Bankruptcy, and the Kim Firm's Employment as Counsel For Rosenberg in the Gayler Bankruptcy.**

Lisowski resigned as trustee on or about December 11, 2012 in the Gayler bankruptcy. Trustee Rosenberg was appointed as the successor trustee in the Gayler Bankruptcy on December 11, 2012, almost a month and a half after being appointed as trustee in the Angelus II bankruptcy. *See* ECF No. 482.

On February 19, 2013, Trustee Rosenberg sought to employ the Kim Firm as general counsel for Trustee Rosenberg in the Gayler bankruptcy. *See* ECF No. 488 (the "Kim Firm

LARSON & ZIRZOW
810 South Casino Center Blvd. #101
Las Vegas, Nevada 89101

Employment Application"). The Kim Firm Employment Application made the following statements:

> 9. The Trustee has selected the Kim Firm because it has experience with administering Chapter 7 cases and is also general counsel in a related case, CH Angeles II, LLC, BK-S-12-22209-MKN [Dkt. No. 11 in that case], and, therefore, has institutional knowledge of many related issues.
>
> 10. To its best knowledge and belief, the Kim Firm does not have any material connection with any creditor, or any other party in interest or their respective attorneys and accountants, in this bankruptcy case.
>
> 11. To its best knowledge and belief, the Kim Firm has no connection with the United States Trustee or any person employed in the Office of the United States Trustee.
>
> 12. To its best knowledge and belief, the Kim Firm represents no interest that is adverse to the Trustee, or to the Debtor's estate, in matters upon which it will be engaged as counsel set forth in the Kim Declaration.

*See* ECF No. 488. In support of the, Howard Kim filed a Declaration in which he states, in pertinent part,

> 7. The Kim Firm represents the Trustee in other matters not related to this case.
>
> 8. To my best knowledge and belief, the Kim Firm does not represent the Debtor, creditors except as disclosed in the Application, or any other party in interest or their respective attorneys and accountants. The Kim Firm has examined the statements and schedules for possible conflicts and found no conflict.
>
> . . .
>
> 10. The Kim Firm may have represented or may continue to represent various persons or entities listed on the statements and schedules of Debtors in matters unrelated to this bankruptcy case. The Kim Firm is not representing any such persons or entities in this bankruptcy case.
>
> 11. To my best knowledge and belief, the Kim Firm represents no interest that is adverse to the Trustee, or to the Debtor's estate, in matters upon which it will be engaged as counsel as set forth in this Declaration.

*See* ECF No. 489.

LARSON & ZIRZOW
810 South Casino Center Blvd. #101
Las Vegas, Nevada 89101

As such, besides asserting generally that the Kim Firm was also general counsel in the "related" Angelus II bankruptcy, there is no discussion in the Kim Firm Employment Application or the supporting declaration regarding the ongoing disputes between Gayler and Angelus II. There is no disclosure in either the Kim Firm Employment Application or in Kim's supporting declaration as to the actual conflict in acting as counsel for Trustee Rosenberg in the estate of Angelus II, a corporate debtor, and in the estate of Gayler, a debtor who is an insider or officer, albeit disputed, of the corporate debtor, Angelus II. *See* ECF Nos. 488 and 489. It is indisputable that an actual conflict existed in representing both the Gayler and the Angelus II estates particularly given the ongoing disputes between the Angelus II Members and Gayler which were known as of the filing of the Kim Firm Employment Application on February 19, 2013 since the Kim Firm had already made an appearance at the hearing on the Motion to Dismiss the Angelus II bankruptcy on January 23, 2013 in which the facts regarding the conflict between the Gayler and the Angelus II estates were very clearly laid out. However, none of these ongoing issues are disclosed or pointed out in the Kim Firm Employment Application.

On or about March 15, 2013, the Court preliminarily approved the employment of the Kim Firm as general counsel to Trustee Rosenberg in the Gayler bankruptcy. *See* ECF No. 500. Upon the preliminary approval of the Kim Firm as general counsel to Trustee Rosenberg in the Gayler bankruptcy, no supplemental disclosures to the employment application in the Angelus II bankruptcy were ever made by either Trustee Rosenberg or by the Kim Firm. Furthermore, no supplemental disclosures were ever made in the Gayler bankruptcy. In fact, even when Trustee Rosenberg, by and through the Kim Firm, began negotiating a Settlement Agreement with Gayler, Gayler's attorney (Sylvester), Barrett and Loerwald in which the two estates, Gayler and Angelus II, were on opposing sides of the Settlement Agreement neither Trustee Rosenberg nor the Kim Firm disclosed the conflict and instead promoted moving forward the Settlement Agreement in the Gayler bankruptcy to the detriment of the Angelus II Members and the Angelus II estate.

On April 11, 2013, MAC requested the Court to allow MAC to withdraw as Special Counsel. *See* ECF No. 507. No objections to MAC's withdrawal were filed. In an Order entered on June 10, 2013, the Court granted MAC's request. *See* ECF No. 513.

LARSON & ZIRZOW
810 South Casino Center Blvd. #101
Las Vegas, Nevada 89101

**E. The Motion to Approve Settlement**

Upon information and belief, the Kim Firm and Trustee Rosenberg entered into settlement negotiations with Gayler, Gayler's attorney (Sylvester), Barrett and Loerwald sometime in April of 2013. Trustee Rosenberg and the Kim Firm never once included any of the Angelus II Members in the settlement discussions.

On July 3, 2013, Trustee Rosenberg through the Kim Firm filed an Amended Motion to Approve Settlement in this matter ("Settlement Motion") requesting the Court to approve a Settlement Agreement between Trustee Rosenberg and Gayler, Sylvester, Loerwald, Barrett, and, through Gayler's alleged authority, over 120 different entities. *See* ECF No. 516. The Settlement Agreement was signed by Gayler, individually and on behalf of 120 entities, including CH Angelus II, LLC, Groth, LLC, CH Pichon, LLC, and Harlan LLC. *See id.*

With full knowledge that Gayler's alleged status as Managing Member of Angelus II, Groth, Pichon, and Harlan and that Gayler's membership interests in Angelus II, Groth, Pichon, and Harlan was disputed in the Angelus II bankruptcy since the filing of the Motion to Dismiss on December 18, 2012, Trustee Rosenberg allowed Gayler to sign on the Settlement Agreement behalf of CH Angelus II, LLC, Groth, LLC, CH Pichon, LLC, and Harlan LLC as "Manager/Member." *See* ECF No. 516; *see also* Angelus II Docket at ECF No. 14.

At the July 10, 2013 status hearing on the Angelus II Motion to Dismiss, Trustee Rosenberg, through Kim, represented to the Court that "[i]t doesn't really matter to us whether or not Mr. Gayler had or did not have authority to file a bankruptcy case from this trustee's perspective." *See* Angelus II Docket at ECF No. 27, p. 4, l. 7-9. This highlights Trustee Rosenberg's complete disregard for the need for corporate authority to bind an entity to either a bankruptcy filing and highlights that neither Trustee Rosenberg nor the Kim Firm were acting in the best interests of the estate of Angelus II.

As part of the Settlement Agreement, Gayler agreed that all of his remaining assets, except those listed in Exhibit 1 of the Agreement, "shall be" part of the Gayler bankruptcy estate. *See* Settlement Motion. This specifically included his disputed membership interests and any distributions from the 69 entities listed in Schedule B, including Angelus II, and "certain cash

LARSON & ZIRZOW
810 South Casino Center Blvd. #101
Las Vegas, Nevada 89101

assets" identified as distributions from Dominus, LLC and Distributions due to Gayler currently in the possession of Nevada Title Company and held due to the alleged fraudulent transfer claims associated with the transfer of assets from Sunset IV. Gayler further agreed to resign as managing member of all of his entities save those identified in Exhibit 1. *See id.*

Of particular concern was the fact that the Settlement Agreement makes over 120 different entities, including Angelus II, Groth, Pichon, and Harlan, parties to the Settlement Agreement and bound by its terms based solely upon the execution of the Settlement Agreement by Gayler, who is no longer the manager of Angelus II, Groth, Pichon, and Harlan and whose member interests remain in contention. *See* Settlement Agreement attached to ECF No. 516-1 at p. 7, ¶ 21 (stating that "[t]his agreement shall be binding upon the Trustee, Gayler, and the Gayler Entities" which include all 124 entities named as parties, including Angelus II, Groth, Pichon, and Harlan).

As support for the Settlement Agreement, Trustee Rosenberg, through the Kim Firm, represented to this Court that they still possesses no knowledge of these matters and "it would take time and money for my new counsel to come up to speed with the complexities of this case." *See* Settlement Motion, ECF No. 517, ¶ 13. Trustee Rosenberg indicated that if the Settlement Motion was approved that all of Gayler's interests in the Gayler entities will be made part of the Gayler bankruptcy estate, including Gayler's interest in Angelus II, Groth, Pichon, and Harlan. Trustee Rosenberg, through the Kim Firm, took no position in the Angelus II bankruptcy regarding the Motion to Dismiss. The factual basis for the Motion to Dismiss is the fact that Gayler is no longer the managing member of Angelus II, Groth, Pichon, and Harlan and that Gayler's interests in that entity were held in trust pending the outcome of the Angelus II 777 State Court Case or the Angelus II 997 State Court Case.

Trustee Rosenberg, through the Kim Firm, did nothing to discover or litigate the merits of the pending Adversary Proceedings against Gayler or the Dismissal Motion in the Angelus II bankruptcy. Trustee Rosenberg and the Kim Firm focused their energy on stalling the pending Motion to Dismiss in the Angelus II bankruptcy, entering into settlement negotiations with Gayler in the Gayler bankruptcy, and moving to disqualify MAC in order to push through the corrupt Settlement in the Gayler bankruptcy.

LARSON & ZIRZOW
810 South Casino Center Blvd. #101
Las Vegas, Nevada 89101

**F. The Opposition to the Settlement and the Subsequent Withdrawal of Trustee Rosenberg and the Kim Firm.**

The Settlement Motion was vigorously opposed by the Angelus II Members and by other parties in interest. *See* ECF Nos. 639, 643, 645, and 646. Of critical note, on April 11, 2014, the United States Trustee for Region 17 filed an Objection to Proposed Settlement (the "US Trustee's Objection"). *See* ECF No. 646. The US Trustee's Objection points out that the Settlement Agreement is unfair and fails to comply with the factors discussed in *In re A&C Properties*, 784 F.2d 1377 (9th Cir. 1986), *cert. denied*, 479 U.S. 854 (1986). *See* ECF No. 646 at p. 2-3. In opposition to the Settlement Agreement, the US Trustee's Objection points out that a conflict of interest exists in the representation of both the Angelus II estate and the Gayler estate by Trustee Rosenberg, by and through the Kim Firm. *See* ECF No. 646 at p. 3. Specifically, the US Trustee's Objection states the following:

> A conflict of interest nullifies the protection afforded by the business judgment rule. *See, e.g. In re Tama Beef Packing, Inc.*, 290 B.R. 90, 97 (B.A.P. 8th Cir. 2003); *see also In re CNC Payroll, Inc.*, 491 B.R. 454, 461-62 (Bankr. S.D. Tex. 2013); *see also Joy v. North*, 692 F.2d 880, 886 (2d Cir. 1982). Trustee Rosenberg is not only the Chapter 7 trustee of this case, he is also the Chapter 7 trustee of the estate in *In re CH Angelus II, LLC*, Case No. 12-22209-MKN (Bankr. D. Nev. filed Oct. 30, 2012)("CH Angelus II Case"). [*See* CH Angelus II Case, Docket No. 4.] Debtor discloses, *inter alia*, in his schedules both a claim for accounts receivables against CH Angelus II and an unsecured claim by CH Angelus II against Debtor. [*See* Docket No. 105, pp. 21 & 37 of 85.] The settlement agreement purports to be an agreement between, among others, both of these entities—William A. Gayler and CH Angelus II, LLC. [*See* Docket No. 516-1, p. 2 of 20.] Trustee Rosenberg is trustee of both estates and therefore stands on both sides of the proposed settlement. As a result, the business judgment rule cannot apply.

*See* ECF No. 646 at p. 3-4.

According to the Fee Application, on April 15, 2014, in light of the US Trustee's affirmative assertion of an actual conflict of interest due to the dual representation of both the Angelus II estate and the Gayler estate by Trustee Rosenberg in the proposed settlement, by and through the Kim Firm, the Trustee Rosenberg sent the US Trustee his resignations in both the

LARSON & ZIRZOW
810 South Casino Center Blvd. #101
Las Vegas, Nevada 89101

Angelus II bankruptcy and the Gayler bankruptcy with the request that the US Trustee accept his resignations and immediately assign both cases to other trustees. *See* ECF No. 687 at p. 12; *see also* ECF No. 648 at p. 24-28 ("Trustee Rosenberg's Resignations"). Trustee Rosenberg's Resignations specifically state that:

> Trustee [Rosenberg] has a duty to resign under the facts that now exist, as clearly indicated on Page 2-6 of the Handbook for Chapter 7 Trustees:
>
> > "If a trustee discovers a conflict of interest or a lack of disinterestedness after accepting the appointment, the trustee shall immediately resign from the case. Conflict waivers by either the debtor or creditor do not obviate the trustee's duty to resign."

*See* ECF No. 648 at p. 24-28 (wherein Trustee Rosenberg acknowledges his duty to resign from the two cases due to the conflict of interest). According to the Fee Application, on April 16, 2014, the UST accepted the Trustee Rosenberg's Resignations and informed Trustee Rosenberg that successor appointments would be made. *See* ECF No. 687 at p. 12. On April 17, 2014, Victoria Nelson was appointed as the new trustee for the Gayler case. *See* ECF No. 653.

On April 16, 2014, the Kim Firm filed its Motion to Withdraw as Counsel for the Trustee Rosenberg on an order shortening time ("Kim Motion to Withdraw") in light of the US Trustee's assertion of a conflict of interest. *See* ECF No. 648. The Kim Firm acknowledges in the Motion to Withdraw that a "potential conflict has arisen regarding [the Kim Firm's] dual representation" and that the US Trustee has affirmatively asserted that an actual conflict of interest exists in the Trustee's dual representation of both estates. *See id.* at p. 5-6. The Kim Firm acknowledges that, "as counsel for the Trustee [Rosenberg] in both cases, this conflict would naturally extend to [the Kim Firm] as well as the Trustee [Rosenberg]." *See id.* at p. 6.

The Angelus II Members filed a Limited Opposition to the Kim Motion to Withdraw expressly requesting the Court's reservation of jurisdiction to impose sanctions or to review compensation sought in connection with the dual representation by Trustee Rosenberg and the Kim Firm and reserving and rights and remedies that the Angelus II Members and the Angelus II estate may have as a result of the conduct of Trustee Rosenberg or the Kim Firm. *See* ECF No. 658.

LARSON & ZIRZOW
810 South Casino Center Blvd. #101
Las Vegas, Nevada 89101

The Court granted the Kim Motion to Withdraw on April 25, 2014 subject to the reservations set forth in the Limited Opposition to the Kim Motion to Withdraw. *See* ECF No. 668.

On June 3, 2014, the successor trustee withdrew the Settlement Motion. *See* ECF No. 716.

**G. The Kim Firm Fee Application.**

The Kim Firm seeks a total of $74,612.19 in attorney fees and costs from the Gayler estate, representing $66,025.00 in attorney fees and $8,587.19 in costs. *See* ECF No. 687. The entirety of the fees and costs sought were incurred well after the Kim Firm had already been employed in the Angelus II bankruptcy. *See* ECF No. 687. All of the fees and costs for which compensation is sought by the Kim Firm were incurred after the actual conflict in acting as counsel for Trustee Rosenberg in the estate of Angelus II, a corporate debtor, and in the estate of Gayler, a debtor who is an insider or officer, albeit disputed, of the corporate debtor, Angelus II. *See* ECF No. 687; *see also* The Handbook for Chapter 7 Trustees, the United States Trustee Program, Department of Justice, effective October 1, 2012 (setting forth that this specific example of dual representation constitutes a conflict of interest).

## II. LEGAL AGRUMENT

**A. Applicable Law.**

Attorneys for the bankruptcy estate are held to a high standard. Professionals hired by the trustee represent the estate and not the debtor. *See In re Smith*, 507 F.3d 64, 71-72 (2nd Cir. 2007). Under Section 327(a), professionals may not "hold or represent *an interest adverse to the estate*," and under Section 327(c), although they are not disqualified "solely" because of employment by or representation of a creditor, the bankruptcy court "shall" disapprove their employment upon objection if there is an "*actual conflict of interest.*" 11 U.S.C. § 327(a) and (c) (emphasis added).[1]

---

[1] Section 327(a) and (c) state, in full:

> (a) Except as otherwise provided in this section, the trustee, with the court's approval, may employ one or more attorneys, accountants, appraisers, auctioneers, or other professional persons, that do not hold or represent an interest adverse to the estate, and that are disinterested persons, to represent or assist the trustee in carrying out the trustee's duties under this title.

LARSON & ZIRZOW
810 South Casino Center Blvd. #101
Las Vegas, Nevada 89101

In differentiating subsections (a) and (c) of Section 327, the courts sometimes distinguish so-called "potential" conflicts from the "actual conflicts" mentioned in the statute:

> Section 327(a), as well as § 327(c), imposes a *per se disqualification* as trustee's counsel of any attorney who has an *actual* conflict of interest [whereas] the [bankruptcy] court may within its *discretion*—pursuant to § 327(a) and consistent with § 327(c)—disqualify an attorney who has a *potential* conflict of interest....

*Dye v. Brown (In re AFI Holding, Inc.),* 355 B.R. 139, 154 (9th Cir. BAP 2006) (quoting *In re Marvel Entm't Group*, 140 F.3d 463, 476 (3rd Cir. 1998)) (emphasis added).

Section 327(a) also requires the professional to be a "disinterested person," defined in Section 101(14) to mean a person who, among other things, "does not have an interest *materially adverse* to the interest of the estate or of any class of creditors or equity security holders, by reason of any direct or indirect relationship to, connection with, or interest in, the debtor . . . or for any other reason[.]" 11 U.S.C. § 101(14)(E)(emphasis added).

The terms "materially adverse" (Section 101(14)(E)) and "interest adverse to the estate" (Section 327(a)) are not defined, but

> A generally accepted definition of "adverse interest" is the (1) possession or assertion of an economic interest that would tend to lessen the value of the bankruptcy estate; or (2) possession or assertion of an economic interest that would create either an actual or potential dispute in which the estate is a rival claimant; or (3) possession of a predisposition under circumstances that creates a bias against the estate.

*AFI Holding,* 355 B.R. at 148–49 (also quoting authority that 11 U.S.C. § 101(14)(E) covers any interest or relationship that "would even faintly color the independence and impartial attitude

---

> * * *
> (c) In a case under chapter 7, 12, or 11 of this title, a person is not disqualified for employment under this section solely because of such person's employment by or representation of a creditor, unless there is objection by another creditor or the United States trustee, in which case the court shall disapprove such employment if there is an actual conflict of interest.

11 U.S.C. § 327(a) and (c).

LARSON & ZIRZOW
810 South Casino Center Blvd. #101
Las Vegas, Nevada 89101

required by the [Bankruptcy] Code") (citations omitted); *see also Tevis v. Wilke, Fleury et al. (In re Tevis)*, 347 B.R. 679, 688 (9th Cir. BAP 2006) (similar definition).

Section 327(a) prohibits the employment of professionals who hold or represent an interest adverse to the estate and who are not disinterested. *Mehdipour*, 202 B.R. at 480. The bankruptcy court does not have authority to allow the employment of a professional in violation of § 327, and the employment is void *ab initio* if it is determined that the professional holds or represents an interest adverse to the estate or is not disinterested. *See id.*; *see also First Interstate Bank of Nev., N.A. v. CIC Inv. Corp. (In re CIC Inv. Corp.)*, 175 B.R. 52, 56 (9th Cir. BAP 1994); *In re EWC, Inc.*, 138 B.R. 276, 281 (Bankr. W.D. Okla. 1992). Approval granted under Section 327 is preliminary and subject to final review by the court pursuant to Section 330. The ultimate decision as to whether there is a disqualifying conflict or adverse interest lies within the discretion of the court. *In re B.E.S. Concrete Prods., Inc.*, 93 B.R. 228, 236 (Bankr. E.D. Cal. 1988).

Any professional who the court determines to hold or represent an interest adverse to the estate or who is not disinterested is not an officer of the estate during the time of conflict and **must** be denied compensation for services performed during the conflict pursuant to § 330. *Mehdipour*, 202 B.R. at 480 (*citing EWC*, 138 B.R. at 281.). Section 330(a) provides, in part, that the bankruptcy court "may award to ... a professional person employed under section 327 or 1103—(A) reasonable compensation for actual, necessary services ... and (B) reimbursement for actual, necessary expenses." 11 U.S.C. § 330(a)(1).

The Handbook for Chapter 7 Trustees published by the United States Trustee Program, Department of Justice, sets forth specific instances in which an actual conflict of interest exists. *See* The Handbook for Chapter 7 Trustees, the United States Trustee Program, Department of Justice, effective October 1, 2012. The Handbook for Chapter 7 Trustees provides as follows:

> **K. TRUSTEE PROFESSIONALISM AND ETHICS**
>
> **1) CONFLICTS OF INTEREST**
>
> A trustee must be knowledgeable of sections 701(a)(1), 101(14), and 101(31), as well as any other applicable law or rules, and must decline any appointment in which the trustee has a conflict of interest or lacks disinterestedness. The trustee must have in place a

procedure to screen new cases for possible conflicts of interest or lack of disinterestedness upon being appointed. 28 U.S.C. § 586.

If a trustee discovers a conflict of interest or a lack of disinterestedness after accepting the appointment, the trustee shall immediately resign from the case. Conflict waivers by either the debtor or creditor do not obviate the trustee's duty to resign.

The trustee must advise the United States Trustee upon the discovery of any potential conflict or lack of disinterestedness so that a determination can be made as to whether the appointment of a successor trustee is necessary. In addition, the trustee must disclose any potential conflicts on the court record or at the meeting of creditors, or both. The trustee also must advise the United States Trustee upon discovery of any circumstances which might give rise to the appearance of impropriety. 28 U.S.C. § 586.

While it is not possible to list all situations presenting an actual or potential conflict of interest or lack of disinterestedness, a non-exclusive list of examples follows:

    a.  The trustee represents or has represented the debtor, a creditor, an equity security holder, or an insider in other matters;

    b.  The debtor or creditor is an employee of the trustee or of a professional providing services to the trustee in the case;

    c.  *The trustee is appointed to serve as trustee for a corporate debtor and for a debtor who is an insider, officer, director or guarantor of the corporate debtor*;

    d.  The estate has a potential cause of action against the trustee, an employee of the trustee, a client of the trustee or the trustee's firm or other person or entity with whom the trustee has a business or family relationship;

    e.  The trustee was an officer, director, or employee of the debtor within two years before the commencement of the case; or

    f.  The trustee is a creditor or an equity security holder of the debtor.

Several courts have addressed the issue of whether an actual or potential conflict of interest or lack of disinterestedness of a trustee's partner or associate may be imputed to the trustee. Therefore, the trustee needs to disclose to the United States Trustee all situations presenting an actual or potential conflict of interest or lack of disinterestedness for the trustee's partners or law firm.

Fed. R. Bankr. P. 2009 allows the appointment of one trustee in jointly administered cases. The trustee should be aware of the existence of inter-debtor claims and must monitor them because conflicts can develop and require the appointment of separate trustees.

LARSON & ZIRZOW
810 South Casino Center Blvd. #101
Las Vegas, Nevada 89101

LARSON & ZIRZOW
810 South Casino Center Blvd. #101
Las Vegas, Nevada 89101

*See id.* (emphasis added).

The statutory provisions of Sections 327 and 330 work in tandem with Fed. R. Bankr. P. 2014, which states that a professional's application for employment "shall be accompanied by a verified statement of the person to be employed setting forth the person's connections with the debtor, creditors, any other party in interest, their respective attorneys and accountants, the [US Trustee], or any person employed in the office of the [US Trustee ]." Fed. R. Bankr. P. 2014. This has been interpreted to impose an ongoing duty of disclosure. *In re West Delta Oil Co., Inc.*, 432 F.3d 347, 355 (5th Cir. 2005). The penalty for nondisclosure is within the bankruptcy court's discretion, and can range from nothing (*CIC Inv. Corp.*, 175 B.R. at 54) to disallowance of all fees. *Neben & Starrett, Inc. v. Chartwell Fin. Corp. (In re Park–Helena Corp.)*, 63 F.3d 877, 882 (9th Cir. 1995).

A professional's nondisclosure would warrant sanctions even if it is not otherwise disqualified from employment or compensation. *Kravit, Gass & Weber, S.C. v. Michel (In re Crivello)*, 134 F.3d 831, 836 (7th Cir. 1998) ("Though [Rule 2014] allows the fox to guard the proverbial hen house, counsel who fail to disclose timely and completely their connections proceed at their own risk because failure to disclose is sufficient grounds to revoke an employment order and deny compensation.").

Pursuant to § 327, a professional has a duty to make full, candid and complete disclosure of all facts concerning his transactions with the debtor creditors, any other party in interest, their respective attorneys and accountants, the US Trustee, or any person employed in the office of the US Trustee. *See Park–Helena*, 63 F.3d at 881; *In re Plaza Hotel Corp.*, 111 B.R. 882, 883 (Bankr. E.D. Cal.), *aff'd*, 123 B.R. 466 (9th Cir. BAP 1990). Professionals must disclose all connections with the debtor, creditors and parties in interest, no matter how irrelevant or trivial those connections may seem. *In re EWC*, 138 B.R. at 280. The disclosure rules are not discretionary. *Id.* The duty to disclose is not vitiated by negligent or inadvertent omissions. *Park–Helena*, 63 F.3d at 881. A court may sanction a professional for disclosure violations regardless of actual harm to the estate. *In re Film Ventures Intern., Inc.*, 75 B.R. 250, 253 (9th Cir. B.A.P. 1987); *In re EWC*, 138 B.R. at 280.

LARSON & ZIRZOW
810 South Casino Center Blvd. #101
Las Vegas, Nevada 89101

**B. The Employment of the Kim Firm Violates Section 327, is Void *Ab Initio*, and Compensation Must Be Denied.**

The Kim Firm seeks a total of $74,612.19 in attorney fees and costs from the Gayler estate, representing $66,025.00 in attorney fees and $8,587.19 in costs. *See* ECF No. 687. The entirety of the fees and costs sought were incurred well after the Kim Firm had already been employed in the Angelus II bankruptcy. *See* ECF No. 687.

All of the fees and costs for which compensation is sought by the Kim Firm were incurred after the actual conflict in acting as counsel for Trustee Rosenberg in the estate of Angelus II, a corporate debtor, and in the estate of Gayler, a debtor who is an insider or officer, albeit disputed, of the corporate debtor, Angelus II. *See* ECF No. 687; *see also* The Handbook for Chapter 7 Trustees, the United States Trustee Program, Department of Justice, effective October 1, 2012. This situation, wherein a trustee is appointed in the estate of a corporate debtor and in the estate of a debtor who is an insider or officer of the corporate debtor is specifically set forth as a specific example of a dual representation constitutes a conflict of interest in the Handbook for Chapter 7 Trustees. *See id.* As such, the actual conflict in representing the Trustee in these two matters should have been immediately apparent to Trustee Rosenberg and to the Kim Firm.

Furthermore, the extensive conflicts between the Gayler estate and the Angelus II estate, inclusive of the conflicts between Gayler and the Angelus II Members, were specifically pointed out to the Court and to Trustee Rosenberg and the Kim Firm very early in their involvement in the Angelus II and the Gayler matters. Specifically, the Angelus II Members moved to dismiss the Angelus II bankruptcy filing due to Gayler's lack of corporate authority on December 18, 2012. *See* Angelus II Docket at ECF No. 14. The Motion to Dismiss filed in the Angelus II bankruptcy specifically detailed the numerous conflicts between Gayler and the Angelus II estate. Trustee Rosenberg was appointed in the Angelus II matter prior to the filing of the Motion to Dismiss. Furthermore, Trustee Rosenberg, through the Kim Firm, appeared at the hearing on the Motion to Dismiss on January 23, 2013. Both Trustee Rosenberg and the Kim Firm were well aware, very early in the handling of the Angelus II matter that (i) they were acting in dual roles for both a

LARSON & ZIRZOW
810 South Casino Center Blvd. #101
Las Vegas, Nevada 89101

corporate debtor and for the corporate debtor's alleged insider/officer and that (ii) an actual conflict existed between Angelus II and Gayler.

Nonetheless, Trustee Rosenberg did not resign from the Gayler bankruptcy and filed an application to seek employment of the Kim Firm in the Gayler bankruptcy while continuing as trustee in the Angelus II bankruptcy, with the Kim Firm as general counsel in the Angelus II bankruptcy. As noted herein, besides asserting generally that the Kim Firm was also general counsel in the "related" Angelus II bankruptcy, there is no discussion or even minimal disclosure in the Kim Firm Employment Application or the supporting declaration regarding the ongoing disputes between Gayler and Angelus II even though those ongoing disputes had been briefed and made known to Trustee Rosenberg and the Kim Firm almost two months prior to the filing of the Kim Firm Employment Application in the Angelus II Motion to Dismiss.

Furthermore, there is no disclosure in either the Kim Firm Employment Application or in Kim's supporting declaration as to the actual conflict in acting as counsel for Trustee Rosenberg in the estate of Angelus II, a corporate debtor, and in the estate of Gayler, a debtor who is an insider or officer, albeit disputed, of the corporate debtor, Angelus II. *See* ECF Nos. 488 and 489. Rather, the Kim Firm Employment Application merely references that the Kim Firm is also general counsel in a "related" matter, the Angelus II bankruptcy. There is no explanation in the Kim Firm Employment Application as to how Gayler and Angelus II are related or as to the issues in the Angelus II matter and Gayler's self-dealing and fraudulent conduct against the Angelus II estate.

In fact, even when Trustee Rosenberg, by and through the Kim Firm, began negotiating a Settlement Agreement with Gayler, Gayler's attorney (Sylvester), Barrett and Loerwald in which the two estates, Gayler and Angelus II, were on opposing sides of the Settlement Agreement neither Trustee Rosenberg nor the Kim Firm disclosed the conflict and instead promoted moving forward the Settlement Agreement in the Gayler bankruptcy to the detriment of the Angelus II Members and the Angeles II estate. When the dual representation was discovered by the US Trustee, the US Trustee filed an Objection to the Settlement Agreement triggering the immediate resignation of Trustee Rosenberg and the withdrawal of the Kim Firm. However, there is no basis for arguing that the conflict did not exist prior to the filing of the US Trustee's Objection.

LARSON & ZIRZOW
810 South Casino Center Blvd. #101
Las Vegas, Nevada 89101

It is indisputable that an actual conflict existed in representing both the Gayler and the Angelus II estates from the very beginning. None of these ongoing issues were disclosed or pointed out in the Kim Firm Employment Application. Section 327(a), as well as § 327(c), imposes a *per se disqualification* as trustee's counsel of any attorney who has an *actual* conflict of interest [whereas] the [bankruptcy] court may within its *discretion*—pursuant to § 327(a) and consistent with § 327(c)—disqualify an attorney who has a *potential* conflict of interest

The law is very clear that the bankruptcy court does not have authority to allow the employment of a professional in violation of § 327, and the employment is void *ab initio* if it is determined that the professional holds or represents an interest adverse to the estate or is not disinterested. *See id.*; *see also First Interstate Bank of Nev., N.A. v. CIC Inv. Corp. (In re CIC Inv. Corp.)*, 175 B.R. 52, 56 (9th Cir. BAP 1994); *In re EWC, Inc.*, 138 B.R. 276, 281 (Bankr. W.D. Okla. 1992). Any professional who the court determines to hold or represent an interest adverse to the estate or who is not disinterested is not an officer of the estate during the time of conflict and **must** be denied compensation for services performed during the conflict pursuant to § 330. *Mehdipour*, 202 B.R. at 480 (*citing EWC*, 138 B.R. at 281.).

An actual conflict existed in representing both the Gayler and the Angelus II estates from the very beginning. As such, the Kim Firm was *per se* disqualified as counsel for the trustee in the Gayler matter from the beginning of its employment as the Kim Firm had already previously been employed as counsel for the trustee in the Angelus II matter. This actual conflict of interest imposes a mandatory requirement upon this Court find the employment of the Kim Firm to be in violation of § 327. The employment of the Kim Firm was void *ab initio* as the Kim Firm held an interest adverse to the Gayler estate and the Angelus II estate when the Kim Firm engaged in the dual representation of the two estate. The Kim Firm must be denied compensation for services performed during the conflict pursuant to § 330. *Mehdipour*, 202 B.R. at 480 (*citing EWC*, 138 B.R. at 281.).

LARSON & ZIRZOW
810 South Casino Center Blvd. #101
Las Vegas, Nevada 89101

**III. CONCLUSION**

Based upon the foregoing, the Debtor requests that this Court deny the Fee Application in its entirety.

Dated: June 12, 2014.

LARSON & ZIRZOW, LLC

By: /s/ Zachariah Larson, Esq.
ZACHARIAH LARSON, ESQ.
Nevada Bar No. 7787
E-mail: zlarson@lzlawnv.com
810 S. Casino Center Blvd. #101
Las Vegas, Nevada 89101
*Attorney(s) for Managing Member and Equity Interest Holders in CH. Angelus II, LLC*