1

**Marquis Aurbach Coffing**
Dale A. Hayes, Esq.

2   Nevada Bar No. 3430
Liane K. Wakayama, Esq.

3   Nevada Bar No. 11313
10001 Park Run Drive

4   Las Vegas, Nevada 89145
Telephone: (702) 382-0711

5   Facsimile: (702) 382-5816
dhayes@maclaw.com

6   lwakayama@maclaw.com
    Attorneys for MAC Creditors

7

**E-Filed: June 12, 2014**

8                    **UNITED STATES BANKRUPTCY COURT**

9                      **FOR THE DISTRICT OF NEVADA**

10

11   In Re:                                    Case No:      BK-S-09-31603-MKN
                                               Chapter:      7
12   WILLIAM GAYLER,
                                               Date of Hearing: June 26, 2014
                              Debtor.
13                                             Time of Hearing: 11:00 a.m.

14   <u>**JOINDER TO DKT. NO. 725 AND OPPOSITION TO FIRST AND**</u>
     <u>**FINAL APPLICATION FOR ALLOWANCE OF ATTORNEYS' FEES**</u>
15   <u>**($66,025.00) AND REIMBURSEMENT OF EXPENSES ($8,587.19)**</u>
     <u>**OF HOWARD KIM & ASSOCIATES, LLC AS CHAPTER 7**</u>
16   <u>**ADMINISTRATIVE EXPENSES AND REQUEST FOR PAYMENT**</u>

17        Marquis Aurbach Coffing ("MAC"), attorneys of record for Creditors, Barry Moore,

18   Donald J. Campbell, J. Colby Williams, John D. O'Brien, individually and as Trustee of the John

19   D. O'Brien Profit Sharing Plan and as Trustee of the Alexander Dawson Foundation, Bianca

20   Borini, Mario Borini and Joseph Borini (hereinafter collectively the "MAC Creditors"), hereby

21   fully join in the Opposition to First and Final Application for Allowance of Attorneys' Fees

22   ($66,025.00) and Reimbursement of Expenses ($8,587.19) of Howard Kim & Associates, LLC

23   as Chapter 7 Administrative Expense and Request For Payment (Dkt. No. 725) and file this

24   Opposition to First and Final Application for Allowance of Attorneys' Fees ($66,025.00) and

25   Reimbursement of Expenses ($8,587.19) of Howard Kim & Associates, LLC as Chapter 7

26   Administrative Expense and Request For Payment   requesting the Court to deny all

27   compensation requested by Howard Kim & Associates (the "Opposition"). This Opposition is

28

MARQUIS AURBACH COFFING
10001 Park Run Drive
Las Vegas, Nevada 89145
(702) 382-0711 FAX: (702) 382-5816

MAC:06277-005 2249315_1 6/12/2014 3:47 PM

based upon the pleadings and papers on file and any argument of counsel permitted at the time of hearing.

Dated this 12th day of June, 2014.

MARQUIS AURBACH COFFING

By /s/ Liane K. Wakayama
Dale A. Hayes, Esq.
Nevada Bar No. 3430
Liane K. Wakayama, Esq.
Nevada Bar No. 11313
10001 Park Run Drive
Las Vegas, Nevada  89145
Attorneys for MAC Creditors

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.    INTRODUCTION.**

Since February 2013, Howard Kim & Associates ("Kim") have done nothing to benefit the Debtor William A. Gayler's ("Gayler") bankruptcy estate.  Despite the laundry list of services Kim agreed to perform as general counsel for Trustee David Rosenberg ("Trustee Rosenberg"), Kim focused all of efforts in trying to get MAC disqualified in hopes of pushing through a debtor-friendly settlement.  Ignoring his fiduciary duties owed to the creditors, Trustee Rosenberg's settlement only served to benefit the debtor (an indicted and determined fraud), his counsel, and his co-conspirators.  Shortly after the proposed settlement was adamantly objected to by the IRS, the U.S. Trustee's office, the Ch. Angelus II, LLC creditors and the MAC Creditors exposing the details of the corrupt bargain, Trustee Rosenberg resigned and Kim withdrew as counsel.  Soon after Trustee Rosenberg's successor was appointed, the proposed settlement was abandoned.  Kim now wants a $74,612.19 pay day.

Over the course of fifteen months as general counsel for Trustee Rosenberg, Kim did not engage in any discovery, did not prepare or file one substantive motion for a ruling on the merits, and did not cause one asset or a single dime to be recovered for the Estate.  Indeed, Kim's efforts only caused the entire administration of this case to be delayed and, to date, the Estate is in the same or even worse position than it was when Trustee Rosenberg retained Kim.  As codified in 11 U.S.C.  § 330(a)(4)(A)(ii)(I)-(II), Kim is prohibited from receiving any compensation for

MAC:06277-005 2249315_1 6/12/2014 3:47 PM

MARQUIS AURBACH COFFING
10001 Park Run Drive
Las Vegas, Nevada 89145
(702) 382-0711 FAX: (702) 382-5816

services that were not likely to benefit the Estate and were not necessary to its administration. All of Kim's requested fees and expenses are the product of services performed to the detriment of the creditors. To ensure that Kim does not profit from Trustee Rosenberg's improper and truly lack of administration of the Estate, this Court should deny any and all compensation to Kim.

## II.    STATEMENT OF FACTS.

Incorporating all of the facts contained in the Angelus II Opposition,[1] the MAC Creditors set forth the following additional facts to support a complete denial of all compensation to Kim:

### A.    CHAPTER 7 TRUSTEE JAMES F. LISOWSKI SR.

On March 29, 2010, James F. Lisowski, Sr. was appointed the Chapter 7 Trustee (the "Former Trustee") to administer the case.[2] On April 14, 2011, the Former Trustee applied to the Court to employ MAC, on a contingency fee basis, as Special Counsel "for the purpose of investigating and proceeding with specific litigation issues regarding multiple potential fraudulent conveyance actions and/or preference actions" (the "Application").[3] In an Order entered on May 23, 2011, the Court approved the Application to employ MAC as Special Counsel for the Former Trustee.[4]

#### 1.    MAC as Special Counsel.

As Special Counsel, MAC was tasked with bringing assets into the Bankruptcy Estate as a result of fraudulent transfers orchestrated and engaged in by Gayler.[5] In order to accomplish

---

[1] The "Angelus II Opposition" shall refer to the Opposition to First and Final Application for Allowance of Attorneys' Fees ($66,025.00) and Reimbursement of Expenses ($8,587.19) of Howard Kim & Associates, LLC as Chapter 7 Administrative Expense and Request for Payment filed on June 12, 2014, identified as Dkt. No. 725.

[2] See Docket Report for Bankruptcy Petition #: 09-31603.

[3] See Dkt. No. 192.

[4] See Dkt. No. 205.

[5] See Declaration of Phillip S. Aurbach, Esq. in Support of the Opposition to Trustee's Motion to Disqualify Counsel for John D. O'Brien Profit Sharing Plan and Counsel for Barry R. Moore and Janie Moore as Co-Trustees of the Bamm Living Trust Date July 16, 2003, Groth, LLC, Ch. Pichon, LLC, and Harlan, LLC through their Managing Member John O'Brien (First Aurbach Declaration), Dkt. No. 546.

MAC:06277-005 2249315_1 6/12/2014 3:47 PM

MARQUIS AURBACH COFFING
10001 Park Run Drive
Las Vegas, Nevada 89145
(702) 382-0711 FAX: (702) 382-5816

MARQUIS AURBACH COFFING
10001 Park Run Drive
Las Vegas, Nevada 89145
(702) 382-0711 FAX: (702) 382-5816

this job, MAC launched a full investigation of Gayler, including conducting 29 examinations under Rule 2004, issuing and serving approximately 29 subpoenas, and reviewing over 45,000 documents (bank records, tax returns and transfer documents).[6]  As a result, MAC discovered Gayler's massive scheme to hide assets from the Bankruptcy Estate separate and apart from Gayler's fraudulent conduct perpetrated in relation to the Ch. Angelus, LLC; Ch. Angelus II, LLC; Ch. Angelus IV, LLC and Diamante Rose, LLC investments.[7]

### 2.    The Former Trustee's Adversary Proceeding.

On December 23, 2011, the Former Trustee commenced an adversary proceeding against Gayler for, among other things, fraudulent transfers pursuant to 11 U.S.C. § 548 and NRS 112.180 and alter ego claims (the "Adversary Proceeding").[8]  The entire purpose of the Adversary Proceeding was to recover assets for the Bankruptcy Estate as a result of fraudulent transfers by Gayler and to preserve any rights the Estate *may* have in Gayler's claimed membership interests.[9]  As part of the First Amended Complaint, the Former Trustee sought to also revoke Gayler's discharge under 11 U.S.C. § 727(a)(6)(A) based on Gayler causing in excess of $10,000 to be transferred, conveyed or concealed in direct violation of the Interim 303(f) Order.[10]  The Former Trustee also named Martin Barrett ("Barrett") and Walter Loerwald ("Loerwald") as defendants based on the collective $5,105,839.04 they received from a "collusive and irregular foreclosure" and subsequent sale of Gayler's 23 Golden Sunray House – all completed while Gayler was in bankruptcy.[11]

---

[6] See First Aurbach Declaration, Dkt. No. 546; see also Dkt. Nos. 214, 218, 222, 223, 228, 229, 235, 243, 244, 246, 248, 265-270, 273, 290, 296, 318, 322-324, 330, 342, 351, 372 and 374.

[7] See First Aurbach Declaration, Dkt. No. 546.

[8] See Dkt. No. 383; see also Adversary Proceeding 11-01410 ("Adv. Pro. 01410"), Dkt. No. 1.

[9] See First Aurbach Declaration, Dkt. No. 546 at ¶¶ 2, 4 and 7.

[10] See Dkt. No. 446 at Thirty-First Claim for Relief.

[11] See Dkt. No. 446 at pp. 14-18.

MAC:06277-005 2249315_1 6/12/2014 3:47 PM

### a.    The Dispositive Motions filed by MAC.

Throughout its role as Special Counsel, MAC aggressively pursued Gayler's fraudulent transfers filing approximately six dispositive motions aimed to benefit the Bankruptcy Estate.[12] Although every motion was not meritorious at that stage of the litigation, these motions were pursued by Special Counsel in an attempt to shortcut the proceedings by obtaining rulings on Gayler's fraudulent transfers through motion practice instead of by adversary proceedings.[13]

### (1)    Gayler's Fraudulent Transfers.

On February 14, 2013, MAC moved for partial summary judgment pursuant to 11 U.S.C. § 541 and 11 U.S.C. § 548 (the "Fraudulent Transfer SJ Motion").[14]  Pursuant to 11 U.S.C. § 548(a)(1)(A), MAC requested the Court to set aside approximately 43 transfers of valuable assets made by Gayler as these transfers were fraudulent.[15]  MAC specifically argued that these fraudulent transfers were accomplished by Gayler with the intent to "defraud his creditors."[16]  In addition, MAC pointed out to the Court the severity of Gayler backdating certain transfers in order "to circumvent both state and bankruptcy time limitations on fraudulent transfers."[17]

### (2)    23 Golden Sunray – Gayler's Alter Ego.

On February 26, 2013, MAC moved for partial summary judgment as to the Eighteenth claim for relief that 23 Golden Sunray, LLC ("23 Golden Sunray") is the alter ego of Gayler (the "Golden Sunray SJ Motion").[18]  As support, MAC alleged that Gayler was the sole owner of 23 Golden Sunray, repeatedly transferred its assets to himself or to his other entities and treated 23

---

[12] See Dkt. Nos. 219, 244, 317, 338, 350 and 357.

[13] See Second Declaration of Phillip S. Aurbach ("Second Aurbach Declaration") filed on September 3, 2013, Dkt. No. 656, attached hereto as **Exhibit A**.

[14] See Adv. Pro. 01410, Dkt. No. 317.

[15] Id. at pp. 11-25.

[16] Id. at 16:8-18.

[17] Id. at 23:12-15.

[18] See Adv. Pro. 01410, Dkt. No. 338.

MARQUIS AURBACH COFFING
10001 Park Run Drive
Las Vegas, Nevada 89145
(702) 382-0711 FAX: (702) 382-5816

MAC:06277-005 2249315_1 6/12/2014 3:47 PM

Golden Sunray's primary assets as his own.[19]  Given Gayler's complete control over 23 Golden Sunray, it was further alleged that Gayler along with Loerwald and Barrett successfully transferred over $6.2 Million outside of Gayler's bankruptcy.[20]  In total, Loerwald collected $2,595,796.21 and Barrett collected $2,726,632.71 from the sale proceeds of 23 Golden Sunray.[21]

### b.    The Assets Recovered by MAC for the Benefit of the Estate.

Due to MAC's extensive discovery and litigation efforts, MAC was able to sequester and bring into the Bankruptcy Estate almost $700,000.[22]  MAC is currently not in possession of any of the funds recovered for the Bankruptcy Estate as everything was transferred to Trustee Rosenberg.  Within the Fee Application, Kim confirms that $490,071.32 was transferred to the newly appointed trustee in the case.[23]

### 3.    MAC's Voluntary Withdrawal as Special Counsel.

On April 11, 2013, MAC requested the Court to allow MAC to withdraw as Special Counsel.[24]  No objections to MAC's withdrawal were filed.  In an Order entered on June 10, 2013, the Court granted MAC's request and; since that time, Kim remained the only counsel of record for Trustee Rosenberg.[25]

### B.    CHAPTER 7 TRUSTEE DAVID ROSENBERG.

On December 12, 2012, Trustee Rosenberg was appointed as Successor Trustee, terminating James F. Lisowski.[26]  Trustee Rosenberg moved to employ Kim, on an hourly basis,

---

[19] See Adv. Pro. 01410, Dkt. No. 338 at pp. 10-13.

[20] Id. at 13:2-5.

[21] Id.

[22] See Second Aurbach Declaration, Exhibit A.

[23] See Dkt. No. 687 at p.2., n.1

[24] See Dkt. No. 507.

[25] See Dkt. No. 513.

[26] See Dkt. No. 482.

MAC:06277-005 2249315_1 6/12/2014 3:47 PM

MARQUIS AURBACH COFFING

10001 Park Run Drive
Las Vegas, Nevada 89145
(702) 382-0711 FAX: (702) 382-5816

1    as general counsel over Gayler's Bankruptcy Estate, which was approved by the Court in an

2    Order entered March 15, 2013.[27]

### 1.    The Unauthorized Angelus II Bankruptcy.

As set forth in the Angelus II Opposition, Trustee Rosenberg was appointed as the trustee

in the Angelus II Bankruptcy on October 30, 2012 – prior to becoming the Trustee over Gayler's

Bankruptcy Estate.[28]    On November 6, 2012, the Court approved the employment of Kim as

general counsel to Trustee Rosenberg in the Angelus II Bankruptcy.[29]    Given the unauthorized

bankruptcy filed by Gayler, Angelus II moved to dismiss the entire bankruptcy pursuant to 11

U.S.C. § 707 on December 18, 2012.[30]    At the hearing held on January 23, 2013, Kim

represented to the Court that Trustee Rosenberg was not taking a position on the dismissal issue:

MR. KIM:    Because **he hasn't had time to wrap his head around the case,
yet**, your Honor.[31]

Kim informed the Court that Trustee Rosenberg "would need at least 60 days" to get up to speed,

but "[i]t may take a little longer."    In the course of over a year acting as Trustee over the

unauthorized Angelus II Bankruptcy, Trustee Rosenberg failed to take any position on Angelus

II's request for dismissal.

### 2.    The Angelus IV Lawsuit.

On May 18, 2010, the Angelus IV Lawsuit was commenced against Gayler, Barrett, the

Alper Defendants[32] and others.[33]    Although Gayler was named as a defendant, he was never

---

[27] See Dkt. Nos. 488 & 500.

[28] See Bankruptcy No. 12-22209-mkn ("BK 22209"), Dkt. No. 4.

[29] See BK 22209, Dkt. No. 11.

[30] See BK 22209, Dkt. Nos. 14-16.

[31] See BK 22209, Dkt. No. 27 at 7:25; 8:1-3 (emphasis added).

[32] The "Alper Defendants" refers to Eliot A. Alper, Trustee of the Eliot A. Alper Revocable Trust dated March 22, 1999, Tina A. Alper, Trustee of the Tina A. Alper Revocable Trust dated June 22, 1999 and Livia M. Lindquist.

[33] See Opposition to Amended Motion to Approve Settlement Agreement ("Settlement Opposition") filed on April 11, 2014, Dkt. No. 643 at Exhibit R.

MAC:06277-005 2249315_1 6/12/2014 3:47 PM

MARQUIS AURBACH COFFING
10001 Park Run Drive
Las Vegas, Nevada 89145
(702) 382-0711 FAX: (702) 382-5816

served with a Summons or Complaint given his pending bankruptcy.[34]   Many of the MAC Creditors initiated the Angelus IV Lawsuit in order to save their investment property from being foreclosed upon by the Alper Defendants as a result of an unauthorized loan entered into by Gayler and to hold Barrett, his wife and his Trust liable for their wrongful conduct.[35]

### a.    Trustee Rosenberg Does Nothing to Aid in the Angelus IV Trial.

On February 13, 2013, MAC sent Kim a letter reminding Trustee Rosenberg of the upcoming trial in the Angelus IV Lawsuit.[36]   Reiterating everything that had transpired in relation to the Angelus I/Angelus II Lawsuit including the $413,322.25 sitting in the District Court's registry, MAC reminded Kim that "[i]f Judge Denton rules in our clients' favor, we may be facing a similar result that occurred in the Angelus I/Angelus II Litigation."[37]   MAC further advised Kim that "[i]f the jury finds in our clients' favor, findings of fact may be entered that are adverse to Mr. Gayler."[38]

In an email dated March 2, 2013, Kim responded and requested MAC to provide a copy of all substantive pleadings, Angelus IV's Operating Agreement and any deposition transcripts and videos associated with the Angelus IV Lawsuit.[39]   Copies of all requested documents and videos were delivered to Kim on April 24, 2013.[40]   Throughout the entire 13 day trial, however, Trustee Rosenberg and Kim were nowhere to be found and never made an appearance on behalf of Gayler's bankruptcy estate.

---

[34] See Settlement Opposition, Dkt No. 643 at Exhibit R.

[35] Id.

[36] Id. at Exhibit S.

[37] Id.

[38] Id.

[39] Id. at Exhibit T.

[40] Id. at Exhibit U.

MAC:06277-005 2249315_1 6/12/2014 3:47 PM

MARQUIS AURBACH COFFING
10001 Park Run Drive
Las Vegas, Nevada 89145
(702) 382-0711 FAX: (702) 382-5816

### b.     The Court's Decision.

A non-jury trial was held on various days between March 21 and April, 11, 2013.[41]  On June 20, 2013, the District Court entered its Findings of Fact, Conclusions of Law, granting the claims for quiet title and declaratory relief in part subject to a $161,324.74 equitable lien in favor of the Alper Defendants.[42]  In reaching its decision, the District Court specifically found that Gayler never contributed any amounts to Angelus IV, including Section 3.05 of the Operating Agreement requiring Gayler to make a capital contribution of $71,250 in exchange for a 15% membership interest.[43]  On Schedule B, however, Gayler claimed to own a 15% interest in Angelus IV.[44]

The parties subsequently reached a settlement where Angelus IV would pay a certain sum to rid its property of any interest claimed by the Alper Defendants and their successor-in-interest, First American Title Co.[45]  With full notice of the settlement, neither Gayler nor Trustee Rosenberg contributed any amount towards the settlement payment or provided any proof that Gayler actually owned a 15% membership interest.

### c.     The Removal of Gayler as Manager.

Upon saving the Angelus IV investment, a majority of the Non-Managing Members removed Gayler as manager for cause in accordance with the governing operating agreement.[46]  In his stead, Barry Moore, through his entity, was elected as the new Managing Member.[47]

---

[41] See Settlement Opposition, Dkt. No. 643 at Exhibit V.

[42] Id.

[43] Id. at p. 15, ¶ 7 and p. 17, ¶ 83; see also Settlement Opposition, Dkt. 643 at Exhibit W, Section 3.05.

[44] See Dkt. No. 105, Schedule B at p. 5.

[45] See Settlement Opposition, Dkt. No. 643 at Exhibit X.

[46] Id.

[47] Id.

MAC:06277-005 2249315_1 6/12/2014 3:47 PM

MARQUIS AURBACH COFFING
10001 Park Run Drive
Las Vegas, Nevada 89145
(702) 382-0711 FAX: (702) 382-5816

### 3.   The Dumol Lawsuit.

Pursuant to the Operating Agreement for Dumol, LLC ("Dumol"), the majority of the Non-Managing Members were vested with the power to remove and appoint any manager and approve or disapprove any indebtedness, encumbrance or sale of Dumol's real property.[48]

### a.   The Removal of Gayler as Manager.

As of January 2013, over 78% of the Non-Managing Members of Dumol removed Apan Wine as the Manager and appointed Mark A. Schnippel as President of Tioga, Inc. to serve as Manager.[49] Trustee Rosenberg was notified in this change of management; however, took the position that he was the Manager and not Mr. Schnippel.[50] Yet, Trustee Rosenberg advocated for approval of the Settlement where Gayler signed as the Managing Member of Dumol.[51]

### b.   The Unauthorized Loan and Listing to Sell the Dumol Property.

Disregarding the Non-Managing Members' rights, Gayler – while his bankruptcy proceedings were pending – violated the Operating Agreement by continuing to act as Manager for Dumol despite his removal, entering into an unauthorized $30,000 loan secured by Dumol's property.[52] It was later discovered that the delinquent taxes were paid off the same month as the unauthorized $30,000 loan through an escrow opened at Chicago Title. The MAC Creditors that are Non-Managing Members in Dumol do not know what happened to the money that remained after the $11,380.96 in back taxes were paid and suspect Gayler pocketed the funds.[53] On December 11, 2013, Dumol and some of its members filed a Complaint against Gayler, Apan Wine and Lewis Sonerholm, which primarily sought to invalidate the unauthorized $30,000

---

[48] See Settlement Opposition, Dkt. No. 643 at Exhibit Y, Sections 6.01(d), 7.01(f), 8.01(f), (g), (h) and (i).

[49] See Declaration of Mark Schnippel in Support of Opposition to Amended Motion to Approve Settlement Agreement ("Schnippel Declaration") filed on April 11, 2014, Dkt. No. 644 at ¶ 4 and Exhibit B thereto.

[50] Id. at ¶ 5.

[51] See Dkt. No. 516, Exhibit 1 at p. 12.

[52] See Settlement Opposition, Dkt. No. 643 at Exhibit Z.

[53] Id.

MAC:06277-005 2249315_1 6/12/2014 3:47 PM

MARQUIS AURBACH COFFING

10001 Park Run Drive
Las Vegas, Nevada 89145
(702) 382-0711 FAX: (702) 382-5816

loan.[54]  Trustee Rosenberg never took any action to rid Dumol's property of the unauthorized encumbrance.

In addition to entering into an unauthorized loan, Gayler also caused Dumol's property to be listed for sale for $800,000.[55]  Upon discovering the unauthorized listing, Mr. Schnippel in an email dated May 10, 2013, asked Trustee Rosenberg whether he listed the Dumol Property for sale.[56]  On May 13, 2013, Mr. Schnippel reminded Kim that the Dumol Property was still listed.[57]  The next day on May 14, 2013, Mr. Schnippel provided Kim with the recent comparable values in relation to the Dumol Property and reminded Kim that if Trustee Rosenberg was "going to list the property you will need a majority vote of the partners even though the Trustee is the Manager."[58]  Trustee Rosenberg never took any action to rectify the improper listing of Dumol's property.

### c.    The Settlement and Gayler's Claimed Membership Interest.

As a result of the litigation, Dumol subsequently entered into a settlement with Sonerholm.[59]  Dumol agreed to pay Sonerholm $11,566.85 in exchange for ridding its property of any interest claimed by Sonerholm.[60]  A majority of the Dumol members resolved that the settlement payment would be paid by the members on a pro rata basis.[61]

In a letter dated January 23, 2014, MAC requested Trustee Rosenberg (through Kim) to provide documentation confirming that Gayler actually owned the claimed 11.25% in Dumol.[62]

---

[54] See Settlement Opposition, Dkt. No. 643 at Exhibit Z.

[55] See Schnippel Declaration, Dkt. No. 644 at ¶ 7 and Exhibit D thereto.

[56] Id. at ¶ 8 and Exhibit E thereto

[57] Id. at ¶ 8 and Exhibit F thereto.

[58] Id. at ¶ 8 and Exhibit G thereto.

[59] See Settlement Opposition, Dkt. No. 643 at Exhibit AA.

[60] Id.

[61] Id.

[62] Id. at Exhibit BB.

MAC:06277-005 2249315_1 6/12/2014 3:47 PM

MARQUIS AURBACH COFFING
10001 Park Run Drive
Las Vegas, Nevada 89145
(702) 382-0711 FAX: (702) 382-5816

MARQUIS AURBACH COFFING
10001 Park Run Drive
Las Vegas, Nevada 89145
(702) 382-0711 FAX: (702) 382-5816

1   Specifically, MAC highlighted the provisions of the Operating Agreement requiring that Gayler

2   was to contribute no less than $200,000 in exchange for a membership interest in Dumol.

3   Neither Kim nor Trustee Rosenberg ever provided any of the requested documentation. In fact,

4   Dumol's 2006 tax return confirmed that Gayler failed to contribute any capital towards the

5   purchase of the property.[63]  Without any evidence showing that Gayler properly acquired any

6   interest in Dumol and advocating for approval of the Settlement, Trustee Rosenberg represented

7   to this Court that Gayler owned 11.25% interest.[64]

8                        **4.    The Trustee's Adversary Proceeding.**

9                        **a.    The Stipulation to Stay the Adversary Proceeding.**

10          In March 2013, Trustee Rosenberg entered into a stipulation with Gayler, Barrett and

11   Loerwald to stay the entire adversary proceeding based on Trustee Rosenberg's new appointment

12   and "to allow the parties to entertain settlement negotiations."[65]  The Court entered an Order to

13   stay the proceedings on March 13, 2013.[66]

14          At the time Trustee Rosenberg entered into this Stipulation, two motions for summary

15   judgment involving Gayler's fraudulent transfers and 23 Golden Sunray had already been

16   prepared and filed by MAC and were pending before this Court.[67]  Instead of seeing these

17   motions through, Trustee Rosenberg stayed the litigation and did not require Gayler to oppose

18   either dispositive request.

19                        **b.    The Corrupt Bargain – Trustee Rosenberg's Settlement.**

20          In or about April 2013 and without MAC's involvement, Trustee Rosenberg and Kim

21   entered into settlement negotiations with Gayler, Gayler's attorney (Jeff Sylvester), Barrett and

22

23

24   [63] See Schnippel Declaration, Dkt. No. 644 at ¶ 9 and Exhibit H thereto.

25   [64] See Dkt. No. 516, Exhibit 1 at Section 8.

26   [65] See Adv. Pro. 01410, Dkt. No. 347.

27   [66] See Adv. Pro. 01410, Dkt. No. 348.

28   [67] See Adv. Pro. 01410, Dkt. No. 338; see also Adv. Pro. 01410, Dkt. No. 317.

MAC:06277-005 2249315_1 6/12/2014 3:47 PM

MARQUIS AURBACH COFFING
10001 Park Run Drive
Las Vegas, Nevada 89145
(702) 382-0711 FAX: (702) 382-5816

1   Loerwald.[68]  Trustee Rosenberg and his counsel never once included any of the MAC Creditors

2   in settlement discussions.[69]  In fact, once Kim completed the draft of the proposed Settlement

3   agreement, Kim only emailed a copy to Gayler's attorneys, Spencer Judd and Sylvester, and

4   Barrett and Loerwald's attorney, Dennis Prince, requesting them to "[p]lease review it carefully

5   and let me know if you wish to make any changes."[70]  The Settlement Agreement was eventually

6   signed by Loerwald, Barrett, Sylvester and Gayler, individually and on behalf of 120 entities.[71]

7   As support for the Settlement, Trustee Rosenberg represented to this Court, under penalties of

8   perjury that he still possessed **no** knowledge of these matters and "it would [still] take time and

9   money for my new counsel to come up to speed with the complexities of this case."[72]

10          As part of the settlement, Gayler agreed to transfer all of his claimed managing and non-

11   managing interests including any distribution from each of the entities listed on Schedule B to

12   the Bankruptcy Estate.[73]  Moreover, Trustee Rosenberg agreed to distribute to Gayler $100,000,

13   which would be paid to Sylvester.[74]  Sylvester would also be assigned Gayler's claimed interests

14   in Dumol, including any sale proceeds.[75]  Trustee Rosenberg agreed to this premature transfer in

15   spite of the fact that Gayler may have never owned any interest in Angelus I, the Angelus II

16   Entities, Angelus IV and Dumol *pre*-bankruptcy.  Not to mention, Trustee Rosenberg was fully

17   aware that Gayler had been removed as Manager for all of these entities.

---

18   [68] See Declaration of Liane K. Wakayama, Esq. in Support of the Opposition to Trustee's Motion to
19   Disqualify Counsel for John D. O'Brien Profit Sharing Plan and Counsel for Barry R. Moore and Janie
20   Moore as Co-Trustees of the Bamm Living Trust dated July 16, 2003, Groth, LLC, Ch. Pichon, LLC, and
     Harlan, LLC through their Managing Member John O'Brien filed on August 21, 2013, Dkt. No. 545 at ¶
     12.

21   [69] Id.

22   [70] See Email Exchange dated May 1, 2013, a copy of which is attached hereto as **Exhibit B**.
23

24   [71] See Dkt. No. 516, Exhibit 1.

25   [72] See Dkt. No. 517 at ¶ 13.

26   [73] See Dkt. No. 516, Exhibit 1 at Section 3.

27   [74] Id. at Section 5(a).

28   [75] Id. at Exhibit 1 at Section 8.

MAC:06277-005 2249315_1 6/12/2014 3:47 PM

MARQUIS AURBACH COFFING
10001 Park Run Drive
Las Vegas, Nevada 89145
(702) 382-0711 FAX: (702) 382-5816

In addition to the premature transfers, Trustee Rosenberg agreed that Gayler shall retain ownership and possession of two homes located in Utah and any previously paid commissions to Gayler or his specific entities.[76] For any future commissions and development fees that Gayler may be entitled to receive pursuant to real estate contracts and/or operating agreements, Trustee Rosenberg agreed to an equal split, with Gayler receiving 50% and Trustee Rosenberg receiving 50%.[77]    With full knowledge that Gayler has been indicted for fraud, Trustee Rosenberg additionally agreed to grant Gayler a complete discharge and any claims asserted in the Trustee's Adversary Proceeding against Gayler, Barrett and Loerwald would be forever dismissed.[78] Trustee Rosenberg agreed to Gayler's discharge even though he testified under oath that "I readily acknowledge [Gayler] purposefully acted to fraudulently transfer his assets out of the Estate."[79]

On or about June 3, 2014, the newly appointed Chapter 7 Trustee Victoria L. Nelson filed a Notice withdrawing Trustee Rosenberg's request for approval of the Settlement.[80]

### 5.    Trustee Rosenberg and Kim Provided Zero Benefit to the Estate.

Since Trustee Rosenberg's appointment in December 2012 and up until his resignation in April 2014, Trustee Rosenberg did nothing to benefit Gayler's Bankruptcy Estate.  Through his counsel, Kim, Trustee Rosenberg did not engage in any discovery, did not prepare or file a single substantive motion based on the merits of the Adversary Proceeding and failed to bring even one asset into Gayler's Bankruptcy Estate.  All of the money and assets brought into the Bankruptcy Estate were the result of MAC's laboring efforts as Special Counsel.  As confirmed in Kim's Fee

---

[76] See Dkt. No. 516, at Section 7(a).

[77] Id. at Exhibit 1 at Section 6.

[78] Id. at Sections 9 & 10.

[79] See Supplemental Declaration of David A. Rosenberg in Response to: Supplemental Declaration In Support Of Marquis Aurbach Coffings Opposition To Trustee's Motion to Disqualify Counsel for John D. O'Brien Profit Sharing Plan and Counsel for Barry R. Moore and Janie Moore as Co-Trustees of The Bamm Living Trust Dated July 16, 2003, Groth, LLC, Ch. Pichon, LLC, and Harlan, LLC through their Managing Member John O'Brien and in Response to the Trustee's Reply Brief filed on September 2, 2013, Dkt. No. 562 at ¶ 14.

[80] See Dkt. No. 716.

MAC:06277-005 2249315_1 6/12/2014 3:47 PM

MARQUIS AURBACH COFFING
10001 Park Run Drive
Las Vegas, Nevada 89145
(702) 382-0711 FAX: (702) 382-5816

1    Application, the only work Kim performed on behalf of Trustee Rosenberg was to try to

2    disqualify MAC[81] in order to push through the Settlement reached with Gayler, Sylvester, Barrett

3    and Loerwald – the same Settlement withdrawn by Trustee Rosenberg's successor.

4    **III.    LEGAL ARGUMENT.**

5         Kim's request for a $74,612.19 pay day should be denied. "In determining the amount of

6    reasonable compensation to be awarded to [a] professional person, the court shall consider the

7    nature, the extent, and the value of such services, taking into account all relevant factors." 11

8    U.S.C. § 330(a)(3).  The factor relevant in this case includes "whether the services were

9    necessary to the administration of, or beneficial at the time at which the service was rendered

10    toward the completion of [the] case." 11 USCA § 330(a)(3)(C).  11 U.S.C. § 330(a)(4)(A)(ii),

11    however, carves out a specific mandate that the court **shall not** allow compensation for services

12    that were not:

13                        (I) reasonably likely to benefit the debtor's estate; or

14                        (II) necessary to the administration of the case.

15    Based on § 330(a)(4)(A), this Court should award nothing to Kim for compensation because his

16    services on behalf of Trustee Rosenberg: (A) failed to benefit the Bankruptcy Estate; and (B)

17    were not necessary to the administration of the Estate.

18    **A.    TRUSTEE ROSENBERG AND KIM PROVIDED NO BENEFIT TO THE
         ESTATE.**

19
20         A professional's services are not compensable if they were not "reasonably likely to

21    benefit the debtor's estate." See 11 U.S.C. § 330(a)(4)(A)(ii)(I); see also In re Mednet, 251 B.R.

22    103, 108 (B.A.P. 9th Cir. 2000).  To justify an award of fees, Kim attempts to convince this

23    Court that "a settlement with Gayler was likely to benefit the estate."[82]  According to the

24    oppositions and objections filed by a large number of Gayler's creditors, the IRS and the U.S.

25    Trustee's office, Trustee Rosenberg's proposed Settlement however failed to provide any benefit

26    to the Estate.  Instead, the Settlement served to benefit Gayler, Gayler's attorney (Sylvester) and

─────────────────────

[81] See Dkt. No. 687.

27
[82] Id. at p. 18.
28

MAC:06277-005 2249315_1 6/12/2014 3:47 PM

MARQUIS AURBACH COFFING
10001 Park Run Drive
Las Vegas, Nevada 89145
(702) 382-0711 FAX: (702) 382-5816

1  Gayler's co-conspirators, Barrett and Loerwald.  Not only would Gayler receive a complete

2  discharge despite three non-dischargeable judgments entered against him for actual fraud

3  pursuant to 11 U.S.C. § 523(a)(2)(A) and while under criminal indictment by the Nevada

4  Attorney General, but Gayler would also receive two houses in Utah and a stream of future

5  income.  Gayler's attorney, Sylvester, would pocket $100,000 for Gayler's unpaid legal bill in

6  addition to Gayler's claimed interest in Dumol – another entity that Gayler's investors had to

7  recently save from a possible foreclosure due to Gayler entering into an unauthorized loan and

8  walking away with upwards of close to $19,000 in cash.  With full knowledge of the Dumol

9  lawsuit, Trustee Rosenberg did nothing to aid the creditors – the very ones he owed fiduciary

10  duties to, but ignored.  See In re Martin, 91 F.3d 389, 394 (3rd Cir. 1996) (citing Commodity

11  Futures Trading Comm'n v. Weintraub, 471 U.S. 343, 354-55 (1985)).  Equally appalling,

12  Trustee Rosenberg and Kim boast that they "spent a significant amount of time reviewing

13  documents and pleadings filed in Gayler's bankruptcy case" that contained a roadmap of the

14  conspiracy engaged in by Gayler, Barrett and Loerwald to successfully transfer over $6.2 Million

15  outside of Gayler's bankruptcy; yet, the Settlement gave Barrett and Loerwald a completely free

16  walk.

17  As part of this corrupt bargain, Kim and Trustee Rosenberg sought to line their own

18  pockets with Chapter 7 professional fees even though they did nothing to discover or litigate the

19  merits of the Adversary Proceeding.  Specifically, labeled as "Asset Analysis and Recovery,"

20  Kim seeks $15,015.00 in compensation[83] even though not one 2004 examination was conducted,

21  not one subpoena was issued, not one dispositive motion was filed and not one asset or dime was

22  recovered for the Estate.  Trustee Rosenberg failed to even see the already prepared (by MAC)

23  and pending summary judgment requests through by forcing Gayler to at least oppose the

24  fraudulent transfer and alter ego requests.  All litigation was instead stayed to work out a deal

25  with an indicted fraud, his counsel and his co-conspirators.  Meanwhile, when it came to saving

26  assets that Gayler claimed an interest in from possible foreclosures (e.g., Angelus IV and

---

[83] See Dkt. No. 687 at p. 14, ¶ 65.

MAC:06277-005 2249315_1 6/12/2014 3:47 PM

Dumol), Trustee Rosenberg and Kim did not lift a finger. Waiting until MAC creditors once again saved investment after investment, Trustee Rosenberg then tried to swoop in and lay claim to those assets through his Settlement for the primary benefit of Gayler and Sylvester.

It speaks volumes that shortly after all of the objections were filed to the Settlement Trustee Rosenberg submitted his resignation and his successor, Trustee Nelson, immediately withdrew approval of the negotiated deal. Although Trustee Rosenberg and Kim continue to try and point blame at MAC, the court record confirms that, as Special Counsel, MAC never requested the Court for approval of a settlement that provided no benefit to the creditors. The lion's share of Kim's requested compensation stems from the highly objected to and later withdrawn Settlement, of which by its very terms expose that none of Kim's work served to "reasonably likely benefit" the Estate. In accordance with § 330(a)(4)(A)(ii)(I), this Court should therefore deny all compensation to Kim.

### B. MOVING TO DISQUALIFY MAC TO APPROVE A DEBTOR-FRIENDLY SETTLEMENT WAS NOT NECESSARY TO THE ADMINISTRATION OF THE ESTATE.

Pursuant to Kim's Agreement for Legal Services, Trustee Rosenberg retained Kim, as his general counsel, to perform the following services:

(a) To advise the Client of his rights and obligations and performance of his duties during the administration of this bankruptcy case;

(b) To represent the Client in all proceedings before this Court and any other court, which assumes jurisdiction of a matter related to or arising in this Bankruptcy Case;

(c) To assist the Client in the performance of his duties set forth in 11 U.S.C. § 704;

(d) To assist the Client in developing legal positions and strategies with respect to all facets of these proceedings; and

(e) To review and counsel regarding any issues arising from potential conflicts between special counsel and the estate; and

(f) To provide such other counsel and advice as the Client may require in connection with this bankruptcy case.

Contrary to the broad services agreed to be performed, Kim focused solely on getting MAC disqualified in hopes of getting the Settlement approved. In fact, Trustee Rosenberg even urged

MARQUIS AURBACH COFFING
10001 Park Run Drive
Las Vegas, Nevada 89145
(702) 382-0711 FAX: (702) 382-5816

MAC:06277-005 2249315_1 6/12/2014 3:47 PM

1    this Court to rule on MAC's disqualification on an order shortening time "to prevent MAC and

2    Larson from filing oppositions" to the Settlement,[84] a settlement designed to potentially line the

3    pockets of Gayler, Sylvester, Trustee Rosenberg and Kim with the money generated by the MAC

4    Creditors as a result of years of costly, heated and time consuming litigation. According to the

5    Application, Kim seeks $49,000 in compensation as a result of this "case administration."[85]

6         Trustee's counsel is only entitled to fees for a disqualification motion if, at the time of

7    filing the motion, counsel reasonably thought that "the motion was reasonably likely to benefit

8    Debtor's estate through a significant monetary recovery." In re Mohsen, 473 B.R. 779, 791

9    (Bankr. N.D. Cal. 2012) aff'd, 506 B.R. 96 (N.D. Cal. 2013). In an attempt to prematurely bring

10   the $413,322.25 sitting in the District Court's registry into the Estate, Trustee Rosenberg wanted

11   MAC disqualified. Indeed, from the time Trustee Rosenberg first requested this Court to

12   approve the Settlement and over the past year, Trustee Rosenberg tried to convince this Court

13   and later the Bankruptcy Appellate Panel that the disqualification of MAC "could materially

14   advance resolution of the Adversary Action and this very complicated bankruptcy case."[86]

15   Without representing its clients, MAC never had standing on its own to litigate the rightful

16   ownership to the $413,322.25. The requisite standing always vested in the MAC Creditors who

17   hold membership interests in Angelus I and Angelus II. In other words, the MAC Creditors'

18   rights to advocate against the Settlement to ensure there was not a premature transfer of the

19   $413,322.25 would remain intact even if MAC was no longer their counsel. The MAC Creditors

20   enjoyed the option of retaining new counsel to get up to speed with the underlying proceedings

21   or many of the MAC Creditors as licensed Nevada attorneys could decide to oppose the

22   Settlement and litigate the ownership to the funds held by the District Court on their own. In his

23   request for approval of the Settlement, Kim represented to the Court that "the Trustee is

24   informed and believes that further litigation may ensue regarding this $413,322.25, as the

---

[84] See Dkt. Nos. 526 & 527.

[85] See Dkt. No. 687 at p. 13, ¶ 60.

[86] See Dkt. No. 598 at 12-13.

MAC:06277-005 2249315_1 6/12/2014 3:47 PM

MARQUIS AURBACH COFFING
10001 Park Run Drive
Las Vegas, Nevada 89145
(702) 382-0711 FAX: (702) 382-5816

Angelus and Angelus II members may argue that Gayler's prior actions resulted in a forfeiture of his interest[.]"[87]  Moving to disqualify MAC was thus not necessary to the administration of the Estate and only caused significant delays as there was never a guarantee that the Estate would recover any significant amount of money – a fact acknowledged by Kim.  Coupled with the fact that the Settlement was not necessary to the administration of the case as it provided no benefit to the creditors and only served to award the wrongful conduct of Gayler, Barrett and Loerwald as analyzed above, all of Kim's requested compensation should be denied as mandated by § 330(a)(4)(A)(ii)(II).

## IV.  **CONCLUSION.**

Pursuant to 11 U.S.C. § 330(a)(4)(A)(ii)(I)-(II), this Court shall not allow Kim any compensation because Kim's services were not aimed to reasonably likely benefit Gayler's Estate, and Kim failed to take any action that was necessary to the administration of the case.  Over the course of fifteen months, Kim only tried to disqualify MAC in hopes of pushing through a corrupt Settlement that granted Gayler, an indicted and determined fraud, a complete discharge, gave Gayler valuable assets (houses in Utah), paid Gayler's delinquent legal bill to Sylvester and turned a blind eye to Barrett and Loerwald allowing them both a free walk.  Respectfully, this Court should deny Kim's request for $74,612.19 in compensation and award Kim nothing.

Dated this 12th day of June, 2014.

MARQUIS AURBACH COFFING

By /s/ Liane K. Wakayama
    Dale A. Hayes, Esq.
    Nevada Bar No. 3430
    Liane K. Wakayama, Esq.
    Nevada Bar No. 11313
    10001 Park Run Drive
    Las Vegas, Nevada 89145
    Attorneys for MAC Creditors

MARQUIS AURBACH COFFING
10001 Park Run Drive
Las Vegas, Nevada 89145
(702) 382-0711 FAX: (702) 382-5816

---

[87] See Dkt. No. 516 at pg. 4, ¶7.

MAC:06277-005 2249315_1 6/12/2014 3:47 PM

Exhibit A

**Marquis Aurbach Coffing**
Albert G. Marquis, Esq.
Nevada Bar No. 1919
10001 Park Run Drive
Las Vegas, Nevada 89145
Telephone: (702) 382-0711
Facsimile: (702) 382-5816
amarquis@maclaw.com
   Attorneys for John D. O'Brien
     Profit Sharing Plan

E-Filed: <u>September 3, 2013</u>

## UNITED STATES BANKRUPTCY COURT

## FOR THE DISTRICT OF NEVADA

| In Re: | Case No.: BK-S-09-31603-MKN |
|---|---|
| WILLIAM GAYLER, | Chapter: 7 |
| Debtor. | Hearing Date: September 4, 2013 |
| | Hearing Time: 3:00 p.m. |

<u>**SECOND DECLARATION OF PHILLIP S. AURBACH**</u>

    I, Phil Aurbach, am submitting the following facts in support of Marquis Aurbach Coffing's (Maclaw's[1]) Opposition to Motion to Disqualify. I have personal knowledge, unless stated otherwise, and am competent to testify to the following facts:

## I.    <u>INTRODUCTION</u>

    1.    <u>Background.</u> Mr. Gayler made a lot of money creating entities[2] (usually limited liability companies ("LLCs")), buying real property for the various LLCs, managing and controlling the LLCs, and, as manager, deciding when to sell the property (usually at a profit) subject to the requisite member approval. Mr. Gayler would own a percentage of each LLC, sometimes individually or through another entity. I believe I had invested with Mr. Gayler, in three or 4 of limited liability companies that Gayler manages: Polyrus, LLC 5% (which may own some of Sunset III); Sunset 8, LLC 2.5%; and Sunset V, LLC 20%. Mr. Gayler's business plan worked well until the real estate downturn. Then, in 2008 and 2009, creditors started suing

---

[1] Maclaw has approximately 40 lawyers located in two buildings in Las Vegas.

[2] On June 29, 2010, Gayler listed 69 entities on his Schedule B (Dkt# 105).

MAC:05505-025 2061210_1 9/3/2013 3:43 PM

MARQUIS AURBACH COFFING
10001 Park Run Drive
Las Vegas, Nevada 89145
(702) 382-0711 FAX: (702) 382-5816

MARQUIS AURBACH COFFING
10001 Park Run Drive
Las Vegas, Nevada 89145
(702) 382-0711 FAX: (702) 382-5816

Gayler.[3]  According to his 2004 examination, Gayler saw the downturn in the economy coming in 2008 and 2009.[4]

2.    Mr. Hayes, another shareholder at Maclaw, had an attorney-client relationship with several creditors/investors of Mr. Gayler, John O'Brien, Don Campbell and Colby Williams (all attorneys) as well as Barry Moore and a few others (referred to herein as "Maclaw Creditors" of Mr. Gayler).  Dale Hayes represented these Maclaw Creditors in a state court lawsuit where he was attempting to invalidate unauthorized loans entered into by Mr. Gayler and stop foreclosures pending against property owned by CH Angelus, LLC ("Angelus I"), CH Angelus II, LLC ("Angelus II") and Ch. Angelus IV, LLC ("Angelus IV").

3.    On November 16, 2009[5] an involuntary Bankruptcy was filed against Mr. Gayler.

4.    One of Dale Hayes' clients, John O'Brien, who I had known since 1977 when I started practicing law, passed me in the hallway of one of Maclaw's buildings and told me that Mr. Gayler was about to receive over $100,000, which he believed were assets of the estate, and asked if there was any way I could contact Mr. Lisowski to get that money for the bankruptcy estate instead of allowing it to go to Mr. Gayler.  I contacted Mr. Lisowski, and he suggested I get appointed as Special Counsel to help get assets into the bankruptcy estate.

5.    In April 2011, I applied and on May 23, 2011,[6] I was appointed Special Counsel to James Lisowski, (former) trustee of the above-captioned bankruptcy estate, to recover, preserve, and protect assets of the bankruptcy estate (the "Estate") for a 1/3 contingency fee.[7]

---

[3] The Involuntary Bankruptcy Petition was filed November 17, 2009 (Dkt# 1), and lists three judgment creditors of Gayler totaling $819,170.

[4] See **Exhibit 1** (October 3, 2011 2004 Examination of William Gayler) at 26–30.

[5] Dkt# 1.

[6] Dkt# 205.

[7] My duties were to assist and advise the trustee regarding potential fraudulent conveyance and preference actions, including but not limited to preparing adversary complaints, conduct discovery, prepare motions, provide support services including 1) instituting or defending adversary proceeding or contested matters in which the Trustee is a party, 2) to assist in recovery, protecting and preserving assets for the estate, and to advise the trustee with other necessary legal services. See Doc 192 Application entered 4/14/11 and Order Doc 205 entered 5/23/11.

MAC:05505-025 2061210_1.docx 9/3/2013 3:16 PM

1   When I applied to be Special Counsel in May 2011, I did not perceive a conflict since I was

2   going after assets owned by Gayler, individually, pre-bankruptcy, usually fraudulent transfers, to

3   bring them into the estate.  On the other hand, the Maclaw creditors were suing to invalidate

4   unauthorized loans entered into by Gayler as Managing Member on behalf of non-bankrupt

5   entities, Angelus I, Angelus II and Angelus IV.  Part of the purpose of the Maclaw creditors'

6   lawsuits was to stop foreclosures relating to fraudulent deeds of trust against property owned by

7   Angelus I, Angelus II and Angelus IV.  These entities were not owned by Mr. Gayler.  Mr.

8   Gayler only claimed to hold membership interests in these entities.  If Angelus I, Angelus II and

9   Angelus IV were successful in saving the investment property, Gayler's membership interests

10  would not be wiped out through foreclosure.  If the Maclaw creditors were not successful, Mr.

11  Gayler would have no ownership interest to claim in Angelus I, Angelus II, or Angelus IV

12  because the investment properties would be gone.  Thus, the interests of the Maclaw creditors

13  and the bankruptcy estate were aligned – save the investment properties.  There was no conflict.

14          6.      Orderly Administration of the Estate.  Mr. Rosenberg claims that I have prevented

15  an orderly administration of the Gayler estate.  This is incorrect.  Mr. Rosenberg ignores the fact

16  that all of the entities that Gayler managed were owned by TGF Holdings.  None of them are part

17  of Mr. Gayler's bankruptcy estate.  Mr. Rosenberg is the trustee of CH Angelus II which is a

18  creditor of the Gayler estate in which he is the trustee as well.  He conveniently separates those

19  two for purposes of his administration and fiduciary duties to both sets of creditors, but forgets

20  that Sunset V as well as the CH Angelus entities are not assets of Mr. Gayler.

21          7.      Sunset V, LLC

| Paragraph 8 -- Rosenberg's Declaration. | My response. |
|---|---|
| Mr. Rosenberg states in his August 28, 2013 declaration Dkt# 556 that in our first meeting I "let it slip" that I was an investor in one of the Gayler entities. | I told Mr. Rosenberg this fact.  "Let it slip" sounds like I was hiding something.  There was nothing to hide. |

MARQUIS AURBACH COFFING
10001 Park Run Drive
Las Vegas, Nevada 89145
(702) 382-0711 FAX: (702) 382-5816

MAC:05505-025 2061210_1.docx 9/3/2013 3:16 PM

**MARQUIS AURBACH COFFING**
10001 Park Run Drive
Las Vegas, Nevada 89145
(702) 382-0711 FAX: (702) 382-5816

| | |
|---|---|
| Rosenberg went on to say that he didn't understand how I could represent the estate "when he had a personal pecuniary interest in the outcome of some of the very same property disputes that we were litigating in bankruptcy." | Sunset V was not a Gayler bankruptcy asset. Gayler's approximate 10% interest in Sunset V had been transferred to TGF Holdings, a limited Partnership. Sunset V owned real property. When it was sold, the net proceeds were distributed to the owners based upon their ownership regardless of Gayler's bankruptcy. |
| Finally, Mr. Rosenberg said that I was defensive and implied that because I was on a contingency, the estate was not being harmed. | Mr. Rosenberg is mistaken. I was not defensive, and didn't slough off his comment because I was on a contingency. However, I could not believe his attack on me and my firm when I worked so hard to recover almost $700,000 in assets for the estate. |

### 8.    The Settlement Agreement

| **Paragraphs 9 & 10 — Rosenberg Declaration.** | **My response.** |
|---|---|
| Mr. Rosenberg states in his August 28, 2013 declaration Dkt# 556 that "According to Aurbach, the Former Trustee did not see much value in the case because the largest creditor was the IRS and there was unlikely to be any distribution to general unsecured creditors. Aurbach also indicated that the former Trustee had, for lack of a better word, abdicated control and decision making authority for the case to him." | Although the IRS is the largest creditor, I did not say these things to Rosenberg. Mr. Lisowski knew that I had experience in pre judgment remedies and fraudulent transfers, so he gave me much responsibility to track down assets. It is not correct that Lisowski "abdicated control and decision making" nor did Lisowski give me complete authority regarding settlement.<br><br>    Mr. Lisowski was aware of and was involved in settlement discussions. |

MAC:05505-025 2061210_1.docx 9/3/2013 3:16 PM

**MARQUIS AURBACH COFFING**
10001 Park Run Drive
Las Vegas, Nevada 89145
(702) 382-0711 FAX: (702) 382-5816

| | |
|---|---|
| Mr. Rosenberg states that the two sides were within $20,000 of a mutually agreeable number that could be paid to Gayler in cash as part of the settlement; yet, Aurbach told me he unilaterally ended settlement discussions | When the creditors unanimously rejected the settlement proposal, I went back into the litigation mode preparing several motions for summary judgment.    I did not unilaterally end settlement discussions. |
| Mr. Aurbach had an intense emotional dislike for Gayler and his unwillingness to accept blame for a series of poor decisions by Maclaw that carried excessive legal costs and seemed to only result in negative rulings affecting the recovery of assets for the estate. | My emotional state relative to Mr. Gayler was disbelief.    I could not believe that someone could get away with stealing millions of dollars from a bankruptcy estate and get away with it.    The negative rulings mentioned by Mr. Rosenberg were attempts to shortcut the proceedings by bringing Mr. Gayler's fraudulent transfers to the Court by motion instead of by adversary proceedings.    This was corrected.    There were never any excessive legal costs to the estate. |

### 9.    CH Angelus I and CH Angelus II

| Paragraphs    13-18—Rosenberg Declaration. | My response. |
|---|---|
| Mr. Rosenberg states in his August 28, 2013 declaration Dkt# 556 that he asked Jessica Goodey, my associate, what participation the bankruptcy estate had in the state court proceedings to protect the bankruptcy estate's interest in the proceeds because Maclaw had not filed anything in state court to stay | The CH Angelus I and CH Angelus II lawsuits in state court were intended to halt foreclosures under fraudulent deeds of trust and to declare the unauthorized loans entered into by Mr. Gayler null and void.    On behalf of the Maclaw creditors, Dale Hayes and Liane Wakayama were successful.    Mr. Gayler's membership interests in these entities were not part of the bankruptcy estate.    Additionally, Mr. |

MAC:05505-025 2061210_1.docx 9/3/2013 3:16 PM

MARQUIS AURBACH COFFING
10001 Park Run Drive
Las Vegas, Nevada 89145
(702) 382-0711 FAX: (702) 382-5816

| | |
|---|---|
| the state court proceedings. | Gayler transferred his membership interests to TGF Holdings limit Partnership which was not an asset of the bankruptcy estate.  Not only didn't the Trustee have standing to intervene in the state court proceedings, there was no reason for the Trustee to get involved  and take a position adverse to the Maclaw creditors as the goal was to save the investments.  Any interest that Mr. Gayler owned pre-bankruptcy in these entities needs to be resolved in the future. |
| On November 14, 2012 Dale Hayes and Liane Wakayama filed a Motion to Lift Stay on behalf of Maclaw creditors to allow the state court to strip Gayler of any membership interests he owns in CH Angelus or CH Angelus II.<br><br>Mr. Aurbach did not oppose that motion.  I believe this was part of a larger pattern being orchestrated by Maclaw to selectively remove assets from the estate and liquidate them outside of bankruptcy. | It is true that the Motion to Lift Stay has yet to be decided.  As Special Counsel, I did not oppose the Motion because it was in the Former Trustee's business judgment that the Maclaw creditors should bear the expense and time of arbitrating the issue. This created a potential conflict, but there was no actual conflict. |

**10.    Benefit to Maclaw Creditors**

| | |
|---|---|
| **Paragraphs 19-22—Rosenberg Declaration.** | **My response.** |
| Mr. Rosenberg states in his August | The generalized waste of time described by Mr. |

MAC:05505-025 2061210_1.docx 9/3/2013 3:16 PM

**MARQUIS AURBACH COFFING**
10001 Park Run Drive
Las Vegas, Nevada 89145
(702) 382-0711 FAX: (702) 382-5816

| | |
|---|---|
| 28, 2013 declaration Dkt# 556 that an enormous amount of time and energy had been wasted by Maclaw and this waste of time gave Maclaw an excuse to go after real assets—the assets Maclaw Creditors were pursuing in state court. | Rosenberg was:<br><br>1) using 2004 exams to obtain thousands of bank and tax documents to follow Mr. Gayler's cash which bypassed the bankruptcy estate, and<br><br>2) several motions which tried to get Mr. Gayler's assets into the bankruptcy estate without the need of an adversary proceeding.  Although I thought a motion was proper, this court thought such action should be brought by an adversary proceeding, which we drafted and filed.<br><br>3) each of Mr. Gayler's transactions was tremendously complex and time-consuming.<br><br>  In my opinion Mr. Rosenberg has no basis for claiming that I wasted any amount of time.  In any event, it makes no sense to say that my efforts somehow gave Maclaw Creditors an "excuse" to go after "the real assets" – whatever that means. |
| Mr. Rosenberg makes many generalizations that Maclaw made numerous mistakes, arguments had been overlooked, prejudicial errors were made and he concludes that these errors were intentional. | I did NOT make mistakes to intentionally benefit Maclaw Creditors.  I was trying to find where Mr. Gayler hid millions of dollars.  For example, his custom home went into foreclosure before his bankruptcy then, after a friendly foreclosure, it sold after the bankruptcy for $7 Million.  The home was in 23 Golden Sunray, LLC which was owned by TGF Holding. We tried to pursue these claims, but again ran into problems because neither Mr. Gayler nor the estate owned 23 |

MAC:05505-025 2061210_1.docx 9/3/2013 3:16 PM

MARQUIS AURBACH COFFING
10001 Park Run Drive
Las Vegas, Nevada 89145
(702) 382-0711 FAX: (702) 382-5816

| | |
|---|---|
| | Golden Sunray, LLC which held the claims for relief. |

**11.  Benefit to Maclaw Creditors**

| Paragraphs 23-29—Rosenberg Declaration. | My response. |
|---|---|
| Mr. Rosenberg claims he "layed his cards on the table" by telling all of the attorneys his concerns that the estate had been compromised by the lack of representation in state court. Additionally, "had I known that some of the attorneys in the room would someday be adverse to the estate, I would not have talked so openly." | Two days after his appointment, Mr. Rosenberg met with Ms. Goodey and me on December 14, 2012. During this meeting, Mr. Rosenberg brought to my attention that he knew Mr. Hayes represented some of Gayler's creditors. Therefore, prior to the February 4, 2013 meeting, Mr. Rosenberg knew that some attorneys at MAC represented creditors. At the February 4, 2013 meeting, the communications were a one-way street where MAC attorneys were bringing Mr. Rosenberg and his counsel, Mr. Kim, up to speed. Everything discussed in relation to the $413,000 is a matter of public record. Certainly Mr. Rosenberg and I did not discuss any strategies regarding the future distribution of those funds. |
| Rosenberg says that he demanded that Maclaw disclose every attorney who had any relationship with Gayler, and that Aurbach did not appreciate my tone and told me that Maclaw would quit. "I thought Aurbach was overreacting and his behavior did not | I did have an attitude toward Mr. Rosenberg. We just couldn't have a rational discussion about the law and facts. Mr. Rosenberg would continuously overlook the almost $700,000 I had sequestered and brought into the estate, and he instead claimed that we should be taking action that had no basis in law. Plus, Mr. Rosenberg had hired |

MAC:05505-025 2061210_1.docx 9/3/2013 3:16 PM

MARQUIS AURBACH COFFING
10001 Park Run Drive
Las Vegas, Nevada 89145
(702) 382-0711 FAX: (702) 382-5816

| give me confidence that Maclaw was competent." | Howard Kim as his attorney. I did not believe I could represent Mr. Rosenberg because of our divergent views of who the bad guy was and how the litigation should be handled. I thought Gayler's fraud should be the focus. Mr. Rosenberg thought Maclaw and I should be the focus. Since his appointment, Mr. Rosenberg was further focused on settling with Mr. Gayler no matter if the creditors approve the settlement terms or not. |

### 12.    Settlement

| Paragraphs 30-38—Rosenberg Declaration. | My response. |
|---|---|
| Mr. Rosenberg states in his August 28, 2013 declaration Dkt# 556 that Mr. Kim asked Mr. Hayes how he could be serving two masters. | Mr. Hayes had been representing the Maclaw Creditors for years attempting to stop the foreclosures, to rectify the harm caused by Gayler's self-dealing and fraud, and to save the investments. It took a slide show to explain how Gayler committed his fraud on the Maclaw creditors with undisclosed deeds of trust and how he hid assets from his bankruptcy by fraudulent transfers of over 40 membership interests. There were not two masters. I was going after assets that should be assets of the estate. Mr. Hayes was attempting to stop foreclosures against entities and save assets, which were not part of the bankruptcy estate. |

MAC:05505-025 2061210_1.docx 9/3/2013 3:16 PM

| | |
|---|---|
| Mr. Rosenberg claims that at that February meeting he first learned that **Gayler had a right to proceeds** coming from settlement of the fraudulent deed of trust on CH Angelus I and CH Angelus II property. | Mr. Rosenberg could not understand that Mr. Gayler had no direct right to any of these proceeds, nor did the bankruptcy estate have standing in the state court action. Mr. Rosenberg decided the law and facts shouldn't get into the way of his attack on the Maclaw attorneys. I think the only way to understand this is from the summary and diagram below: |

a.    <u>**CH Angelus**</u> (referred to as CH Angelus I) has many investors and it is entitled to $582,000[8] from the title insurance settlement.  Gayler claims to own a 50% membership interest even though he walked away with $1.6MM of the unauthorized $2.0MM loan proceeds.  Thus, $291,000 of the settlement proceeds is in dispute.  Barrett owned 30% ($175,000).  Loerwald owned 10% ($58,000) and the Gayler Trust owned 10% ($58,000).  The issues to be litigated in state court are: i) who owns Barrett and Loerwald's 40% because those interests are related to Gayler's fraud upon Ch Angelus I; and ii) who gets the distribution to Gayler's trust (which has been transferred to TGF Holdings).



---

[8] I am using round numbers for ease of reference.

MAC:05505-025 2061210_1.docx 9/3/2013 3:16 PM

MARQUIS AURBACH COFFING
10001 Park Run Drive
Las Vegas, Nevada 89145
(702) 382-0711 FAX: (702) 382-5816

b.  **CH Angelus II** has many investors and it is entitled to $420,000[9] from the title insurance settlement.  CH Pichon, Harlan and Groth are separate entities in which Mr. Gayler only owned a small percentage.  He transferred his ownership of those entities as well as the Gayler Trust to TGF Holdings.

c.  The state court litigation of the ownership rights and distribution of $413,000 in proceeds is at issue and right now.  Nothing can happen until Judge Nakagawa decides the Motion to Lift Stay.  I have not been involved in the state court litigation that gave rise to the title insurance money since the estate has no interest other than if the Trustee were to win the fraudulent transfer litigation against TGF Holdings.

Dated this 3rd day of September, 2013.

Phillip S. Aurbach, Esq.

MARQUIS AURBACH COFFING
10001 Park Run Drive
Las Vegas, Nevada 89145
(702) 382-0711 FAX: (702) 382-5816

---

[9] I am using round numbers for ease of reference.

MAC:05505-025 2061210_1.docx 9/3/2013 3:16 PM

# Exhibit B

**howard@hkimlaw.com**

| | |
|---|---|
| From: | spencer@sjuddlaw.com |
| Sent: | Wednesday, May 01, 2013 11:27 AM |
| To: | howard@hkimlaw.com; Jeff Sylvester; D. Prince |
| Cc: | katherine@hkimlaw.com; jackie@hkimlaw.com |
| Subject: | Re: Settlement Agreement_Gayler v4 (4).docx |

I will be at the hearing today. I haven't discussed the proposed agreement with Gayler yet – I think Jeff may need to do that whereas he is counsel for the personal case. We can discuss further at the hearing this afternoon.

Spencer M. Judd, Esq.
9420 Mountainair Ave.
Las Vegas, NV 89134
Phone (702) 606-4357
Fax (702) 360-4769
Spencer@SJuddLaw.com



L A W

THIS EMAIL MESSAGE AND ANY ATTACHMENTS ARE CONFIDENTIAL AND INTENDED ONLY FOR THE USE OF THE INDIVIDUAL OR ENTITY TO WHICH IT IS ADDRESSED AND MAY CONTAIN INFORMATION THAT IS PRIVILEGED, CONFIDENTIAL AND EXEMPT FROM DISCLOSURE UNDER APPLICABLE LAW. Any unauthorized review, use, copying, disclosure or distribution of any information contained in or attached to this communication is STRICTLY PROHIBITED. If you have received this communication in error, or are not the named recipient, please immediately notify the sender by email by "reply to sender only" and delete this message and any attached documents from your computer . Receipt by anyone other than the intended recipient(s) is not a waiver of confidentiality and/or any legal privilege. Thank you.

From: "howard@hkimlaw.com" <howard@hkimlaw.com>
Date: Wednesday, May 1, 2013 11:03 AM
To: SPENCER JUDD <spencer@sjuddlaw.com>, Jeff Sylvester <Jeff@SylvesterPolednak.com>, "D. Prince" <dprince@princekeating.com>
Cc: "katherine@hkimlaw.com" <katherine@hkimlaw.com>, "jackie@hkimlaw.com" <jackie@hkimlaw.com>
Subject: Settlement Agreement_Gayler v4 (4).docx

Counsel:

Attached please find a draft of the proposed settlement agreement to dismiss the adversary. Please review it carefully and let me know if you wish to make any changes.
As you may know, there is a status check hearing set for today at 2:30 pm front of Judge Nakagawa. I would like to represent to the court that we are very close to executing the settlement agreement.
I spoke with Zach Larsen today and he will be asking the court to set an evidentiary hearing to determine whether Gayler had authority to file bankruptcy for CH Angelus II. I think the issue will become moot once we reach settlement. I look forward to hearing from you.

Regards.